RCH/SPN/HDM
F.#2018R01309

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                       Docket No. 21-CR-371 (BMC)

RASHID SULTAN RASHID AL MALIK
ALSHAHHI,
    also known as "Rashid Al Malik"
    and "Rashid Al-Malik,"
THOMAS JOSEPH BARRACK and
MATTHEW GRIMES,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A PRETRIAL CONFERENCE PURSUANT TO
THE CLASSIFIED INFORMATION PROCEDURES ACT

BREON PEACE
United States Attorney
Eastern District of New York

MARK LESKO
Acting Assistant Attorney General
National Security Division
U.S. Department of Justice

## PRELIMINARY STATEMENT

On July 16, 2021, a grand jury sitting in the Eastern District of New York returned a seven-count indictment charging Rashid Sultan Rashid Al Malik Alshahhi ("Alshahhi"), Thomas Joseph Barrack ("Barrack"), and Matthew Grimes ("Grimes") (collectively, "the defendants") with one count of acting as agents of a foreign government without prior notification to the Attorney General, in violation of Title 18, United States Code, Sections 951(a) and 2, and one count of conspiracy to act as unregistered agents of a foreign government, in violation of Title 18, United States Code, Section 371, and charging Barrack alone with one count of obstruction of justice, in violation of Title 18, United States Code, Section 1512(c)(2), and four counts of making material false statements, in violation of Title 18, United States Code, Section 1001(a)(2).   (See ECF Dkt. No. 5).

At the status conference held on September 2, 2021, the government advised the Court that it was engaged in the process of searching classified holdings for any potentially discoverable materials.   In connection with that ongoing review, the government respectfully submits this Memorandum of Law in support of a motion to hold a pretrial conference, pursuant to Section 2 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III § 2, to address issues related to the discovery, disclosure, or use of classified information that may arise in this case.   The government does not seek a hearing date at this time.   Rather, this motion is intended to provide formal notice of its request and to provide the Court and the defendants with initial guidance on CIPA procedures.

**BACKGROUND**

The Supreme Court has long acknowledged the importance of protecting the nation's secrets from disclosure: "The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." CIA v. Sims, 471 U.S. 159, 175 (1985) (quoting Snepp v. United States, 444 U.S. 507, 509 n.3 (1980) (per curiam)); see also Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 111 (1948) ("The [executive branch] has available intelligence services whose reports are not and ought not to be published to the world."). Accordingly, federal courts have long recognized that it "is not in the national interest for revelation of either the existence or the product of [foreign intelligence operations and information] to extend beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant." United States v. Lemonakis, 485 F.2d 941, 963 (D.C. Cir. 1973).

CIPA contains a set of procedures by which federal district courts rule on pretrial matters concerning the discovery, admissibility, and use of classified information in criminal cases. See United States v. Baptista-Rodriguez, 17 F.3d 1354, 1363 (11th Cir. 1994). The Act's fundamental purpose is to "harmonize a defendant's right to obtain and present exculpatory material at trial and the government's right to protect classified material in the national interest." United States v. Pappas, 94 F.3d 795, 799 (2d Cir. 1996) (citing United States v. Wilson, 571 F. Supp. 1422, 1426 (S.D.N.Y. 1983)). In other words, "CIPA, which establishes certain procedures for the handling of classified information in criminal

2

cases, is designed 'to protect[ ] and restrict[ ] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'"   United States v. Abu-Jihaad, 630 F.3d 102, 140 (2d Cir. 2010) (quoting United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008)); see also In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 115 (2d Cir. 2008) ("CIPA establishes rules for the management of criminal cases involving classified information.").   Therefore, CIPA evidences "Congress's intent to protect classified information from unnecessary disclosure at any stage of a criminal trial" while also ensuring that the defendant's right to present evidence in his defense is not compromised.   United States v. Apperson, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006) (citing United States v. O'Hara, 301 F.3d 563, 568 (7th Cir. 2002)).

The Act, however, neither creates a new right of discovery nor expands the rules governing the admissibility of evidence.   See United States v. Johnson, 139 F.3d 1359, 1365 (11th Cir. 1998) ("CIPA has no substantive impact on the admissibility or relevance of probative evidence."); accord United States v. Dumeisi, 424 F.3d 566, 578 (7th Cir. 2005) ("CIPA does not create any discovery rights for the defendant."); United States v. Smith, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc).   CIPA does not "expand the traditional rules of discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense."   United States v. Varca, 896 F.2d 900, 905 (5th Cir. 1990); see also United States v. McVeigh, 923 F. Supp. 1310, 1314 (D. Colo. 1996) ("CIPA does not enlarge the scope of discovery or of Brady.").   Rather, CIPA applies preexisting general discovery law in criminal cases to

3

classified information and restricts discovery of classified information to protect the government's national security interests.   See, e.g., United States v. Klimavicius-Viloria, 144 F.3d 1249, 1261 (9th Cir. 1998); United States v. Yunis, 867 F.2d 617, 621 (D.C. Cir. 1989)

I.      CIPA SECTIONS AND PROCEDURES

    A.      Section 1 – Relevant Definitions

        Under CIPA, "classified information" includes any information or material that has been determined by the United States government pursuant to law or regulation to require protection against unauthorized disclosure for reasons of national security.   18 U.S.C. App. III § 1(a).   "National security" refers to the national defense and foreign relations of the United States.   Id. at § 1(b).   Notably, CIPA applies equally to classified testimony and classified documents.   See United States v. Lee, 90 F. Supp. 2d 1324, 1326 n.1 (D.N.M. 2000) (citing United States v. North, 708 F. Supp. 399, 399-400 (D.D.C. 1988)); see also Kasi v. Angelone, 200 F. Supp. 2d 585, 596-97 (E.D. Va. 2002) (applying CIPA to classified testimony).

    B.      Section 2 - Pretrial Conferences

        Section 2 of CIPA—the section the government invokes in the instant motion—authorizes the district court, upon motion by any party or at its own discretion, to hold a pretrial conference "to consider matters relating to classified information that may arise in connection with the prosecution."   18 U.S.C. App. III § 2.   Following such motion, the court shall hold the pretrial conference to establish: (1) the timing of requests for discovery by the defense; (2) the provision of the requisite written pretrial notice to the government of the defendant's intent to disclose classified information, pursuant to Section 5 of CIPA; and

(3) the initiation of hearings concerning the use, relevance, and admissibility of classified information pursuant to Section 6 of CIPA.   Id.   Additionally, the district court may consider any matters that relate to classified information or that may promote a fair and expeditious trial.   Id.   No substantive issues concerning the use of classified information, however, are to be decided in a Section 2 pretrial conference.   See S. Rep. No. 96-823, at 5-6, reprinted in 1980 U.S.C.C.A.N. 4294, 4298-99 (96th Cong. 2d Sess.).

To foster open discussions at the pretrial conference, Section 2 provides that no admission made by the defendant or his attorney at the pretrial conference may be used against the defendant unless the admission is in writing and signed by both the defendant and his attorney.   See 18 U.S.C. App. III § 2.

C.     Section 3 - Protective Order

Section 3 of CIPA mandates that the district court issue a protective order upon motion by the government to protect against the disclosure of any classified information that is disclosed by the government to a defendant.[1]   Id. § 3.   Section 3 was intended "to codify the well-established practice, based on the inherent authority of federal courts, to issue protective orders," Pappas, 94 F.3d at 801, as well as to supplement the district court's authority under Rule 16(d)(1) to issue protective orders in connection with the discovery process.[2]   In contrast to the district court's discretionary authority under Rule 16(d)(1),

---

[1]   At this time, the Government does not foresee invoking Section 3 in this case.

[2]   Rule 16(d)(1) provides in relevant part that "at any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."

however, Section 3 "makes it clear that protective orders are to be issued, if requested, whenever the government discloses classified information to a defendant in connection with a prosecution, e.g., <u>Brady</u> and <u>Jencks</u> material."   <u>Id.</u>

> D.   <u>Section 4 - Protection of Classified Information During Discovery</u>

Section 4 of CIPA provides, in pertinent part, that "[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove."   18 U.S.C. App. 3, § 4.

Like Rule 16(d)(1) of the Federal Rules of Criminal Procedure, Section 4 of CIPA provides that the United States may demonstrate that the use of such alternatives is warranted through an <u>in camera</u>, <u>ex parte</u> submission to the district court, and the Second Circuit has repeatedly affirmed district court decisions entering protective orders based on such submissions.   <u>See</u>, <u>e.g.</u>, <u>Abu-Jihaad</u>, 630 F.3d at 142-143 (recognizing that "a district court's decision to conduct ex parte hearings manifests no abuse of discretion"); <u>Aref</u>, 533 F.3d at 81 ("When the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." (internal quotation marks omitted)); <u>see also</u> <u>United States v. Kandic</u>, No. 17-CR-449 (NGG), ECF No. 41, at 4 (E.D.N.Y. Jan. 22, 2019) (granting government's motion to file CIPA Section 4 motion <u>ex parte</u> and <u>in camera</u>); <u>United States v. Ying Lin</u>, No.

6

15-CR-601 (DLI), ECF No. 71 (E.D.N.Y. Apr. 6, 2017) (same); United States v. Isa, No.

11-CR-819 (RRM), ECF No. 65 (E.D.N.Y. Sept. 19, 2016) (same); United States v. Al

Farekh, No. 15-CR-268 (BMC), 2016 WL 4444778, at *2 (E.D.N.Y. Aug. 23, 2016) (same);

United States v. Velentzas, No. 15-CR-213 (SJ), 2016 WL 4250304, at *3 (E.D.N.Y. Aug. 10,

2016) (same); see also United States v. Yunis, 867 F.2d 617, 622-23 (D.C. Cir. 1989);

United States v. Sarkissian, 841 F.2d 959, 965 (9th Cir. 1988); United States v. Pringle,

751 F.2d 419, 427 (1st Cir. 1984).

        "CIPA 'overlays the framework appearing in Fed. R. Crim. P. 16, which itself

authorizes district courts to restrict discovery of evidence in the interest of national security.'"

Velentzas, 2016 WL 4250304, at *2 (quoting United States v. Zazi, No. 10-CR-60 (JG), 2011

WL 2532903, at *1 (E.D.N.Y. Jun. 24, 2011)); see also Aref, 533 F.3d at 78.   Indeed, CIPA's

legislative history makes clear that the Court may consider national security interests in

determining whether to deny, restrict, or defer discovery.   See S. Rep. No. 96-823, at 6,

reprinted in 1980 U.S.C.C.A.N. 4294, 4299-4300 (1980) (citing "the protection of

information vital to the national security" as one consideration justifying limitations on

discovery); see also Abu-Jihaad, 630 F.3d at 140 (making clear that district courts have the

power under Federal Rule of Criminal Procedure 16(d)(1) "to issue protective orders denying

or restricting discovery for good cause, which includes information vital to the national

security" (quoting United States v. Stewart, 590 F.3d 93, 130 (2d Cir. 2009))); Aref, 533 F.3d

at 78 (same).[3]

--------

[3] The government acknowledges that courts within the Second Circuit analogize CIPA

As the Second Circuit has observed, "CIPA does not itself create a government privilege against the disclosure of classified information; it presupposes one." Stewart, 590 F.3d at 130. "The privilege it presupposes has its origins in the common-law privilege against disclosure of state secrets . . . which 'allows the government to withhold information from discovery when disclosure would be inimical to national security.'" Abu-Jihaad, 630 F.3d at 140-41 (internal citations omitted) (quoting Zuckerbraun v. Gen. Dynamics Corp., 935 F.2d 544, 546 (2d Cir. 1991)). "CIPA's framework for nondisclosure provides a means for applying the state-secrets privilege to classified information which, in ordinary circumstances, would be discoverable. Proper application of that privilege requires balancing of the government's need to protect national security with the right of a defendant to mount a full defense." United States v. Boulos, No. 13-CR-612 (ENV), 2015 WL 502170, at *1 (E.D.N.Y. Feb. 3, 2015) (internal citations omitted).

---

to the common law state-secrets privilege, and accordingly expect that the government's claim of privilege to be lodged by an appropriate head of agency. See Aref, 533 F.3d at 80. However, the government maintains that CIPA itself does not require that the government's privilege be initiated by an agency head, and that the procedural requirements of the state-secrets privilege that differ from the text of CIPA do not apply to criminal cases. See, e.g., United States v. Rosen, 557 F.3d 192, 198 (4th Cir. 2009); United States v. El-Mezain, 664 F.3d 467, 521-22 (5th Cir. 2011).

Based upon the Second Circuit's holding in Aref, summarized above, the government anticipates that it will file a declaration from the head of any agency invoking the claim of privilege. This is typically a Cabinet-level or otherwise very senior government official. Compliance with this requirement can, on occasion, be time-consuming depending upon the complexity of the information at issue and the need to coordinate across multiple government agencies.

The application of the government's privilege against disclosure of classified information is a multi-step process.   "First, the district court must determine whether the material in dispute is discoverable, and if so, whether the state-secrets privilege applies." Stewart, 590 F.3d at 131.   If the material in dispute is discoverable, "the state-secrets privilege applies if '(1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'"   Abu-Jihaad, 630 F.3d at 141 (quoting Aref, 533 F.3d at 80).   "If the evidence is discoverable but the information is privileged, the court must next decide whether the information is helpful or material to the defense, i.e., useful to counter the government's case or to bolster a defense."   Aref, 533 F.3d at 80 (internal quotation marks omitted).

In determining whether deletion or substitution of classified information is appropriate, a court must balance the government's national security interest against the defendant's right to present his defense.   For example, under CIPA, a court may permit the government to produce exculpatory or helpful information "in a form that will preserve its sensitivity," including summaries that omit classified information that is "not helpful to the defense."   Al Farekh, 2016 WL 4444778, at *2-3; see also United States v. Yunis, 867 F.2d 617, 623 (D.C. Cir. 1989) ("a defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused'").   The fact that defense counsel possesses a security clearance does not itself entitle counsel to receive classified

9

information in discovery.   As courts in this Circuit have repeatedly recognized "clearances do

not mandate . . . access to immaterial classified information for which counsel has no

legitimate need."   United States v. Babafemi, No. 13-CR-109 (JG), 2014 WL 1515277, at *3

(E.D.N.Y. Apr. 18, 2014) (citing Exec. Order No. 13,526, 75 Fed. Reg. 707, 720 (Dec. 29,

2009) ("A person may have access to classified information provided that . . . the person has a

need-to-know the information.")); Zazi, 2011 WL 2532903, at *3 (same); see also United

States v. Libby, 429 F. Supp. 2d 18, 24 n.8 (D.D.C. 2006) ("It is axiomatic that even if the

defendant and his attorneys had been granted the highest level of security clearances, that fact

alone would not entitle them to access to every piece of classified information this country

possesses.").

E.   Sections 5 and 6 - Procedure for Cases Involving Classified Information Possessed by the Defendant

Sections 5 and 6 of CIPA apply when a criminal defendant possesses classified

information and seeks to disclose such information during the course of a trial or proceeding.[4]

See, e.g., Baptista-Rodriguez, 17 F.3d at 1363; Sarkissian, 841 F.2d at 965-66; United States

v. Collins, 720 F.2d 1195, 1199 (11th Cir. 1983).   There are three critical pretrial steps in the

handling of classified information under CIPA after such information has been provided to the

defendant through discovery.   First, the defendant must specify in detail the precise classified

information the defendant reasonably expects to disclose at trial.   Second, the district court,

upon motion of the government, shall hold a hearing pursuant to Section 6(a) to determine the

---

[4] At this time, the government does not foresee proceedings under Sections 5 or 6 in this case.

10

use, relevance, and admissibility of the proposed evidence.   Third, following the Section 6(a) hearing and formal findings of admissibility by the district court, the government may move to substitute an admission of relevant facts or summaries for classified information that the district court rules is admissible.

           i.      <u>The requirement to provide notice of disclosure</u>

Section 5(a) requires a defendant who intends to disclose (or cause the disclosure of) classified information to provide timely pretrial written notice of his or her intention to the district court and the government.   Such notice must "include a brief description of the classified information," and such notice "must be particularized, setting forth specifically the classified information which the defendant reasonably believes to be necessary to his defense."   <u>Collins</u>, 720 F.2d at 1199-1200; <u>see also</u> <u>United States v. Giffen</u>, 473 F.3d 30, 33 (2d Cir. 2006); <u>Yunis</u>, 867 F.2d at 623 ("a defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused'"); <u>United States v. Smith</u>, 780 F.2d 1102, 1105 (4th Cir. 1985) (en banc).

If a defendant fails to provide a sufficiently detailed notice far enough in advance of trial to permit the implementation of CIPA procedures, Section 5(b) authorizes the district court to preclude disclosure of the classified information.   <u>See</u> <u>United States v. Badia</u>, 827 F.2d 1458, 1464–66 (11th Cir. 1987) (upholding preclusion of disclosure of classified information at trial because defendant failed to comply with notice requirements of CIPA Section 5); <u>United States v. Hashmi</u>, 621 F. Supp. 2d 76, 81 (S.D.N.Y. 2008).   Similarly, if the defendant attempts to disclose at trial classified information which is not described in his

11

Section 5(a) notice, preclusion is the appropriate remedy under Section 5(b) of CIPA.   See

Smith, 780 F.2d at 1105 ("defendant is forbidden from disclosing any such information absent

the giving of notice").

    Thus, Section 5 requires the defendant to provide timely written notice to the

court and the government describing any classified information that he reasonably expects to

disclose.   See 18 U.S.C. App. III § 5(a).   Notification must take place "within the time

specified by the court, or where no time is specified, within thirty days prior to trial."   Id.

Section 5 specifically prohibits the defendant from disclosing any classified information in a

trial or pretrial proceeding until such notice has been given, the government has had the

opportunity to seek a determination pursuant to Section 6, and any appeal by the government

under Section 7 has been decided or the time for filing an appeal has expired.   Id.

    ii.  The Pretrial Hearing on Disclosure

    Before trial, pursuant to Section 6(a) of CIPA, upon motion of the government,

the court must hold a hearing "to make all determinations concerning the use, relevance, or

admissibility of classified information that would otherwise be made during the trial or

pretrial proceeding."   18 U.S.C. App. III § 6(a).   The statute expressly provides that if the

Section 6(a) motion is filed before trial or the relevant pretrial proceeding, "the court shall

rule [on the use, relevance, or admissibility of the classified information at issue] prior to the

commencement of the relevant proceeding."   *Id.*

    Section 6(b) of CIPA requires that before any hearing is conducted under

subsection (a), the government must notify the defendant of the hearing and identify the

classified information which will be at issue.   If the information was not previously made

available to the defendant, the government may, with the court's approval, provide a generic

description of the material to the defendant.   Thus, as Congress recognized in enacting CIPA,

"the Government would not have to disclose the identity of an undercover intelligence agent

not previously disclosed to the defendant; instead, the Government would describe the

information as 'the identity of an undercover intelligence agent' if this meets with court

approval."   S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4301 (1980).

At the Section 6(a) hearing, the district court hears the defense proffer and the

arguments of counsel, then rules whether the classified information identified by the defense

is relevant under Rule 401 of the Federal Rules of Evidence.[5]   See Giffen, 473 F.3d at 33;

Smith, 780 F.2d at 1106.   Courts must also determine whether the evidence is cumulative,

"prejudicial, confusing, or misleading," such that, even if relevant, the evidence should be

excluded under Rule 403 of the Federal Rules of Evidence.   Wilson, 750 F.2d at 9.   At the

conclusion of the Section 6(a) hearing, the court must state in writing the reasons for its

determination as to each item of classified information.

    iii.   Substitution in Lieu of Disclosure

In the event that the district court rules that one or more items of classified

information are admissible, the government has the option of proposing a "substitution" for

---

[5] CIPA does not change the "generally applicable evidentiary rules of admissibility." Wilson, 750 F.2d at 9; accord Yunis, 867 F.2d at 623.   Rather, CIPA alters the timing of rulings concerning admissibility, so as to require them to be made before trial.   United States v. Poindexter, 698 F. Supp. 316, 318 (D.D.C. 1988); accord United States v. Smith, 780 F.2d at 1106.

the classified information at issue, pursuant to Section 6(c) of CIPA.   18 U.S.C. App. 3

Section 6(c).   The government may move for permission to provide the defense either a

substitute statement admitting relevant facts that the classified information would tend to

prove, or substitute a summary of the classified information that would otherwise be

disclosable.   See Giffen, 473 F.3d at 33; Smith, 780 F.2d at 1105.   The court must grant the

motion for substitution "if it finds that the admission or summary will leave the defendant in

substantially the same position as would disclosure."   United States v. North, 910 F.2d 843,

899 (D.C. Cir. 1990).

If the district court determines that the item of classified information at issue is

relevant and admissible and denies the government's motion for substitution, Section 6(e)(1)

permits the government to object to the classified information's disclosure.   In such cases, the

court shall "order that the defendant not disclose or cause the disclosure of such information."

Id.   Section 6(e) then sets forth a sliding scale of remedies that the court may impose in such

a case.   Id. at § 6(e).

If, after an in camera hearing, the district court determines that the classified

information at issue may not be disclosed or elicited during the proceeding, the record of the

hearing must be sealed and preserved for use in the event of an appeal.   Id. at § 6(d).

If the district court denies the government's motion for substitution under

Section 6(c), CIPA permits the government by affidavit from the Attorney General to object

to the disclosure of the classified information at issue.   Id. at § 6(e)(1).   Upon filing of the

Attorney General's affidavit, the court shall "order that the defendant not disclose or cause the

14

disclosure of such information," id., and may impose a sanction against the government to compensate for the defendant's inability to present proof of the specific item of classified information.   See S. Rep. 96-823 at 9, 1980 U.S.C.C.A.N. at 4302–03.   Section 6(e)(2) provides a sliding scale of possible sanctions, which include dismissal of specific counts, finding against the government on an issue to which the classified information related, striking or precluding testimony of a witness, or dismissing the indictment.   18 U.S.C. App. III § 6(e)(2).   An order imposing a sanction shall not take effect until the government has the opportunity to appeal the order under Section 7 and thereafter to withdraw its objection to the disclosure of the information.   Id.

Whenever the district court rules classified information admissible pursuant to a Section 6(a) hearing, the court is instructed to require the government, "unless the interests of fairness do not so require," to provide the defendant with the information it expects to use to rebut the classified information.   Id. at § 6(f).   The court may place the United States under a continuing duty to disclose rebuttal information.   Id.   If the government fails to comply, the court may exclude the rebuttal evidence and prohibit the examination by the United States of any witness with respect to such information.   Id.

F.    Section 7 - Interlocutory Appeal

Section 7 of CIPA permits the government to take an interlocutory expedited appeal to the appellate court if the district court: (1) authorizes the disclosure of classified information; (2) imposes sanctions for nondisclosure of classified information; or (3) refuses to issue a protective order sought by the government to prevent the disclosure of classified

information.   Id. at § 7.   If an appeal is taken, trial shall not commence, or must be adjourned if already commenced, until the appeal is resolved.   Id.   Such an appeal and decision does not affect the defendant's right to lodge a subsequent appeal upon conviction of an adverse ruling by the court.   Id. at § 7(b).

G.     Section 8 - Procedures Governing the Introduction of Classified Information at Trial or at Pretrial Proceeding

Section 8 prescribes additional protections and procedures governing the introduction of classified information into evidence.   Id. at § 8.   Specifically, Section 8(a) provides that classified documents may be admitted into evidence without changing their classification status.   This provision allows the classifying agency, upon completion of the trial, to decide whether information has been so compromised that it could no longer be regarded as classified.   See S. Rep. No. 96-823 at 10, 1980 U.S.C.C.A.N. at 4304.

Section 8(b) permits the court to order admission into evidence only a part of a document when fairness does not require the whole document to be considered.   The purpose of this provision is to clarify Federal Rule of Evidence 106, known as the rule of completeness, in order to prevent unnecessary disclosure of classified information.   Id. at 10–11, 1980 U.S.C.C.A.N. at 4304.

Finally, Section 8(c) provides a procedure to address the problem presented at a proceeding when the defendant's counsel asks a question or embarks on a line of inquiry that would require the witness to disclose classified information.   Id. at 11, 1980 U.S.C.C.A.N. at 4304.   Specifically, under Section 8(c), the government may object to any question or line of inquiry that may require the witness to disclose classified information that was not previously

16

held to be admissible.   18 U.S.C. App. III § 8(C).   Following an objection, the court "shall take such suitable action to determine whether the response is admissible as will safeguard against the compromise of any classified information."   Id.   In effect, this procedure supplements the notice provision under Section 5 and the hearing provision in Section 6(a) to cope with situations that cannot be handled effectively by those sections, such as where the defense counsel does not realize that the answer to a given question will reveal classified information.   S. Rep. No. 96-823 at 11, 1980 U.S.C.C.A.N. at 4304–05.

     H.    <u>Section 9 - Security Procedures</u>

     Section 9 requires the Chief Justice of the United States, in consultation with other executive branch officials, to prescribe rules establishing procedures to protect classified information in the custody of federal courts from unauthorized disclosure.   18 U.S.C. App. III § 9(a).   Security Procedures established by former Chief Justice Burger pursuant to this provision are codified directly following Section 9 of CIPA.   Among the procedures set forth by Chief Justice Burger are that in any proceeding in a criminal case or appeal therefrom in which classified information is within, or reasonably expected to be within, the custody of the court, the court shall designate a court security officer.   The court security officer shall be responsible to the court for document, physical, personnel and communications security, and shall take measures reasonably necessary to fulfill these responsibilities.

     I.    <u>Section 9A - Coordination Requirement</u>

     Section 9A requires an official of the Department of Justice and the appropriate United States Attorney to provide timely briefings of the fact and status of a prosecution

involving classified information to a senior official of the agency in which the classified information originated.   Id. at § 9A(a).

J.      Section 10 - Identification of Information Related to the National Defense

Section 10 applies in espionage or criminal prosecutions in which the government must prove as an element of the crime charged that certain material relates to the national defense or constitutes classified information, which is not relevant in the instant matter.   *See* S. Rep. 96-823 at 11-12, 1980 U.S.C.C.A.N. at 4305.   In such a circumstance, Section 10 requires the government to inform the defendant of which portions of the material it reasonably expects to rely upon to prove the national defense or classified information element of the crime.   18 U.S.C. App. III § 10.

K.      Sections 11-15 - Miscellaneous Provisions

The remaining sections of CIPA contain various housekeeping provisions. Section 11 provides for amendments to Sections 1 through 10 of CIPA.   Section 12 requires the Attorney General to issue guidelines regarding the exercise of prosecutorial discretion over cases in which classified information may be revealed and requires preparation of written findings when prosecution of such cases is declined.   Section 13 requires the Attorney General periodically to report such declination decisions to Congress and, where necessary, to report on the operation and effectiveness of CIPA.   Section 14 identifies the senior officials to whom the functions and duties of the Attorney General under CIPA may be delegated. Finally, Section 15 provides the effective date of CIPA.

18

# **ARGUMENT**

As noted above, the seven-count indictment charges the defendants with acting as agents of a foreign government without prior notification to the Attorney General and conspiracy to act as unregistered agents of a foreign government, and charges Barrack with obstruction of justice and making material false statements.   Due to the nature of the charges and the expected evidence, the government anticipates that issues relating to classified information may arise in connection with this case.   Accordingly, the government respectfully moves for a pretrial conference, to be set at a later date, to consider such matters pursuant to Section 2 of CIPA.

The government does not request that the Court set a pretrial conference date at this time, as such a conference may still be premature.   The government therefore files this motion simply to preserve its right to a pretrial conference in the future once these initial matters have been settled and to provide the Court and parties with an initial overview of CIPA.

## **CONCLUSION**

For the foregoing reasons, the government respectfully moves for a pretrial

conference, to be set at a later date, to consider such matters pursuant to Section 2 of CIPA.

Dated:          Brooklyn, New York
                October 29, 2021

Respectfully submitted,

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

MARK LESKO
Acting Assistant Attorney General
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530

20