

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH/SPN/HDM/CRH
F. #2018R01309

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 31, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: United States v. Rashid Sultan Rashid Al Malik Alshahhi, et al.
            Criminal Docket No. 21-371 (BMC)

Dear Judge Cogan:

      The defendants recently submitted notices of supplemental authority following the recent order of the Honorable Anthony Trenga, U.S. District Judge for the Eastern District of Virginia in United States v. Rafiekian, No. 18 CR 457 (E.D. Va.). See Ex. A to Mar. 28, 2022 Letter (ECF No. 93) (the "EDVA Order"). The EDVA Order vacated Bijan Rafiekian's convictions for acting as an agent of a foreign government without prior notification to the Attorney General, in violation of 18 U.S.C. § 951, and conspiracy to do the same, in violation of 18 U.S.C. § 371, and ordered a new trial pursuant to Federal Rule of Criminal Procedure 33. The defendants' reliance on the EDVA Order is misguided for several reasons. First, Judge Trenga, in vacating Rafiekian's convictions, relied on the same reasoning that the U.S. Court of Appeals for the Fourth Circuit squarely rejected in vacating Judge Trenga's prior order in Rafiekian entering a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and a conditional grant of a new trial pursuant to Rule 33. See United States v. Rafiekian, 991 F.3d 529 (4th Cir. 2021). The government believes the EDVA Order was wrongly decided, like Judge Trenga's prior order in the same case, and has thirty days from March 25, 2022, to file a notice of appeal. Second, the EDVA Order addressed the sufficiency of the government's evidence after the government had the opportunity to present that evidence to a jury at trial, a procedural posture far different from a motion to dismiss an indictment. Third, the facts alleged in the indictment in this matter are substantially different from the facts at issue in Rafiekian and therefore, even assuming they reflected the entirety of the government's proof, are not squarely covered by Judge Trenga's analysis.

      First, the EDVA Order contravenes the Fourth Circuit's prior decision that the evidence was sufficient to permit "a rational jury [to] infer the existence of an agreement between [the defendant] and Turkish officials" and that the defendant "agreed to perform work for Turkey." See Rafiekian, 991 F.3d at 545. In the EDVA Order, Judge Trenga concluded that Rafiekian's convictions "were so against the great weight of the evidence that it would be unjust to convict

him" and "a new trial is warranted in the interests of justice . . . to avoid a miscarriage of justice." EDVA Order at 50-51. However, Judge Trenga relied on this same reasoning in his prior decision entering a judgment of acquittal and conditionally granting a new trial, which the Fourth Circuit then rejected. Specifically, the Fourth Circuit "conclude[d] that the evidence was sufficient to support the verdict" and, "[c]onsistent with that determination," rejected this argument "as a proper basis for granting a new trial." Rafiekian, 991 F.3d at 550 (holding that it could not "affirm on weight-of-the-evidence grounds" with respect to the conditional grant of a new trial). Judge Trenga's decision to again order a new trial for essentially the same reasons that the Fourth Circuit recently rejected is an abuse of discretion. This Court should consider the EDVA Order in this light.

Second, the EDVA Order was not, as here, addressing a pre-trial motion to dismiss the indictment, but a post-trial motion for a new trial, an entirely distinct procedural posture with an entirely different legal standard. As the Court is aware, on a pre-trial motion to dismiss, the Court must accept all factual allegations in the indictment as true, and "the sufficiency of the evidence is not appropriately addressed." United States v. Alfonso, 143 F.3d 772, 776-77 (2d. Cir. 1998) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). Yet, the sufficiency of the evidence was precisely the issue addressed by Judge Trenga in ordering a new trial on the grounds that the jury's guilty verdict was "so against the great weight of the evidence that it would be unjust to convict" Rafiekian. EDVA Order at 50-51. Although the government believes that Judge Trenga misapplied the applicable legal standard in granting the motion for a new trial, Judge Trenga had the authority, in applying Rule 33, to evaluate the weight of the government's evidence presented at trial, which is not appropriate on a pretrial motion to dismiss. See, e.g., United States v. Ferguson, 246 F.3d 129, 131, 133-34 (2d Cir. 2001) (Rule 33 is a "rarely used power" where the Court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation"); United States v. Elder, 19 CR 92 (WFK), 2022 WL 836923, at *8 (E.D.N.Y. Mar. 21, 2022) ("A district court may not grant a Rule 33 motion based on the weight of evidence alone unless the evidence preponderates heavily against the verdict to such an extent that it would be manifest injustice to let the verdict stand.").

Finally, many of the concerns raised by Judge Trenga in the EDVA Order are not implicated by the facts alleged in the indictment in this case. Judge Trenga found, contrary to the evidence as well as the government's contentions, that Rafiekian's connections to the Turkish Government were funneled almost exclusively through a third party with whom Rafiekian's company had contracted, raising the question of whether Rafiekian believed he was working at the direction or control of the Turkish Government or rather the third party. See EDVA Order at 19-21. Even, if one presumed Judge Trenga were correct (though the Fourth Circuit has already found that he is not), no such ambiguity exists in the instant matter. The indictment alleges multiple direct contacts and communications between the defendants and United Arab Emirates ("UAE") officials, as well as communications with their co-defendant Rashid Sultan Rashid Al Malik Alshahhi ("Al Malik") in which Al Malik makes clear that he was conveying information and direction from UAE officials. For example: (a) Barrack and Al Malik met directly with senior UAE officials in May 2016, see ECF No. 5 ¶ 16; (b) Barrack directly solicited direction from a senior UAE official through Al Malik in advance of media appearances during which he promoted the UAE and its foreign policy interests, see id. ¶ 24(a); (c) the defendants drafted materials proposing a strategy for the UAE to promote its foreign policy interests and increase its political influence in the United States, after Al Malik conveyed to the defendants that a senior UAE official

2

wanted the defendants to prepare such a strategy, see id. ¶¶ 25-34; (d) the defendants flew to Tangier, Morocco to meet with a senior UAE official, see id. ¶ 31; (e) Barrack emailed a senior UAE official directly and discussed that they were "on track on all counts" and that Barrack had "updated your team," again making clear that Barrack understood the ultimate principal here, see id. ¶ 33;(f) the defendants downloaded a secure messaging application on a dedicated cellular telephone at the direction of a senior UAE official to allow them to communicate directly with senior UAE officials, see id. ¶¶ 35-42; and (g) the defendants traveled to the UAE and met with senior UAE officials in December 2016 where they discussed a plan to influence U.S. foreign policy in the first 100 days, the first six months, year and four years of the incoming Trump Administration, see id. ¶¶ 60-61. In this case, the government has alleged substantial facts to prove that the defendants knew that the ultimate principal here was the UAE.

Similarly, Judge Trenga concluded (wrongly) that "Rafiekian did not contemplate any relationship other than an arms-length, highly defined and focused engagement that [his company's] team had developed." EDVA Order at 39. Here, however, the indictment alleges that the UAE sought a "long term relationship" with Barrack where they discussed "strategies" and received assistance with "contacts and relationships," ECF No. 5 ¶ 15, and the actions alleged in the indictment make clear that this relationship was wide-ranging and expansively defined. Indeed, the defendants are alleged to have engaged in a variety of activities at the direction of the UAE, including arranging communications between senior UAE officials and the President-Elect, advocating for specific policies favored by the UAE, promoting the UAE and its foreign policy interests in media appearances, inserting UAE-favored language into campaign speeches, and providing the UAE with non-public information about the Trump Campaign and the Trump Administration.

3

In sum, the EDVA Order should have no bearing on this Court's assessment of the instant motions to dismiss.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/
Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By:   /s/ Matthew J. McKenzie
Matthew J. McKenzie
Trial Attorney

cc:   Counsel for Thomas Joseph Barrack (by ECF)
      Counsel for Matthew Grimes (by ECF)
      Clerk of the Court (BMC) (by ECF)