SPN:RCH/HDM/CRH/MJM
F. #2018R01309

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                        No. 21-CR-371 (BMC)

RASHID SULTAN RASHID AL MALIK
ALSHAHHI,
        also known as "Rashid Al Malik"
        and "Rashid Al-Malik,"
THOMAS JOSEPH BARRACK and
MATTHEW GRIMES

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


THE GOVERNMENT'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY


                      BREON PEACE
                      United States Attorney
                      Eastern District of New York


Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant United States Attorneys

Matthew J. McKenzie
Trial Attorney
National Security Division
(Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................... 1

RELEVANT BACKGROUND .................................................................................................. 2

ARGUMENT ............................................................................................................................. 6

   I.    The Government Has Met Its Obligations Under Rule 16 ............................................. 6

      A.    The Government's Rule 16 Disclosures ........................................................... 6

      B.    The Court Should Deny the Defendants' Request for Purported Rule 16 Material ..... 7

   II.   The Government is Not Required to Disclose 3500 Material at This Stage in the Case . 9

   III.   The Government Has Exceeded Any Obligations it May Have With Regard to Collecting and Producing Materials Controlled by Others ........................................... 10

      A.    Other Federal Agencies Are Not Members of the Prosecution Team ....................... 11

      B.    The Government Has Requested Relevant Materials from Other Agencies .............. 13

   IV.   The Government Has Met Its Constitutional Discovery Obligations ........................... 14

      A.    Legal Standard .................................................................................................. 14

      B.    The Government's Approach to *Brady* Disclosures is Appropriate .......................... 15

      C.    The Government Has Made Adequate and Timely Disclosures .............................. 17

      D.    The Defendants' Requests Are Overbroad and Without Merit .................................. 20

          1.  The Defendant's Requests Related to Section 951 Are Improper ....................... 20

          2.   Barrack's Requests Related to False Statements Are Improper ......................... 24

   V.   The Government Will Continue to Comply with its Discovery Obligations ................. 26

CONCLUSION .......................................................................................................................... 28

<u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Brady v. Maryland</u>,
  373 U.S. 83 (1963) .................................................................................................. 2, 15

<u>Giglio v. United States</u>,
  405 U.S. 150 (1972) ................................................................................................ 15, 25

<u>Kyles v. Whitley</u>,
  514 U.S. 419 (1995) ..................................................................................................... 10

<u>United States v. Agurs</u>,
  427 U.S. 97 (1976) ..................................................................................................... 7, 16

<u>United States v. Apostolopuos</u>,
  No. 04 CR 1220 (RCC), 2005 WL 2482525 (S.D.N.Y. 2005) ................................ 16

<u>United States v. Avellino</u>,
  136 F.3d 249 (2d Cir. 1998) ......................................................................................... 11

<u>United States v. Bagley</u>,
  473 U.S. 667 (1985) ................................................................................................ 10, 16

<u>United States v. Barrera</u>,
  950 F. Supp. 2d 461 (E.D.N.Y. 2013) ....................................................................... 19

<u>United States v. Barret</u>,
  824 F. Supp. 2d 419 (E.D.N.Y. 2011) ....................................................................... 19

<u>United States v. Coppa</u>,
  267 F.3d 132 (2d Cir. 2001) ................................................................................. passim

<u>United States v. Douglas</u>,
  525 F.3d 225 (2d Cir. 2008) ....................................................................................... 19

<u>United States v. Elder</u>,
  No. 18 CR 92 (WFK), 2021 WL 4129153 (E.D.N.Y. 2021) .................................... 19

<u>United States v. Finnerty</u>,
  411 F. Supp. 2d 428 (S.D.N.Y. 2006) ......................................................................... 9

<u>United States v. Grossman</u>,
  843 F.2d 78 (2d Cir.1988) ........................................................................................... 25

<u>United States v. Kirk Tang Yuk</u>,
  885 F.3d 57 (2d Cir. 2018) ......................................................................................... 24

<u>United States v. LeRoy</u>,
  687 F.2d 610 (2d Cir. 1982) ....................................................................................... 15

<u>United States v. Loera</u>,
  No. 09 CR 466 (BMC), 2017 WL 2821546 (E.D.N.Y. June 29, 2017) ............... 9, 13

<u>United States v. Maniktala</u>,
  934 F.2d 25 (2d Cir. 1991) ........................................................................................... 8

United States v. Mavashev,
   No. 08-CR-902 (DLI) (MDG), 2010 WL 670083 (E.D.N.Y. Feb. 23, 2010) ......................... 20

United States v. McGuinness,
   764 F. Supp. 888 (S.D.N.Y. 1991) ...................................................................................... 8

United States v. Meregildo,
   920 F. Supp. 2d 434 (S.D.N.Y. 2013).......................................................................... 11, 12

United States v. Morgan,
   690 F. Supp. 2d 274 (S.D.N.Y. 2010)................................................................................ 26

United States v. Numisgroup Int'l Corp.,
   128 F. Supp. 2d 136 (E.D.N.Y. 2001) ............................................................................... 27

United States v. Persico,
   447 F. Supp. 2d 213 (E.D.N.Y. 2006) ................................................................................. 9

United States v. Persing,
   No. 06 CR 815 (BMC), 2008 WL 11344620 (E.D.N.Y. May 5, 2008) ........................... 19, 26

United States v. Pugh,
   No. 15-CR-116 (NGG), 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015).................................. 26

United States v. Reddy,
   190 F. Supp. 2d 558 (S.D.N.Y. 2002)......................................................................... 9, 15, 19

United States v. Rivera,
   No. 09-CR-619 (SJF), 2010 WL 1438787 (E.D.N.Y. Apr. 7, 2010)...................................... 25

United States v. Scully, 108 F. Supp. 3d 59 (E.D.N.Y. 2015).................................................... 7, 9

United States v. Shkreli,
   No. 15-CR-637 (KAM), 2016 WL 8711065 (E.D.N.Y. Dec. 16, 2016) ................................ 26

United States v. Upton,
   856 F. Supp. 727 (E.D.N.Y. 1994) .................................................................................... 18

United States v. Weaver,
   992 F. Supp. 2d 152 (E.D.N.Y. 2014) ............................................................................ 24, 26

United States v. Zagari,
   111 F.3d 307 (2d Cir. 1997)............................................................................................. 19

**Statutes**

18 U.S.C. § 3500............................................................................................................... 10

18 U.S.C. § 951................................................................................................................. 22

**Other Authorities**

Justice Manual ("JM") § 9-5.001(B)(1)................................................................................ 16

Mem. of Law, United States v. Basciano,
   No. 05-CR-060 (NGG) (D.E. # 463) ................................................................................. 16

Opp. to Pretrial Motions, <u>United States v. Persico</u>,
No. 10-CR-147 (SLT) (D.E. # 426) ........................................................................ 16

**Rules**

Rule 16 of the Federal Rules of Criminal Procedure ............................................. 7, 8, 9

PRELIMINARY STATEMENT

The government writes in response to the defendants' motion to compel discovery. See Motion to Compel Discovery, Docket Entry No. ("D.E. #") 89; Letter in Regard to Joinder of Motion, D.E. # 91 (collectively, the "Motion" or "Mot.").   The government understands its discovery obligations under applicable law, has complied and will continue to comply with its obligations, including as new material comes within its possession and control.   The government has made several requests for materials from other executive components of the federal government, and upon receipt of these materials, will promptly disclose any additional items that are discoverable.   Additionally, the investigation related to this case is ongoing (we note that one of the charged defendants is a fugitive and the indictment alleges conduct by several unindicted co-conspirators).   Any additional discoverable materials that come into the government's possession in connection with the investigation will be disclosed.   To the extent the defendants seek more than what the government has already disclosed or committed to disclose, the requests are overbroad and seek materials that are not discoverable.

The defendants claim that the parties have reached an "impasse," but there is no real indication of a problem requiring the Court's intervention.   The defendants' own narrative reflects that the government repeatedly met and conferred in good faith, considered the defendants' discovery requests, and made disclosures that the defendants acknowledge were responsive to these requests.   Yet the defendants treat the government's efforts to respond fairly to their requests, including with disclosures not required by law, as evidence that the government is failing to meet its discovery obligations.   The defendants are wrong.   Accordingly, and for the reasons set forth in greater detail below, the Court should deny the Motion.

RELEVANT BACKGROUND

On July 16, 2021, a grand jury sitting in the Eastern District of New York returned the current Indictment.   See D.E. # 5.   The day after Barrack and Grimes' initial appearance in this district, the government made its first production of discovery, enclosing to Barrack a copy of the report of Barrack's interview with Federal Bureau of Investigation ("FBI") special agents on June 20, 2019, as well as a copy of the handwritten notes of that same interview.[1]   The government also advised Barrack that it was currently "not aware of any exculpatory material regarding the defendant," but affirmed that it understood and would "comply with its continuing obligation to produce exculpatory material as defined by Brady v. Maryland, 373 U.S. 83 (1963), and its progeny."   Since this initial production, the government has worked diligently and expeditiously to produce hundreds of thousands of files to both defendants, and substantially completed production of the materials currently in its possession in the first six months of this case.   This includes, to date, 27 productions of discoverable material, totaling more than 650,000 files.

Consistent with its practice of keeping the Court apprised of the status of discovery in this case (see, e.g., D.E. # 38, 55), the government advised the Court on January 3, 2022 that it "continue[d] to produce discoverable material to the defendants on a rolling basis," that "the government has produced the vast majority of discoverable material currently in its possession," and that the "government will continue to collect, review and produce new discoverable material on a rolling basis as it comes into the government's possession."   See D.E. # 63 (emphasis added). The government has, since that date, made five additional productions of newly acquired

---

[1]   Consistent with the government's ongoing attempts to resolve disputes in good faith, the parties exchanged substantial correspondence related to discovery in this case.   The government can provide the written correspondence should the Court believe it to be helpful.

discoverable material, totaling 85,000 files; fewer than 20 of these files were in the possession of the government prior to January 3, 2022.

The government's substantial productions of discovery pursuant to Rule 16 of the Federal Rules of Civil Procedure have consisted of, among other things: law enforcement interviews of the defendants including the final reports and contemporaneous handwritten notes; recordings of interviews of Barrack by various media outlets; information from more than 13 search warrants on email, Apple iCloud and social media accounts; hundreds of thousands of records and email communications from companies associated with the defendants; records produced in response to more than 140 subpoena requests; a production of all materials specifically cited or quoted in the Indictment; and, as discussed below, disclosures of specific information not otherwise covered by Rule 16, but which may constitute Brady material.   Notably, the defendant has failed to identify any particular category of data that would be discoverable under Rule 16 that it believes to be in the government's possession and which has been deliberately withheld.

The government has produced additional information, out of an abundance of caution, that it believed might be viewed as favorable to the defense.   On October 26, 2021, it advised the defendants of statements made by ███████████████████ during prior interviews with FBI special agents.   The government made similar disclosures about statements by ███████████████████████████████.   These disclosures were made on December 22, 2021, January 14, 2022, January 27, 2022, March 9, 2022 and April 5, 2022.

In addition, throughout this process, the government has engaged in a good faith, ongoing dialogue with the defendants about discovery.   On the day of the first production, Barrack requested by letter "any and all exculpatory material – including impeachment material – relevant

to either guilt or punishment," including "all evidence of any kind that tends to exculpate" Barrack. In response, the government reiterated its awareness and willingness to comply with <u>Brady</u>.   On August 17, 2021, the government notified Barrack that the Special Counsel's Office ("SCO") provided the prosecution team with materials related to this matter, that the team was reviewing review those materials to ensure that it met its disclosure obligations, and further advised Barrack that it would "fulfill its disclosure obligations with respect to materials it has received or will receive from other governmental agencies," although it disagreed with the defense position that these other agencies constituted members of the prosecution team.   The government also reiterated an offer to confer regarding any disagreements related to discovery.   On September 17, 2021, the government responded to discovery requests made by Barrack and again reiterated its understanding and willingness to comply with its discovery obligations, including under <u>Brady</u>.

On December 7, 2021, defense counsel for Barrack requested a variety of materials, including statements from several specific third parties as well as "any other individual related to Mr. Barrack and his contacts and relationships with the UAE, Qatar, the Middle East, and other regions, including Latin America," all other relevant documents obtained by or from the SCO, materials indicating that Barrack's actions in the UAE or Middle East were taken with the knowledge or at the request of the Trump Campaign or Trump Administration, and materials about Barrack's support for Qatar.   On February 22, 2022, defense counsel for Barrack further requested additional materials, including FBI regulations, policies, or other documents governing the preparation of an FD-302 report, identities of individuals involved in the June 20, 2019 interview of Barrack, communications about the interview of Barrack and about the drafting of the report of the interview, and any other drafts or notes of the interview.   Defense counsel also requested that the government "redouble its efforts to promptly identify and disclose all <u>Brady</u> material in [its]

4

possession or control or that comes into [its] possession or control in the course of the additional materials you represented would be searched."   Defense counsel further requested the underlying notes and FD-302 reports related to the interviews of ███████████████████ ███ whose discoverable information was previously disclosed to the defense.

On March 1, 2022, the government responded to Barrack's requests.   With respect to defense counsel's request for additional materials related to Barrack's interview on June 20, 2019, the government noted that it had "already disclosed the complete report and underlying notes of the interview" and stated that the remaining requests "seek materials that are not discoverable." With respect to defense counsel's requests for Brady materials, the government advised that it "generally takes a broad view of its discovery obligations, including its obligations under Brady and its progeny, and thus generally discloses far more than is required under the law," in an "abundance of caution."   The government further noted that, by disclosing the names of potential exculpatory witnesses and the nature of the exculpatory information possessed by those witnesses, it had satisfied its Brady obligations.   The government again reiterated that it was "well aware of, ha[d] abided by, and [would] continue to abide by [its] obligations" and that it would "continue to produce discovery as required by Rule 16 on a rolling basis," including any discoverable materials it received from executive branch agencies.

The government requested reciprocal discovery pursuant to Rules 12.3, and 16(b) of the Federal Rules of Criminal Procedure, and Rules 702, 703 and 705 of the Federal Rules of Evidence on July 27, 2021, and have repeatedly renewed this request.   The defendants have not produced any material in response, nor responded in any fashion to the requests.

ARGUMENT

The Motion seeks an order compelling production of (1) material regarding all communications between the defendants and the Trump Campaign and Administration regarding the Middle East; (2) early disclosure of materials the defendants frame as discoverable, including interview notes, memoranda and grand jury transcripts of certain individuals, but which are at most material to be produced pursuant to 18 U.S.C. § 3500; (3) a lengthy list of materials mischaracterized as Brady information; and (4) internal documents and communications related to Barrack's June 20, 2019, voluntary interview with the FBI.   The defendants' broad requests are not discoverable under the law.

I.    The Government Has Met Its Obligations Under Rule 16

A.    The Government's Rule 16 Disclosures

The government has worked diligently and expeditiously to produce hundreds of thousands of files to both defendants and substantially completed production of the materials in its possession in the first six months of this case.   The government produced approximately 100,000 files in the first two months of the case, 400,000 files in the first three months, and 600,000 files by the fifth month of the case.   By early January 2022, less than six months since indictment, the government substantially completed the disclosure of discoverable material that was currently in its possession.   The government has turned over additional material since that time— approximately 80,000 more files—but, with the exception of fewer than 20 files, all of that material came into the government's possession after January 3, 2022.   The government expects that it will continue to acquire new discoverable materials and produce such materials to the defendants in a timely manner as this case proceeds towards trial.   Notably, the defendants have failed to identify any particular category of discoverable material that they believe the government has withheld. Nevertheless, as the parties prepare for trial, engage in motion practice, and meet-and-confer

regarding discovery, the government will of course be mindful of the continuing nature of its discovery obligations, will continue to review and re-review its holdings, and will promptly disclose any materials that, with the benefit of additional information, it concludes are discoverable.

B.       The Court Should Deny the Defendants' Request for Purported Rule 16 Material

The defendants make only one specific discovery request pursuant to Rule 16. They request "all communications between Mr. Barrack and the Trump Campaign and Administration regarding the Middle East." Mot. at 23.   This is not an appropriate request, although the government has already provided all such communications currently in its possession, custody or control.

Rule 16 of the Federal Rules of Criminal Procedure sets forth the government's principal discovery obligations.   The rule sets a limit on the categories of discovery in a federal criminal case and does not provide license for a searching review of everything the government might know or have in its possession.   See, e.g., United States v. Scully, 108 F. Supp. 3d 59, 123 (E.D.N.Y. 2015) (Rule 16 "does not entitle a criminal defendant to a broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up.") (internal citations and quotations omitted); United States v. Agurs, 427 U.S. 97, 106 (1976) (the government is under "no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor").

Here, the government has already provided all communications between Barrack and the Trump Campaign and Administration about the Middle East that are currently in its possession, custody or control, including communications that fall outside the scope of Rule 16. That the government has exceeded its discovery obligations does not make such a request appropriate.   Rule 16 does not require the disclosure of "all communications" to any of the

hundreds of persons associated with a private presidential campaign, nor to the thousands more who worked for the Trump Administration, even where it is "limited" by a request for communications related to a large geographic region of the world.   Rule 16 identifies several discrete categories of statements by a defendant that are discoverable:   the defendant's oral statements in response to interrogation by a known government agent that are to be used at trail; relevant written or recorded statements by the defendant that are in the government's possession, custody or control that are known or should be known to exist; written recordings reflecting relevant oral statement made by the defendant before or after arrest in response to interrogation by a known government agent; and the defendant's grand jury testimony related to the charged offense.   See Fed. R. Crim. P. 16(a)(1)(A) & (B).   As noted above, the government has already produced the types of communications required by the rule, including Barracks' interviews with law enforcement, Barracks' media interviews, and ██████████████████

The Motion suggests that such materials are discoverable pursuant to Rule 16(a)(1)(E), which permits discovery of items in the government's possession, custody, or control where "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."   But "material" under Rule 16 means "more than that the evidence in question bears some abstract logical relationship to the issues in the case."   United States v. Maniktala, 934 F.2d 25, 28 (2d Cir. 1991) (internal citation and quotation omitted).   It must "significantly alter the quantum of proof in [the defendants'] favor."   United States v. McGuinness, 764 F. Supp. 888, 894 (S.D.N.Y. 1991) (emphasis added).

The defendant bears of the burden of establishing materiality.   McGuinness, 764 F. Supp. at 894-95 ("[I]t is incumbent upon a defendant to make a prima facie showing of

'materiality.'") (internal citation and quotation omitted).    To carry this burden, the defendant must

do more than proffer conclusory allegations.    United States v. Persico, 447 F. Supp. 2d 213, 217

(E.D.N.Y. 2006) ("To the extent that [defendants] rely upon Rule 16(a)(1)(E)(i)'s requirement that

the government, upon motion of a defendant, disclose items 'material to preparing the defense,'

the mere claim that the items sought are 'material' is not enough."); United States v. Finnerty, 411

F. Supp. 2d 428, 431 (S.D.N.Y. 2006) ("Conclusory allegations are insufficient . . . to establish

materiality[.]").    That is, a defendant must specify what evidence he is seeking, why he expects

that the government has such evidence and what he intends to make of the information.    See

United States v. Reddy, 190 F. Supp. 2d 558, 573 (S.D.N.Y. 2002).

        The defendant's request for "all communications" about "the Middle East"

self-evidently bears only an "abstract logical relationship to the issues."    It is a classic fishing

expedition, where the defendant "intends to review all of the materials and then determine what,

if anything, supports a permissible argument."    See United States v. Loera, No. 09 CR 466

(BMC), 2017 WL 2821546, at *7 (E.D.N.Y. June 29, 2017).    Such a strategy is improper, and the

request should be denied, even if the government has already produced any such material in the

possession, custody or control of the prosecution team.    Id.    ("Rule 16 does not entitle a criminal

defendant to a broad and blind fishing expedition among [items] possessed by the Government on

the chance that something impeaching might turn up.") (quoting Scully, 108 F. Supp. 3d at 123).

II.    The Government is Not Required to Disclose 3500 Material at This Stage in the Case

        The defendants also request "all interview memoranda, related notes, and grand

jury transcripts in the possession, custody or control of the government."    Rule 16 expressly bars

this sort of request.    Rule 16(a)(2) states that "this rule does not authorize the discovery or

inspection of reports, memoranda, or other internal government documents made by an attorney

for the government or other government agent in connection with investigating or prosecuting the

case" nor "the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."   The defendant's request is effectively a request for open file discovery, which is not required.[2]   Kyles v. Whitley, 514 U.S. 419, 437 (1995) ("We have never held that the Constitution demands an open file policy"); United States v. Bagley, 473 U.S. 667, 675 (1985) ("[T]he prosecutor is not required to deliver his entire file to defense counsel ...."). While some subset of these materials may eventually constitute Jencks Act materials for witnesses at trial, the government is under no obligation to produce such material at this time.   See 18 U.S.C. § 3500.   To the extent some portion of these materials otherwise contain discoverable information under Rule 16 or the government's constitutional discovery obligations, they have been or will be disclosed.

III.   <u>The Government Has Exceeded Any Obligations it May Have With Regard to Collecting and Producing Materials Controlled by Others</u>

The defendants focus much of their Motion on potential discovery from other federal agencies.   But defendants' claims that "some of the most critical evidence will be located in various federal executive agencies" (Mot. at 3) is conclusory and speculative.   It reduces to a request to rifle through the files of a variety of federal agencies in the blind hope of coming up with something useful.   Unsurprisingly, the law does not require the government to permit wide-ranging reviews of this sort, including because these agencies are not members of the prosecution team.   Nevertheless, the government has decided as a matter of prudence and good faith to request relevant materials from a variety of federal agencies.   Indeed, earlier today, it disclosed materials

---

[2]   The defendants include in the request "any and all interviews and testimony" by several individuals "in which Mr. Barrack was discussed," but expressly say that the request is "including, but not limited to" these items, indicating that these are merely exemplary, and the actual request is without any real limitation.   See Mot. at 21.

recently received from the U.S. Department of Commerce and will disclose any additional discoverable materials that come into its possession.

A.      Other Federal Agencies Are Not Members of the Prosecution Team

The agencies identified by the defendants are not members of the prosecution team, and therefore the government has no obligation to affirmatively obtain materials from these entities.   A prosecutor's discovery obligations "extend only to material evidence . . . that is known to the prosecutor," and includes "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."   United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998).   However, this constructive knowledge "is not limitless" and "does not encompass every agency and individual within the federal government."   United States v. Meregildo, 920 F. Supp. 2d 434, 440 (S.D.N.Y. 2013).   This is because "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis."   Avellino, 136 F.3d at 255.

Thus, the duty to learn of favorable evidence is limited to those who act as part of the prosecution team.   See Meregildo, 920 F. Supp. 2d at 440 ("constructive knowledge only extends to those individuals who are 'an arm of the prosecutor' or part of the 'prosecution team.'") (citations omitted).   There is no set test for when one becomes a member of the prosecution team, but is rather a fact-specific analysis of whether and to what degree an agent or agency was involved in the investigation.   See id. at 441 (collecting cases and explaining that "investigating case agents are part of the prosecution team but agents of a separate organization or sovereign who are uninvolved in the investigation are not"); Avellino, 136 F.3d at 255-56 (discussing prior cases where the Second Circuit declined to impute knowledge about materials in the possession of law

11

enforcement agents and prosecutors uninvolved in the investigation).   Indeed, "even when agents are involved in the investigation, they are not always so integral to the prosecution team that imputation is proper."   Meregildo, 920 F. Supp. 2d at 441.

The defendants note that the government "initially took the position that it had no obligation to search for discoverable materials from [other] federal agencies."   See Mot. at 3, 21. The government took and continues to take such a position, because it is legally correct.   The defendants argue that the government has a legal obligation to obtain and review materials from other agencies[3] because "this is a national security case" and Barrack has had contact with a number of different parts of the federal government.   But a case's status as "a national security case" is not a basis under any existing precedent to impute a duty to obtain and disclose materials held by other agencies.   Rather, the boundaries of the prosecution team are based on the degree of coordination and interrelationship in the prosecution of a case, not the type of case being prosecuted.   As in their prior request for disclosure of grand jury materials based on the "politically charged" nature of the case, the defendants again suggest that the government owes them special discovery obligations not otherwise imposed in other cases merely because this is a high-profile case and the defendants had access to the highest echelons of the federal government. The argument finds no support in the law or common sense and should be rejected.

Other federal agencies, such as the Department of State, Department of Treasury, and the Office of the White House, did not participate and are not currently participating[4] in the

---

[3]     The defendant fails to specify which agencies the prosecution team purportedly has a duty to search, other than to identify "the White House, State Department, Commerce Department and federal intelligence agencies" as examples that a duty to search should be "included but not limited to."   See Mot. at 22.

[4]     As discussed below, several agencies identified by the defendants are currently conducting

prosecution of the defendants and thus no obligation to seek records has arisen, even if the prosecution team has requested such records as a matter of prudence and good faith.  See, e.g., Loera, 2017 WL 2821546, at *7 (denying request for materials in possession of U.S. Department of State ("State") and Department of Justice's Office of International Affairs ("OIA") because "State and OIA are not part of the prosecution team and therefore not subject to Rule 16").  The defendant does not make any allegations to the contrary.

Regarding the SCO, the SCO is no longer an operating entity, but the prosecution team's understanding is that it has received any materials from the SCO that relate to the defendants or this matter.   The government has reviewed those materials for discoverability, and turned over hundreds of thousands of records from the SCO.  The government believes it has completed production of any discoverable materials from the SCO, although it will continue to review those materials for ongoing compliance with Rule 16 and Brady.

B.    The Government Has Requested Relevant Materials from Other Agencies

Notwithstanding the lack of a legal duty to search the records of any and all federal agencies, the government has concluded that it would be prudent to seek discoverable information from certain federal agencies that may have such materials in their possession.   Accordingly, the government has requested White House materials from the National Archives and Records Administration and has also requested materials from the U.S. Department of State, U.S. Department of Treasury, U.S. Department of Energy, and U.S. Department of Commerce.[5]   The government has made a broad set of requests for records associated with the defendants, their

---

their own review for potentially relevant records at the request of the prosecution team, but this does not constitute participation in the investigation or prosecution of the defendants.

[5]    As previously discussed, the prosecution team recently received and produced to defense counsel the responsive documents obtained from the U.S. Department of Commerce.

coconspirators, and other individuals or entities the evidence indicates were involved in this matter. The government will promptly review any items that it receives from these agencies and will disclose any discoverable material on a rolling basis to the defendants.

With regard to the U.S. Intelligence Community (the "USIC") , the government has made a series of prudential search requests of certain agencies that may have potentially relevant information.   Any such materials are likely to be classified, and therefore they are governed by the Classified Information Procedures Act ("CIPA").   As the government explained in its motion pursuant to Section 2 of CIPA (the "CIPA 2 Motion"), the handling of any potentially discoverable information will be done through the CIPA process, which includes several procedural mechanisms designed to protect the government's compelling interest in protecting the secrecy of information important to national security.   See CIPA 2 Motion (D.E. # 54).   Those mechanisms include the filing of a motion pursuant to Section 4 of CIPA (the "CIPA 4 Motion"), which permits the government to submit an in camera and ex parte motion to the Court regarding the treatment of potentially discoverable classified information.   See id. at 6-10.   The Court has ordered that the government's CIPA 4 Motion be filed by no later than June 3, 2022.   Accordingly, the defendants' requests related to the USIC should be denied and the Court should proceed with the CIPA process as previously scheduled.

IV.      The Government Has Met Its Constitutional Discovery Obligations

The government understands, has complied with, and will continue to comply with its obligations under Brady and its progeny.   The defendants' arguments to the contrary are meritless.

A.      Legal Standard

The government has a "constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment."   United States v. Coppa, 267

F.3d 132, 135 (2d Cir. 2001) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)).   Favorable

evidence includes not only evidence that tends to exculpate a defendant, but evidence that is useful

for impeaching a witness.   Id. (citing Giglio v. United States, 405 U.S. 150, 154 (1972)).   "[A]

prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist

that an outcome of a trial in which the evidence had been disclosed would have been different."

Coppa, 267 F.3d at 142.   "The rationale underlying Brady is not to supply a defendant with all the

evidence in the [g]overnment's possession which might conceivably assist the preparation of his

defense, but to assure that the defendant will not be denied access to exculpatory evidence only

known to the [g]overnment."   United States v. LeRoy, 687 F.2d 610, 619 (2d Cir. 1982).

Notably, the government's Brady obligation does not extend to "investigative files merely because

they contain information which could assist the defendant."   Reddy, 190 F. Supp. 2d at 575

(citations omitted).

B.     The Government's Approach to *Brady* Disclosures is Appropriate

The defendants make much of the fact that the government has indicated that it

disclosed certain information out of an abundance of caution.   See Mot. at 1, 13.   This concern

about the government's characterization of certain disclosures reflects either a fundamental

misunderstanding of the government's discovery obligations or an attempt to weaponize the

government's conservative approach to demand materials even further outside the scope of proper

discovery.

Brady does not require the disclosure of all evidence that might be favorable to a

defendant.   See Coppa, 267 F.3d at 135 ("Brady does not . . . require the prosecution to disclose

all exculpatory and impeachment material; it need disclose only material that, if suppressed, would

deprive the defendant of a fair trial.") (internal citations and quotations omitted).   This means "a

reasonable probability that the government's suppression affected the outcome of the case . . . or

15

where the suppressed evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."   Id.; see also Bagley, 473 U.S. at 682 ("The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.   A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.").   However, because materiality cannot be determined with certainty until after a trial, prosecutors have been advised to err on the side of disclosure.   See, e.g., Agurs, 427 U.S. at 108 ("the prudent prosecutor will resolve doubtful questions in favor of disclosure").

Consistent with this guidance, the Department of Justice has advised that because "it is sometimes difficult to assess the materiality of evidence before trial," federal prosecutors should "take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence."   Justice Manual ("JM") § 9-5.001(B)(1).   Providing materials arguably not expressly covered by Brady and disclosed only out of an abundance of caution is therefore in line with Department of Justice policy and a common practice by this and other offices, as reflected in similar disclosures in other cases.[6]

The defendants claim that "the government has never explained *what* is the caution it is talking about," (Mot at. 13) (emphasis in original), but the government provided just such an explanation when it was requested by Barrack a month ago.   See Ex. 9 to Mot. (explaining that

---

[6]      See, e.g., Opp. to Pretrial Motions, United States v. Persico, No. 10-CR-147 (SLT) (D.E. # 426 at 60 n.17) (disclosure of police homicide files "in an abundance of caution"); Mem. of Law, United States v. Basciano, No. 05-CR-060 (NGG) (D.E. # 463 at 16) (disclosure that investigation for potential discovery was not required but "the government did so and made appropriate disclosures as a result and in an abundance of caution"); see also United States v. Apostolopuos, No. 04 CR 1220 (RCC), 2005 WL 2482525, at *5 (S.D.N.Y. 2005) (denying motion to compel discovery as moot because "[w]hile the Government does not believe this information is Brady or Giglio material, 'in an abundance of caution' the Government has agreed to supply this information.").

"[t]he government produces materials that fall well short of [the materiality] standard on a forward-looking basis 'in an abundance of caution,' to use the language that often appears in letters accompanying such productions.").   The defendants' professed ignorance about the reason for the government's use of this phrase is at best perplexing.   For the avoidance of doubt, the "government's approach to <u>Brady</u>" (Mot. at 2) is to disclose materials out of an abundance of caution that might be exculpatory, but which may or may not be material under existing precedent. The government will continue to follow this approach because it is recommended by the Supreme Court and Department of Justice policy.

The defendants' real issue is that the government does not agree with the defendants about the relative significance of this information.   The government submits that the information it has provided out of an abundance of caution, while perhaps somewhat helpful to the defense, falls well short of the materiality standard set forth in the relevant case law.   The government recognizes that the defense may have a different view as to the materiality of a particular document. This is one of the reasons that the government takes a broad view of discovery.   The dispute about semantics – whether the government describes information as being disclosed in an abundance of caution or not – is academic and irrelevant.   The government has disclosed the information at issue and will continue to disclose similar information notwithstanding a difference of views on the question of materiality.

C.     <u>The Government Has Made Adequate and Timely Disclosures</u>

Consistent with the conservative approach described above, the government has made multiple disclosures to the defendants, in an abundance of caution, pursuant to its obligations under <u>Brady</u> and its progeny, as the defendants concede in their motion.   <u>See</u> Mot. at 12-13. Despite these examples of the government complying with, if not going beyond, its discovery obligations, the defendants claim, somewhat inconsistently, that there is a "concern that the

17

government is taking an inappropriately restrictive view of the scope and application of <u>Brady</u>, creating the risk that exculpatory evidence may not be disclosed at all."   <u>See</u> Mot. at 1.   Such speculation is insufficient to satisfy the defendants' burden on this motion.   <u>See, e.g.</u>, <u>United States v. Upton</u>, 856 F. Supp. 727, 746 (E.D.N.Y. 1994) ("As a matter of law, mere speculation by a defendant that the government has not fulfilled its obligations under <u>Brady</u> [] is not enough to establish that the government has, in fact, failed to honor its discovery obligations.").   Moreover, as their own examples demonstrate, the government has produced the documents and information that the defendants claim they need in accordance with the government's obligations.   <u>See</u> <u>Coppa</u>, 267 F.3d at 140 ("The government [] has a so-called '<u>Brady</u> obligation' only where <u>non-disclosure</u> of a particular piece of evidence would deprive a defendant of a fair trial.") (emphasis added). The fact that the government has chosen to voluntarily disclose this information to the defense does not then open the door to additional information sought by the defendant that is not required to be disclosed.

The Motion suggests that there is something improper about the timing of the government's disclosures, some of which (but not all) occurred after discussions with the defendants about their theories of the case.   As an initial matter, it should be noted that the government made several such disclosures prior to these discussions, evidencing its ongoing good faith efforts to comply with its disclosure obligations.   Second, as noted above, the timing of subsequent disclosures is further evidence of the government's efforts to meets it obligations:   the government listened to the defendants, reviewed its evidence in light of their positions, and disclosed materials to the defendants, even where those disclosures are not necessarily required by law.   Third, the defendants cannot be heard to complain about the timing of <u>Brady</u> disclosures that have been made many months before trial.   "<u>Brady</u> material need not be disclosed in response

to a demand by a defendant." United States v. Elder, No. 18 CR 92 (WFK), 2021 WL 4129153, at *6 (E.D.N.Y. 2021) (internal citations omitted); see also United States v. Barret, 824 F. Supp. 2d 419, 455 (E.D.N.Y. 2011) (same).   Rather, "Brady only requires that exculpatory material be produced sufficiently in advance of trial so that the defense has the opportunity to make effective use of that information." United States v. Persing, No. 06 CR 815 (BMC), 2008 WL 11344620, at *4 (E.D.N.Y. May 5, 2008) (citation omitted).   Indeed, courts have not considered exculpatory evidence improperly "suppressed" within the meaning of Brady even when the government has disclosed the evidence immediately before or during trial.   See United States v. Douglas, 525 F.3d 225, 245-46 (2d Cir. 2008); see also United States v. Barrera, 950 F. Supp. 2d 461, 476 (E.D.N.Y. 2013) ("'[I]t is the government's responsibility to determine what evidence is material and when such evidence should be disclosed in time for its effective use.'") (internal quotation and citation omitted).   The defendants have not articulated any reason why they are unable to make effective use of the information that has been provided, particularly since several of the disclosures, including those specifically cited by Barrack in the Motion, involves individuals who are known personally by the defendants.

The defendants' complaints about the manner of disclosure are also without merit. The Second Circuit has made clear that disclosure of the names of potential exculpatory witnesses fully satisfies the government's Brady obligations.   See United States v. Zagari, 111 F.3d 307, 320 (2d Cir. 1997); Reddy, 190 F. Supp. 2d at 575 ("In fulfilling its obligations under Brady, the [g]overnment may direct the [d]efendants' attention to any witnesses who may have material exculpatory evidence").   When, as here, the government "has also described the nature of the exculpatory information possessed by each witness," the government has "further assist[ed] [the] defendant's ability to make 'effective use' of it at trial." United States v. Mavashev, No. 08-CR-

902 (DLI) (MDG), 2010 WL 670083, at *3 (E.D.N.Y. Feb. 23, 2010) (finding that the government had satisfied its <u>Brady</u> obligations when it disclosed the identities of witnesses with potentially exculpatory information and one- to two-sentence summaries of that information). The government's disclosures, which identified the relevant witness with potential exculpatory information and the substance of that information, fully comply with <u>Brady</u>.[7]

  D. <u>The Defendants' Requests Are Overbroad and Without Merit</u>

    Notably, the defendants' arguments about <u>Brady</u> are based not on independently discovered evidence that may suggest some additional materials the government has failed to disclose, but instead on information the government has disclosed. It is therefore unsurprising that the defendants' specific requests are overbroad and without merit.

    1. <u>The Defendant's Requests Related to Section 951 Are Improper</u>

    The defendants' primary request is that the government disclose any materials that may show the "opposite" of proof that the defendants violated Section 951, and any materials that show the defendants "actions were inconsistent" with a violation of Section 951. <u>See</u> Mot. at 8. However, the government is only obligated to disclose favorable evidence that is material to guilt or innocence and the Second Circuit has held that a district court exceeds its authority if it orders the relief requested by the defendant here—the immediate disclosure of all exculpatory evidence, no matter how marginal, slight or immaterial it is to the case. <u>See</u> <u>Coppa</u>, 267 F.3d at 146 (vacating district court's order "requiring the immediate disclosure of all exculpatory and impeachment evidence upon defendants' request" as misinterpretation of <u>Brady</u> and its progeny). Like the defendants' request for all communications about the Middle East, a request for all

---

[7] It is revealing that the precedent the defendants cite to, in arguing that this Court should not follow clear Second Circuit law, is a single minute entry of a discovery proceeding, and related hearing transcript, before a U.S. Magistrate Judge from the U.S. District Court for the District of Massachusetts, which is devoid of any citation to legal authority on this issue. <u>See</u> Mot. at 15.

"inconsistent" evidence is effectively an improper request for open file discovery and a fishing expedition.[8]

The defendants' additional requests (see Mot. at 9-10) are likewise without merit, though the government nevertheless has provided materials responsive to some of them.   Many rest upon a flawed understanding of the elements of a Section 951 offense.   For example, the defendants misconstrue the nature of the alleged agency relationship.   Courts have repeatedly held that, for purposes of criminal liability under Section 951, an "agent" need not have as formal or extended a relationship with the principal as that between employer and employee.   See Opp. to Mot. to Dismiss. at 23-25 (D.E. # 80) (collecting cases).   Section 951 criminalizes any agreement to act subject to the direction or control of a foreign government without notice to the Attorney General.   Thus any act undertaken by mutual agreement at the direction or control of a foreign government, without proper notice, falls within the reach of the statute, even if the agent declines to act at the principal's direction on some other occasion.   Accordingly, the defendants' requests for information suggesting that they sometimes acted against the interests of the UAE or did not act to advance certain UAE interests (id. ¶¶ 4, 5) seek information immaterial to the defendants' guilt based on the numerous other times in which they agreed to act at the direction or control of the UAE.   Nonetheless, the government has disclosed, and will continue to disclose, such materials based on their potential relevance to articulated defense theories.

---

[8]     Indeed, some of the defendants' specific requests make clear the absurdity of this request. For example, evidence reflecting that Barrack was briefly considered by the Trump Administration for an ambassadorial position in Latin America is hardly exculpatory or material, yet Barrack asserts that such evidence nonetheless falls under the umbrella of Brady.   (Mot. at 9 ¶ 10). Notably, the prosecution team has already disclosed all the materials currently in its holdings related to this potential appointment, including Barrack's application materials and background investigation materials, despite the fact that these materials fall well short of Brady.

Some of the defendants' other requests reflect a similar misunderstanding about the "notice" element of Section 951.   The defendants argue that evidence of Barrack's disclosure of his UAE connections to members of the Trump Campaign are exculpatory.   But Section 951 requires notice to the Attorney General, not to private citizens affiliated with the Trump Campaign. See 18 U.S.C. § 951(a).   This makes sense, since the Attorney General is the official charged with enforcing the law and the senior official in charge of the FBI, the agency responsible for investigating and responding to unlawful foreign government activity inside the United States. By contrast, members of the Trump Campaign have no such responsibilities with respect to the internal national security of the United States and had no authority to sanction or bless the defendants' illegal conduct.   They are not government officials, and even if they were, they are not the Attorney General or a representative thereof.   Accordingly, because the requested information is not materially relevant to the elements of a Section 951 offense, it is not exculpatory. Nonetheless, the government has disclosed such information to the defense and will continue to do so in an abundance of caution.

Many of the defendants' other requests do not seek specific categories of information, but instead articulate legal arguments the defendants presumably anticipate raising. The vast majority of these items are not exculpatory under any plausible defense theory.   For example, the defendants request "[a]ll materials showing that the UAE official alleged in the Indictment to have had the majority of the contacts with Mr. Barrack (Emirati Official 4) was a low-level government protocol employee responsible for meeting logistics and collecting license plate information for events, as well as a part-time student."   See Mot at 9 ¶ 8.   This is a

characterization of the relative importance of a UAE official, not a serious request for information.[9]

Indeed, even if this characterization were true (it is not), it would be no defense to the crime to

argue that Barack was an agent of a "low-level" foreign government official.   Similarly, the

defendants request information showing that the taskings Barrack carried out for the UAE "are

common requests and were made to other members of the transition or administration."   Id. at 9

¶ 12.   This too is an argument, not an actual discovery request, and an irrelevant argument at that.

Whether or not other individuals agreed to act at the direction or control of the UAE, or also met

with U.S. officials on behalf of the UAE, does not make Barrack more or less guilty in agreeing to

act as an unlawful agent of a foreign government.   The request for materials showing that

Barrack's actions on behalf of the UAE were "trivial or unremarkable" (id. at 10 ¶ 13) is similarly

improper.   The entire purpose of Section 951's notification requirement is that the Attorney

General (not Barrack, Grimes, a member of the Trump Campaign, or any other person) is best

positioned to decide whether particular acts are "trivial and unremarkable" or sinister and a threat

to the United States.

      In any event, much of what is requested has been turned over already and will be

turned over as the prosecution team acquires new materials.   For example, the government has

turned over information and materials related to the defendants' discussions with members of the

Trump Campaign and the Trump Administration, including his communications with federal

investigators (see id. 9 ¶¶ 1-3), Barrack's activities in connection with the conflict between the

UAE and Qatar (see id. 9 ¶ 4), Barrack's communications with UAE officials and response to

directions by UAE officials and their intermediary, Rashid Al Malik (see id. 9 ¶¶ 5-8, 12-13),

---

[9]    Ironically, in support of their argument that the government has not disclosed materials related to Emirati Official 4's relative position, the defendants cite to documents that were disclosed by the government.

Barrack's compensation for acting as a UAE agent (see id. at 9 ¶ 9), Barrack's recruitment for a government position in Latin America (see id. at 9 ¶ 10), and records reflecting Barrack's expressed views on the Middle East (see id. at 9 ¶ 11).

Given that much, if not all, of the information the defendants request is already contained in the discovery that has been produced, the requests appear instead to be a demand that the government identify particular material within already-produced discovery.   Nothing of the sort is required.   "While the Supreme Court in Brady held that the Government may not properly conceal exculpatory evidence from a defendant, it does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case."   United States v. Weaver, 992 F. Supp. 2d 152, 156 (E.D.N.Y. 2014) (internal quotation marks and citations omitted); see also United States v. Kirk Tang Yuk, 885 F.3d 57, 86 (2d Cir. 2018) (rejecting the suggestion that "the government should bear the full burden of reviewing and characterizing each document within a voluminous evidentiary record").

2.     Barrack's Requests Related to False Statements Are Improper

Barrack's requests related to the false statement charges should also be denied. First, as discussed above, the government disclosed all of the pertinent information about the 2019 interview to Barrack at the outset of the case, including a copy of the FD-302 report and the handwritten notes from the interview.   The government is unaware of any additional drafts of the FD-302 report, but will disclose any draft reports should such materials be located.

The Motion also omits several facts that are relevant to the scope of discovery.   For example, the Motion fails to mention that the interview at issue was conducted in the presence of Barrack's counsel (which included multiple representatives of the law firm), that it was held at counsel's law firm office, and that counsel also took contemporaneous notes of the interview. "Brady does not require the government to turn over exculpatory evidence if the defendant knew

24

or should have known the essential facts permitting him to take advantage of any exculpatory evidence." United States v. Grossman, 843 F.2d 78, 85 (2d Cir.1988) (citations omitted). Logically, since Barrack and his counsel were present, and the government provided complete copies of the handwritten interview notes and report of the interview, Barrack already has "the essential facts" related to the material false statements offenses.   And despite being present for the interviews himself, and having several attorneys taking notes themselves, Barrack does not identify a single specific fact or inaccuracy that the government is somehow failing to disclose. The only example he gives is an alleged inconsistency between the handwritten notes and the FD-302 report, which of course he knows about because he received both documents in discovery and will surely explore further at trial on cross-examination.

Barrack also requests "the identity of the agent or agents who took contemporaneous notes of the interview and who drafted the interview memorandum."   Mot. at 25.   Although not required,[10] the government has disclosed to Barrack the identities of all government officials present at Barrack's interview.   It is puzzling that he now argues that the identity of the author of the report is somehow Brady material.

At best, the materials Barrack requests may constitute Giglio information, evidence that "could be used to impeach a key government witness."   See Coppa, 267 F.3d at 140 (quoting Giglio, 405 U.S. at 151).   Barrack implicitly concedes this point because he claims it "goes directly to the accuracy and credibility of the record and the agent's recollection of the alleged false statements."   See Mot. at 3.   To the extent the information sought exists and is properly

---

[10]     See, e.g., United States v. Rivera, No. 09-CR-619 (SJF), 2010 WL 1438787, at *4 (E.D.N.Y. Apr. 7, 2010) (noting that "the prosecution has no general duty to disclose the identity of its witnesses who will testify against defendants in advance of trial").

considered Giglio material, which the government does not concede, it will disclose such material

at the time that it discloses § 3500 material before trial.   See United States v. Morgan, 690 F.

Supp. 2d 274, 286 (S.D.N.Y. 2010) ("[T]he Government is not required to produce Giglio material

until it produces '3500 material' pursuant to the Jencks Act, so long as the Government provides

the Giglio material in time for its effective use at trial.") (citations omitted); Persing, 2008 WL

11344620, at *4 (explaining that "[d]efendants in criminal cases generally have no pretrial right to

Giglio material" and that the government's agreement "to adhere to the customary practice in this

district and produce Giglio material prior to the testimony of its witnesses" was sufficient).[11]

V.      The Government Will Continue to Comply with its Discovery Obligations

As the forgoing reflects, the government has made substantial and timely Brady

disclosures.   The government understands its obligations to disclose discovery material and

information to the defendants under applicable law, including Brady and its progeny, and has

complied and will continue to comply with its obligations.   The government's acknowledgment

of its awareness of such obligations is, in and of itself, sufficient for the Court to deny a motion to

compel discovery.   See, e.g., United States v. Shkreli, No. 15-CR-637 (KAM), 2016 WL

8711065, at *3 (E.D.N.Y. Dec. 16, 2016) ("[T]he court accepts the Government's representation

that it is aware of its Brady obligations and that it will continue to comply with its Brady

obligations, and thus Mr. Greebel's request for the immediate disclosure of Brady materials is

denied."); United States v. Pugh, No. 15-CR-116 (NGG), 2015 WL 9450598, at *30 (E.D.N.Y.

Dec. 21, 2015) ("In light of the Government's representation that it recognizes and will comply

---

[11]     The case cited by the defendant, United States v. Weaver, does not support his argument.
There, the court ordered the government to produce favorable information from rough notes that
was not contained in the formal reports, but expressly declined to order production of "all notes
from interviews with government trial witnesses."   See 992 F. Supp. 2d at 159.

with its obligations under Brady and Giglio, this portion of Pugh's motion [requesting production of Brady and Giglio materials] is DENIED without prejudice").

Accordingly, in light of these representations, and the evidence of the government's ongoing, good faith compliance with its discovery obligations, the Court should deny the defendants' requests.   See United States v. Numisgroup Int'l Corp., 128 F. Supp. 2d 136, 150 (E.D.N.Y. 2001) ("In the absence of a particularized showing by the defense that certain materials covered by Brady are being withheld, the Court accepts the government's good faith assertions as sufficient.").

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny

the Defendants' motions to dismiss the Indictment.

Dated:          Brooklyn, New York
                April 5, 2022

                                    BREON PEACE
                                    United States Attorney
                                    Eastern District of New York

                        By:     /s/
                                    Ryan C. Harris
                                    Samuel P. Nitze
                                    Hiral D. Mehta
                                    Craig R. Heeren
                                    Assistant U.S. Attorneys
                                    (718) 254-7000

                                    MATTHEW G. OLSEN
                                    Assistant Attorney General
                                    Department of Justice
                                    National Security Division

                        By:     /s/ Matthew J. McKenzie
                                    Matthew J. McKenzie
                                    Trial Attorney