RCH/SPN/HDM/CRH/MJM
F. #2018R01309

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

RASHID SULTAN RASHID AL MALIK
ALSHAHHI,
       also known as "Rashid Al Malik"
       and "Rashid Al-Malik,"
THOMAS JOSEPH BARRACK and
MATTHEW GRIMES,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

No. 21-CR-371 (S-1) (BMC)

THE GOVERNMENT'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO SEVER

BREON PEACE
United States Attorney
Eastern District of New York

Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant United States Attorneys

Matthew J. McKenzie
Trial Attorney
National Security Division
(Of Counsel)

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT BACKGROUND ................................................................................................... 2

ARGUMENT ............................................................................................................................... 3

   I.      Legal Standard ............................................................................................................. 3

   II.     Discussion .................................................................................................................... 5

      A.   A Joint Trial is Warranted and Favored ................................................................ 5

      B.   Alleged "Spillover" Prejudice Does Not Warrant Severance ............................... 9

      C.   The Defendants Do Not Have "Mutually Antagonistic" Defenses
          That Warrant Severance ..................................................................................... 13

      D.   Any Purported <u>Bruton</u> Issue Can Be Remedied Without Severance ..................... 17

      E.   Examination of Colony Witnesses Does Not Warrant Severance ........................ 20

   CONCLUSION ................................................................................................................ 23

i

<u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Crawford v. Washington</u>
  541 U.S. 36 (2004)......................................................................................................... 19

<u>Richardson v. Marsh</u>
  481 U.S. 200 (1987)....................................................................................................... 17

<u>United States v. Abakporo</u>
  No. 12-CR-340 (SAS), 2013 WL 6188260 (S.D.N.Y. Nov. 25, 2013)................................... 14

<u>United States v. Alegria</u>
  761 F. Supp. 308 (S.D.N.Y. 1991) ...................................................................................... 9

<u>United States v. Attanasio</u>
  870 F.2d 809 (2d Cir. 1989) ............................................................................................... 5

<u>United States v. Bailey</u>
  399 F. Supp. 526 (M.D. Fla. 1975)..................................................................................... 19

<u>United States v. Barret</u>
  824 F. Supp. 2d 419 (E.D.N.Y. 2011) .............................................................................. 3, 5

<u>United States v. Bellomo</u>
  954 F. Supp. 630 (S.D.N.Y. 1997) ...................................................................................... 4

<u>United States v. Branker</u>
  395 F.3d 881 (2d Cir. 1968) ............................................................................................. 13

<u>United States v. Brown</u>
  374 F. App'x 208 (2d Cir. 2010) .................................................................................. 17, 20

<u>United States v. Bruton</u>
  391 U.S. 123 (1968)................................................................................................ 17, 19, 20

<u>United States v. Cardascia</u>
  951 F.2d 474 (2d Cir. 1991) ......................................................................................... 4, 13

<u>United States v. Carson</u>
  702 F.2d 351 (2d Cir. 1983) ............................................................................................. 11

<u>United States v. Casamento</u>
  887 F.2d 1141 (2d Cir. 1989) ..................................................................................... 4, 5, 13

<u>United States v. Copeland</u>
  336 F. Supp. 2d 223 (E.D.N.Y. 2004) ............................................................................... 14

<u>United States v. DeVillo</u>
  983 F.2d 1185 (2d Cir. 1993) ........................................................................................... 18

<u>United States v. DiNome</u>
  954 F.2d 839 (2d Cir. 1992) ............................................................................................. 12

United States v. El-Saadi
   549 F. Supp. 3d 148 (D.D.C. 2021) ........................................................................ 13

United States v. Evangelista
   122 F.3d 112 (2d Cir. 1997) ................................................................................... 21

United States v. Feyrer
   333 F.3d 110 (2d Cir. 2003) ..................................................................................... 4

United States v. Jass
   569 F.3d 47 (2d Cir. 2009) ..................................................................................... 18

United States v. Jimenez
   824 F. Supp. 351 (S.D.N.Y. 1993) ........................................................................... 5

United States v. Lanza
   790 F.2d 1015 (2d Cir. 1986) ................................................................................... 4

United States v. Lindauer
   No. S2 03 CR 807 (MBM), 2004 WL 2813168 (S.D.N.Y. Dec. 6, 2004) .............. 12

United States v. Locascio
   357 F. Supp. 2d 536 (E.D.N.Y. 2004) .................................................................... 13

United States v. Locascio
   6 F.3d 924 (2d Cir. 1993) ....................................................................................... 11

United States v. Mardian
   546 F.2d 973 (D.C. Cir. 1976) ............................................................................... 13

United States v. Nadeem
   No. 13-CR-424 (BMC), 2014 WL 3563407 (E.D.N.Y. July 18, 2014) ........ 8, 15, 20

United States v. Nordlicht
   No. 16-CR-640 (BMC), 2018 WL 1796542 (E.D.N.Y. Apr. 16, 2018)................... 16

United States v. O'Connor
   650 F.3d 839 (2d Cir. 2011) ................................................................................... 12

United States v. Page
   657 F.3d 126 (2d Cir. 2011) ..................................................................................... 4

United States v. Pike
   292 F. App'x 108 (2d Cir. 2008) ............................................................................ 19

United States v. Quinones
   417 F. App'x 65 (2d Cir. 2011) .............................................................................. 22

United States v. Ray
   No. 20-CR-110 (LJL), 2021 WL 5493839 (S.D.N.Y. Nov. 22, 2021)................... 21

United States v. Rosa
   11 F.3d 315 (2d Cir. 1993) ....................................................................................... 9

United States v. Rucker
   32 F. Supp. 2d 545 (E.D.N.Y. 1999) ........................................................................ 3

iii

United States v. Scott
    637 F. App'x 10 (2d Cir. 2015) ............................................................ 14

United States v. Serpoosh
    919 F.2d 835 (2d Cir. 1990) ............................................................... 13

United States v. Shkreli
    260 F. Supp. 3d 247 (E.D.N.Y. 2017) ........................................ 11, 15, 16

United States v. Spicer
    No. 10-CR-657 (SJ), 2013 WL 871952 (E.D.N.Y. Mar. 7, 2013) ........................... 9

United States v. Stewart
    433 F.3d 273 (2d Cir. 2006) ............................................................... 19

United States v. Torres
    901 F.2d 205 (2d Cir. 1990) ............................................................... 9

United States v. Turoff
    853 F.2d 1037 (2d Cir. 1988) .............................................................. 6

United States v. Tutino
    883 F.2d 1125 (2d Cir. 1989) ............................................................. 18

United States v. Van Allen
    524 F.3d 814 (7th Cir. 2008) ............................................................. 20

United States v. Ventura
    724 F.2d 305 (2d Cir. 1983) ............................................................... 4

United States v. Webb
    No. 15-CR-252 (PKC), 2020 WL 6393012 (E.D.N.Y. Nov. 1, 2020) ................... 4, 12, 17

United States v. Williams
    936 F.2d 698 (2d Cir. 1991) .............................................................. 18

United States v. Yousef
    327 F.3d 56 (2d Cir. 2003) ............................................................... 14

Zafiro v. United States
    506 U.S. 534 (1993) ................................................................... passim

**Statutes**

18 U.S.C. § 951 ............................................................................ 2

**Rules**

Fed. R. Crim. P. 14 ........................................................................ 4

Fed. R. Evid. 801(d)(2)(E) ............................................................ 18, 19

**Treatises**

L. Sand, et al., Modern Federal Jury Instructions ......................................... 20

PRELIMINARY STATEMENT

The government writes in response to the defendants' motion to sever.   <u>See</u> Motion to Sever, Docket Entry No. ("D.E. #") 112; Letter in Regard to Joinder of Motion, D.E. # 115 (collectively, the "Motion" or "Mot.").   Defendant Matthew Grimes ("Grimes") moves for severance on the grounds that his right to a fair trial would be undermined by "spillover bias," the possibility of "competing trial strategies and defense," the risk of "<u>Bruton</u> confrontation issues" and complications arising from the testimony of certain Colony Capital ("Colony")[1] witnesses. Defendant Thomas J. Barrack ("Barrack") joins the motion without raising any further arguments. <u>Id.</u>

The Motion is meritless.   This case, and the upcoming trial, involves a single criminal scheme by the defendants to act as illegal agents of the United Arab Emirates ("UAE") government.   Each defendant played a critical and complementary role in executing this scheme. Establishing each defendant's guilt necessarily will involve proof of the other defendant's conduct and of the defendants' collective coordination.   Moreover, the same evidence establishing the participation of both defendants in the aforementioned scheme will also constitute core evidence of Barrack's obstruction of justice and material false statements, by which Barrack sought to conceal his participation in this very scheme.   Nearly all of the evidence in this case is admissible against both defendants.   To the extent the government offers evidence admissible only against one defendant, any risks related to confrontation rights under the Sixth Amendment or undue prejudice can be addressed, as warranted, through "<u>Bruton</u>-ization" of statements and appropriate limiting instructions.   The defendants do not identify the correct standard for antagonistic defenses, let alone meet the high showing needed for severance based on such a concern.   The

---

[1] The government understands Colony to include its successors in interest as well.

1

defendants also fail adequately to explain how examination of certain witnesses could possibly merit severance or cite to a single case supporting severance on that basis.

Accordingly, and for the reasons set forth in greater detail below, the Court should deny the Motion.

RELEVANT BACKGROUND

Barrack, Grimes and Rashid Al Malik ("Al Malik") each acted as an agent of the UAE without prior notice to the Attorney General, in violation of Title 18, United States Code, Section 951 ("Section 951"), conspired with one another to so act, and aided and abetted one another in so acting.   Thereafter, Barrack sought to obstruct justice by making multiple material false statements about the aforementioned conduct to Federal Bureau of Investigation ("FBI") special agents during an interview.

Specifically, Barrack and Grimes, often working through Al Malik, made contact with senior UAE national security officials and, at their direction, agreed to influence public opinion and the foreign policy positions of the Trump Campaign, relay non-public information about the foreign policy positions and decisions of the Trump Campaign, develop a backchannel line of communication to the Trump Campaign on behalf of the UAE government and design plans to increase the UAE's political influence and promote its foreign policy preferences.   The defendants' work for the UAE continued through the inauguration of President Trump and into the early years of the Trump Administration.   Their work included additional efforts to push UAE-favored policy positions, elevate UAE-favored individuals for positions in the administration, disclose non-public information about Trump Administration appointments, actions and internal deliberations and arrange meetings for UAE officials and Kingdom of Saudi Arabia ("KSA") officials who were closely aligned with the UAE.

2

Each of the three defendants played an important role in this criminal conspiracy. Al Malik operated as an intermediary and asset of the UAE government and its national security apparatus.  Senior UAE leadership passed demands for information and taskings through Al Malik to Barrack and Grimes, who in turn executed those directions, secured and passed back sensitive U.S. government-related information and disseminated UAE-crafted propaganda into the U.S. political discourse.  Barrack, a wealthy businessman, long-time friend of President Trump and former U.S. government official, was ideally placed to carry out the directives of the UAE. The UAE's taskings were substantial, numerous and sent regularly (though not exclusively) through Al Malik over the course of several years.  Barrack relied on Grimes, a highly-educated and sophisticated young businessman, to help manage and execute the array of directions received from the UAE.  Grimes was such a trusted lieutenant of Barrack that Grimes, inter alia, communicated directly with Al Malik outside of Barrack's presence, initiated and drafted substantive proposals designed to advance UAE interests in the United States, passed proposals directly to Al Malik for UAE government approval and took requested actions himself when the UAE sent taskings through Al Malik.

<u>ARGUMENT</u>

I.    <u>Legal Standard</u>

There is a strong preference in the federal system for joint trials of defendants who are indicted together, as joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'"  <u>Zafiro v. United States</u>, 506 U.S. 534, 537 (1993). Joint trials also "limit inconveniences to witnesses, avoid delays in bringing defendants to trial and permit the entire story to be presented to a single jury."  <u>United States v. Barret</u>, 824 F. Supp. 2d 419, 432 (E.D.N.Y. 2011) (quoting <u>United States v. Rucker</u>, 32 F. Supp. 2d 545, 547 (E.D.N.Y. 1999)).

Thus, a properly joined defendant seeking severance under Federal Rule of Criminal Procedure 14 has the "extremely difficult burden of proving not merely that he would be prejudiced by a joint trial, but that the prejudice would be so great as to deprive him of his right to a fair trial." United States v. Bellomo, 954 F. Supp. 630, 649 (S.D.N.Y. 1997) (quoting United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989)) (internal quotation marks omitted). Severance should be granted only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 537-39; see also United States v. Page, 657 F.3d 126, 129 (2d Cir. 2011) ("[T]he defendant [must] demonstrate[] that the failure to sever [would] cause[] him substantial prejudice in the form of a miscarriage of justice.")). Even where the defendant shows substantial prejudice, "'less drastic measures' than severance, 'such as limiting instructions, often will suffice to cure any risk of prejudice.'" United States v. Webb, No. 15-CR-252 (PKC), 2020 WL 6393012, at *4 (E.D.N.Y. Nov. 1, 2020) (quoting Zafiro, 506 U.S. at 539); see also United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003) (same).

The Second Circuit has repeatedly made clear that the defendant's burden is a heavy one. See, e.g., United States v. Cardascia, 951 F.2d 474, 482 (2d Cir. 1991) ("The defendant must establish prejudice so great as to deny him a fair trial."); United States v. Ventura, 724 F.2d 305, 312 (2d Cir. 1983) ("We have held repeatedly that, absent a showing of substantial prejudice, defendants who are jointly indicted should be jointly tried."). Even if such a showing is made, it must be balanced against other interests: the defendant must show that "the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." United States v. Lanza, 790 F.2d 1015, 1019 (2d Cir. 1986) (internal quotation marks omitted). Such a showing is difficult because the "risks of prejudice attendant in

4

a joint trial are presumptively outweighed by the conservation of time, money, and scarce judicial resources that a joint trial permits."   United States v. Jimenez, 824 F. Supp. 351, 366 (S.D.N.Y. 1993).   The decision whether to grant a motion for severance is committed to the sound discretion of the trial judge and will not be disturbed on appeal absent a showing that a defendant was substantially prejudiced by a joint trial.   See Casamento, 887 F.2d at 1149.

II.      Discussion

   A.      A Joint Trial is Warranted and Favored

         As a threshold matter, a joint trial of Barrack and Grimes would promote "efficiency," "limit inconveniences to witnesses," "avoid delays in bringing defendants to trial," and "permit the entire story to be presented to a single jury."   Zafiro, 506 U.S. at 537; Rucker, 32 F. Supp. 2d at 547.   This is a two-defendant case, not a sprawling trial involving numerous defendants of varying roles and culpability.   See Barret, 824 F. Supp. 2d at 435 (denying severance in case involving eight defendants in part because it "does not fall within the ambit of the Second Circuit's warnings against "mega-trials") (citing Casamento, 887 F.2d at 1151).   The charges are premised on a single criminal scheme, consisting of one substantive violation of Section 951 by all defendants and a criminal conspiracy to violate that same statute involving those same defendants.   The additional charges against Barrack relate to Barrack's efforts to conceal his involvement in the aforementioned scheme during an interview with the FBI.   The charges arising from Barrack's false statements thus directly relate to, and constitute evidence of, the same criminal scheme with which all three defendants are charged.   Indeed, the conduct at issue here is even more closely related than in other cases, typically involving multiple conspiracies or criminal schemes, in which courts have affirmed joinder.   See, e.g., United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989) (upholding joinder of defendants involved in separate conspiracies on the grounds that the conspiracies shared a common purpose and there was "an overlap of participants

5

and acts"); <u>United States v. Turoff</u>, 853 F.2d 1037, 1044 (2d Cir. 1988) (holding joinder of offenses proper where one offense "stemmed from the other" and "the proof of one scheme [was] indispensable for a full understanding of the other").

   The conduct of Grimes and Barrack is intertwined and directly relevant to virtually all aspects of the case against each of them.   For example, the government anticipates proving at trial the following:

- In mid-2016, Barrack and Al Malik took steps to make Barrack the key communications channel for the UAE to the Trump Campaign.   Barrack boasted of his powerful connections with then-Candidate Trump to Al Malik.   Al Malik helped schedule a meeting between Barrack and senior UAE leadership and provided feedback from the UAE about the meeting.   Grimes regularly called and emailed with Al Malik about Barrack's meeting with UAE senior government officials and prepared a presentation with Al Malik for this meeting.   Grimes and Barrack also specifically discussed the ways in which a foreign government like the UAE could successfully manipulate discourse in the United States in advance of this meeting.

- Barrack took responsibility for drafting a speech on U.S. energy policy (the "Energy Speech") for Candidate Trump, specifically sought out and obtained the UAE government's views on the content of the speech and inserted those specific edits into the speech he intended Candidate Trump to deliver to the U.S. polity.   Grimes assisted Barrack with the speech drafting process and with his coordination with Al Malik and the UAE on the substance of the speech.

- Throughout the conspiracy, Barrack, Grimes and Al Malik collectively participated in a media campaign to influence the U.S. public for the benefit of the UAE government. Barrack frequently participated in nationally televised interviews and other media activities, asked for specific direction from the UAE and afterwards sought feedback from the UAE about whether his appearances were sufficiently favorable to their interests.   Grimes helped manage and pass along the UAE's directives, and also was responsible for furnishing Al Malik and UAE officials with Internet links to the media appearances so that they could receive praise and feedback from UAE officials for future media opportunities.

- Barrack, Grimes and Al Malik worked together to produce a strategic campaign, which they planned to present to UAE leadership at a meeting in Morocco in August 2016, that was designed to promote UAE foreign policy interests and increase its political influence in the United States.   Al Malik coordinated directly with Barrack and Grimes, and Grimes drafted a proposal about this influence campaign for Barrack and Al Malik to present, which Barrack then reviewed.

- Barrack and Grimes, with the assistance of Al Malik, acquired a dedicated cellular telephone and installed a secure messaging application at the direction of UAE officials. Al Malik and Grimes worked closely to set up this covert method by which Barrack could communicate directly with UAE government officials.   Grimes eventually confirmed that they had contacted the UAE using the encrypted platform and a burner phone, notifying Al Malik "We did it. I have phone."

- UAE officials directed the defendants to gather intelligence about the U.S. foreign policy and national security apparatuses of the incoming Trump Administration.   For example, Al Malik was asked by a UAE official to obtain information about the incoming National Security Advisor, and Al Malik, in turn, asked Grimes for information about the National Security Advisor.

- Al Malik and Grimes spoke directly about the UAE's favored foreign policy positions, and Al Malik told Grimes that he spoke to a senior UAE official about "ideas for [Barrack] to Champion."

- After the inauguration of President Trump, the defendants took still more actions at the direction of UAE officials.   For example, following a discussion with Al Malik about how helping to have the United States "list" the Muslim Brotherhood as a foreign terrorist organization would be a "huge win," Grimes responded "[y]es. At your direction."

- After a White House meeting in May 2017 with senior UAE leadership, Barrack and Grimes offered to provide intelligence about the results of those meetings.   Al Malik responded to Grimes that Grimes was "the hero" of UAE officials.

- The defendants agreed to try to secure the UAE's favored person to become U.S. Ambassador to the UAE.   In March 2017, Al Malik sent Grimes the resume for a U.S. Congressman, indicated that he was the UAE's preferred candidate for Ambassador, and wrote that picking the U.S. Congressman as Ambassador was "important for our friends." Grimes agreed to relay the message to Barrack.   Al Malik separately communicated this directive to Barrack as well, providing Barrack with the name and resume for the U.S. Congressman.

- When a foreign policy crisis developed as a result of the blockade of the State of Qatar by several Middle Eastern countries (including the KSA and the UAE) in June 2017, the defendants advocated for the UAE's preferred position at the direction of the UAE.   At the beginning of the crisis, Al Malik passed along news articles about developments to Grimes and Barrack.   Al Malik also sent Grimes talking points that promoted the UAE, which Grimes then passed to Barrack at Barrack's request.

- At the same time they were engaging in conduct at the direction of the UAE, Barrack and Grimes took steps with Al Malik to secure hundreds of millions of dollars in investments from UAE sovereign wealth funds for Barrack's investment company.   In 2017 and 2018, after Barrack and Grimes had begun acting as agents of the UAE, Colony raised $374 million in capital commitments from UAE sovereign wealth funds.   The defendants

7

themselves linked these payments to their attempts to influence the U.S. government at the direction and for the benefit of the UAE.

The defendants fault the government for "blending" the defendants (Mot. at 8), but, to the contrary, it is the defendants' own conduct that overlapped and interlocked and was directed, in concert, toward the same criminal ends.

Severance is not warranted in these circumstances.   See United States v. Nadeem, No. 13-CR-424 (BMC), 2014 WL 3563407, at *3, 6 (E.D.N.Y. July 18, 2014) (denying severance where "there are only four defendants, trial will last at most four weeks, and any prejudice from the introduction of evidence irrelevant to [a particular defendant] can be cured through limiting instructions").   And since the vast majority of the evidence in this case is admissible against both defendants—as direct evidence of the substantive crime the defendants committed or aided-and-abetted, party-opponent declarations or statements of a co-conspirator in furtherance of the conspiracy—separate trials against Grimes and Barrack would be almost entirely duplicative, could lead to inconsistent verdicts and would create all the attendant inconveniences involved in forcing the same witnesses to appear for two identical trials.   See Zafiro, 506 U.S. at 537.   Indeed, with few exceptions, the trial witnesses against Barrack would be the same as those in a trial against Grimes.   The circumstances here are unremarkable and do not merit severance unless the defendants meet the heavy burden of showing substantial prejudice rising to a denial of a fair trial. They have failed to do so.

B.      Alleged "Spillover" Prejudice Does Not Warrant Severance

Grimes moves for severance based on a claim of "spillover bias" caused by the "disparity in weight of the evidence" and the "additional counts."  Mot. at 6.[2]  No significant risk of spillover bias exists in this case.

As Grimes concedes, the two core counts in the case involve joint conduct and therefore "warrant some joint evidence."  See Mot. at 8.  Such evidence is not a basis for severance.  "Evidence adduced against one alleged co-conspirator is 'neither spillover nor prejudicial' if it would be admissible at a separate trial against the movant as an act of a co-conspirator in furtherance of a conspiracy due to the nature of conspiratorial illegal activity." United States v. Spicer, No. 10-CR-657 (SJ), 2013 WL 871952, at *3 (E.D.N.Y. Mar. 7, 2013) (citing United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993) ("A defendant's right to a fair trial does not include the right to exclude relevant and competent evidence. . . . Evidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial.")).  "This is true even when the co-conspirator's acts are of greater severity."  Id. "The defendant requesting severance must show substantial prejudice resulting from joinder, not just that he would have a better chance for acquittal at a separate trial."  United States v. Alegria, 761 F. Supp. 308, 312 (S.D.N.Y. 1991) (citing United States v. Torres, 901 F.2d 205, 230 (2d Cir. 1990)). "[W]here there is some connection between the alleged conspiracy and the counts that charge [the defendant alleging spillover prejudice] alone such that some overlap of evidence can be anticipated at trial, [the defendant] has not carried his burden for showing a single trial to be prejudicial."  Id.

---

[2] To the extent Barrack's joinder letter requests severance on the same basis, the motion should be denied with respect to Barrack for largely the same reasons.

The defendants' concession of "some joint evidence" substantially understates the evidentiary record.   Nearly all of the evidence will be admissible against both Grimes and Barrack, either as evidence of the substantive offense, including aiding-and-abetting liability, or as evidence of their efforts to further the charged conspiracy.   Grimes complains that much of the evidence will "focus primarily on" Barrack (Mot. at 7), but he does not claim that any such evidence would be inadmissible against Grimes in a separate trial.   Nor could he.   Evidence of Barrack's "relationship with foreign and U.S. officials" is directly relevant as evidence against Grimes because it tends to prove, among other things, (i) that Grimes, who worked with Barrack and Al Malik in facilitating those relationships, also was acting as an agent at the direction and control of the UAE officials; (ii) that Grimes aided and abetted Barrack, Al Malik or both in this substantive conduct, or is liable via the <u>Pinkerton</u> doctrine of substantive liability arising out of a conspiracy; and (iii) that Barrack's conduct was in furtherance of a mutually agreed-upon conspiracy to violate Section 951 by taking directions from UAE officials and carrying them out in the United States without notifying the Attorney General.

Grimes relies heavily on the notion that his involvement in the alleged conduct was minimal.   Grimes is wrong.   The evidence will prove that Grimes was an integral figure in the criminal scheme.   To be sure, Grimes played a *different* role in the conspiracy than Barrack, and Barrack had more direct dealings with UAE leadership regarding their plan to influence, and receive sensitive information about, U.S. foreign policy.   But a different role is not necessarily a less culpable role.   A getaway driver may be less important and more easily replaced than the skilled safe cracker, but both bear relatively similar culpability for the bank robbery that they commit together.   So, too, here.   The evidence will show that Grimes operated as a trusted confidante and intermediary for Barrack, knew the purpose and his role in the criminal scheme

and was essential to its operation and success.   For example, Al Malik would frequently contact Grimes to locate and communicate with Barrack, and Grimes would regularly prepare materials requested by both Al Malik and Barrack.   Just as Al Malik played a crucial role in operationalizing the UAE government's directives, Grimes was crucial in ensuring that the myriad and detailed tasks were in fact carried out by Barrack.   Grimes also acted independently of Barrack, working directly with Al Malik on specific taskings.

Even if the evidence were to show that Grimes were significantly less culpable than Barrack, that difference is not a basis for severance given the efficiencies gained from a joint trial. The Second Circuit "has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible."   United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993) (collecting cases); see also United States v. Carson, 702 F.2d 351, 366–67 (2d Cir. 1983) (affirming court's denial of severance motion despite the fact that defendant played a less prominent role in conspiracy and stating, "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials"); United States v. Shkreli, 260 F. Supp. 3d 247, 257 (E.D.N.Y. 2017) ("It is well established that defendants who played a minor role in a conspiracy may be tried with those who played a larger or dominant role. . . . A disparity in the quantity of evidence and of proof of culpability are inevitable in any multi-defendant trial . . . .") (internal quotation marks and citation omitted).

Moreover, this is not a case in which the nature of the crimes charged against one defendant is substantially different, or more prejudicial, than that of crimes charged against others. This is also not a case in which the jury will hear evidence of violence as to one defendant that might arguably spill over to taint its view of a co-defendant not charged with such a crime, although

such joint trials are also commonplace.  See United States v. DiNome, 954 F.2d 839, 844-45 (2d Cir. 1992).   Indeed, courts have routinely held that limiting instructions are adequate safeguards even where highly inflammatory charges are at issue.  See, e.g., United States v. O'Connor, 650 F.3d 839, 860 (2d Cir. 2011) (holding that limiting instruction to consider the evidence separately as to each defendant was sufficient in a sex trafficking/incest case where evidence was introduced of the non-moving defendant's past pedophilic conduct and proclivities).

Nor is there any basis to argue that the admission of evidence related to the remaining obstruction of justice and material false statement counts against Barrack would confuse the jury.  The obstruction and false statements are easily understandable and discrete, and the proof of obstruction and falsity will be based on much of the same evidence (apart from Barrack's interview itself) that will be admissible against both defendants to prove the Section 951 and conspiracy counts.  The law is clear that when one defendant is charged in fewer counts than another, the commonality in the proof as to all defendants weighs strongly in favor of a joint trial. That is the case here.  See Webb, 2020 WL 6393012, at *7 ("the various alleged schemes share common facts, including common types, methods, and means of criminal conduct . . . the various schemes are fundamentally interconnected, and regardless of whether the government has to prove one scheme or a pattern of several schemes, a significant portion of the trial will have to be spent establishing a common foundation of facts "necessary to complete the story of the crime[s] on trial."); United States v. Lindauer, No. S2 03 CR 807 (MBM), 2004 WL 2813168, at *3 (S.D.N.Y. Dec. 6, 2004) (denying motion to sever defendants in case where defendants were charged with multiple substantive violations of Section 951 and conspiracy to commit a violation of Section 951 despite differing levels of culpability and proof).

12

Given the heavy burden placed on defendants to demonstrate spillover prejudice, it is unsurprising that the cases cited by Grimes are inapposite.  For example, <u>United States v. Branker</u>, 395 F.3d 881 (2d Cir. 1968), involved "twelve defendants and six co-conspirators . . . named in eighty-four counts."  <u>Id.</u> at 887.  In <u>United States v. Locascio</u>, 357 F. Supp. 2d 536 (E.D.N.Y. 2004), the court granted severance because the evidence as to the non-moving defendants in a large racketeering conspiracy had little to do with the proof against the moving defendants and, crucially, denied severance of certain defendants where the broader racketeering evidence was directly relevant to their conduct.  <u>Id.</u> at 545-46.[3]

C.    <u>The Defendants Do Not Have "Mutually Antagonistic" Defenses That Warrant Severance</u>

The defendants argue that severance is also warranted "given the different defense themes."  <u>See</u> Mot. at 9-10.  This argument borders on the frivolous.  As an initial matter, it is well-settled that severance is not required every time co-defendants advance defenses that are adversarial to one another.  "Were this true, a virtual ban on multi-defendant conspiracy trials would ensue since conspirators raise many different and conflicting defenses."  <u>Cardascia</u>, 951 F.2d at 482.  Similarly, "[m]ere fingerpointing does not require severance."  <u>Casamento</u>, 887 F.2d 1141 (internal quotation marks omitted); <u>see also</u> <u>United States v. Serpoosh</u>, 919 F.2d 835, 837 (2d Cir. 1990) ("The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance.").  Such blame-shifting is unlike the "rare" circumstance where one defendant has made a clear showing that he will put on evidence that is

---

[3]  The defendant also references <u>United States v. Mardian</u>, 546 F.2d 973 (D.C. Cir. 1976), but there the D.C. Circuit *affirmed* a denial of severance, finding error only in the district court's failure to grant severance during trial after the defendant's counsel became ill and unavailable, and after it became clear that "only a small portion of evidence" pertained to the defendant, who was charged in a lone conspiracy count of a multi-count indictment and was involved in only five of forty-five overt acts.  <u>See</u> <u>United States v. El-Saadi</u>, 549 F. Supp. 3d 148 (D.D.C. 2021) (denying defendant's motion to sever and distinguishing <u>Mardian</u>).

13

both inconsistent with the government's theory of the case and inculpates the defendant seeking severance, making one defendant a "second prosecutor" of another.   United States v. Copeland, 336 F. Supp. 2d 223, 224-25 (E.D.N.Y. 2004) (internal quotation marks omitted).

   The relevant standard is not whether the defendants have "inconsistent defense theories" (Mot. at 9), but whether the defenses are "mutually antagonistic," a narrow category of adversarial defenses where "accepting one defense requires that the jury must of necessity convict a second defendant."   United States v. Yousef, 327 F.3d 56, 151 (2d Cir. 2003); see also Zafiro, 506 U.S. at 542 (Stevens, J., concurring) (describing "mutually antagonistic" defenses as those as to which "acceptance of one ... necessarily preclude[s] acceptance of the other and acquittal of the codefendant").   Even "mutually antagonistic defenses are not prejudicial per se," and severance is not required when defendants adopt antagonistic defenses "even if prejudice is shown."   Zafiro, 506 U.S. at 538-39; see also United States v. Scott, 637 F. App'x 10, 13 (2d Cir. 2015), cert. denied, 137 S. Ct. 208 (2016) ("It is not enough to demonstrate that separate trials would have increased the chances of the appellant's acquittal … the defendant must instead show prejudice so severe that his conviction constituted a miscarriage of justice and amounted to a denial of a constitutionally fair trial") (quotations and quotation marks omitted).   "In those rare instances where a defendant establishes a 'high' risk of prejudice, however, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'"   United States v. Abakporo, No. 12-CR-340 (SAS), 2013 WL 6188260, at *3 (S.D.N.Y. Nov. 25, 2013) (quoting Zafiro, 506 U.S. at 539).

   To determine if severance is warranted on the ground of mutually antagonistic defenses, the Court must first determine whether the purported adversarial defenses are in fact "mutually antagonistic," such that acceptance of one defense necessarily precludes acceptance of

the other, or if they are merely "fingerpointing."   Next, the Court must determine whether, if the defenses are in fact "mutually antagonistic," such defenses are "prejudicial" to one or both sets of defendants.   Finally, even if the Court determines that one or both sets of defendants might suffer prejudice as a result of a joint trial, the Court must find that there is a serious risk that a "joint trial would compromise a specific trial right" or "prevent the jury from making a reliable judgment" about the defendants' guilt or innocence that cannot be mitigated by measures less drastic than severance, such as a series of limiting instructions.   Zafiro, 506 U.S. at 537-39

Notably, unlike the defendants in cases in which mutually antagonistic defenses were demonstrated, the defendants here do not provide any detail about their anticipated defenses at trial or explain how those defenses would be antagonistic.   While the defendants in Shkreli, Nordlicht and other cases provided substantial details about their defenses, Grimes vaguely alludes to a defense that involves generally denying knowledge or intent and other elements of the offenses.   See Mot. at 8, 10 (explaining how Grimes' defense will "emphasize the differences between what Mr. Barrack and he did and did not do", highlight evidence of "non-involvement in the acts alleged" and show a lack of knowledge).   Grimes does not claim, for example, that it will be "an integral part" of his defense to argue that Barrack was "engaged in criminal conduct of which [Grimes] was unaware."   Nadeem, 2014 WL 3563407, at *5 (denying severance because even these allegations were "quite speculative," and the defendant had not actually "committed to any particular defense").   And Barrack does not even bother to describe his defense or explain how it will be antagonistic in his brief joinder letter.

Even if these superficial descriptions were sufficient, they come nowhere near meeting the high standard required for demonstrating a mutually antagonistic defense sufficient to merit severance.   The decisions in Shkreli, 260 F. Supp. 3d at 257, and United States v. Nordlicht,

15

No. 16-CR-640 (BMC), 2018 WL 1796542, at *2 (E.D.N.Y. Apr. 16, 2018), are instructive and distinguishable.   In those cases, the district courts granted severance because, among other factors, at least one defendant in each case had stated his intention to establish his co-defendant's guilt.   See Shkreli, 260 F. Supp. 3d at 256 ("A joint trial would place on Shkreli an unfair and heavy burden in defending himself against both the government and [co-defendant] Greebel" given "the stated intention of Greebel's counsel . . . [that he] will act as a second prosecutor against Shkreli, by arguing that Shkreli is guilty and that Greebel is, himself, just another victim of Shkreli's fraud."); Nordlicht, 2018 WL 1796542, at *2 ("[Defendant] Shulse's strategy . . . presents a situation that is an order of magnitude more severe than routine accusations and blame-shifting between co-defendants" given Shulse's counsel's stated intention that he "would essentially make his co-defendants face prosecution on two fronts: one attack brought by the Government, and another leveled by Shulse.").[4]

In Shkreli, Shkreli's stated defense was that he "lacked intent to defraud because he relied and acted on the advice of counsel, one of whom was [his co-defendant]," and conversely attorney Greebel's defense was "that his legal advice was predicated on what he believed to be truthful and complete information provided by Shkreli but which, instead, was untrue." 2017 WL 4019387, at *4.   In Nordlicht, Shulse indicated that he intended to argue that his co-defendants, including Nordlicht, perpetrated multiple frauds and concealed those frauds from Shulse, and that "when he became aware of what his co-defendants were doing, [Shulse] immediately brought it to the attention of the SEC and other authorities."   2018 WL 1796542, at *1.

---

[4] In Shkreli, the Court considered the risk of "double prosecution" to be a separate basis for severance than antagonistic defenses.   260 F. Supp. 3d at 256.   However conceived, defendants have failed to demonstrate that either issue exists in this case.

The defendants here have given no indication that they intend to raise arguments along these lines and act as a "second prosecutor" against one another.   Indeed, Grimes' argument that he will highlight that certain evidence focuses only on Barrack is precisely the sort of argument that was recently rejected by a court in this district as insufficient to warrant severance.   See Webb, 2020 WL 6393012 at *5 (finding that the defendant's "'double-prosecution" theory rests on the fundamentally flawed premise that a reminder that certain evidence pertains only to [one defendant] is akin to a charge that [that defendant] is guilty. There is no legal or logical basis for such an assumption.")   The Court should deny severance on these grounds.

        D.    Any Purported *Bruton* Issue Can Be Remedied Without Severance

The defendants also seek severance based on "potential Bruton issues."   Mot. at 10.   "[A] defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a non-testifying defendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant."   Richardson v. Marsh, 481 U.S. 200, 207 (1987) (citing United States v. Bruton, 391 U.S. 123, 135-36 (1968)).   The Second Circuit has recognized, however, that severance is not required when a confession will be introduced so long as the statement in question is properly sanitized to remove all references to the non-testifying co-defendant.   "[T]he Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."   United States v. Brown, 374 F. App'x 208, 210 (2d Cir. 2010) (quoting Richardson, 481 U.S. at 211).   As a result, "a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's Bruton rights."   United States v. Jass, 569

17

F.3d 47, 56 (2d Cir. 2009) (quoting United States v. Tutino, 883 F.2d 1125, 1135 (2d Cir. 1989)) (approving substitution of neutral words "others," "other people," and "another person" for names of co-defendants in confession of non-testifying defendant).

"[T]he appropriate analysis to be used when applying the Bruton rule requires . . . view[ing] the redacted confession in isolation from the other evidence introduced at trial." United States v. Williams, 936 F.2d 698, 700 (2d Cir. 1991). "[W]hat Bruton and its progeny demand is a redaction and substitution adequate to remove the 'overwhelming probability' that a jury will not follow a limiting instruction that precludes its consideration of a redacted confession against a defendant other than the declarant," and Bruton and its progeny "do not construe the Confrontation Clause to demand further that a confession be redacted so as to permit no incriminating inference against the non-declarant defendant." Jass, 569 F.3d at 60. Indeed, "[t]he critical inquiry is [] not whether a jury might infer from other facts . . . that a declarant's neutral allusion to a confederate might have referenced the defendant" but "whether the neutral allusion sufficiently conceals the fact of explicit identification to eliminate the overwhelming probability that a jury hearing the confession at a joint trial will not be able to follow an appropriate limiting instruction." Id. at 61.

The defendants assert that, because Grimes made statements to a grand jury and Barrack made statements to law enforcement, the "constitutional concerns" this creates would "necessarily justify a severance in this case." Mot. at 11. These assertions are wholly speculative and without basis. The government intends to seek the admission at trial of certain statements made by the defendants that were made in furtherance of the conspiracies in which they are charged during the relevant time periods. Such evidence is not hearsay. See Fed. R. Evid. 801(d)(2)(E); United States v. DeVillo, 983 F.2d 1185, 1193 (2d Cir. 1993). For example, the

18

defendants discuss communications between Grimes and Al Malik about Barrack regarding Barrack's efforts to arrange a meeting between Steve Bannon and one of the UAE government leaders.   Mot. at 4.   Such communications constitute co-conspirator statements in furtherance of the conspiracy and are properly admitted pursuant to Rule 801(d)(2)(E).   These statements also raise no Confrontation Clause issue.   The Confrontation Clause (and the protections of <u>Bruton</u>) only apply to the use of "testimonial statements" offered for their truth.   See <u>Crawford v. Washington</u>, 541 U.S. 36, 69 (2004); <u>United States v. Pike</u>, 292 F. App'x 108, 112 (2d Cir. 2008) ("because the statement was not testimonial, its admission does not violate either <u>Crawford</u> . . . or <u>Bruton</u>").   Courts have routinely held, after <u>Crawford</u>, that co-conspirator statements in furtherance of the conspiracy are not "testimonial" and therefore are not barred by the Confrontation Clause.[5]   See <u>United States v. Stewart</u>, 433 F.3d 273, 291 (2d Cir. 2006) (holding that statements made to law enforcement in furtherance of conspiracy, as well as false statements that are not offered for their truth, were not precluded by <u>Crawford</u>).

The government will seek to admit certain statements made by the defendants to the grand jury or law enforcement after the time period of the charged conspiracies.   Some of those statements will be false and are admissible because they are not being offered for the truth of the matters asserted therein.   See <u>Stewart</u>, 433 F.3d at 291.   Many of those statements do not reference the speaker's co-defendant, and therefore those statements also raise no Confrontation Clause issues provided a limiting instruction makes clear that they are admitted only as to the defendant who made those statements.   To the extent the government seeks to admit testimonial

---

[5] The only case cited by the defendants to the contrary is an opinion issued by the Middle District of Florida in 1975, nearly thirty years before the Supreme Court's seminal holding in <u>Crawford</u>, that does not even address a motion to sever.   See Mot. at 4 (citing <u>United States v. Bailey</u>, 399 F. Supp. 526, 528 (M.D. Fla. 1975) (granting motion to dismiss for speedy trial violations)).

statements by one defendant that references another for their truth, these remaining statements will be offered into evidence only after properly sanitizing them to remove all references to the non-testifying co-defendant and ensuring that they fully comport with <u>Bruton</u>.   Such statements are also admissible with a proper limiting instruction.   <u>See</u> <u>Brown</u>, 374 F. App'x at 210; <u>Nadeem</u>, 2014 WL 3563407, at *2 (discussing proper redactions of statements for <u>Bruton</u> compliance but noting that "the statement does not alter my analysis of the severance issue").

        E.      <u>Examination of Colony Witnesses Does Not Warrant Severance</u>

The defendants' final basis for severance is that Grimes will cross-examine employees of Colony Capital "differently than Mr. Barrack's counsel."  Mot. at 11-12.  The argument appears to be based on the contention that (1) Grimes may raise an advice-of-counsel defense based on his reliance upon advice from Colony's General Counsel and other compliance officials (Mot. at 11 (claiming reliance upon the involvement of "various Colony compliance officials and counsels' involvement in the work he did and observed")); and (2) Barrack is potentially limited in his cross-examination of Colony witnesses by his attorney's potential dual representation conflict (Mot. at 1 (stating that joint trial could "touch on some of the issues the Court has addressed concerning Colony Capital…witnesses")).

This is the first time that either defendant has indicated that he may try to raise an advice-of-counsel defense.   The affirmative defense of advice of counsel is a more specific form of the defense of good faith, available in limited circumstances in which a good faith instruction may otherwise be applicable.   <u>See</u> L. Sand, <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, Instruction 8-04.   It "is not a free-standing defense."   <u>United States v. Van Allen</u>, 524 F.3d 814, 823 (7th Cir. 2008) (internal quotation marks omitted).   In order to establish a colorable advice of counsel defense, and thus be entitled to a jury instruction with respect to those offenses to which it may apply, the burden is on the defendant to introduce evidence that: (1) before taking action in

connection with the charged conduct, he "honestly and in good faith [sought] the advice of a lawyer

as to what he may lawfully do"; (2) he "fully and honestly [laid] all the facts before his counsel";

and (3) he acted strictly in accordance with the advice of his counsel.   United States v.

Evangelista, 122 F.3d 112, 117 (2d Cir. 1997) (internal quotation marks omitted).   Where a

defendant fails to meet even one of these requirements, he is not entitled to a jury instruction

regarding advice of counsel.   Id. (affirming denial of instruction, as defendants did not satisfy the

third prong of the test).[6]

There is no indication that either defendant will be able to make out such a defense

at trial.   See United States v. Ray, No. 20-CR-110 (LJL), 2021 WL 5493839, at *7 (S.D.N.Y.

Nov. 22, 2021).[7]   The defendants have not identified (and the government is not aware of) any

evidence to indicate that Colony attorneys represented the defendants in relation to their charged

conduct, that the defendants sought advice from counsel, that they received advice related to the

---

[6] The defense is also only available for offenses that require proof of willfulness.   See also Sand, Instruction 8-04 (instruction states that defense applies to "a crime that involves willful and unlawful intent"); United States v. Blagojevich, 794 F.3d 729, 738 (7th Cir. 2015) (explaining that jury should be provided "good-faith instruction" like advice of counsel "only when the statute contains a term such as 'willful' that (as understood for that particular statute) makes knowledge of the law essential."); Pattern Crim. Jury Instr. 11th Cir. S18 (2020) ("This instruction should be used, where appropriate, only in cases where "intent" is an element. It is not to be used where it is required only that the defendant acted "knowingly."). Section 951 is a general intent crime, which only requires that the defendant acted "knowingly."   See, e.g., United States v. Duran, 596 F.3d 1283, 1292 (11th. Cir. 2010).

[7] As the Court ruled in Ray, if the defendants elect to bring such a defense, (1) the defendants should be required to identify the charges to which they contends such a defense is relevant, the witnesses they intend to present in support of that defense and the evidence they contend will satisfy each element of an advice-of-counsel defense; (2) the Court should hold a hearing, pursuant to Federal Rule of Evidence 104, to determine whether there is sufficient evidence to present such a defense; and (3) the Court should determine whether to enter an order that the defense produce all documents relating to the defense (whether supportive or not) and to provide the government with sufficient information for the government to conduct its own independent search of the otherwise privileged documents to determine those documents as to which the privilege has been waived.   Id. at *7.

defendants' actions with the UAE government, or that the defendants acted in accordance with any advice given.   Given the complete inability to meet the threshold showing, the defendants are not permitted to raise this defense, and therefore have no basis to claim it as a reason to request severance of trial.   See United States v. Quinones, 417 F. App'x 65, 67 (2d Cir. 2011) (affirming denial of instruction and order precluding defense from arguing advice of counsel in summation; "defendants are not entitled to such an instruction unless there are sufficient facts in the record to support the defense," and "the defendants [in this case] have not shown the required factual predicate for an advice-of-counsel defense").

The defendants' suggestion that severance is warranted because of potential limitations on Barrack's cross-examination of these witnesses is also without merit.   As the Court is well-aware, Barrack waived any objection to limitations placed on his counsel arising out of their client relationship with Colony.   Barrack cannot now use this waived conflict as a sword to sever the case, and it simply illogical for Grimes to claim any need for severance because his counsel suffers from no such potential limitation on his examinations.

In any event, the defendants do not cite a single case supporting the proposition that severance may be granted because of one defendant's desire to offer an advice-of-counsel defense, or because a co-defendant may not be able to (or may not want to) cross-examine witnesses as strenuously.   The government is also unaware of any such precedent.   Accordingly, the Court should reject severance on this basis.

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that the Court deny

the defendants' motion for severance of the joint trial.

Dated:          Brooklyn, New York
                June 22, 2022

                                            BREON PEACE
                                            United States Attorney
                                            Eastern District of New York

                                  By:        /s/ Craig R. Heeren
                                            Ryan C. Harris
                                            Samuel P. Nitze
                                            Hiral D. Mehta
                                            Craig R. Heeren
                                            Assistant U.S. Attorneys
                                            (718) 254-7000

                                            MATTHEW G. OLSEN
                                            Assistant Attorney General
                                            Department of Justice
                                            National Security Division

                                  By:        /s/ Matthew J. McKenzie
                                            Matthew J. McKenzie
                                            Trial Attorney