# Exhibit A

AO 89B (07/16) Subpoena to Produce Documents, Information, or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No. 21-CR-371 (BMC) |
| Rashid Sultan Rashid Al Malik Alshahhi, et. al ) | |
| *Defendant* ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CRIMINAL CASE

To: DigitalBridge Group, Inc.

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following books, papers, documents, data, or other objects:

See Attachment A.

| Place: | U.S. District Court (E.D.N.Y) 225 Cadman Plaza East Brooklyn, NY 11201 | Date and Time: | 08/23/2022 9:30 am |
|---|---|---|---|

Certain provisions of Fed. R. Crim. P. 17 are attached, including Rule 17(c)(2), relating to your ability to file a motion to quash or modify the subpoena; Rule 17(d) and (e), which govern service of subpoenas; and Rule 17(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

*(SEAL)*

Date: _____

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Thomas J. Barrack , who requests this subpoena, are:

Michael S. Schachter, Willkie Farr & Gallagher LLP, 787 7th Avenue, New York, NY 10019, mschachter@willkie.com, 212-728-8102

**Notice to those who use this form to request a subpoena**

Before requesting and serving a subpoena pursuant to Fed. R. Crim. P. 17(c), the party seeking the subpoena is advised to consult the rules of practice of the court in which the criminal proceeding is pending to determine whether any local rules or orders establish requirements in connection with the issuance of such a subpoena. If no local rules or orders govern practice under Rule 17(c), counsel should ask the assigned judge whether the court regulates practice under Rule 17(c) to 1) require prior judicial approval for the issuance of the subpoena, either on notice or ex parte; 2) specify where the documents must be returned (e.g., to the court clerk, the chambers of the assigned judge, or counsel's office); and 3) require that counsel who receives produced documents provide them to opposing counsel absent a disclosure obligation under Fed. R. Crim. P. 16.

Please note that Rule 17(c) (attached) provides that a subpoena for the production of certain information about a victim may not be issued unless first approved by separate court order.

AO 89B  (07/16)  Subpoena to Produce Documents, Information, or Objects in a Criminal Case  (Page 2)

Case No. 21-CR-371 (BMC)

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Criminal Procedure 17 (c), (d), (e), and (g) (Effective 12/1/08)

**(c) Producing Documents and Objects.**

**(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

**(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

**(3) Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

**(d) Service.** A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance. The server need not tender the attendance fee or mileage allowance when the United States, a federal officer, or a federal agency has requested the subpoena.

**(e) Place of Service.**

**(1) In the United States.** A subpoena requiring a witness to attend a hearing or trial may be served at any place within the United States.

**(2) In a Foreign Country.** If the witness is in a foreign country, 28 U.S.C. § 1783 governs the subpoena's service.

**(g) Contempt.** The court (other than a magistrate judge) may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district. A magistrate judge may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by that magistrate judge as provided in 28 U.S.C. § 636(e).

# ATTACHMENT A

# DEFINITIONS

1. "ADIA" shall mean the Abu Dhabi Investment Authority, its employees, agents, or representatives.

2. "Communication" and "communications" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), pursuant to Local Rule 26.3.

3. "Document" and "documents" shall have the same meaning as the term "documents and electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), pursuant to Local Rule 26.3. That is, writings, drawings, graphs, charts, photographs, sound recordings, and other data and data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party to a reasonably usable form. "Document" and "documents" also include without limitation emails and other forms of electronic communication (such as deleted emails, instant messages, text messages, MMS messages, SMS messages, BlackBerry Messages ("BBMs"), WhatsApp messages, and any communication via social or professional network sites or systems), as well as voicemail.

4. "DigitalBridge," shall mean DigitalBridge Group, Inc. (formerly Colony Capital, Inc.), together with its affiliates, subsidiaries, and any funds managed by DigitalBridge Group, Inc. "DigitalBridge" shall also include Digital Bridge Holdings LLC before its acquisition by Colony Capital, Inc. in or around July 25, 2019.

5. "Mubadala" shall mean Mubadala, its employees, agents, or representatives.

6. "UAE" shall mean United Arab Emirates.

7. "You" shall mean DigitalBridge and its employees, agents, servants, or representatives.

## INSTRUCTIONS

1. Unless otherwise stated, this request seeks documents from the time period April 1, 2016, through the date of your response to these requests.

2. In responding to this request, you shall produce all documents in your possession, custody or control, including documents and materials in the possession of your employees, agents, servants, and/or representatives. Documents responsive to this subpoena that were previously produced by you—or which you are aware have been provided by another person or entity—to the United States Attorney's Office for the Eastern District of New York do not need to be produced.

3. If any portion of a document is considered responsive to any request, the request shall be construed as requesting production of the entire document.

4. Documents shall be produced as they are kept in the usual course of business.

5. Any document that contains any notation, addition, insertion, or marking of any kind is not deemed to be identical to one without such marks, and is to be produced as a separate document.

6. Whenever a document has been withheld because the request is objected to on grounds of privilege, work product or confidentiality or any other grounds:

    a. identify the document;

    b. describe the nature of the document (e.g., letter, chart, memorandum);

    c. identify the privilege and any statute, rule or decision upon which you rely in withholding the document and state the factual basis supporting the privilege claimed;

    d. set forth each request to which each such document is responsive;

  e. state the date of the document;

  f. describe the subject matter of the document;

  g. identify the author(s), the recipient(s) and all person(s) who received copies of the document; and

  h. If part of an otherwise responsive document contains information that is subject to a claim of privilege, those parts of the document subject to the claim of privilege shall be redacted from the document, the redacted parts shall be clearly marked as such, and the rest of the document shall be produced.

 7. Each of these requests seeks all documents, wherever located, which are in your actual or constructive possession, custody or control, as well as all documents which are known to exist and can be obtained by you from any other source.

## DOCUMENTS REQUESTED

 1. Documents reflecting communications from December 2016 through October 2017 to, from, between, or among the following individuals relating to their involvement in soliciting and/or securing an investment from Mubadala with respect to One California Plaza: (a) Sylvio Tabet; (b) David Belford; (c) Peter Eichler; (d) Paul Fuhrman.

 2. Documents reflecting communications from May 2017 through January 2021 to, from, between, or among the following individuals relating to their involvement in soliciting and/or securing investments from ADIA in Digital Colony Partners I: (a) Marc Ganzi; (b) Ben Jenkins; (c) Kevin Smithen; (d) Jeffrey Ginsburg; (e) Sadiq Malik; (f) Leslie Wolff Golden; (g) Brittenay Banh; (h) Ron Sanders; (i) Justin Chang, (j) Jonathan Grunzweig, (k) Rabih Sfeir.

3.  Salesforce tracking reports or other compiled data investment tracker reports, from December 2016 through January 2021, concerning the following investments and reflecting that individuals other than Thomas J. Barrack solicited and/or secured investors in the following: (a) One California Plaza; (b) Digital Colony Partners I (and co-investment opportunities).

4.  Documents reflecting the communications identified in cell G102 of the of the investment tracker entitled "All opp - ST 1.5.2018.xlsx" produced as DB-EDNY_00043679.

5.  Documents reflecting the communications identified in cell U4 of the of the investment tracker entitled "DCP Investor Tracker 4.23.18.xlsx" produced as DB-EDNY_00133586.

6.  Documents sufficient to show the complete list of investors/co-investors, subscription documents, side letters, cornerstone agreements, or favored nation letters—and drafts of such documents—for the following: (a) One California Plaza; (b) Digital Colony Partners I (and co-investment opportunities).

7.  Documents reflecting due diligence questionnaires and ancillary due diligence work product made by Mubadala and Harel with respect to One California Plaza from December 2016 through October 2017.

8.  Documents reflecting due diligence questionnaires and ancillary due diligence work product made by ADIA with respect to Digital Colony Partners I from May 2017 through January 2021.

9.  Documents reflecting communications to, from, between, or among (a) Marc Ganzi; (b) Ben Jenkins; (c) Kevin Smithen; (d) Jeffrey Ginsberg Sadiq Malik; (e) Leon Schwartzman; (f) David Palame; (g) Ron Sanders; (h) Justin Chang; (i) Sylvio Tabet; (j)

Jonathan Grunzweig; (k) Rabih Sfeir; (l) David Belford; (m) Peter Eichler; (n) Mark Hedstrom, in the period between April 2016 and April 2018, demonstrating awareness of Thomas J. Barrack's interactions with (1) Mohammed Bin Zayed Al Nahyan, (2) Sheikh Tahnoon Bin Zayed Al Nahyan,(3) Yousef Al Otaiba, (4) Sheikh Abdullah Bin Zayed Bin Sultan Al Nahyan, (5) Saeed Al Hajri, (6) Sheikh Sultan Bin Tahnoon Al Nahyan, (7) Sheikh Sultan bin Sulayem, (8) Sheikh Ahmed bin Sulayem, (9) Sheikh Mohammed Ibrahim Al Shaibani; (10) Mohammed Alabbar or other members of the UAE's government or royal family.

10. Employment records that reflect the hiring of Talal Al-Sabah, son of the Ambassador of Kuwait to the United States, as an intern at DigitalBridge, and communications reflecting that individual's job duties and direct supervisors while employed by or with DigitalBridge.

11. Documents reflecting the possibility of Matthew Grimes attending, participating, or enrolling in flight attendant or flight safety school, training, or related programming in the period between April 2016 and April 2018 as part of his employment at DigitalBridge.

12. Documents reflecting communications to, from, between, or among the following individuals regarding efforts to raise funds for DigitalBridge during trips to Morocco, Corsica, Greece, the UAE, Saudi Arabia, and Qatar from April 2016 to the present: (a) Bruno Daddi; (b) Justin Chang; (c) Jonathan Grunzweig; (d) Sylvio Tabet; (e) Ted Elkin; (f) Peter Eichler; and (g) David Belford.

13. Documents reflecting all trips that Thomas J. Barrack took to foreign countries other than the UAE from April 2016 to April 2018 related to investor relations or

business development for DigitalBridge on which Matthew Grimes accompanied Mr. Barrack, including, but not limited to, internal communications reflecting the purpose of those trips.

14. PowerPoint presentations prepared by Matthew Grimes for Thomas J. Barrack in advance of a December 2015 trip that Mr. Barrack took to Qatar to meet with Sheikh Khalifa bin Hamad bin Khalifa Al Thani.

15. Documents and communications reflecting efforts by DigitalBridge employees or consultants to solicit investments from sovereign wealth funds located in countries other than in the UAE in the period between April 2016 and April 2018.

16. Financial analyses and other deal-related documents prepared by Matthew Grimes for DigitalBridge related to DigitalBridge deals in Argentina, China, Mexico, and Latin America, including but not limited to: (a) Colony Capital's acquisition of the Abraaj Group (a/k/a Abraaj Mexico Advisors, S.C.) in 2019; (b) Opportunities related to distressed debt and non-performing loans in China; and (c) Foreign investments in the 8500 Sunset Boulevard real estate development in West Hollywood.