# Exhibit 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

UNITED STATES OF AMERICA,

                                          **<u>FINAL JURY INSTRUCTIONS</u>**

            - against -                              18-CR-538 (S-2) (MKB)

NG CHONG HWA,
       Also known as "Roger Ng,"

                        Defendant.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

I.      GENERAL INSTRUCTIONS ................................................................... 4

    a.   ROLE OF THE COURT AND JURY ................................................ 4

    b.   PRESUMPTION OF INNOCENCE AND BURDEN OF PROOF ................... 5

    c.   REASONABLE DOUBT ................................................................. 5

    d.   THE DEFINITION OF EVIDENCE ................................................... 6

    e.   DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................... 7

    f.   WITNESS CREDIBILITY ............................................................. 8

    g.   TESTIMONY OF DEFENDANT .................................................... 10

    h.   TESTIMONY OF LAW ENFORCEMENT WITNESSES ......................... 11

    i.   TESTIMONY OF EXPERT WITNESS ............................................ 11

    j.   TESTIMONY OF COOPERATING WITNESS ................................... 12

    k.   WITNESS INTERVIEWS ........................................................... 13

    l.   NO PARTICULAR PROOF OR SPECIFIC INVESTIGATIVE TECHNIQUES
        REQUIRED ........................................................................... 13

    m.   ALL AVAILABLE EVIDENCE NEED NOT BE PRODUCED .................... 14

    n.   AUDIO RECORDINGS AND ENGLISH-LANGUAGE TRANSCRIPTS ..... 14

    o.   PRIOR INCONSISTENT STATEMENTS ......................................... 14

    p.   CHARTS AND SUMMARIES ...................................................... 15

    q.   DEMONSTRATIVE EXHIBITS ................................................... 16

r.   STIPULATIONS ........................................................................................ 16

s.   REDACTIONS ......................................................................................... 16

t.   GUILTY PLEAS OF OTHER INDIVIDUALS ................................................. 16

u.   EVIDENCE CONSIDERED FOR LIMITED PURPOSE ................................... 17

v.   OTHER PERSONS NOT ON TRIAL ........................................................... 17

w.   UNCALLED WITNESSES EQUALLY AVAILABLE ...................................... 18

x.   PUNISHMENT ........................................................................................ 18

y.   PROOF OF MOTIVE IS NOT NECESSARY .................................................. 19

z.   NO SYMPATHY OR BIAS ......................................................................... 19

aa.  RACE, RELIGION, NATIONAL ORIGIN, SEX OR AGE / NATURE OF CRIME ...... 19

II.  THE CHARGES ........................................................................................... 20

a.   THE INDICTMENT ................................................................................. 20

b.   VENUE .................................................................................................. 20

c.   DATES APPROXIMATE ............................................................................ 22

d.   KNOWLEDGE, WILLFULLNESS, AND INTENT ........................................ 22

    i.   KNOWINGLY ................................................................................. 22

    ii.  WILLFULLY .................................................................................. 22

    iii. INTENTIONALLY ........................................................................... 23

e.   CONSPIRACY GENERALLY ..................................................................... 23

f.   CO-CONSPIRATOR STATEMENTS AND CRIMINAL LIABILITY .......................... 24

g.   COUNT ONE: CONSPIRACY TO VIOLATE THE FCPA BRIBERY PROVISION .... 25

    i.   ELEMENTS OF COUNT ONE CONSPIRACY TO VIOLATE THE FCPA
        THROUGH BRIBES ......................................................................... 26

    ii.  ISSUER ASSOCIATION OR ACT IN FURTHERANCE WITHIN THE UNITED
        STATES TERRITORY ....................................................................... 34

    iii. OBJECTS OF THE CONSPIRACY CHARGED IN COUNT ONE ........................ 36

h.   COUNT TWO: CONSPIRACY TO VIOLATE THE FCPA INTERNAL
    ACCOUNTING CONTROLS PROVISION ..................................................... 46

    i.   ELEMENTS OF COUNT TWO CONSPIRACY ........................................ 47

    ii.  OBJECT OF THE COUNT TWO CONSPIRACY ..................................... 50

i.   COUNT THREE: MONEY LAUNDERING CONSPIRACY ......................................... 51

    i.   ELEMENTS OF CONSPIRACY TO COMMIT MONEY LAUNDERING ................ 53

    ii.  OBJECTS OF THE CHARGED CONSPIRACY TO COMMIT MONEY
        LAUNDERING ........................................................................................ 53

    iii. OBJECTS OF THE MONEY LAUNDERING CONSPIRACY – ELEMENTS .......... 54

  j.  ADDITIONAL INSTRUCTIONS .................................................................... 68

    i.   LAWFULNESS OR BENEFITS OF ACTS OR GOALS NO DEFENSE ................... 68

III.   CLOSING INSTRUCTIONS ......................................................................... 69

  a.  FOREPERSON ........................................................................................... 69

  b.  COMMUNICATIONS WITH THE COURT ................................................... 69

  c.  JUROR'S RECOLLECTION GOVERNS / NOTES / REQUESTS FOR TRIAL
     TESTIMONY ............................................................................................ 70

  d.  DELIBERATIONS AND UNANIMOUS VERDICT ......................................... 71

Ladies and Gentlemen of the jury, now that you have heard all the evidence as well as the arguments of each side, it is my duty to instruct you as to the law applicable in this case. We are all grateful to you for the close attention you have given to this case thus far. I ask that you continue to do so as I give you these instructions.

As you know, the defendant Ng Chong Hwa, also known as Roger Ng, has been charged with three crimes: (1) conspiracy to violate the bribery provisions of the Foreign Corrupt Practices Act; (2) conspiracy to violate the accounting control provisions of the Foreign Corrupt Practices Act; and (3) money laundering conspiracy. The defendant has pleaded not guilty to the charges.

My instructions will be in three parts:

First, I will instruct you regarding the general rules that define and govern the duties of a jury in a criminal case.

Second, I will instruct you as to the particular crimes charged in this case and the specific elements that the government must prove with respect to each crime.

Third, I will give you some instructions about your deliberations.

## I. GENERAL INSTRUCTIONS

### a. ROLE OF THE COURT AND JURY

Let me start by restating our respective roles as judge and jury.

In charging you on the applicable law, let me be clear that I am expressing no opinion about how you should decide the facts of this case. That is a task left exclusively to you the jury. Nothing I have said or done in the course of this trial should be taken by you as expressing any opinion on my part about any aspect of the facts of the case, the credibility of the witnesses, or the weight to be given by you to any of the evidence.

You are the sole judges of the facts, and it is for you and you alone to determine what weight to give the evidence, to resolve such conflicts as may have appeared in the evidence, and to draw such inferences as you deem to be reasonable and warranted from the evidence.

My job is to instruct you on the law. You must apply the law in accordance with my instructions, to the facts as you find them. I remind you of your sworn obligation to follow the law as I describe it to you, whether you agree with it or not. You should not be concerned about the wisdom of any rule of law that I state. Regardless of any opinion you may have about what the law may be — or should be — it would be a violation of your oaths as jurors to base your verdict upon any other view of the law than that given to you in these instructions.

If any of the lawyers have stated a legal principle that differs from any that I state to you in my instructions, you must be guided solely by what I instruct you about the law. You should not single out any one instruction as alone stating the law, but should consider my instructions as a whole.

4

### b. PRESUMPTION OF INNOCENCE AND BURDEN OF PROOF

The defendant has pleaded not guilty to the charges in the Indictment. To convict the defendant, the burden is on the government to prove the defendant's guilt of each element of each charge beyond a reasonable doubt.

The government's burden to prove the defendant guilty beyond a reasonable doubt never shifts to the defendant, because the law presumes the defendant to be innocent and never imposes upon the defendant in a criminal case the burden or duty of calling any witness, or producing any evidence. The law presumes the defendant to be innocent of all the charges, and he must be presumed by you to be innocent throughout your deliberations. Only if you, as a jury, are satisfied that the government has proved the defendant guilty beyond a reasonable doubt of the particular charge you are considering will this presumption cease to operate. If the government fails to prove the defendant guilty beyond a reasonable doubt, you must find him not guilty. The presumption of innocence alone is sufficient to require that result unless you, as jurors, are unanimously convinced beyond a reasonable doubt of his guilt.

### c. REASONABLE DOUBT

You may be wondering what constitutes reasonable doubt. Reasonable doubt is a doubt based upon reason and common sense. It is a doubt that a reasonable person has after carefully weighing all of the evidence. It is a doubt that would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.

A reasonable doubt is not caprice (impulse) or whim. It is not speculation or suspicion. It is not an excuse to avoid the performance of an unpleasant duty. And it is not sympathy.

The law does not require that the government prove guilt beyond all possible doubt; proof beyond a reasonable doubt is sufficient to convict.

If, after fair and impartial consideration of all of the evidence you have a reasonable doubt as to the defendant's guilt with respect to the particular charge you are considering, it is your duty to acquit the defendant of that charge. On the other hand, if after fair and impartial consideration of all the evidence you are satisfied beyond a reasonable doubt of the defendant's guilt with respect to a particular charge against him, you should find the defendant guilty of that charge.

### d.   THE DEFINITION OF EVIDENCE

As I have already instructed you, your verdict in this case must be based only on the evidence in the case. You must determine the facts in this case based solely on the evidence presented, or those inferences which can reasonably be drawn from the evidence presented. In determining the facts, it is your own recollection of the evidence that controls.

Evidence has been presented to you in the form of (1) sworn testimony of the witnesses, both on direct and cross-examination; (2) documentary exhibits that have been received in evidence by me; and (3) stipulations by the parties that certain facts are to be considered proven. In addition, as I instructed you, certain evidence is admissible only for a limited purpose.

Certain things are not evidence and are to be entirely disregarded by you in deciding what the facts are. The Indictment is not evidence. It merely describes the charges made against the defendant. It is an accusation. It may not be considered by you as evidence of the guilt of the defendant. Arguments, objections, statements or summations by the lawyers are not evidence. Objections to the questions or to the offered exhibits; and any testimony that has been excluded,

6

stricken, or that you have been instructed to disregard. Anything I may have said or done is not

evidence. Anything you may have seen or heard outside the courtroom is not evidence.

### e. DIRECT AND CIRCUMSTANTIAL EVIDENCE

As I mentioned in my opening instructions, there are, generally speaking, two types of

evidence: direct evidence and circumstantial evidence. You may use both types of evidence in

reaching your verdict in this case. There is no distinction between the weight to be given to

these two types of evidence. You must base your verdict on a reasonable assessment of all of the

evidence in the case.

Direct evidence is testimony from a witness about something he or she knows by virtue

of his or her senses --- something he or she has seen, felt, touched, tasted, or heard.

Circumstantial evidence is proof of a chain of circumstances that point to the existence or

nonexistence of certain facts. A simple example of circumstantial evidence is as follows:

Suppose you came to court on a day when the weather was clear, sunny, and dry. However, after

several hours in the courtroom where there are no windows, you observe a person entering the

courtroom wearing a wet raincoat and another person shaking a wet umbrella. Since you cannot

look outside, you would not have direct evidence that it rained. But, you might infer from the

circumstances you observed that while you were sitting in the courtroom, it rained outdoors.

That is all there is to circumstantial evidence: On the basis of reason, experience, and common

sense, you infer the existence or nonexistence of a fact from one or more established facts.

You are permitted to draw from the facts that you find to have been proven, such

reasonable inferences as would be justified in light of your experience. Inferences are

deductions or conclusions that reason and common sense lead you, the jury, to draw from the

facts that have been established by the evidence in the case. Use your common sense in drawing inferences; however, you are not permitted to engage in mere guesswork or speculation.

There are times when differing inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The government asks you to draw one set of inferences, while the defendant asks you to draw another set of inferences. It is for you, and you alone, to decide what inferences you will draw.

The law makes no distinction between direct and circumstantial evidence. You may consider both. What the law does require is that before the defendant is convicted of a crime, a jury be satisfied of the defendant's guilt beyond a reasonable doubt based on its assessment of all of the evidence in the case.

No significance should be attached to the fact that a document, other exhibit, or witness testimony was introduced by one party rather than by the other party. Any party is entitled to the benefit of any evidence tending to establish its contentions, even though such evidence may have come from witnesses or documents introduced by another party. In deciding the factual issues presented in this case, the test is not which side brings the greater number of witnesses, or presents the greater quantity of evidence, but which witnesses and evidence appeal to your minds as being most accurate and trustworthy.

### f. WITNESS CREDIBILITY

In deciding what the facts are in this case, you must consider all of the evidence that has been offered. In doing this, you must decide which testimony to believe and which testimony not to believe. You the jury are the sole judges of the credibility — or believability — of the witnesses and the weight their testimony deserves. You should carefully examine all the

evidence and the circumstances under which each witness testified, and every matter in evidence that tends to show whether a witness is worthy of your belief.

Your decisions in this regard may depend on how the witness impressed you. Was the witness candid and forthright, or did he or she seem to be hiding something or being evasive or suspect in some way? How did the witness's testimony on direct examination compare with the witness's testimony on cross-examination? Was the witness consistent in the testimony given or were there contradictions? Did the witness appear to know what he or she was talking about and did the witness strike you as someone who was trying to report that knowledge accurately?

How much you choose to believe any witness may also be influenced by any bias that you may perceive the witness to have. Does the witness have a relationship with the government or the defendant that may affect how the witness testified? Does the witness have some incentive, loyalty, or motive that might cause the witness to shade the truth? Or, does the witness have some bias, prejudice, or hostility that may have caused the witness – consciously or not – to give you something other than a completely accurate account of the facts he or she testified about? Evidence that a witness may be biased towards one of the parties requires you to view that witness's testimony with caution, to weigh it with great care, and to subject it to close scrutiny.

How much you believe a witness may also be influenced by any interest that the witness may have in the outcome of the case. If a witness may benefit in some way from the outcome of the case, that interest may create a motive to testify falsely in order to advance that witness's own interests. This is not to suggest that every witness who has an interest in the outcome of the case will testify falsely. It is for you to decide to what extent, if at all, the witness's interest has affected or colored the witness's testimony.

Even if you think a particular witness was impartial, you should consider whether the witness had an opportunity to observe the facts that the witness testified about, and the witness's ability to express himself or herself.  Ask yourselves whether a witness's recollection of the facts stands up in light of all other evidence.

In other words, what you must try to do in deciding credibility is to size a person up in light of their demeanor, the explanations given, and in light of all the other evidence in the case, just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and has an accurate recollection.  You should be guided by your common sense, your good judgment, and your experience.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony.  In weighing the effects of a discrepancy, you should consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from an innocent error or intentional falsehood.

If you find that any statement made by a witness on the stand is false, in whole or in part, you may disregard the particular part you find to be false or you may disregard his or her entire testimony as not worthy of belief.

### g.    TESTIMONY OF DEFENDANT

The defendant did not testify in this case.  Under our Constitution, he has no obligation to testify or to present any other evidence because it is the government's burden to prove his guilt beyond a reasonable doubt.  You may not attach any significance to the fact that the defendant did not testify.  Nor may you draw any adverse inference against the defendant because he did

not take the witness stand.  In your deliberations in the jury room, you may not consider this decision against the defendant in any way.

### h.   TESTIMONY OF LAW ENFORCEMENT WITNESSES

During the trial, you heard the testimony of law enforcement witnesses.  The fact that a witness is or was employed as a law enforcement official does not mean that his or her testimony is deserving of more or less consideration, or greater or lesser weight, than that of non-law enforcement witnesses.  It is for you to decide, after reviewing all the evidence and weighing that evidence, and in light of the instructions I have given you about the factors relevant to determining the credibility of any witness, whether to credit the testimony of the law enforcement witnesses, and what weight, if any, to give that testimony.

### i.   TESTIMONY OF EXPERT WITNESS

During the trial, I permitted a witness to express his opinion as an expert witness about matters at issue in the trial.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts. In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all of the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own

11

reason, judgment, and common sense. The determination of the facts in this case rests solely with you.

### j.   TESTIMONY OF COOPERATING WITNESS

In the attorneys' opening and closing arguments, much was said about the so-called "cooperating witness" and about whether or not you should believe him. The government argues, as it is permitted to do, that it must take the witnesses as it finds them. It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others. For those very reasons, the law allows the use of accomplice and co-conspirator testimony. Indeed, it is the law in federal courts that the testimony of a single accomplice or co-conspirator may be enough in and of itself to sustain a conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that cooperator testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony, if any, to believe. I have given you some general considerations on credibility and I will not repeat them all here. Nor will I repeat all of the arguments made on both sides. Instead, I will say a few things that you may want to consider during your deliberations on the subject of cooperating witnesses. You should ask yourselves whether the witness would benefit more by lying or by telling the truth. Was the testimony made up in any way because the witness believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did the witness believe that his interests would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was this motivation one that would cause him to lie, or was it one that would cause him to tell the truth? Did this motivation color his testimony at all?

You have also heard testimony that the cooperating witness has been promised that if he provides substantial assistance to the government and testifies truthfully, completely, and fully, the government will present to the sentencing court what is called a 5K1.1 letter, or a "5K letter." The 5K letter sets forth the cooperating witness's criminal acts as well as the substantial assistance the witness has provided. I instruct you that the 5K letter does not guarantee the cooperating witness a lower sentence. This is because the sentencing court may, but is not required to, take the 5K letter into account when imposing sentence on the cooperating witness. Thus, while the decision regarding whether to write the 5K letter rests with the government, the final determination as to the sentence to be imposed rests with the court. Ultimately, you should look at all of the evidence in deciding what credence and what weight you give to the cooperating witness.

### k. WITNESS INTERVIEWS

There was testimony at trial that the attorneys for the government interviewed witnesses when preparing for and during the course of the trial. There is nothing inappropriate about such meetings. Attorneys have an obligation to prepare their case as thoroughly as possible and, in the discharge of that responsibility, to interview witnesses. However, you may consider the frequency and duration of these preparation sessions, and the impact they may have had on the witness's testimony, in evaluating the credibility of the witness.

### l. NO PARTICULAR PROOF OR SPECIFIC INVESTIGATIVE TECHNIQUES REQUIRED

A party is not required to call a particular witness or offer any specific item or types of evidence. You may have heard argument about types of evidence that were not introduced in this case. While the defense is permitted to argue that there is a lack of certain evidence, you should not speculate on whether such evidence exists or what such evidence might have shown.

Relatedly, I instruct you that there is no legal requirement that the government use any specific investigative techniques to prove its case. Law enforcement techniques are not your concern. Your concern is to determine whether or not, based upon all of the evidence in this case, the government has proven that the defendant is guilty beyond a reasonable doubt as to each count charged in the Indictment.

### m.  ALL AVAILABLE EVIDENCE NEED NOT BE PRODUCED

Although the government bears the burden of proof, the law does not require the government to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the issues in this case. Nor does the law require the government to produce as exhibits all things mentioned during the course of the trial.

Again, your concern is to determine whether or not, on the evidence presented, the defendant's guilt has been proved beyond a reasonable doubt.

### n.  AUDIO RECORDINGS AND ENGLISH-LANGUAGE TRANSCRIPTS

The government has offered evidence in the form of recording of conversations. These recordings were made by a bank in the course of its business. The government has also offered evidence in the form of transcripts, portions of which include translations of foreign languages. The transcripts are therefore, in part, translations of the recordings. The translated portions of the transcripts are evidence for you to consider so that you can understand the recordings. You may consider these transcripts like any other evidence in this case.

### o.  PRIOR INCONSISTENT STATEMENTS

You have heard evidence that a witness or witnesses made a statement on an earlier occasion that counsel argues is inconsistent with the witness's trial testimony. Evidence of the

14

prior inconsistent statement was placed before you for the limited purpose of helping you to decide whether to believe the trial testimony of the witness who is claimed to have contradicted him or herself. If you find that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all of the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much weight, if any, to give to the inconsistency in determining whether to believe all or part of the witness's testimony.

### p. CHARTS AND SUMMARIES

The parties presented exhibits in the form of charts and summaries. These charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence. They are no better than the documents upon which they are based, and are not themselves independent evidence. Therefore, you are to give no greater consideration to these charts, schedules or summaries than you would give to the evidence upon which they are based. It is for you to decide whether the charts, schedules or summaries correctly present the information contained in the testimony and in the exhibits on which they are based. You are entitled to consider the charts, schedules, and summaries if you find that they are of assistance to you in analyzing and understanding the evidence.

### q.   DEMONSTRATIVE EXHIBITS

The parties have shown you demonstrative exhibits in the form of flowcharts, organizational charts, and diagrams.  Those demonstrative exhibits do not constitute evidence, but are simply visual depictions that the parties have used in an effort to summarize the evidence in order to aid the jury.  It is for you, the jury, to decide whether a demonstrative exhibit in fact accurately summarizes the evidence.

### r.   STIPULATIONS

A stipulation of a fact is an agreement among the parties that a certain fact is true.  You should regard such agreed facts as true.

A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony.  You must accept as true the fact that the witness would have given that testimony in court.  However, it is for you to determine the effect to be given that testimony.

### s.   REDACTIONS

Among the exhibits received in evidence, some documents have been redacted. "Redacted" means that part of the document was taken out or covered up.  You are to concern yourself only with the part of the item that has been admitted into evidence.  You should not consider any possible reason why any other part of it has been deleted or covered up.

### t.   GUILTY PLEAS OF OTHER INDIVIDUALS

You have heard testimony from a witness who pleaded guilty to charges arising out of the same facts as this case.  You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the defendant on trial from the fact that another individual pleaded guilty to similar charges.  The decision to plead guilty was a personal decision about that

individual's own guilt. The decision may not be used by you in any way as evidence against the defendant on trial.

### u.   EVIDENCE CONSIDERED FOR LIMITED PURPOSE

In this case, you saw evidence of chats between Jho Low and Tim Leissner after 2014. This evidence should only be considered for a limited purpose. You are not to consider the chats between Jho Low and Tim Leissner for the truth of any assertions in the chats. Instead, you may consider these chats only in evaluating the state of mind of Jho Low and Tim Leissner. Any reference in the chats by Jho Low or Tim Leissner to investigations conducted in other countries, cannot be considered by you as evidence that the defendant did anything wrong either in that other country or in connection with the charges here.

You also heard testimony from Caroline Fraser about certain policies and training programs of Goldman Sachs. I remind you that the defendant is not charged with violating Goldman Sachs' policies. Moreover, it is not a crime to violate a policy. This testimony was offered for a limited purpose only. You may consider this evidence along with the other evidence in the case in determining whether the defendant had the intent to commit any of the crimes that are charged.

### v.   OTHER PERSONS NOT ON TRIAL

You have heard testimony and statements by counsel about the involvement of certain other people in the conduct referred to in the Indictment, besides the defendant and certain witnesses. You may not draw any inference, favorable or unfavorable, toward the government or the defendant from the fact that certain persons are not on trial before you. That these individuals are not on trial before you is not your concern. You should neither speculate as to the reason these people are not on trial before you nor allow their absence as parties to influence

in any way your deliberations in this case. Nor should you draw any inference from the fact that any other person is not present at this trial. Your concern is solely the defendant on trial before you.

Do not speculate about the reasons for that. The only issue in this case is whether the government has proven the charges against this defendant beyond a reasonable doubt.

### w.   UNCALLED WITNESSES EQUALLY AVAILABLE

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify. I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called. Their absence should not affect your judgment in any way.

You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

### x.   PUNISHMENT

The question of possible punishment of a defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations. The duty of imposing a sentence on a defendant rests exclusively on the court. Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment that may be imposed upon the defendant, if he is convicted, to influence your verdict in any way or enter into your deliberations in any sense.

### y. PROOF OF MOTIVE IS NOT NECESSARY

Proof of motive is not a necessary element of any of the crimes with which the defendant is charged. Proof of motive does not establish guilt, nor does the lack of proof of motive establish that the defendant is not guilty. If all the elements of a crime are proven beyond a reasonable doubt, it is immaterial what a defendant's motive for the crime may be, or whether the defendant's motive was shown at all. The presence or absence of motive is, however, a circumstance which you may consider as bearing on the intent of the defendant.

### z. NO SYMPATHY OR BIAS

In determining the issues of fact and rendering a verdict in this case, you should perform your duty with complete impartiality and without bias, sympathy, or prejudice as to any party. All parties are equal before the law and are entitled to the same fair consideration. The court expects that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

### aa. RACE, RELIGION, NATIONAL ORIGIN, SEX OR AGE / NATURE OF CRIME

It would be improper for you to consider any personal feelings you may have about the defendant's race, religion, national origin, sex or age.

It would be equally improper for you to allow any feelings you might have about the nature of the crimes charged against the defendant to influence you in any way.

The parties in this case are entitled to a trial free from prejudice. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

## II.   THE CHARGES

I will now turn to the second part of this charge and instruct you as to the elements the government must prove beyond a reasonable doubt with regard to each crime.

### a.   THE INDICTMENT

The defendant is formally charged in a superseding indictment which I will simply call the Indictment.  As I instructed you at the outset of the case, an indictment is a charge or accusation.  The Indictment in this case contains three separate counts and you will be called upon to render a separate verdict on each of them.  Count One charges conspiracy to violate the Foreign Corrupt Practices Act , which I will refer to as the FCPA, through bribery;  Count Two charges conspiracy to violate the FCPA through the circumvention of internal accounting controls; and Count Three charges conspiracy to commit money laundering.  As I instructed you at the outset of this case, the Indictment is a charge or accusation.

### b.   VENUE

The Indictment alleges that the crimes charged occurred in part in this judicial district, which is the Eastern District of New York.  This district encompasses the boroughs of Brooklyn, Queens, and Staten Island, as well as Nassau and Suffolk Counties on Long Island, and the waters within Manhattan and the Bronx, which include the waters surrounding the island of Manhattan that separate Manhattan from the other boroughs of New York City and from the State of New Jersey, as well as the air space above the district or the waters in the district.

To establish that venue for a charged crime is appropriate in this district, the government must prove that some act in furtherance of the crime occurred here, in the Eastern District of New York.  This means that with respect to each crime charged, even if other acts were committed outside this district or if the crime was completed elsewhere, venue is established in

the Eastern District of New York so long as some act in furtherance of the crime took place in this district. Indeed, a defendant need not personally have been present in the district for venue to be proper. Venue turns on whether any part of the crime or any act in furtherance of the offense was committed in the district. Venue is proper in a district where the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur or where it is foreseeable that such an act would occur in the district. In a conspiracy, such as those charged in Counts One, Two, and Three, actions of coconspirators, as well as actions caused by coconspirators, may be sufficient to confer venue if it was reasonably foreseeable to the defendant that the acts would occur in the Eastern District of New York.

In determining whether some act in furtherance of the crime you are considering occurred in the Eastern District of New York, you may consider a number of things. Venue can be conferred based on physical presence or conduct, and passing through a district, including through or over waters, is sufficient to confer venue. Venue can also be based on electronic impulses, including email communications and electronic transfers of funds such as banking transfers, passing through a district. Venue lies in any district where electronic communications are sent or received and any district through which electronic communications are routed. Venue is proper where a telephonic communication in furtherance of a crime was made and where it was received. The government need not prove all of these bases of venue; any one is sufficient.

While the government's burden as to everything else in the case is proof beyond a reasonable doubt, a standard that I have already explained to you, the government must prove venue by the lesser standard of preponderance of the evidence. To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not. A

preponderance of the evidence means the greater weight of the evidence, both direct and circumstantial.

### c. DATES APPROXIMATE

The Indictment charges "in or about" and "on or about" and "between" certain dates. The government need not establish with certainty the exact dates of an alleged offense. It is sufficient if the evidence establishes beyond a reasonable doubt that the defendant committed the offenses on dates reasonably near the dates alleged.

### d. KNOWLEDGE, WILLFULLNESS, AND INTENT

During these instructions you will hear me use the terms "knowingly," "willfully," and "intentionally." I will therefore define these terms.

#### i. KNOWINGLY

Certain allegations in the Indictment require that in order to sustain its burden of proof, the government must prove that a defendant acted "knowingly." A defendant acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. Whether the defendant acted knowingly may be proven by his conduct and by all of the facts and circumstances surrounding the case.

#### ii. WILLFULLY

Certain allegations in the Indictment require that in order to sustain its burden of proof, the government must prove that a defendant acted "willfully." Willfully means to act knowingly and purposefully, with an intent to do something the law forbids; that is to say, with a bad purpose either to disobey or to disregard the law. However, the government need not prove that the defendant knew that he was breaking any particular law or any particular rule or was aware

of any particular law or particular rule.  The government must only show that the defendant was

aware of the generally unlawful nature of his acts.

### iii.  INTENTIONALLY

Certain allegations in the Indictment require that in order to sustain its burden of proof,

the government must prove that a defendant acted "intentionally."  Before you can find that a

defendant acted intentionally, you must be satisfied beyond a reasonable doubt that the defendant

acted deliberately and purposefully.  That is, the defendant's acts must have been the product of

his conscious objective, rather than the product of a mistake or accident.  A defendant need not

be aware of the specific law that his conduct may have violated.

These issues of knowledge, willfulness, and intent require you to make a determination

about the defendant's state of mind, something that rarely can be proved directly.  A wise and

careful consideration of all the circumstances of the case may, however, permit you to make such

a determination as to the defendant's state of mind.  Indeed, in your everyday affairs, you are

frequently called upon to determine a person's state of mind from his or her words and actions in

a particular circumstance.  You are asked to do the same here.  Whether a person acted

knowingly, willfully, or intentionally is a question of fact for you to determine, like any other

fact question.

### e.  CONSPIRACY GENERALLY

A conspiracy is a kind of criminal partnership — a combination or agreement of two or

more persons joining together to accomplish some unlawful purpose.  The crime of conspiracy to

violate a federal law is an independent offense.  It is separate and distinct from the actual

violation of any specific federal laws, which the law refers to as "substantive crimes."

Indeed, you may find the defendant guilty of the crime of conspiracy to commit an

offense against the United States even though the substantive crime that was the object of the

conspiracy was not actually committed. The defendant is not charged with the substantive crime of violating the FCPA or the money laundering laws, he is charged only with conspiracy to violate the FCPA and money laundering conspiracy.

Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful. This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct, and increases the likelihood of success of a particular criminal venture.

### f.  CO-CONSPIRATOR STATEMENTS AND CRIMINAL LIABILITY

All of the charges against the defendant allege that he participated in conspiracies. In that regard, I admitted into evidence against the defendant the acts and statements of others because these acts and statements were committed by persons who, the government charges, were also co-conspirators of the defendant.

The reason for allowing this evidence to be received against the defendant has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. As in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements, and omissions of any member of the conspiracy, and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements, and omissions.

Thus, if you find beyond a reasonable doubt that the defendant was a member of a conspiracy charged in the Indictment, then any acts done or statements made in furtherance of

the conspiracy by persons also found by you to have been members of that conspiracy at the time those acts were committed or statements were made may be considered against the defendant so long as the acts or statements were reasonably foreseeable to the defendant. This is so even if such acts were done and statements were made in the defendant's absence and without his knowledge.

However, before you may consider the statements or acts of a co-conspirator in deciding the issue of a defendant's guilt, you must first determine that the acts and statements were made during the existence of, and in furtherance of, the unlawful scheme. If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy, or if they were not done or said in furtherance of the conspiracy, they may not be considered by you as evidence against the defendant.

### g. COUNT ONE: CONSPIRACY TO VIOLATE THE FCPA BRIBERY PROVISION

As I mentioned earlier, the defendant is charged in Count One with conspiracy to violate the FCPA through bribery. Count One of the Indictment reads as follows:

> In or about and between January 2009 and October 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant[] . . . NG CHONG HWA, also known as "Roger Ng," together with others, did knowingly and willfully conspire to commit offenses against the United States, namely:
>
> (a) being an employee and agent of an issuer, and a stockholder thereof acting on behalf of such issuer, to corruptly make use of the mails and means and instrumentalities of interstate commerce in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value, to one or more foreign officials, and to one or more persons, while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised to one or more foreign officials, for purposes of: (i) influencing acts and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign

official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Goldman Sachs Group and others in obtaining and retaining business, for and with, and directing business to, NG, LOW, Goldman and others, contrary to the FCPA, Title 15, United States Code, Sections 78dd-1, 78ff(a) and 78ff(c)(2)(a); and

(b) while in the territory of the United States, to corruptly make use of the mails and means and instrumentalities of interstate commerce or to do any other act in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value, to one or more foreign officials, and to one or more persons, while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised to one or more foreign officials, for purposes of: (i) influencing acts and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist the defendant[] and others in obtaining and retaining business, for and with, and directing business to, Goldman, NG, LOW and others, contrary to the FCPA, Title 15, United States Code, Sections 78dd-3 and 78ff(a).

### i. ELEMENTS OF COUNT ONE CONSPIRACY TO VIOLATE THE FCPA THROUGH BRIBES

In order to sustain its burden of proof with respect to the conspiracy charged in Count One, the government must prove beyond a reasonable doubt the following three elements:

First: the existence of the conspiracy charged, that is, an agreement or understanding to violate the FCPA bribery provision, a crime that I will define later;

Second: that the defendant knowingly and willfully became a member of the conspiracy charged; and

Third: that any one of the conspirators -- that is, the defendant or any other member of the conspiracy -- knowingly committed at least one overt act during the life of the conspiracy.

I will now further explain each element.

## 1.  First Element:  The existence of the conspiracy

The first element requires the government to prove beyond a reasonable doubt that two or more persons agreed to work together to accomplish the object of the charged conspiracy.  One person cannot commit a conspiracy alone.  Rather, the proof must convince you that at least two persons joined together in a common criminal scheme.

In order for the government to satisfy this element, you need not find that the alleged members of the conspiracy met together or entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or in writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object was to be accomplished.  What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

You may of course find that the existence of an agreement between two or more persons to disobey or disregard the law has been established by direct proof.  However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the defendant and others involved.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words.  In this regard, you may, in determining whether an agreement existed, consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the person charged to act together to accomplish an unlawful purpose.

27

So, you must first determine whether or not the evidence established beyond a reasonable doubt the existence of the conspiracy charged in the Indictment.  In considering this first element, you should consider all the evidence that has been admitted with respect to the conduct and statements of each alleged co-conspirator, and any inferences that may reasonably be drawn from them.  It is sufficient to establish the existence of the conspiracy, as I have already said, if, from the proof of all the relevant facts and circumstances, you find beyond a reasonable doubt that the minds of at least two alleged co-conspirators met in an understanding way to accomplish, by the means alleged, at least one object of the conspiracy.  I will later explain the charged objects of the conspiracy.

## 2. Second Element: Knowing and willful participation by the defendant

The second element the government must prove beyond a reasonable doubt to establish the conspiracy charged in Count One is that the defendant knowingly and willfully became a member in the conspiracy.

I have already defined those terms and you should apply those definitions here.

If you are satisfied that the conspiracy charged in the Indictment existed, you must next ask yourselves whether the defendant was a member of the conspiracy.  In deciding whether the defendant was in fact a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy.  Did he participate in it with knowledge of its unlawful purpose or purposes and with the specific intention of furthering its business or objective?

These issues of knowledge and willfulness require you to make determinations about the defendant's state of mind, something that rarely can be proved directly.  However, you have before you the evidence of certain acts, conversations, and statements alleged to involve the

defendant and others.  The government contends that these acts, conversations, and statements

show, beyond a reasonable doubt, the defendant's knowledge of the unlawful purpose of the

conspiracy.

It is important for you to note that the defendant's participation in the conspiracy must be

established by independent evidence of his own acts or statements, as well as those of the other

alleged co-conspirators, and the reasonable inferences that may be drawn from them.  The

defendant's knowledge may be inferred from the facts you find proved.  In that connection, I

instruct you that to become a member of the conspiracy, the defendant need not have known the

identities of each and every other member, nor need he have been apprised of all of their

activities.  Moreover, the defendant need not have been fully informed as to all of the details of

the conspiracy in order to justify an inference of knowledge on his part, and need not have

known the full extent of the conspiracy, or all of the activities of all its participants.

Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

The extent of a defendant's participation has no bearing on the issue of a defendant's guilt.  A

defendant need not have joined the conspiracy at the outset.  He may have joined it at any time

— at the beginning, in the middle, or at the end.  A conspirator's liability is not measured by the

extent or duration of his participation. Each member of a conspiracy may perform separate and

distinct acts and may perform them at different times.  Some conspirators play major roles, while

others play minor roles.  An equal role is not what the law requires.  In fact, even a single act

may be sufficient to draw a defendant within the scope of the conspiracy.  The key inquiry is

whether a defendant joined the conspiracy charged with an awareness of at least some of the

basic aims and purposes of the unlawful agreement and with the intent to help it succeed.

I want to caution you, however, that the defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy. A person may know, or be friendly with, a criminal without being a criminal himself. Similarly, mere association with a member of a conspiracy does not make that person a member of the conspiracy, even when that association is coupled with knowledge that a conspiracy is occurring.

In other words, knowledge of a conspiracy, without agreement to participate in it, is not sufficient. Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member. More is required under the law. What is required is that the defendant participated in the conspiracy with knowledge of its unlawful purposes, and with an intent to aid in the accomplishment of its unlawful objectives.

In sum, a defendant, with an understanding of the unlawful nature of the conspiracy, must have intentionally engaged, advised, or assisted in the conspiracy for the purpose of furthering an illegal undertaking. That defendant thereby becomes a knowing and willing participant in the unlawful agreement — that is to say, a conspirator.

A conspiracy, once formed, is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by its members. So, too, once a person is found to be a member of a conspiracy, he or she is presumed to continue membership in the venture until its termination, unless it is shown by some affirmative proof that the person withdrew and disassociated from the conspiracy.

### 3. Third Element of Count One: Overt act

The third element is the requirement of an overt act. To sustain its burden of proof with respect to the conspiracy charged in Count One of the Indictment, the government must prove

beyond a reasonable doubt that at least one overt act was knowingly committed in furtherance of that conspiracy by at least one of the co-conspirators -- either the defendant or any other member of the conspiracy. The defendant need not be the person who committed the act.

Count One of the Indictment describes the following alleged "overt acts":

(a) In or about late February 2012, LOW, NG, Leissner, Loo and others met in London to discuss, among other things, the proposed financing for Project Magnolia, during which LOW discussed the need to pay bribes to government officials in Malaysia and Abu Dhabi to gain their approval for Project Magnolia.

(b) In or around early March 2012, LOW, NG, Leissner and others traveled to Abu Dhabi for meetings with officials of the International Petroleum Investment Company ("IPIC") and Aabar Investments PJS to discuss, among other things, the guarantee for Project Magnolia.

(c) On or about March 25, 2012, LOW, NG, Leissner and others met in Los Angeles, California to discuss, among other things, matters related to Project Magnolia and the acquisition of Tanjong Energy Holdings Sdn. Bhd.

(d) On or about March 26, 2012, LOW, Leissner and others flew on a private jet from Los Angeles, California to Teterboro Airport in Bergen County, New Jersey.

(e) On or about March 26, 2012, LOW, Leissner and others traveled from Teterboro Airport in Bergen County, New Jersey, to New York, New York, transiting through the Eastern District of New York, to attend a meeting in New York, New York to discuss, among other things, Project Magnolia.

(f) On or about April 21, 2012, LOW, NG and Leissner traveled to Singapore, where NG and Leissner met with employees of BSI Bank and discussed, among other things, the due diligence that Goldman had done in connection with Project Magnolia.

(g) On or about May 24, 2012, NG and others caused the Silken Waters Enterprise Limited Incorporated / Victoria Square Capital Limited bank account (the "Silken Waters / Victoria Square Account") to be opened at a bank in Singapore, and the beneficial owner of the account was listed as a relative of NG.

(h) On or about May 29, 2012, LOW and others caused approximately $158 million traceable to the proceeds of Project Magnolia to be transferred via wire from the Blackstone Asia Real Estate Partners bank account through a U.S. correspondent bank to the Vasco Investment Services SA bank account.

(i) On or about June 5, 2012, Leissner sent an email to NG with banking details for the Capital Place Holdings bank account (the "Capital Place Account").

(j) On or about June 14, 2012, NG, Leissner and others caused approximately $17.5 million traceable to the proceeds of Project Magnolia to be transferred from the Capital Place Account to the Silken Waters / Victoria Square Account.

(k) On or about July 16, 2012, an email account in the name of Judy Chan Leissner sent an email to another email account in the name of Judy Chan Leissner, which contained details of a transfer of funds to the Silken Waters / Victoria Square Account and the notation "For Roger."

(l) On or about July 16, 2012, NG, Leissner and others caused approximately $6.9 million traceable to the proceeds of Project Magnolia to be transferred from the Capital Place Account to the Silken Waters / Victoria Square Account.

(m) On or about December 19, 2012, LOW and others caused approximately $5 million traceable to Project Maximus to be transferred from the Blackstone Asia Real Estate Partners bank account to the Capital Place Account.

(n) On or about December 20, 2012, LOW, Leissner and others caused approximately $1 million traceable to the proceeds of Project Maximus to be transferred from the Capital Place Account to the bank account, for which LOW had made the banking referral, of a company beneficially owned and controlled by Terence Geh.

(o) On or about December 27, 2012, an email account in the name of "lim.hweebin@gmail.com" sent an email to the account representative for the Silken Waters / Victoria Square Account attaching three invoices for diamonds and other jewelry—one of which was addressed to Loo—and requesting payment to the jeweler in the amount of approximately $300,500.

(p) On or about July 22, 2013, LOW, Leissner and others caused approximately $6 million traceable to the proceeds of Project Catalyze to be transferred from the World Merit Management bank

Account to a bank account, for which LOW had made the banking referral, of an entity beneficially owned and controlled by Loo.

(q) On or about July 29, 2013, LOW, Leissner and others caused approximately $1 million traceable to the proceeds of Project Catalyze to be transferred from the Capital Place Account to the account of a company beneficially owned and controlled by Vincent Koh.

(r) On or about September 23, 2013, NG, Leissner and others caused approximately $6.5 million in funds to be transferred from a bank account held by Judy Chan Leissner to the Silken Waters / Victoria Square Account.

(s) On or about September 24, 2013, NG, Leissner and others caused approximately $4.2 million in funds traceable to Project Catalyze to be transferred from the Capital Place Account to the Silken Waters / Victoria Square Account.

(t) On or about September 28, 2013, at LOW's request, Lorraine Schwartz, a high-end New York jeweler, met with LOW, Malaysian Prime Minister Haji Mohammad Najib bin Tun Haji Abdul Razak ("Prime Minister Razak") and the wife of Prime Minister Razak at a hotel in New York, New York to show a pink diamond necklace that Lorraine Schwartz had designed for Prime Minister Razak's wife. Approximately three weeks earlier, the pink diamond necklace was purchased using approximately $27.3 million, which funds were sent from a shell company beneficially owned and controlled by LOW and other co-conspirators.

(u) On or about October 10, 2014, LOW, Leissner and others caused approximately $4.1 million to be transferred via wire from the World Merit Management bank account to the U.S. bank account of Lorraine Schwartz, in part, to pay for certain gold jewelry for the wife of Prime Minister Razak.

The government does not need to prove any of these specific overt acts alleged in the Indictment and that I just listed. You may find that overt acts were committed in furtherance of the conspiracy that are not listed above. Ultimately, the only requirement is that one of the members of the conspiracy, again, not necessarily the defendant, has knowingly and willfully taken some step or action in furtherance of the conspiracy during the life of that conspiracy.

In other words, the overt act element is a requirement that the agreement went beyond the mere talking stage, the mere agreement stage. The requirement of an overt act is a requirement that some action be taken during the life of the conspiracy by one of the co-conspirators in order to further that conspiracy.

You need not reach unanimous agreement on whether a particular overt act was committed in furtherance of the conspiracy; you just need to all agree that at least one overt act was so committed.

You should also bear in mind that the overt act, standing alone, may be an innocent, lawful act. Frequently, however, an apparently innocent act loses its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act that in and of itself is criminal or constitutes an objective of the conspiracy.

### ii. ISSUER ASSOCIATION OR ACT IN FURTHERANCE WITHIN THE UNITED STATES TERRITORY

In addition to the three elements described above, the government must also prove beyond a reasonable doubt that the defendant was either: (1) an officer, director, employee, or agent of an issuer, or a stockholder acting on behalf of such issuer, or (2) the defendant was in the territory of the United States when he undertook any act in furtherance of the conspiracy.

An "issuer" is any company that has a class of securities registered under Section 12 of the Securities Exchange Act of 1934 or is required to file periodic reports with the Securities and Exchange Commission. The Indictment alleges that the Goldman Sachs Group was an "issuer," and whether the Goldman Sachs Group was an "issuer" is a factual question for you to resolve.

The terms "officer," "director," and "employee" have their ordinary meanings.

An "agent" is a person who agrees to perform acts or services for another person or company (known as the "principal"). To create an agency relationship, there must be: (1) a manifestation by the principal that the agent will act for it; (2) acceptance by the agent of the undertaking; and (3) an understanding between the agent and the principal that the principal will be in control of the undertaking. The "undertaking" consists of the acts or services which the agent performs on behalf of the principal. Such control need not be present at every moment; its exercise may be attenuated, and it may even be ineffective. Proof of agency need not be in the form of a formal agreement between agent and principal; rather, it may be inferred circumstantially and from the words and actions of the parties involved. One may be an agent for some business purposes and not others.

A "stockholder" is someone who owns a share or shares in a company, especially a corporation.

This requirement may be satisfied if the government proves that the defendant was either an officer, director, employee, or agent of an issuer, or a stockholder acting on behalf of such issuer.

The second way that the government can meet this requirement with regard to Count One is by proving beyond a reasonable doubt that the defendant, while in the territory of the United States, undertook any act in furtherance of the conspiracy. The territory of the United States includes the fifty states and the District of Columbia. Such an act includes the use of the mails or any means or instrumentality of interstate commerce, which I will explain in greater detail below, but it need not be such an act. Rather, the government may meet its burden as to this requirement if it proves that the defendant, while in the territory of the United States, undertook any act in furtherance of the conspiracy.

35

The government must prove either the issuer association or an act in furtherance while in the territory of the United States beyond a reasonable doubt. However, you must all agree on the specific object or objects the conspirators agreed to try to accomplish.

### iii. OBJECTS OF THE CONSPIRACY CHARGED IN COUNT ONE

I will now explain what constitutes violations of the antibribery provisions of the FCPA, which are alleged to be the objects of the conspiracy charged in Count One of the Indictment. The objects of a conspiracy are the illegal goal or goals the co-conspirators agree or hope to achieve. The FCPA's antibribery provisions make it a crime for certain individuals to offer to pay, pay, promise to pay, or authorize the payment of money or anything of value to a foreign official for one or more specified business purposes, which I will explain.

I remind you that the defendant is not charged with actually committing these unlawful acts, but rather with conspiring to commit them. I therefore describe for you the elements of these unlawful acts only so that you can understand what the government must prove was an object or objective of the conspiracy.

The two objects of the conspiracy charged in Count One are:

(1) violating the FCPA's antibribery provisions as an officer, director, employee, or agent of an issuer, or a stockholder thereof acting on behalf of such issuer (the "Issuer Prong") by offering to pay, paying, promising to pay, or authorizing the payment of money or anything of value to a foreign official for one or more specified business purposes, which I will explain; and

(2) violating the FCPA's antibribery provisions while in the territory of the United States (the "Territorial Prong") by offering to pay, paying, promising to pay, or authorizing the payment of money or anything of value to a foreign official for one or more specified business purposes, which I will explain.

In considering the two alleged objects of the conspiracy charged in Count One, you should keep in mind that you need not find that the conspirators agreed to accomplish each of these two objects or goals. Instead, an agreement to accomplish either one of the two objects is sufficient. However, you must all agree on the specific object or objects the conspirators agreed to try to accomplish, and you may find that they agreed to try to accomplish more than one.

If the government fails to prove that either of the two objects was an object of the conspiracy, then you must find the defendant not guilty of Count One. However, if you find that two or more persons agreed to accomplish either of the two objects charged in Count One, the illegal purpose element will be satisfied, regardless of whether or not that object was in fact accomplished — that is, regardless of whether that goal succeeded.

### 1. Object 1: Issuer Prong – Elements and Definitions

The elements of a violation of the FCPA's antibribery provisions under the Issuer Prong are:

First, at relevant times, an individual was an officer, director, employee, or agent of an issuer, or a stockholder thereof acting on behalf of such issuer;

Second, the individual acted corruptly and willfully;

Third, the individual made use of the mails or any means or instrumentality of interstate commerce, such as email, telephone calls, or text or electronic messages, in furtherance of the offense, or such use of the mails or any means or instrumentality of interstate commerce in furtherance of the offense was reasonably foreseeable to the individual;

Fourth, the individual offered, paid, promised to pay, or authorized the payment of money or a gift or of anything of value;

Fifth, that the offer, promise to pay, or authorization of the payment of money or a gift or anything of value was either (a) to a foreign official, or (b) to any other person or entity while the

individual or any member of the alleged conspiracy knew that all or a portion of the payment would be offered, given, or promised, directly or indirectly, to a foreign official;

Sixth, that the payment offered, given, promised or authorized was intended for any one of four purposes: (a) to influence any act or decision of a foreign official in his official capacity; (b) to induce — which means to entice or persuade — such a foreign official to do or omit to do any act in violation of the lawful duty of such foreign official; (c) to secure any improper advantage; or (d) to induce such a foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities; and

Seventh, the payment was made to assist the issuer in obtaining or retaining business for or with, or directing business to, any person or company.

## A. First Element – Issuer Association

The first element is that an individual was either an officer, director, employee, or agent of an issuer — here, Goldman Sachs Group — or a stockholder acting on behalf of such issuer — again, Goldman Sachs Group. I have already defined this element for you in the context of the conspiracy charge, and I instruct you to apply that definition here.

## B. Second Element – "Corruptly" and "Willfully"

The second element is that the individual acted corruptly and willfully.

An act is corruptly done if it is done voluntarily and intentionally and with a bad purpose or evil motive of accomplishing either an unlawful end or result, or a lawful end or result but by some unlawful method or means. The term "corruptly" in the FCPA means that the offer, payment, or promise was intended to induce a foreign official to misuse his or her official position.

I have already defined the term "willfully," and you should apply that definition here. I add only that the individual need not have been aware of the specific provision of the law that he is charged with violating, or any other specific provision.

### C. Third Element – Use of Mails or Instrumentality of Interstate Commerce

The third element is that the individual (1) made use of the mails or any other means or instrumentality of interstate commerce, in furtherance of the offer, payment, promise to pay, or authorization of payment, or (2) such use of the mails or any means or instrumentality of interstate commerce in furtherance of the offer, payment, promise to pay, or authorization of payment was reasonably foreseeable to the individual.

The term "interstate commerce" means trade, commerce, transportation, or communication among the several states, or between any foreign country and any state, or between any state and any place outside thereof, and such term includes intrastate use of (a) telephones or other means of communication, such as email, text messages, electronic messenger applications or faxes, between the states or between the United States and a foreign country, or a transfer of money by wire between states or between the United States and a foreign country; or (b) any other interstate commerce instrumentality. If such mechanisms as trade, transportation, and communication are utilized by persons in goods passing between various states, or between the United States and a foreign country, they are instrumentalities of interstate commerce. I instruct you that, as a matter of law, sending an international wire transfer through a U.S. bank constitutes the use of a means or instrumentality of interstate commerce.

It is not necessary for the individual to be directly or personally involved in the charged wire, as long as the wire was reasonably foreseeable in the execution of the alleged bribery

scheme. A wire may be reasonably foreseeable where, among other circumstances, the use of a wire would occur in the ordinary course of business.

### D. Fourth Element – Offer, Promise or Payment of Anything of Value

The fourth element is that the individual offered, paid, promised to pay, or authorized the payment of money or a gift or anything of value. A "thing of value" can take any form, including cash, check, wire transfer, gifts, donations, contributions, or anything else. It is not required that the individual provide or offer the thing of value himself. Rather, an individual who engages in bribery of a foreign official indirectly, through any other person or entity, is liable under the FCPA just as if the individual himself had engaged in the bribery directly. Thus, if the individual authorized another person to pay a bribe, that authorization alone is sufficient for you to find that this element has been proved.

Furthermore, it is not necessary that the payment actually take place. Instead, it is the offer or the authorization that completes the crime. This element is satisfied if you find that the individual promised or authorized an unlawful payment, even if you believe that the payment was not actually made. It is sufficient simply if the individual believed that a bribe would be offered or paid or that he promised or authorized the offer or payment.

### E. Fifth Element – Foreign Official

The fifth element is that the offer to pay, payment, promise to pay, or authorization of payment was to a foreign official, or to any other person or entity, while the individual knew that all or a portion of the payment or gift would be offered, given, or promised, directly or indirectly, to a foreign official.

I have already defined the term "knowingly," and you are instructed to apply that definition here. I also add that a person's state of mind is knowing with respect to conduct, a

40

circumstance, or result if: (1) such a person is aware that such person is engaging in such conduct, that such circumstance exists, or that such result is substantially certain to occur; or (2) such person has a firm belief that such circumstance exists or such result is substantially certain to occur.  A person is deemed to have knowledge of a circumstance if the evidence shows that he or she was aware of a high probability of the existence of such circumstance, unless he or she actually believes that such circumstance does not exist.

The term "foreign official" means any official or employee of a foreign government, or any department, agency, or instrumentality thereof, or of a public international organization, or any person acting in an official capacity for or on behalf of such government or department, agency or instrumentality thereof, or for or on behalf of any such public international organization.

An "instrumentality" of a foreign government is an entity controlled by the government of a foreign country that performs a function the government treats as its own.  The parties have stipulated that 1MDB, IPIC, and Aabar were each controlled by a foreign government, and each performed a function that the foreign government treated as its own.

### F.   Sixth Element – Offer, Promise, Payment or Authorization Intended for One of the Charged Purposes

The sixth element is that the offer, promise, payment or authorization was intended for any one of four purposes: (a) to influence any act or decision of a foreign official in his official capacity; (b) to induce such a foreign official to do or omit to do any act in violation of the lawful duty of such foreign official; (c) to secure any improper advantage; or (d) to induce such a foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities.

41

The offer to pay, payment, promise to pay, or authorization of payment does not need to have been for all of these purposes. If the offer to pay, payment, promise to pay, or authorization of payment was for any of these purposes, or more than one, this element has been met.

### G. Seventh Element – Obtaining or Retaining Business

The seventh and final element is that the offer, promise, payment or authorization was made to assist the issuer — that is, Goldman Sachs Group — in obtaining or retaining business for or with, or directing business to, any person or company. "Obtain business" has its normal meaning, that is, to get, to acquire, or to secure a person or company's business. "Retain business" also has its normal meaning, that is, to keep or continue to have a person or company's business.

It is not necessary that any person or company actually obtained or retained any business as a result of the unlawful offer, payment, promise, or gift, only that the defendant intended to assist the issuer, Goldman Sachs Group, in obtaining or retaining business for or with any person or company.

### 2. Object 2: Territorial Prong – Elements and Definitions

The elements of a violation of the FCPA's antibribery provisions under the Territorial Prong are:

First, an individual was *not* an issuer or a domestic concern;

Second, the individual acted corruptly and willfully;

Third, the individual, while physically in the territory of the United States, used the mails or any means or instrumentality of interstate commerce, or did any other act, in furtherance of the offense;

Fourth, the individual offered, paid, promised to pay, or authorized the payment of money or a gift or of anything of value;

42

Fifth, that the offer, payment, promise to pay, or authorization of the payment of money or a gift or anything of value was either (a) to a foreign official, or (b) to any other person or entity while the individual or any member of the alleged conspiracy knew that all or a portion of the payment would be offered, given, or promised, directly or indirectly, to a foreign official;

Sixth, that the payment offered, given, promised or authorized was intended for any one of four purposes relevant to this action: (a) to influence any act or decision of a foreign official in his official capacity; (b) to induce such a foreign official to do or omit to do any act in violation of the lawful duty of such foreign official; (c) to secure any improper advantage; or (d) to induce such a foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities; and

Seventh, the offer, payment, promise or authorization was made to assist the defendant, Low, and others in obtaining or retaining business for or with, or directing business to, any person or company, such as Goldman.

As you can see, many of the same elements that apply to a violation of the FCPA under the Issuer Prong (the first object of the conspiracy) also apply to a violation under the Territorial Prong (the second object of the conspiracy). The main differences are that, under the second object, (i) the individual must have engaged in any act in furtherance of a corrupt payment, offer, promise, or authorization to pay while physically in the territory of the United States, and (ii) there is no requirement that the individual made use of the mails or any means or instrumentality of interstate commerce.

43

### A. First Element – Not an Issuer or Domestic Concern

The first element is that an individual was not himself an "issuer" or a "domestic concern." I have already defined the term "issuer," and you should apply that definition here. A "domestic concern" is a citizen, national, or resident of the United States at the time of the charged events. As explained above, even if the individual is not himself an issuer, the individual could still have been an officer, director, employee, or agent of an issuer.

### B. Second Element – "Corruptly" and "Willfully"

The second element is that the individual acted corruptly and willfully. I have already defined these terms and you are instructed to apply those definitions here.

### C. Third Element – Act in Furtherance Within the Territory of the United States

The third element is that the individual, while physically in the territory of the United States, made use of the mails or any means or instrumentality of interstate commerce, or did any other act, in furtherance of a corrupt payment or offer. The territory of the United States includes the fifty states and the District of Columbia. I explained earlier what it means to make use of the mails or any means or instrumentality of interstate commerce. Bear in mind that unlike the "issuer" object of the conspiracy, which requires that the individual made use of the mails or any means or instrumentality of interstate commerce, this object of the conspiracy does not require such proof. Rather, it is sufficient that the individual, while in the territory of the United States, took any act (regardless of whether it involved the mails or any means or instrumentality of interstate commerce) in furtherance of a corrupt offer or payment.

### D. Fourth Element – Offer, Promise or Payment of Anything of Value

The fourth element is that the individual offered, paid, promised to pay, or authorized the payment of money or a gift or anything of value, as I have already defined. Such offer, payment, promise or authorization need not have occurred in the territory of the United States.

### E. Fifth Element – Foreign Official

The fifth element is that the offer to pay, payment, promise to pay, or authorization of payment was to a foreign official, or to any other person or entity, while the individual knew that all or a portion of the payment or gift would be offered, given, or promised, directly or indirectly, to a foreign official, as I have defined previously.

### F. Sixth Element – Purpose of Offer, Payment, Promise or Authorization

The sixth element is that the offer to pay, payment, promise to pay, or authorization of payment was for one or more of the four purposes I outlined previously.

### G. Seventh Element – Obtaining or Retaining Business

The seventh and final element is that the offer, promise, payment or authorization was made to assist the defendant, Low, and others in obtaining or retaining business for or with, or directing business to, any person or company, such as Goldman, as I have defined earlier.

As I said earlier, it is not necessary that any person or company actually obtained or retained any business whatsoever as a result of an unlawful offer, payment, or gift, only that the defendant intended to assist in obtaining or retaining business for or with any person or company.

I remind you that the government need not prove that the defendant actually violated the FCPA antibribery provisions under either the Issuer Prong or the Territorial Prong, which are the

45

unlawful acts charged as the objects of the conspiracy in Count One. Rather, what the

government must prove beyond a reasonable doubt is that the purpose of the conspiracy was to

violate the FCPA antibribery provisions and that the defendant knowingly and intentionally

joined that conspiracy.

### h. COUNT TWO: CONSPIRACY TO VIOLATE THE FCPA INTERNAL ACCOUNTING CONTROLS PROVISION

I'll now turn to Count Two, which, as I previously explained, charges the defendant with

conspiracy to violate the FCPA through the circumvention of internal accounting controls.

Count Two of the Indictment charges the defendant with conspiracy to violate the FCPA through

circumvention of the internal accounting controls as follows:

> In or about and between January 2009 and May 2014, both dates
> being approximate and inclusive, within the Eastern District of
> New York and elsewhere, the defendant NG CHONG HWA, also
> known as "Roger Ng," together with others, did knowingly and
> willfully conspire to commit offenses against the United States,
> namely, to knowingly and willfully circumvent and cause to be
> circumvented a system of internal accounting controls at Goldman
> Sachs Group, contrary to the FCPA, Title 15, United States Code,
> Sections 78m(b)(2)(B), 78m(b)(5) and 78ff(a).

Section 78m(b)(2)(B) of the FCPA is the statute's "internal accounting controls"

provision, which requires that issuers:

> devise and maintain a system of internal accounting controls
> sufficient to provide reasonable assurances that—(i) transactions are
> executed in accordance with management's general or specific
> authorization; (ii) transactions are recorded as necessary (I) to
> permit preparation of financial statements in conformity with
> generally accepted accounting principles or any other criteria
> applicable to such statements, and (II) to maintain accountability for
> assets; (iii) access to assets is permitted only in accordance with
> management's general or specific authorization; and (iv) the
> recorded accountability for assets is compared with the existing
> assets at reasonable intervals and appropriate action is taken with
> respect to any differences.

15 U.S.C. § 78m(b)(2)(B). The FCPA provides that it is unlawful for any person to knowingly and willfully circumvent a system of internal accounting controls described in Section 78m(b)(2)(B). Under the FCPA, a system of internal accounting controls includes both controls to ensure that a company's financial statements are prepared in conformity with generally accepted accounting principles and controls to address the aspect of management stewardship responsibility that provides shareholders with reasonable assurances that the business is adequately controlled. Internal accounting controls under the FCPA therefore include controls that help ensure that an issuer's financial transactions are executed as authorized by management and that access to the company's assets is permitted only in accordance with management's authorization.

### i. ELEMENTS OF COUNT TWO CONSPIRACY

In order to sustain its burden of proof with respect to the conspiracy charged in Count Two, the government must prove beyond a reasonable doubt the same three elements as with Count One:

First: the existence of the conspiracy charged, that is, an agreement or understanding to violate the FCPA;

Second: that the defendant knowingly and willfully became a member of the conspiracy charged; and

Third: that any one of the conspirators — that is, the defendant or any other member of the conspiracy — knowingly committed at least one overt act during the life of the conspiracy.

I will now further explain each element.

### 1. First Element: The existence of the charged conspiracy

I have already instructed you with regard to this element in my instructions as to Count One. You should apply those instructions here in your consideration of this element as to Count Two.

### 2. Second Element: Knowing and willful participation by the defendant

I have already instructed you with regard to this element in my instructions as to Count One. You should apply those instructions here in your consideration of this element as to Count Two.

### 3. Third Element of Count Two: An overt act

The third element is the requirement of an overt act. I have already instructed you with regard to this element in my instructions as to Count One. You should apply those instructions here in your consideration of this element as to Count Two.

Count Two of the Indictment describes the following alleged "overt acts":

(a) On or about January 15, 2009, a high-ranking official at 1MDB's predecessor entity, TIA, advised LOW, NG and Leissner that it was "best to get [LOW] involve[d] at every stage" of a [Terengganu Investment Authority ("TIA")] transaction that was being handled by Goldman.

(b) On or about January 27, 2009, NG and Leissner discussed via email whether to disclose to the Intelligence Group at Goldman LOW's involvement in the TIA transaction, and decided not to make such disclosure.

(c) On or about April 30, 2011, NG, using a private, non-Goldman email account, forwarded an email from LOW to Leissner at a private, non-Goldman email account, and advised Leissner "this is Roger FYI." The content of the forwarded email from LOW discussed potential business with 1MDB.

(d) On or about May 5, 2011, LOW emailed NG at a private, non-Goldman email account and requested a document related to potential business with 1MDB, and further directed NG "pls do not

state names." NG then forward[ed] that email to Leissner at a private, non-Goldman email account and asked for Leissner's help with that request.

(e) On or about February 7, 2012, LOW emailed Loo at a private, non-1MDB email account, copying NG and Leissner at private, non-Goldman email accounts, as well as another person at an anonymized email account, regarding a draft document in connection with the asset sale related to Project Magnolia. LOW asked NG and Leissner "Any comments?" and wrote "No name pls."

(f) On or about April 4, 2012, Leissner falsely stated in a committee meeting at Goldman attended by NG that LOW was not involved in Project Magnolia other than to set up one meeting with an Abu Dhabi official. The meeting was also attended by committee members and others located in New York, New York using Goldman's telecommunication facilities, which transited through the Eastern District of New York.

(g) On or about May 12, 2012, Leissner, using a private, non-Goldman email account, forwarded an email from LOW to NG at a private, non-Goldman email account, which included a timeline related to closing details for Project Magnolia.

(h) On or about May 18, 2012, a member of the Project Magnolia deal team sent an email to the members of two Goldman committees, among others, in which she stated that "we have now completed all committee follow up items," including various approvals.

The list of overt acts for Count Two is different from the list of overt acts for Count One. However, I remind you that while the government must prove beyond a reasonable doubt that at least one overt act was knowingly committed in furtherance of the conspiracy charged in Count Two by at least one of the co-conspirators – either the defendant or any other member of the conspiracy, the government does not need to prove any of the specific overt acts alleged in the Indictment and above. You should follow all of my instructions as to this element as instructed as to Count One.

### ii.    OBJECT OF THE COUNT TWO CONSPIRACY

As I previously stated, the defendant is not charged with actually committing this unlawful act, but rather with conspiring to commit it.  I therefore describe for you the elements of this unlawful act only so that you can understand what the government must prove was an object of the conspiracy.

### 1.    Elements and Definitions

The elements of a violation of the FCPA's internal accounting controls provision, as charged in Count Two of the Indictment, are that (1) Goldman Sachs maintained a system of internal accounting controls to provide reasonable assurances that (i) transactions are executed in accordance with management's general or specific authorization, or (ii) access to assets is permitted only in accordance with management's general or specific authorization, (2) an individual acted knowingly and willfully, (3) to circumvent an issuer's — in this case, Goldman Sachs Group's system of internal accounting controls.

### A.    <u>First Element – System of internal accounting controls</u>

The first element is that an issuer — here, Goldman Sachs — maintained a system of accounting controls sufficient to provide reasonable assurances that its financial transactions are either (i) executed as authorized by management, or (ii) that access to the company's assets is permitted only in accordance with management's authorization.

 "Reasonable assurances" means a degree of assurance that would satisfy prudent officials in the conduct of their own affairs.

### B.   Second Element – Knowingly and Willfully

The second element is that an individual acted knowingly and willfully to circumvent, as I define next, those accounting controls.  I have already defined the terms "knowingly" and "willfully" for you, you should apply those definitions here.

### C.   Third Element – Circumvention of Internal Accounting Controls

The third element is that the individual acted to circumvent an issuer's system of internal accounting controls.

To "circumvent" means to avoid a restrictive problem, rule, or other restriction, especially by clever and sometimes dishonest means.

I remind you that the government need not prove that the defendant actually violated the FCPA's internal accounting controls provision, the unlawful act charged as the object of the conspiracy in Count Two.  Moreover, the government does not need to prove that Goldman Sachs Group had a particular internal accounting control or system of controls in place that the defendant intended to circumvent because, as I previously instructed you, it is not a defense to a conspiracy charge that the object of the conspiracy could not be achieved.  Rather, what the government must prove beyond a reasonable doubt is that the purpose of the conspiracy was to violate the FCPA's internal accounting controls provision and that the defendant knowingly and intentionally joined that conspiracy.

### i.   COUNT THREE: MONEY LAUNDERING CONSPIRACY

Count Three of the Indictment charges the defendant with conspiracy to commit money laundering as follows:

> In or about and between January 2009 and October 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant[] . . . NG CHONG HWA, also

known as "Roger Ng," together with others, did knowingly and intentionally conspire to:

(a) transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, (i) with the intent to promote the carrying on of one or more specified unlawful activities, to wit: felony violations of the FCPA, Title 15, United States Code, Sections 78dd-l, 78dd-3, 78m(b)(2)(B), 78m(b)(5) and 78ff(a), and offenses against a foreign nation involving bribery of a public official and the misappropriation, theft and embezzlement of public funds by and for the benefit of a public official, in violation of Malaysian law, as defined in Title 18, United States Code, Section 1956(c)(7)(B)(iv), contrary to Title 18, United States Code, Section 1956(a)(2)(A); and (ii) knowing that the monetary instruments and funds involved in the transportation, transmission and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of one or more specified unlawful activities, to wit: felony violations of the FCPA, Title 15, United States Code, Sections 78dd-l, 78dd-3, 78m(b)(2)(B), 78m(b)(5) and 78ff(a), and offenses against a foreign nation involving bribery of a public official and the misappropriation, theft and embezzlement of public funds by and for the benefit of a public official, in violation of Malaysian law, as defined in Title 18, United States Code, Section 1956(c)(7)(B)(iv), contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i); and

(b) engage in one or more monetary transactions within the United States involving criminally derived property of a value greater than $10,000 that was derived from one or more specified unlawful activities, to wit: felony violations of the FCPA, Title 15, United States Code, Sections 78dd-l, 78dd-3, 78m(b)(2)(B), 78m(b)(5) and 78ff(a), and offenses against a foreign nation involving bribery of a public official and the misappropriation, theft and embezzlement of public funds by and for the benefit of a public official, in violation of Malaysian law, as defined in Title 18, United States Code, Section 1956(c)(7)(B)(iv), contrary to Title 18, United States Code, Section 1957(a).

### i.   ELEMENTS OF CONSPIRACY TO COMMIT MONEY LAUNDERING

To prove the crime of conspiracy to commit money laundering, the government must prove two elements beyond a reasonable doubt:

<u>First</u>, the existence of the conspiracy charged, that is, an agreement or understanding to violate a certain law of the United States; and

<u>Second</u>, that the defendant knowingly and willfully became a member of the conspiracy charged with knowledge of, and the intent to further, its unlawful object.

I instructed you regarding these two elements in my instructions for Counts One and Two. Those same instructions apply here, as do my instructions for Counts One and Two concerning liability for acts of co-conspirators.

As you heard me say a moment ago, there are only two elements of Count Three. For this conspiracy count, unlike the conspiracies charged in Counts One and Two, you need <u>not</u> find that an overt act was committed by anyone in furtherance of the conspiracy.

### ii.   OBJECTS OF THE CHARGED CONSPIRACY TO COMMIT MONEY LAUNDERING

The Indictment alleges three objects of the conspiracy charged in Count Three:

(1) to transport, transmit or transfer money internationally with an intent to promote the carrying on of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2)(A);

(2) to transport, transmit or transfer money internationally knowing that the money represented proceeds from some form of unlawful activity and knowing that such transportation, transmission or transfer was designed, at least in part, to conceal or disguise the nature, location, source, ownership or control of the proceeds of one or more specified unlawful activities, in violation of 18 U.S.C. § 1956(a)(2)(B)(i); or

53

(3) to engage in a monetary transaction within the United States involving criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, in violation of 18 U.S.C. § 1957(a).

Thus, the conspiracy charged in Count Three has alleged more than one objective, that is, multiple ways in which the members conspired to commit money laundering. If the government fails to prove that at least one of these three objectives was an object of the conspiracy, then you must find the defendant not guilty of Count Three. The government need not prove that the defendant entered into an agreement to accomplish all three of the unlawful objectives alleged. If you find unanimously that the defendant agreed to commit any one of these three objectives, then this element would be proved.

As was the case with Counts One and Two, however, the defendant is not charged with any of the substantive money laundering crimes that are the objects of the conspiracy. Remember that conspiracy, standing alone, is a separate crime, even if the conspiracy is not successful and even if you find that the defendant never actually committed the substantive crimes that were the objects of the conspiracy.

### iii. OBJECTS OF THE MONEY LAUNDERING CONSPIRACY – ELEMENTS

I will now explain the elements of each of the three objects of the conspiracy charged in Count Three. As was the case for Counts One and Two, I describe for you the elements of these unlawful acts only so you can understand what the government must prove beyond a reasonable doubt was an <u>objective</u> of the conspiracy. However, you must all agree on the specific object or objects the conspirators agreed to try to accomplish, and you may find that they agreed to try to accomplish more than one. You must all find unanimously that the government has proven the same object of the conspiracy beyond a reasonable doubt.

54

In considering the three objects of the conspiracy charged in Count Three, you should keep in mind that you need not find that the conspirators agreed to accomplish all of the three objects or goals. Instead, an agreement to accomplish any one of the three objects is sufficient. If you find that two or more persons agreed to accomplish any one of the three objects charged in Count Three, the illegal purpose element will be satisfied, regardless of whether or not that object was in fact accomplished — that is, regardless of whether that goal succeeded.

1. **Object #1 – Violation of the Money Laundering Statute – International Transfer to Promote Specified Unlawful Activity (§ 1956(a)(2)(A))**

The first object of the money laundering conspiracy charged in Count Three of the Indictment is the transportation, transmission or transfer of funds or monetary instruments to or from the United States, with an intent to promote certain other crimes, known as specified unlawful activity. The relevant statute on this subject is Title 18, United States Code, Section 1956(a)(2)(A), which reads as follows:

> Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity [shall be guilty of a crime].

The elements of a violation of this statute are as follows:

First, that an individual transported or transferred or transmitted, or attempted to transport or transfer or transmit, a monetary instrument or funds from a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place outside the United States.

Second, that the individual did so with the intent to promote the carrying on of specified unlawful activity.

### A. First Element – Transportation of a Monetary Instrument or Funds To or From or Through the United States

The first element is that an individual transported or transferred or transmitted, or attempted to transport or transfer or transmit, a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States.

The term "monetary instrument" means coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, money orders, investment securities in bearer form or otherwise in such form that title thereto passes upon delivery, and negotiable instruments in bearer form or otherwise in such form that title thereto passes upon delivery. The term "funds" refers to money or negotiable paper which can be converted into currency. For this object of the conspiracy, it does not matter whether the monetary instrument or funds at issue were derived from criminal activity.

"Transported" or "transferred" or "transmitted" are not words that require a definition; they have their ordinary, everyday meaning. The individual need not have physically carried funds or monetary instruments in order to prove that he is responsible for transferring or transporting or transmitting. All that is required is that the individual caused the funds or monetary instrument to be transported or transferred or transmitted by another person or entity. To satisfy this element, the funds or monetary instruments must have been transported, transferred or transmitted from somewhere in the United States to or through someplace outside the United States or to someplace in the United States from or through someplace outside the United States. This element is satisfied where funds or monetary instruments were transported, transferred or transmitted into or out of or through United States-based accounts, even where the

56

United States was not the country the funds or monetary instruments were originally coming from or ultimately headed to.

### B. Second Element – Intent to Promote Specified Unlawful Activity

#### (1)  Introduction

The second element is that the individual acted with intent to promote the carrying on of one or more crimes, referred to as a "specified unlawful activity" or "SUA."

I have already explained what it means to act intentionally and you should apply that instruction here.

I instruct you, as a matter of law, that for this object of the conspiracy charged in Count Three, the term "specified unlawful activity" includes:

(i)  violations of the FCPA's antibribery provisions, the object of the conspiracy charged in Count One;

(ii)  violations of the FCPA's internal accounting controls provision, the object of the conspiracy charged in Count Two;

(iii)  bribery of a public official, in violation of one or more of the laws of Malaysia; and

(iv)  the misappropriation of public funds by or for the benefit of a public official, in violation of one or more of the laws of Malaysia.

I have already explained to you the elements of the first two specified unlawful activities: violating the antibribery and internal accounting controls provisions of the FCPA.  I will explain the elements of the third and fourth specified unlawful activities: bribery of a public official and the misappropriation of public funds by or for the benefit of a public official, in violation of one or more of the laws of Malaysia.

Keep in mind, however, as I instructed earlier with respect to the FCPA, the defendant does not need to be aware of the specific provision or provisions of the law that it was the object of the conspiracy to violate, or any other specific provision, provided that he had knowledge that his conduct was, in a general sense, unlawful. You need not find that these activities actually occurred, but merely that the defendant joined the conspiracy with the objective to promote, facilitate or assist them to occur.

### (2) Foreign Bribery and Misappropriation Laws – Malaysia

As noted above, the third and fourth specified unlawful activities involved in the money laundering conspiracy the defendant is charged with are offenses against a foreign nation. The defendant is charged with conspiring to promote the bribery of a public official or the misappropriation of public funds by or for the benefit of a public official, in violation of Malaysian law. I am now going to describe multiple provisions of Malaysian law, but in considering Count Three, you need not find that the defendant intended to promote a violation of all of them. Rather, as I described previously, it is sufficient if you find that he acted with an intent to promote a violation of the FCPA, or a violation of one or more laws of Malaysia, or both.

### (3) Malaysian Anti-Corruption Commission Act 2009

The Malaysian Anti-Corruption Commission Act 2009, or the Malaysian Anti-Corruption Act, prohibits the bribery of both (1) Malaysian public officials and (2) foreign — that is, non-Malaysian — public officials.

### 1. Bribery of Malaysian public officials

In order to be in violation of Section 21 of the Malaysian Anti-Corruption Act, which prohibits bribery of Malaysian public officers, two elements must be proven:

58

First, that an individual offered an officer of a public body any gratification. Under Malaysian law, an "officer of a public body" is defined as any person who is a member, an officer, an employee or a servant of a public body, and includes a member of the administration, a member of Parliament, a member of a State Legislative Assembly, a judge of the High Court, Court of Appeal or Federal Court, and any person receiving any remuneration from public funds. A "public body" includes not only the government of Malaysia, but also any company or subsidiary company over which the government of Malaysia has a controlling power or interest. "Gratification" means any money, donation, gift, loan, fee, reward, valuable security, property, payment, financial benefit, or any other similar advantage, service, favor or valuable consideration of any kind. Because an offer is all that is required, it is not necessary that the individual provided the gratification or that the officer accepted the gratification.

Second, that the individual offered the officer of a public body gratification in exchange for the officer either taking an action or declining to take an action in his capacity as such officer. It is not necessary for the government to prove that the officer actually acted or declined to act in response to the inducement he received, that the officer accepted the gratification intending to take or declining to take the requested act, or that the officer had the power, right, or opportunity to take or decline to take the requested act. Moreover, the inducement need not relate to the affairs of the public body itself. Rather, the element is satisfied if the government proves that the individual offered gratification with the intent to cause the public official to take some action — or decline to take some action — in his capacity as an officer.

## 2. Bribery of foreign public officials

In order to be in violation of Section 22 of the Malaysian Anti-Corruption Act, which prohibits bribery of foreign public officials, meaning public officials outside of Malaysia, two elements must be proven:

First, that an individual, either by himself or in conjunction with others, gave, promised or offered, or agreed to give or offer, to a foreign public official any gratification, as defined previously, whether for the benefit of that foreign public official or of another person. Under Malaysian law, a "foreign public official" includes any person who holds a legislative, executive, administrative or judicial office of a foreign country, meaning a country outside of Malaysia, whether appointed or elected, or any person who exercises a public function for a foreign country, including a person employed by a board, commission, corporation, or other body or authority that is established to perform a duty or function on behalf of the foreign country.

Second, that the individual gave, promised or offered the foreign public official gratification in exchange for the foreign official (a) using his position to influence any act or decision of the state or organization for which he performs his duties; (b) acting or declining to act regarding any of his official duties; or (c) aiding in procuring or preventing the granting of any contract for the benefit of any person. As was the case for the bribery of Malaysian officers, it is not necessary for the government to prove that the foreign public official actually accepted the gratification, that the foreign public official actually acted or declined to act in response to the inducement he received, that the foreign public official accepted the gratification intending to take or decline to take the requested act, or that the foreign public official had the power, right, or opportunity to take or decline to take the requested act. The inducement need not relate to the scope of the foreign public officer's official duties. This element is satisfied if the government proves that the individual gave, promised or offered gratification with the intent to cause the

foreign public official to influence an official decision, act in his official capacity, or affect the granting of a contract to any person.

Section 28 of the Malaysian Anti-Corruption Act also prohibits attempts, preparations, abetments and criminal conspiracies. If an individual (a) attempts to commit any offense under the Act; (b) does any act in preparation for or in furtherance of any offense under the Act; or (c) abets or is engaged in a criminal conspiracy to commit any offense under the Act, he shall be liable as if he committed the substantive offense. To prove this violation under Malaysian Law, the government must prove that the individual attempted to bribe a Malaysian public officer or a foreign public official; did something preparatory to or in furtherance of the bribery of a Malaysian public officer or a foreign public official; abetted the bribery of a Malaysian public officer or a foreign public official; or engaged in a criminal conspiracy to bribe a Malaysian public officer or a foreign public official. Under Malaysian law, "conspiracy" is defined as an agreement between two or more persons to do or cause to be done an illegal act or a legal act through illegal means. A person "abets" something when he instigates someone to do that thing, or when he intentionally aids the doing of that thing.

### (4) <u>Malaysian Penal Code</u>

The Malaysian Penal Code prohibits the criminal misappropriation of property. Section 403 of the Malaysian Penal Code states that whoever dishonestly misappropriates or converts to his own use, or causes any other person to dispose of, any property, shall be punished. "Dishonestly" means doing something with the intention of causing wrongful gain to one person or wrongful loss to another, irrespective of whether the act causes actual wrongful gain or loss. "Wrongful gain" means gain by unlawful means of property to which the person gaining is not entitled, and "wrongful loss" is the loss by unlawful means of property to which the person losing it is legally entitled.

61

Criminal misappropriation under Malaysian law can be proven by three elements:

First, the thing in question constitutes property. "Property" means real or personal property of every description, including money, whether situated in Malaysia or elsewhere, whether tangible or intangible.

Second, the individual misappropriated, converted to his own use or caused another person to dispose of such property; and

Third, the individual acted dishonestly, as defined above, in misappropriating, converting to his own use or causing another person to dispose of the property.

Section 109 of the Malaysian Penal Code also punishes anyone who abets any offense under the Code. A person "abets" something when he instigates someone to do that thing, or when he intentionally aids the doing of that thing.

The Malaysian Penal Code also prohibits criminal conspiracy. Under Section 120A of the Code, a criminal conspiracy has two elements:

First, an agreement between two or more persons;

Second, to commit, or cause to be committed, an illegal act or an act which is legal by illegal means. Criminal conspiracy is a stand-alone crime under Malaysian Law.

In addition, under Section 34 of the Malaysian Penal Code, when a criminal act is done by several individuals in furtherance of a common intention, each such person is liable for that act as if it was done by that person alone.

As I previously instructed you, the fourth specified unlawful activity charged in Count Three is the misappropriation of public funds by or for the benefit of a public official. If after considering the elements of criminal misappropriation of property under Malaysian law, as I have just explained them, you find that there was a conspiracy to misappropriate public funds by

or for the benefit of a public official that violated Malaysian law, then the government has proved the fourth specified unlawful activity.

### 2. Object #2 – Violation of the Money Laundering Statute – Transportation of Monetary Instruments or Funds to Conceal or Disguise Proceeds (§ 1956(a)(2)(B)(i))

The second object of the money laundering conspiracy charged in Count Three of the Indictment is the knowing transportation of funds or monetary instruments to conceal or disguise the origin of the property. The relevant statute on this subject is Title 18, United States Code, Section 1956(a)(2)(B)(i), which reads as follows:

> Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States . . . knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity [shall be guilty of an offense].

The elements of a violation of this statute are as follows:

<u>First</u>, that the individual transported or transferred or transmitted, or attempted to transport or transfer or transmit, a monetary instrument or funds from a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place outside the United States.

<u>Second</u>, that the individual did so with the knowledge that the monetary instrument or funds involved represented the proceeds of some form of unlawful activity.

<u>Third</u>, that the individual did so with the knowledge that the transportation, transfer or transmission was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity.

63

### A. First Element – Transportation of a Monetary Instrument or Funds to or From or Through the United States

The first element is that the individual transported or transferred or transmitted, or attempted to transport or transfer or transmit, a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States.

I have previously defined this element for you in the context of the first charged object of the money laundering conspiracy, and I instruct you to apply that definition here.

### B. Second Element – Knowledge that the Property Involved Was the Proceeds of Unlawful Activity

The second element is that the individual knew that the property involved in the transportation, transmission or transfer was the proceeds of some form of unlawful activity. To satisfy this element, the individual must have known that the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under state, federal, or foreign law. I instruct you as a matter of law that the violations of the FCPA and the Malaysian laws previously described are felonies. The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

The government does not have to prove that the conspirators specifically knew that the property involved in the transportation, transmission or transfer represented the proceeds of any specific offense. Nor does the government have to prove that the conspirators knew the property involved in the offense in fact was the proceeds of specified unlawful activity, including the violations of the FCPA and Malaysian laws previously described. Rather, if the government

proves that the individuals agreed to transport, transmit or transfer property they knew to be the proceeds of some illegal activity that was a felony, this element is satisfied.

Keep in mind that it is not necessary for all conspirators to believe that the proceeds came from the same unlawful activity; it is sufficient that each potential conspirator believed that the proceeds came from some unlawful activity.

### C. Third Element – Knowledge of the Unlawful Purpose of the Transportation

The third element is that the individual transported, transferred or transmitted the monetary instruments or funds with knowledge that the transportation, transfer or transmission was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

Proof only that the funds were concealed is not sufficient to satisfy this element.  Instead, the purpose of the transportation needs to have been to conceal or disguise the nature, location, source, ownership, or control of the proceeds and that the individual knew that this was the purpose of the transportation.

### 3. Object #3 – Violation of the Money Laundering Statute – Transaction of Criminally Derived Proceeds of Specified Unlawful Activity (§ 1957(a))

The third object of the money laundering conspiracy charged in Count Three of the Indictment is engaging in a monetary transaction within the United States involving criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity.  The relevant statute on this subject is Title 18, United States Code, Section 1957(a), which provides, in relevant part:

> Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity [and does so] in the United States . . . [commits a crime].

65

The elements of a violation of this statute are as follows:

First, that an individual engaged, or attempted to engage, in a "monetary transaction" in or affecting interstate commerce;

Second, that the monetary transaction involved criminally derived property of a value greater than $10,000;

Third, that the criminally derived property was in fact derived from specified unlawful activity;

Fourth, that the individual acted knowingly, that is, with knowledge that the transaction involved proceeds of a criminal offense; and

Fifth, that the transaction took place in the United States.

### A.  First Element – Engaging in a Monetary Transaction

The first element is that an individual engaged in a monetary transaction in or affecting interstate commerce.

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument by, through, or to a financial institution. The term "financial institution" includes a bank insured by the Federal Deposit Insurance Corporation ("FDIC") and an agency or branch of a foreign bank in the United States.

The term "interstate or foreign commerce" means commerce between any combination of states, territories or possessions of the United States, or between the United States and a foreign country.

You must find that the transaction affected interstate commerce in some way, however minimal.  This effect on interstate commerce can be established in several ways.  First, any

monetary transaction with a bank insured by the FDIC affects interstate commerce, so if you find that that any financial institution involved in the transaction was insured by the FDIC that is enough to establish that the transaction affected interstate commerce. Second, if the source of the funds used in the transaction affected interstate commerce, that is sufficient as well. Third, if the transaction itself involved an interstate transfer of funds, that would also be sufficient.

### B. Second Element – Transaction Involved Criminally Derived Property

The second element is that the monetary transaction involved criminally derived property having a value in excess of $10,000.

The term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense. The term "proceeds" has the same meaning as I just explained. To satisfy this element, the government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity. All of the property involved in the transaction need not be criminally derived property. However, more than $10,000 of the property involved must be criminally derived property.

### C. Third Element – Property Derived from Specified Unlawful Activity

The third element is that the criminally derived property involved in the financial transaction was derived from specified unlawful activity. I instruct you as a matter of law that violations of the FCPA's antibribery and internal accounting controls are "specified unlawful activities" under the law. I further instruct you that misappropriation of public funds by or for the benefit of a public official in violation of Malaysian law is also a "specified unlawful activity."

### D. Fourth Element – Knowledge

The fourth element is that the individual knowingly engaged in the monetary transaction involving criminally derived property, as defined above.

I have previously defined the term "knowingly" for you and you should apply that definition here. I further instruct you that in a prosecution for an offense under this section, the individual does not need to know the particular offense from which the criminally derived property was derived. However, the individual must know that the transaction involved criminally derived property, which, I remind you, means any property constituting, or derived from, proceeds obtained from a criminal offense.

### E. Fifth Element – Transaction Took Place in the United States

The fifth element is that the transaction took place in the United States. A transaction takes place in the United States if it involves the transfer or transmission of funds into or out of or through accounts located in the United States.

### j. ADDITIONAL INSTRUCTIONS

#### i. LAWFULNESS OR BENEFITS OF ACTS OR GOALS NO DEFENSE

With respect to all counts, it is not a defense that, had there been no offer or giving of a corrupt payment or offer of payment, the Malaysian public officials or Abu Dhabi public officials might have performed the same act or acts, or that the actions taken by the Malaysian public officials or the Abu Dhabi public officials or the acts that the defendant intended to be taken by them may have been desirable or beneficial to the public or to any particular country, or would not have harmed the public, or any particular country. Nor is it a defense that the actions taken by the Malaysian public officials or Abu Dhabi public officials as a result in whole or in part of the alleged bribes may have been only the first step in an otherwise lawful or proper

68

process.  The laws in this case are not concerned with the results of an offer or giving of corrupt payments, but rather that such offers and payments not be made.

### III.   CLOSING INSTRUCTIONS

I have now outlined for you the rules of law applicable to the charges in this case and the process by which you should weigh the evidence and determine the facts.  In a few minutes you will retire to the jury room for your deliberations.  I will now give you some general rules regarding your deliberations.  Keep in mind that nothing I have said in these instructions is intended to suggest to you in any way what I think your verdict should be.  That is entirely for you to decide.

By way of reminder, I charge you once again that it is your responsibility to judge the facts in this case from the evidence presented during the trial and to apply the law as I have given it to you.  Remember also that your verdict must be based solely on the evidence in the case and the law.

### a.   FOREPERSON

In order for your deliberations to proceed in an orderly fashion, you must have a foreperson.  Traditionally, juror number one acts as the foreperson.  However, you are free to choose another juror to act as a foreperson.  The foreperson will be responsible for signing all communications to the court and for handing them to the marshal during your deliberations, but, of course, his or her vote is entitled to no greater weight than that of any other juror.

### b.   COMMUNICATIONS WITH THE COURT

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching on this case.  There is only one exception to this rule.  If it becomes necessary during your deliberations to communicate with me, you may send a

note, through the United States Marshal, signed by your foreperson. A United States Marshal will be stationed immediately outside the jury room for the duration of your deliberations. No member of the jury should attempt to communicate with me except by a signed writing, and I will never communicate with any member of the jury on any subject touching on the merits of the case other than in writing, or orally here in open court.

### c. JUROR'S RECOLLECTION GOVERNS / NOTES / REQUESTS FOR TRIAL TESTIMONY

Your recollection governs. Nobody else's. If you took notes, they are to be used solely to assist you, and your notes are not to substitute for your recollection of the evidence in the case. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror, and your notes are not to be shown or read to any other juror during the course of deliberations.

If, in the course of your deliberations, your recollection of any part of the testimony should fail, or you should find yourself in doubt concerning my instructions to you on the law, you may request that a witness's or witnesses' testimony, or portions thereof, be sent back to you in the jury room. Again, you may make such a request by a note to the Marshal. I suggest, however, that you be specific to avoid receiving testimony that you do not want or need. Describe as best you can precisely what you want to hear and be patient because it sometimes takes a while to find the testimony in the record.

To the extent possible, the exhibits that were admitted as evidence during the trial will be sent back to you for your deliberations. However, some exhibits, such as audio recordings or documents maintained only in electronic format, cannot be sent back with you. You can request to have that evidence played or presented to you in the courtroom.

### d. DELIBERATIONS AND UNANIMOUS VERDICT

Your duty is to reach a fair conclusion from the law as I have given it to you and the evidence that has been presented in the case. The duty is an important one.

You will be given a verdict sheet on which to record your verdict and which should be signed by your foreperson. Although there is a title for each count in the Indictment and a short description of that count, the title and description are for convenience only and are not meant to substitute for my instructions on the law. It is my instructions that you must follow.

When you are in the jury room, listen to each other, and discuss the evidence and issues in the case amongst yourselves. It is the duty of each of you, as jurors, to consult with one another, and to deliberate with a view toward reaching agreement on a verdict, if you can do so without violating your individual judgment and conscience. While you should not surrender conscientious convictions of what the truth is and of the weight and effect of the evidence, and while each of you must decide the case for yourself and not merely acquiesce in the conclusion of your fellow jurors, you should examine the issues and the evidence before you with candor and frankness, and with proper deference to, and regard for, the opinions of your fellow jurors.

You should not hesitate to reconsider your opinions from time to time and to change them if you are convinced they are wrong. However, do not surrender an honest conviction as to the weight or effect of the evidence simply to arrive at a decision. The decision you reach must be unanimous; you must all agree.

When you have reached a verdict, simply send me a note signed by your foreperson that you have reached a verdict. Do not indicate what the verdict is. In *no* communication with the court should you give a numerical count of where the jury stands in its deliberations.

Remember that the parties and the court are relying upon you to give full and conscientious consideration to the issues and evidence before you.  By doing so, you carry out to the fullest your oaths as jurors – to well and truly try the issues of this case and render a true verdict.

I will ask you to wait for a few moments while I discuss with counsel whether there is anything further on which you need to be charged.

Dated:  April 5, 2022
          Brooklyn, New York