

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH:SPN/HDM/CRH/MM                    *271 Cadman Plaza East*
F. #2018R001309                      *Brooklyn, New York 11201*

August 9, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  United States v. Thomas Barrack, et al.
        Criminal Docket No. 21-371 (S-1) (BMC)

Dear Judge Cogan:

    The government respectfully submits this letter in opposition to the defendants Thomas Barrack and Matthew Grimes' redacted motion to compel (the "Redacted Motion") the issuance of a Rule 17 subpoena to DigitalBridge (the "Proposed Subpoena"). The Redacted Motion (1) redacts many of the defendants' articulated bases for their subpoena requests, denying the government the ability to properly assess whether, in the government's view, it complies with Federal Rule of Criminal Procedure 17 and the standard for such subpoenas as articulated by the Supreme Court in United States v. Nixon, 418 U.S. 683, 699-700 (1974) and its progeny; and (2) to the extent it provides bases, it does not explain how the Proposed Subpoena complies with those standards and accordingly, should be denied.

I.  Relevant Procedural Background

    On July 27, 2022, during a status conference, the Court apprised the government that the defendant had filed an ex parte motion to compel issuance of a Rule 17 subpoena to the defendant's former employer, DigitalBridge. See July 27, 2022, Status Conference Tr. ("Tr.") at 15. The Court permitted the defendant to file the Redacted Motion to "see if the Government has anything in response to the redaction that persuades me that I should not issue this" or "whether the non-disclosed grounds are adequate to support issuance of the subpoena." Tr. at 16. On July 29, 2022, the defendant filed the Redacted Motion and Proposed Subpoena on the docket. ECF No. 143.

II.     Legal Standard

A subpoena issued pursuant to Rule 17(c) "may order the witness to produce designated "books, papers, documents, data, or other objects," Fed. R. Crim. P. 17(c)(1), so long as they are "evidentiary," Bowman Dairy Co. v. United States, 341 U.S. 214, 219 (1951). Rule 17(c) further provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them. Fed. R. Crim. P. 17(c)(1).

Rule 17(c) operates to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials," rather than "provide a means of discovery for criminal cases." United States v. Nixon, 418 U.S. 683, 698-99 (1974) (citing Bowman Dairy, 341 U.S. at 220). In other words, Rule 17(c) was not intended to undermine the limited right of discovery set forth in Rule 16 by providing "a right of discovery in the broadest terms." Bowman Dairy, 341 U.S. at 220. Consistent with this limited purpose, Rule 17(c) further provides that, "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). The validity of a Rule 17(c) subpoena is governed by the strict standard set forth in Nixon, 418 U.S. at 699-700. Under Nixon, the defendant has the burden of establishing:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

United States v. Bergstein, No. 16-CR-746 (PKC), 2017 WL 6887596, at *4–6 (S.D.N.Y. Dec. 28, 2017) (citing Nixon, 418 U.S. at 699-700); see also United States v. Skelos, 988 F.3d 645, 661 (2d Cir. 2021) (upholding the district court's quashing of Rule 17 subpoena because the subpoena failed to meet the Nixon standard). A court may quash a motion for a Rule 17(c) subpoena based on a failure to satisfy any one of these prongs. Id. (listing requirements conjunctively); see also United States v. Conway, 615 F. App'x. 46, 48-49 (2d Cir. 2015) (holding that court "did not err" in denying subpoena when claim "fail[ed] to satisfy the relevancy prong of United States v. Nixon").[1] The moving party carries the "burden of proving relevance and admissibility" of the

---

[1] The defendants ask that this Court apply the more lenient standard for Rule 17 subpoenas articulated in United States v. Tucker, 249 F.R.D. 58, 66 (S.D.N.Y. 2008). The Second Circuit and district courts in this Circuit, however, have almost unanimously applied the Nixon standard to Rule 17 subpoenas requested by a defendant to third parties. See United States v. Bergstein, 788 F. App'x 742, 746 (2d Cir. 2019) (collecting cases); United States v. Cole, No. 19 CR. 869 (ER), 2021 WL 912425, at *3 (S.D.N.Y. Mar. 10, 2021) (applying the Nixon standard and rejecting the application of Tucker); United States v. Avenatti, No. 19 Cr. 373 (PGG), 2020 WL 508682, at *3 (S.D.N.Y. Jan. 31, 2020) (same); United States v. Pedraza, No. 17-CR-114 (VAB), 2018 WL 6697992, at *2 (D. Conn. Dec. 20, 2018) (holding that Tucker is an

documents sought, that the documents sought are for "a specific purpose and not as a mere expansion of discovery," and that the "documents sought are not otherwise procurable by the exercise of due diligence." United States v. RW Prof'l Leasing Servs. Corp., 228 F.R.D. 158, 162-164 (E.D.N.Y. 2005).

Moreover, the government has standing to challenge the Proposed Subpoena. "[A] party whose legitimate interests are affected by a subpoena may move to quash that subpoena." United States v. Vasquez, 258 F.R.D. 68, 71 (E.D.N.Y. 2009) (quoting United States v. Nektalov, No. S2 03 Cr. 828, 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004)). The government has standing when its purpose is to protect the judicial process, such as by preventing the undue harassment of third parties, such as DigitalBridge. See United States v. Carton, Case No. 17 CR 680 (CM), 2018 WL 5818107, at *2 (S.D.N.Y. Oct. 19, 2018) (government had standing to move to quash subpoenas served on third parties); Nektalov, 2004 WL 1574721, at *1 (same).

III.    The Defendants Mischaracterize the Allegations in the Superseding Indictment

The Proposed Subpoena lists 16 separate requests for documents from DigitalBridge. For many of these requests, the defendants' argument that these documents are relevant is based on a significant mischaracterization of the Superseding Indictment. Specifically, the defendants claim erroneously that the Superseding Indictment alleges that investments by UAE sovereign wealth funds (the "UAE SWFs") in two DigitalBridge investments, a $74 million investment in One Cal Plaza, and a $300 million investment in a DigitalBridge investment fund (collectively, the "SWF Investments") was "compensation for an agreement that Mr. Barrack entered into to act as the UAE's agent." See Redacted Motion at 4. The Superseding Indictment alleges no such thing. Rather, it simply alleges:

> At the same time the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK and MATTHEW GRIMES acted at the direction of United Arab

---

"aberration"); United States v. Skelos, No. 15 Cr. 317 (KMW), 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018) (same); Bergstein, 2017 WL 6887596, at *4–6 ("With no compelling reason to reject the prevailing law of the Circuit regarding defense subpoenas to non-parties, this Court applies the Nixon standard to the Subpoenas."); United States v. Pena, No. 15 CR 551 (AJN), 2016 WL 8735699, at *1 (S.D.N.Y. Feb. 12, 2016) (citation omitted) ("[T]he overwhelming majority of district courts in the Second Circuit have [instead] applied the Nixon analysis to such requests" because the relaxed Tucker standard is not prevailing law of the Circuit); United States v. Yudong Zhu, No. 13 CR 761, 2014 WL 5366107, at *4 (S.D.N.Y. Oct. 14, 2014) ("However, until the Supreme Court or the Second Circuit accepts the Court's analysis in [Tucker], this Court will apply Nixon ..."). This Court should also apply Nixon here.

Even under the Tucker standard, for the reasons articulated infra, the defendants have failed to show how the Proposed Subpoena is material to their defense. In addition, by redacting the bases for the Proposed Subpoena, the defendants fail to demonstrate to the government how these requests are material to their defense, thus depriving the government of the ability to properly assess whether the Proposed Subpoena satisfies that standard under Tucker.

> Emirates officials and aided and abetted one another in so acting, BARRACK and GRIMES also made numerous and concerted efforts both directly and through AL MALIK to solicit the assistance of United Arab Emirates officials, including Emirati Official 1 and Emirati Official 2, in obtaining hundreds of millions of dollars in investments for Company A by United Arab Emirates sovereign wealth funds, including UAE SWF 1 and UAE SWF 2.

Id. ¶ 96.  In other words, the Superseding Indictment alleges that the defendants' decisions to act as agents of the UAE were motivated, in part, by parallel efforts by the defendants to solicit commitments by the UAE SWFs in the SWF Investments through UAE officials. Although motive is not an element of the crimes charged, it is, of course, highly probative.  The Superseding Indictment does not allege that the SWF Investments were an agreed-upon compensation for their participation in the charged crimes or that any such quid pro quo existed, nor is any such compensatory structure required under the statute.  See Mem. Decision and Order, (ECF No. 120) (the "MTD Order") at 9 ("as existing case law also clarifies, this agreement need not be contractual or formalized") (citing United States v. Butenko, 384 F.2d 554, 565 (3d Cir. 1967)); id. ("nor must renumeration be received") (citing United States v. Hung, 629 F.2d 908, 912 (4th Cir. 1980)).

Given the actual allegations in the Superseding Indictment, the defendants' efforts to obtain documents reflecting that the SWF Investments also involved "professional staff" from DigitalBridge and the UAE SWFs and were predicated on term sheets, contracts, and due diligence is both undisputed and irrelevant.  Rather, the issue is whether the defendants "solicit[ed] the assistance" of UAE officials, directly or indirectly, in securing the SWF Investments, at the same time that they were acting as agents of the UAE government.  Superseding Indictment ¶ 96.  To the extent that the defendants want to introduce evidence that the SWF Investments were negotiated between DigitalBridge and the UAE SWFs by professionals, such claims should be carefully parsed for relevance, as such evidence would not, in and of itself, address the claims in the Superseding Indictment that the defendants, directly and through Malik, sought the assistance of UAE officials in the SWF Investments.  Such arguments are not relevant, not probative and highly confusing and misleading to the jury.

IV.    The Proposed Subpoena Fails to Meet the Nixon Standard

Notwithstanding the defendants' mischaracterization of the allegations in the Superseding Indictment, the Proposed Subpoena also fails the Nixon standard.  The government sets out its objections to each request as follows:[2]

- **Request No. 1**: Documents reflecting communications from December 2016 through October 2017 to, from, between, or among the following individuals relating to their involvement in soliciting and/or securing an investment from Mubadala with respect to

---

[2] The government does not address the admissibility of these potential records given that the government would need to be able to review each record before making such a determination.  Regardless, as discussed herein, the Court should deny the Redacted Motion.

One California Plaza: (a) Sylvio Tabet; (b) David Belford; (c) Peter Eichler; (d) Paul Fuhrman.

- **Request No. 2:** Documents reflecting communications from May 2017 through January 2021 to, from, between, or among the following individuals relating to their involvement in soliciting and/or securing investments from ADIA in Digital Colony Partners I: (a) Marc Ganzi; (b) Ben Jenkins; (c) Kevin Smithen; (d) Jeffrey Ginsburg; (e) Sadiq Malik; (f) Leslie Wolff Golden; (g) Brittenay Banh; (h) Ron Sanders; (i) Justin Chang, (j) Jonathan Grunzweig, (k) Rabih Sfeir.

- **Government's Objection to Requests No. 1 and 2**: The defendants claim that these documents will show that the SWF Investments "were not compensation" for Barrack's agreement to act as a foreign agent of the UAE. As discussed supra, the Superseding Indictment does not allege that the SWF Investments were compensation for the defendants' actions as foreign agents. Regardless, the fact that professionals negotiated the SWF Investments is not relevant to whether the defendants also solicited the assistance of UAE officials in these investments. It is the defendants who are on trial; it is their mental state that is at issue. It simply does not matter whether other employees at DigitalBridge worked diligently on these investments. The defendants also claim that the "absence" of the defendants from these communications is material to their defense, ostensibly to show that the defendant were not involved in the granular details. Again, it is unclear how that would be a defense to the allegation that the defendants communicated with each other, and through Al-Malik, about soliciting the assistance of UAE officials in securing the SWF Investments.

  Moreover, Request No. 2 seeks communications for DigitalBridge that fall well outside the time period of the Superseding Indictment (April 2016 to April 2018) and would likely result in voluminous productions of irrelevant records.

  Finally, these documents have already been produced by the government, in large part, to the defendants as Rule 16 discovery. See RW Prof'l Leasing Servs. Corp., 228 F.R.D. at 162-164 (holding that if documents are "readily obtained in the usual manner," the moving party cannot meet its burden to show that the documents are not otherwise procurable by the exercise of due diligence); see also United States v. Brown, No. 2:14-mj-7258, 2015 WL 8375184 at *2 (D.N.J. Dec. 8, 2015) (items obtainable from the government through discovery are "otherwise procurable from the Government through due diligence"). In such circumstances, the request is "unreasonable and unnecessary" and should be denied. RW Prof'l Leasing Servs. Corp., 228 F.R.D. at 164 ("Since the information sought is apparently in the possession of the Government, it should therefore be readily obtained in the usual manner. This request is unreasonable and unnecessary.").

- **Request No 3:** Salesforce tracking reports or other compiled data investment tracker reports, from December 2016 through January 2021, concerning the following investments and reflecting that individuals other than Thomas J. Barrack solicited and/or secured investors in the following: (a) One California Plaza; (b) Digital Colony Partners I (and co-investment opportunities).

- **Request No. 4:** Documents reflecting the communications identified in cell G102 of the of the investment tracker entitled "All opp - ST 1.5.2018.xlsx" produced as DB-EDNY_00043679.

- **Request No. 5**: Documents reflecting the communications identified in cell U4 of the of the investment tracker entitled "DCP Investor Tracker 4.23.18.xlsx" produced as DB-EDNY_00133586.

- **Government's Objection to Requests Nos. 3-5:** Like Requests No. 1 and 2, these are not material to the defense. Evidence that other individuals at DigitalBridge were also soliciting investments in the SWF Investments does not tend to prove or disprove the allegation that the defendants were soliciting the assistance of UAE officials to secure the SWF Investments as well. Because these records are irrelevant, these requests should be denied.

- **Request No. 6**: Documents sufficient to show the complete list of investors/co-investors, subscription documents, side letters, cornerstone agreements, or favored nation letters—and drafts of such documents—for the following: (a) One California Plaza; (b) Digital Colony Partners I (and co-investment opportunities).

- **Government's Objection to Request No. 6**: The defendants have essentially redacted all of their reasons for why the records sought in Request No. 6 are evidentiary and relevant, material to the defense, and not a fishing expedition. See Redacted Motion at 6. The Court should therefore direct the defendants to file an unredacted version of their motion. See Carton, 2018 WL 5818107, at *1 (ordering the defendant to file his memorandum in support of his Rule 17 subpoenas to third parties "publicly, and to serve a copy on the Government, so that the Government might properly reply."). In any event, it is entirely unclear how the fact that there were other investors in One California Plaza and Digital Colony Partners I has any bearing on whether the defendants solicited the assistance of UAE officials in securing the SWF Investments by the UAE SWFs. This requests smacks of a fishing expedition, which, on the eve of trial in a case that has been pending for more than a year, would be onerous to DigitalBridge and would likely result in the production of voluminous and irrelevant documents requiring significant time to review.

- **Request No. 7**: Documents reflecting due diligence questionnaires and ancillary due diligence work product made by Mubadala and Harel with respect to One California Plaza from December 2016 through October 2017.

- **Request No. 8**: Documents reflecting due diligence questionnaires and ancillary due diligence work product made by ADIA with respect to Digital Colony Partners I from May 2017 through January 2021.

- **Government's Objection to Request Nos. 7 and 8**: The defendants have once again redacted all their reasons for why the records sought by Requests Nos. 7 and 8 are

evidentiary and relevant, material to the defense, and not a fishing expedition.  See Redacted Motion at 7.  Without further information, the government cannot see how due diligence by the UAE SWFs is a defense to the allegations that the defendants solicited the assistance of UAE officials in the SWF Investments.  None of these due diligence questionnaires shed any light as to the defendants' mental state—their intent to seek the assistance of UAE officials in these investments.

- **Request No. 9:** Documents reflecting communications to, from, between, or among (a) Marc Ganzi; (b) Ben Jenkins; (c) Kevin Smithen; (d) Jeffrey Ginsberg Sadiq Malik; (e) Leon Schwartzman; (f) David Palame; (g) Ron Sanders; (h) Justin Chang; (i) Sylvio Tabet; (j) Jonathan Grunzweig; (k) Rabih Sfeir; (l) David Belford; (m) Peter Eichler; (n) Mark Hedstrom, in the period between April 2016 and April 2018, demonstrating awareness of Thomas J. Barrack's interactions with (1) Mohammed Bin Zayed Al Nahyan, (2) Sheikh Tahnoon Bin Zayed Al Nahyan,(3) Yousef Al Otaiba, (4) Sheikh Abdullah Bin Zayed Bin Sultan Al Nahyan, (5) Saeed Al Hajri, (6) Sheikh Sultan Bin Tahnoon Al Nahyan, (7) Sheikh Sultan bin Sulayem,(8) Sheikh Ahmed bin Sulayem, (9) Sheikh Mohammed Ibrahim Al Shaibani; (10) Mohammed Alabbar or other members of the UAE's government or royal family.

- **Government's Objection to Request No. 9**:  Barrack claims that the fact that some DigitalBridge employees were aware he was meeting with, and communicating with, UAE officials "tend to prove" he was not a foreign agent.  See Redacted Motion at 7. This is incorrect.  None of the individuals listed in this request are on the numerous communications between the defendants and UAE officials, directly, or through Al-Malik, where the UAE is making proffers and requests of the defendants, or on any of the communications where the defendants are providing and in fact boasting about actions taken for the UAE, or on communications where the defendants relay sensitive information about U.S foreign policy and interests in the Middle East to UAE officials.  Indeed, the fact that the defendants had business interests in the Middle East provided perfect cover for them to meet with, communicate with, and ultimately act at the direction of, UAE officials.

- **Request No. 10**: Employment records that reflect the hiring of Talal Al-Sabah, son of the Ambassador of Kuwait to the United States, as an intern at DigitalBridge, and communications reflecting that individual's job duties and direct supervisors while employed by or with DigitalBridge.

- **Government's Objection to Request No. 10:** The defendants have completely redacted the reason for Request No. 10 and the government is unable to discern any possible relevance of such records to the allegations and charged conduct.  To the extent that Grimes' defense is that he was similarly situated as Al-Sabah and thus somehow not guilty of the crimes charged, such a defense makes little sense.  There are no communications between Al-Sabah and Al-Malik or the defendants regarding UAE officials and there is no indication that Al-Sabah was involved in the charged conduct.  As a more general matter, Grimes' repeated contention that he cannot be guilty because he reported to Barrack is not a defense; it may be a Section 3553(a) factor at a sentencing proceeding, but it has no bearing on his guilt.  A defendant may establish an agency relationship either directly, or

via an intermediary.  See Rafiekian, 991 F.3d at 540 (explaining that the "agent-principal relationship" can be "established by direct contact or via an intermediary").  Grimes was a highly educated and well-compensated adult at the time of his actions and his actions are his own.  And unlike many other young adults in the criminal justice system, Grimes had no dearth of opportunity: he graduated from the University of Pennsylvania in three years, magna cum laude, and was making several hundreds of thousands of dollars a year during the charged conspiracy as an Analyst and then as a Vice President at DigitalBridge.

- **Request No. 11**: Documents reflecting the possibility of Matthew Grimes attending, participating, or enrolling in flight attendant or flight safety school, training, or related programming in the period between April 2016 and April 2018 as part of his employment at DigitalBridge.

- **Government's Objection to Request No. 11**: Grimes claims that this information is relevant because it tends to show that he was purportedly a low-level employee with menial duties (which is highly inaccurate).  a gofer.  Regardless, as discussed supra, Grimes' position at DigitalBridge does not bear on his guilt; he either acted as an agent of the UAE, aided and abetted others to act as agents of the UAE, or conspired with others to act as agents of the UAE, or he did not.  Grimes' participation in flight safety and training courses is wholly irrelevant to the allegations in the Superseding Indictment and the charged conduct.

- **Request No. 12**: Documents reflecting communications to, from, between, or among the following individuals regarding efforts to raise funds for DigitalBridge during trips to Morocco, Corsica, Greece, the UAE, Saudi Arabia, and Qatar from April 2016 to the present: (a) Bruno Daddi; (b) Justin Chang; (c) Jonathan Grunzweig; (d) Sylvio Tabet; (e) Ted Elkin; (f) Peter Eichler; and (g) David Belford.

- **Government's Objection to Request No. 12**: The defendants claim that these records are relevant because it tends to show that DigitalBridge employees sometimes take trips to foreign countries to raise funds.  It is axiomatic that people travel to foreign countries for business purposes.  The defendants do not even attempt to connect this request back to the Superseding Indictment or the charged conduct.  It is completely unclear how this would be material to the defense that the defendants were not agents of the UAE.  This request is entirely a fishing expedition.  It is also notable that this request extends to the present, and thus years and years beyond the conduct alleged in the Superseding Indictment, further diluting any possibly relevancy.

- **Request No. 13**: Documents reflecting all trips that Thomas J. Barrack took to foreign countries other than the UAE from April 2016 to April 2018 related to investor relations or business development for DigitalBridge on which Matthew Grimes accompanied Mr. Barrack, including, but not limited to, internal communications reflecting the purpose of those trips.

- **Government's Objection to Request No. 13**:  The defendants claim this evidence would show that Grimes accompanied Barrack on foreign travel other than the UAE.  Again, this is not material to the defense.  It is not in dispute that Grimes worked closely with and under Barrack and in that capacity, traveled with Barrack.  That fact is not a defense to Grimes' actions at the direction of the UAE, as alleged in the Superseding Indictment. Grimes is not charged with travelling to the UAE; he is charged with acting as a foreign agent of the UAE.  Indeed, it is black-letter law that "evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." United States v. Boykoff, 67 App'x 15, 20-21 (2d Cir. 2003) (citation omitted). For example, in United States v. Walker, 191 F.3d 326 (2d Cir. 1999), the Second Circuit affirmed the district court's refusal to allow a defendant accused of preparing false asylum applications to admit evidence of truthful applications he had allegedly submitted.  Id. at 336. The Court reasoned that whether the defendant "had prepared other, non-fraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent." See id.; United States v. Gambino, 838 F. Supp. 744, 748 (S.D.N.Y. 1993) ("A defendant cannot introduce evidence of innocent behavior on other occasions to prove his innocence.").

- **Request No. 14**: PowerPoint presentations prepared by Matthew Grimes for Thomas J. Barrack in advance of a December 2015 trip that Mr. Barrack took to Qatar to meet with Sheikh Khalifa bin Hamad bin Khalifa Al Thani.

- **Government's Objection to Request No. 14**:  The defendants have entirely redacted their basis for this request involving a document prepared five months before the charged conduct and related to another foreign country, Qatar.  Given the redaction, the government is unable to assess whether the request meets the standard under Nixon.  On its face, it appears entirely irrelevant to whether, during the charged period, April 2016 to April 2018, the defendants acted as agents of the UAE.

- **Request No. 15**: Documents and communications reflecting efforts by DigitalBridge employees or consultants to solicit investments from sovereign wealth funds located in countries other than in the UAE in the period between April 2016 and April 2018.

  **Government's Objection to Request No. 15**:  The defendants claim the records requested in Request No. 15 would show that DigitalBridge employees attempted to raise money from non-UAE sovereign wealth funds as a normal part of DigitalBridge's business. Redacted Motion at 9.  This fact is undisputed and irrelevant.  Other DigitalBridge employees are not on trial, the defendants are.  Whether or not other persons, at other times, solicited investments from other sovereign wealth funds for other projects has absolutely no bearing of whether the defendants, at the times charged in the Superseding Indictment, solicited the assistance of UAE officials to secure investments by the UAE SWFs in the SWF Investments.

- **Request No. 16**: Financial analyses and other deal-related documents prepared by Matthew Grimes for DigitalBridge related to DigitalBridge deals in Argentina, China, Mexico, and Latin America, including but not limited to: (a) Colony Capital's acquisition of the Abraaj

Group (a/k/a Abraaj Mexico Advisors, S.C.) in 2019; (b) Opportunities related to distressed debt and non-performing loans in China; and (c) Foreign investments in the 8500 Sunset Boulevard real estate development in West Hollywood.

- **Government's Objection to Request No. 16**:  The defendants have entirely redacted their basis for this request that involves (1) DigitalBridge deals post-dating the charged time period by almost a year, 2019; and (2) investments in Argentina, Mexico, China and foreign investments in West Hollywood, none of which are referenced in the Superseding Indictment.  Given the utter lack of any connection to the allegations in the Superseding Indictment and charged conduct, the time period of the documents, and the defendants' failure to provide any reason for the government to assess, the Court should deny this request.

V.     Conclusion

For all the reasons set forth herein, the Court should deny the defendants' motion to compel the issuance of the Proposed Subpoena.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
        Ryan C. Harris
        Samuel P. Nitze
        Hiral D. Mehta
        Craig R. Heeren
        Assistant U.S. Attorneys
        (718) 254-7000

        MATTHEW G. OLSEN
        Assistant Attorney General
        Department of Justice
        National Security Division

By:     /s/ Matthew J. McKenzie
        Matthew J. McKenzie
        Trial Attorney

Enclosures

cc:     Clerk of the Court (by email)
        Counsel of Record (by ECF)

10