

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH/SPN/HDM/CRH/MM                     *271 Cadman Plaza East*
F. #2018R001309                        *Brooklyn, New York 11201*

August 15, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Thomas J. Barrack and Matthew Grimes
     Criminal Docket No. 21-371 (S-1) (BMC)

Dear Judge Cogan:

   The government writes in response to the defendants' proposed jury instructions. See Def. Proposed Jury Instructions (ECF No. 148) ("Def. Charge"). The government also submits proposed supplemental instructions regarding the defendants' potential "legal commercial transaction" affirmative defense. See Gov't Supp. Instruction No. 1-2 (attached as Exhibit 1).[1] For the reasons discussed below, the government respectfully objects to a number of the defendants' instructions because they would "fail[] to inform the jury adequately of the law" and/or "misle[a]d the jury about the correct legal rule." See United States v. Quinones, 511 F.3d 289, 314 (2d Cir. 2007).

 I. The Defendant's Proposed Preliminary Instructions

   The government submits that the standard preliminary instructions used by the Court in its regular practice are sufficient and appropriate for use in this trial.[2] The defendants provide no sound basis for modifying a tried-and-true set of instructions that have proven effective and lawful over the course of many years, and that the Court has delivered in multiple high-profile

---

  [1] The government respectfully requests the opportunity to submit further instructions, amend those submitted, or provide further objections, as appropriate.

  [2] For the Court's convenience, the government attaches hereto the Court's preliminary instructions from United States v. Guzman Loera, No. 09-CR-466 (BMC) (E.D.N.Y.) (hereafter "Guzman Prelim") (attached as Exhibit 2); United States v. Al Farekh, No. 15-CR-268 (BMC) (E.D.N.Y.) (hereafter "Farekh Prelim") (attached as Exhibit 3); and United States v. Harun, No. 12-CR-134 (BMC) (E.D.N.Y.) (hereafter "Harun Prelim") (attached as Exhibit 4). Page citations herein refer to the transcript page numbers.

and national security-related trials.  The government more specifically responds to the proposed preliminary instructions as follows:

A.      Defense Preliminary Instruction No. 3A (Presumption and Reasonable Doubt)

The Court's standard preliminary instructions already include instructions on the presumption of innocence and reasonable doubt.  See, e.g., Guzman Prelim, Ex. 1 at 533, 547; Farekh Prelim, Ex. 2 at 11, 17; Harun Prelim, Ex 3 at 12, 18.  The jury will also receive thorough instructions on the presumption of innocence and reasonable doubt at the close of trial as part of the Court's usual jury instructions.  See Gov't. Request to Charge (ECF No. 147) ("Gov't Charge"), Request No. 1 (General Requests).[3]  Thus, no modification is required to the Court's standard preliminary instructions on this issue.

B.      Defense Preliminary Instruction Nos. 4A and 5A (Evidence/What is Not Evidence)

The Court's standard preliminary instructions already include instructions on what is and is not evidence.  See, e.g., Guzman Prelim at 547-49; Farekh Prelim at 11, 17; Harun Prelim at 12, 18.  The Court's usual preliminary instructions are sufficient, particularly since, as part of the Court's usual closing instructions, the jury will receive detailed instructions on evidence at the close of trial.  See, e.g., Guzman Closing at 6962-66; Farekh Closing at 1587-91.

C.      Defense Preliminary Instruction No. 6A (Multiple Defendants)

A multiple defendant instruction is not needed as part of the preliminary instructions.  To the extent such an instruction is needed, it should be included as part of the instructions at the close of trial and should track the usual instruction given in this Circuit.  See L. Sand et al., Modern Federal Jury Instructions (hereafter "Sand") § 3A.01, Instruction 3-8 ("Multiple Counts – Multiple Defendants"); see also United States v. Sanzo, 673 F.2d 64, 69 (2d Cir. 1982) (finding no prejudice where court instructed jury that "you must as a matter of law consider each count of the indictment and the individual defendant's involvement in that count separately").

D.      Defense Preliminary Instruction No. 7A (Summary of Charges)

The government objects to a preliminary instruction summarizing the charges.  It is not the usual practice in this Circuit to provide such an instruction before the start of trial, and the defendant identifies no good reason to provide such an instruction here.  Crafting a "summary" of the charges invites legal error and risks confusing the jury because of the difficulty inherent in reducing the detailed instructions to be provided at the end of the case, which carefully track the

---

[3] See also, e.g., Closing jury charge in United States v. Guzman Loera, No. 09-CR-466 (BMC) (E.D.N.Y.), attached as Exhibit 1 to Gov't Charge (hereafter "Guzman Closing") at 6958-60; Closing jury charge in United States v. Al Farekh, No. 15-CR-268 (BMC) (E.D.N.Y.), attached as Exhibit 2 to Gov't Charge (hereafter "Farekh Closing") at 1585-87.

relevant statutory provisions and associated legal principles, to a short-form summary.  The defendants' proposed instruction illustrate the problem.

The proposed instruction is legally incorrect in several ways, most of which are discussed in detail below in connection with the defendants' proposed instructions for the main jury charge.  For example, the defense asks to instruct the jury that a Section 951 offense requires proof of "willfulness," contrary to well-settled law and this Court's own ruling.[4]  As another example, the defendants omit from their proposed preliminary instruction any mention that engaging in a "legal commercial transaction" is an affirmative defense, thus suggesting that disproving the defense is an element of the offense, even though the defendants' later instruction expressly concedes the opposite.[5]  In addition to these legal errors, the defendants' summary will confuse the jury because, among other things, it fails to define a variety of terms, omits discussion of the theories of liability by which each defendant may be convicted, and does not mention that the defendants' proposed affirmative defense must be proven by a preponderance of the evidence by the defendant.  As discussed further below, it may not be appropriate to instruct the jury on this defense even at the end of trial, because the defendants may not establish its availability.  See United States v. Bailey, 444 U.S. 394, 414-15 (1980) (holding that defendants were not entitled to any instruction on duress or necessity where they failed to proffer evidence in support of the defenses, other than "[v]ague and necessarily self-serving statements"); United States v. Abouammo, 19-CR-621, ECF No. 348 (declining to give legal commercial transaction instruction).  Indeed, the fact that nearly all of the conduct alleged in the Superseding Indictment to have been committed by the defendants is not commercial in nature strongly suggests that such a defense is unavailable in this case.

The defendants' letter in further support of their proposed preliminary instructions does not alter this analysis.  See Def. Letter dated Aug. 11, 2022 (ECF No. 156).  First, as discussed above, rather than making trial "more efficient" and reducing "the likelihood of juror confusion," (id. at 1), the defendants' instructions would mislead the jurors by offering legally inaccurate concepts (like treating "legal commercial transaction" as an element or requiring proof of "willfulness" for Section 951 offenses) and omitting accurate legal concepts (such as the multiple types of liability that may make the defendants guilty of these crimes).  Indeed, the defendants make additional misleading and inaccurate claims.  The idea that there are "vanishingly few cases" under Section 951 (id. at 2) is contrary to a body of case law that stretches back to World War II,

---

[4] See, e.g., Order Denying Mot. to Dismiss (ECF No. 120) (the "MTD Order") at 8 (finding allegation of "knowingly and intentionally" acting to be sufficient); United States v. Dumeisi, 424 F.3d 566, 581 (7th Cir. 2005) ("Knowledge of the requirement to [notify] is not an element of § 951."); United States v. Turner, 13 CR 572, 2014 WL 4699708, at *2 (N.D. Ill. Sept. 22, 2014) (same); see also United States v. Campa, 529 F.3d 980 (11th Cir. 2008) ("[w]here no specific intent element is apparent on the face of the statute, the crime is one of general intent.").

[5] See Defense Instruction No. 30 ("This legal commercial transaction exception to Section 951 is an affirmative defense to this charge.") (emphasis added).

as this Court has noted once before.[6]  There are pending and recently resolved criminal cases involving Section 951 in numerous districts around the country.[7]  While it may be true that the government reserves this charge, as here, for particularly egregious activity, the idea that this charge is unusual is simply not accurate.

The few cases cited by the defendants are inapposite.  Two of the cases they cite reflect unique circumstances not present here—one was "the largest criminal tax case in history," United States v. Stein, 429 F. Supp. 2d 648, 651 (S.D.N.Y. 2006) and another involved "complex bank regulatory rules and framework," United States v. Calk, No. 19-CR-366, 2021 WL 2887691, at *3 (S.D.N.Y. 2021).  While certain particularly complex cases may benefit from preliminary instructions, this is not such a case because, despite the defendants' reference to the number of counts, the charges involve a single criminal scheme and one defendant's decision to lie about that scheme.  The only case cited by the defendants from this District declined to give such an instruction and supports the government's position.  See United States v. Hunt, 534 F. Supp. 3d 233, 260 (E.D.N.Y. 2021).  As Judge Chen explained, the parties' disagreement about the contours of the law "is a reason for the Court to forbear on giving an instruction until after it has had sufficient time to consider the parties' significantly opposing views on this issue."  Id.  This is precisely the case here.

If the Court is inclined to provide a summary of charges at the start of trial, which the government again submits is unnecessary, the government respectfully requests that the Court simply read the charging language for each offense contained in the Superseding Indictment.

E.    Defense Preliminary Instruction No. 8A (First Amendment)

The defendants' proposed First Amendment "Cautionary Instruction," which they also request as an instruction at the close of trial, is inappropriate.  See also Def. Charge, Instruction No. 47 (requesting First Amendment instruction during closing instructions).  This Court rejected multiple First Amendment challenges raised by the defendants in their motions to dismiss.  See MTD Order at 10-11, 11 n.6 (rejecting arguments that Section 951 was overbroad, unduly burdens political speech, constitutes speaker-based discrimination or is an unconstitutional prior restraint).  As the Court further explained in that decision, "Section 951 regulates conduct, that is, *acting* as a

---

[6] See, e.g., MTD Order at 9-10, 22 & 42 (reviewing past precedent and, in response to claims by defendants about rarity of cases, stating "nor can Section 951 fairly be described as obscure"); see also Gov't Opp. to Mot. to Dismiss at 15-16 n. 4 (ECF No. 80) (discussing nearly 70 years' worth of case law on Section 951).

[7] See, e.g., United States v. Liu, et al., No. 22-CR-311 (LDH) (E.D.N.Y.); United States v. Hu Ji, et al., 21 CR 265 (PKC) (E.D.N.Y.); United States v. Angwang, No. 20-CR-442 (EK) (E.D.N.Y.); United States v. Babakov, et al., No. 22-CR-211 (S.D.N.Y.); United States v. Girgis, No. 22-CR-006 (S.D.N.Y.); United States v. Branson, No. 22-MAG-2178 (S.D.N.Y.); United States v. Abouammo, No. 19-CR-621 (EMC) (N.D. Cal.); United States v. Ji Chaoqun, No. 18-CR-611 (N.D. Ill.); United States v. Doostdar, et al. No. 18-CR-255 (D.D.C.).

foreign agent," id. (emphasis in original),[8] and therefore does not encroach upon the First Amendment.

The defendants' only support for including this instruction is the claim that other courts have "given similar instructions."  See Def. Charge at 16 n. 29.  This is disingenuous.  The defendants cite United States v. Turner, a case in which the defendant, a political radio show host and blogger, was charged with making threats against judges.  See 720 F.3d 411, 418 (2d Cir. 2013).  Cases involving criminal threats—i.e. charging a defendant expressly because of the content of their speech—directly target speech and thus implicate First Amendment concerns.  Juries are required in threat cases to specifically consider whether the speech is itself a criminal act based on whether such speech constitutes a "true threat."  Such cases thus require instruction on certain First Amendment principles.  See id. at 425-27 (affirming "true threat" instruction that discusses First Amendment in context whether defendant's statements were a "threat as I have defined the term").  As the defendants are well-aware, no such issue exists in this case because the statute bars conduct (without notification), not speech, notwithstanding that speech may fall within the reach of the statute.  See MTD Order at 10-11.

The implication that a First Amendment instruction is necessary because the case touches upon government and politics is similarly misplaced.  Courts in this District and Circuit, including this Court, have conducted many trials involving emotionally-charged issues, politically sensitive facts and polarizing conduct.  That is why this Court, and most others in this District, instruct a jury that it should not base its verdict on bias, prejudice or sympathy.  See Gov't Charge, Request No. 1 (Requesting the Court's usual instructions on "No Questioning Wisdom of Law, and Basing Verdict on Sympathy or Prejudice Prohibited").  The Court's usual instruction is more than adequate to ensure that the jurors base any verdict on the facts and law, and not on political views.

II.     The Defendants' Proposed General Closing Instructions

The defendants seek to modify or omit several of the Court's standard instructions given at the beginning of the jury charge at the close of trial.  There is no reason to modify or omit the instructions the Court typically gives for basic matters at issue in criminal cases, such as reasonable doubt, not considering punishment or the function of an indictment.  The Court's instructions on these issues were appropriate for numerous prior trials, the government is aware of no instance in which any have been subject to reversal or disfavor on appeal (the defendant also identifies no such instance), and there is no reason why they should be altered for this one criminal case.  With respect to the defendants' particular proposed instructions, the government responds as follows:

---

[8] See also United States v. Duran, 596 F.3d 1283, 1292 (11th. Cir. 2010) ("[W]hether a defendant must [provide notice] under § 951 depend on the defendant's action and conduct as an agent of a foreign government") (emphasis in original); United States v. Latchin, 554 F.3d 709, 715 (7th Cir. 2009) (Section 951 "requires acts as an agent on behalf of a foreign country") (emphasis in original).

A.    Defense Instruction No. 3 (Reasonable Doubt)

The defendants request an extremely brief instruction on reasonable doubt.  The instruction only explains that reasonable doubt is a higher burden than the burden in a civil case and constitutes "proof that leaves you firmly convinced of the defendant's guilt."  See Def. Charge at 26.  As indicated in the Government's Charge, the government respectfully requests that the Court instruct the jury in its usual manner on the burden of proof and the meaning of "reasonable doubt."  See Gov't Charge, Request No. 1.  The Court's standard instruction is, appropriately, more thorough and explains, among other things:

1. Reasonable doubt is based on "reason and common sense" and made after "carefully weighing all the evidence."

2. Reasonable doubt is not "impulse or whim," "speculation or suspicion" or "an excuse to avoid the performance of an unpleasant duty nor is it sympathy for any party."

3. Under the standard, "the Government does not need to prove guilty beyond all possible doubt."

See, e.g., Guzman Closing, (Exhibit 1 to Gov't Charge) at 6959-60; see also Sand, Instruction 4-2.  The defendants' omission of important language risks confusing the jury, and it should be rejected in favor of the Court's usual instruction on this issue.

B.    Defense Instruction No. 4 (Defendant's Right Not to Testify)

As indicated in the Government's Charge, the government respectfully requests that the Court instruct the jury in its usual manner on the defendant's right not testify, if necessary.  See Gov't Charge, Request No. 1.  The defendants' instruction is legally erroneous.  It is not true that "only the government has the burden of proof in a criminal case" and the defendant "never has any burden of proof."  Def. Charge at 27.  If the defendant puts forth an affirmative defense, as it appears both defendants intend to do here, they will bear a burden of proving that defense by a preponderance of the evidence; the defendants acknowledge as much in a later proposed instruction.  See Def. Charge, Instruction No. 30.  The Court's usual instructions correctly explain that the government's burden is "to prove the guilt of the defendant beyond a reasonable doubt," and is sufficient.  See Guzman Closing at 6959; see also Farekh Closing at 1601 (the government "always has the burden of proving beyond a reasonable doubt that the defendant was the person who committed the crime charged.").

C.    Defense Instruction No. 5 (Nature of the Indictment)

The Court should instruct the jury in its usual manner as to the function of the Indictment.  See Gov't Charge, Request No. 1.  The defendants' insertion of the comment that the Indictment "was written by the prosecutors" serves no purpose, except to attempt to prejudice the jury through the implication that the charge is improperly slanted against the defendant.  The language is also deceptive.  To be accurate, the Court would also have to explain that an indictment

was reviewed, voted on and approved by a grand jury of at least 16 members of the community (and, in this case, that at least 32 people, constituting two grand juries, returned a true bill on the Indictment and Superseding Indictment). This dueling commentary is not necessary for the trial jury to consider. The Court's standard language is neutral and legally accurate.

D.   Defense Instruction No. 6 (Caution – Consider Only Crime Charged)

The defendants propose that the Court instruct the jury that the defendants are "not on trial" for conduct "not alleged in the indictment" and that they are not being asked to reach a verdict on "persons not on trial." Def. Charge at 29. The Court's usual instructions already make clear that a defendant is charged by an indictment, and that the jury must return a verdict as to each of the offenses charged in the indictment. See, e.g., Guzman Closing at 6979-80; Farekh Closing at 1585. The Court also usually instructs the jury not to draw any inferences towards the Government or defendant based on the fact that certain persons are not on trial, and the Government has requested an instruction based on the Court's usual instruction on this issue. See Gov't Charge, Request No. 16 (adapted from Guzman Closing at 6967-68). The Court should reject the defendants' confusing instruction and apply its own instructions on these issues.[9]

E.   Defense Instruction No. 7 (Multiple Defendants – Multiple Counts)

As discussed above, to the extent the Court believes a specific "multiple defendants and multiple counts" instruction is needed, the instruction should track the language in Sand, Instruction 3-8.

F.   Defense Instruction Nos. 9 through No. 13

The government respectfully requests that the Court rely upon the instructions that were used in the Guzman Closing and the Farekh Closing.

G.   Defense Instruction No. 14 (Law Enforcement Witnesses)

The government does not object to the first paragraph of the defendants' proposed instruction, which is materially the same as the Court's usual instruction on law enforcement witnesses. Compare Guzman Closing at 6973; Farekh Closing at 1584.

The government objects to the second paragraph, which asks the Court to advise the jury that it is "legitimate for defense counsel to try to attack the believability or credibility of a law enforcement witness on the grounds that his or her testimony may be colored by a personal or professional interest in the outcome of the case." Def. Charge at 41. Such an instruction would have the Court endorse particular conduct by defense counsel as to particular witnesses. There is no legitimate reason to single out and provide judicial blessing for actions by defense counsel, and

---

[9] The government is not currently aware of any evidence it intends to admit pursuant to Rule 404(b) of the Federal Rules of Evidence. Should such evidence be admitted, the government does not object to an appropriate "uncharged criminal acts" instruction. See, e.g., Guzman Closing at 6968.

7

the proposed instruction could serve to give the impression that the Court approves of a line of questioning engaged in by defense counsel. By the logic of this instruction, the Court should also instruct the jury that it is "quite legitimate for the prosecutors to attack the believability or credibility of defense witnesses" on the same grounds. The instruction is neither necessary nor appropriate.

       H.      <u>Defense Instruction No. 15 (Character Evidence)</u>

As reflected by this instruction, the defendants appear to be planning to call character witnesses in their defense. <u>See</u> Fed. R. Evid. 404(a). Should such witnesses testify, the government respectfully proposes an instruction consistent with those ordinarily given in this District. <u>See</u>, <u>e.g.</u>, Charge of the Hon. John Gleeson, <u>United States v. Jose Tejada</u>, 08-CR-242 (E.D.N.Y.); Charge of the Hon. Dora L. Irizarry in <u>United States v. Lange</u>, 10-CR-968 (E.D.N.Y.); Sand, Instructions 5-14 through 5-16. The government will submit a proposed instruction if and when such an instruction becomes necessary.

       I.      <u>Defense Instruction No. 16 (The Charges in this Case)</u>

The Court should reject this proposed instruction, as it makes several incorrect and confusing assertions. First, it incorrectly references a "willfulness" standard with respect to Section 951, as discussed further below. <u>See</u> MTD Order at 14-20 (rejecting the defendants' argument that Section 951 requires willfulness). Second, it instructs the jury that the indictment "groups the counts into three groups." This language appears to track the Court's instruction in <u>United States v. Nordlicht</u>. But there, the Court was instructing the jury about "groups" of counts because they referred to different alleged fraud schemes. <u>See</u> <u>Nordlicht</u>, No. 16-CR-640 (E.D.N.Y.) (ECF No. 849) at 7124 (discussing the "investment scheme" charges and the "Black Elk bond scheme" charges). No such grouping by "scheme" exists here. Instead, the Court should instruct the jury as to the charges in the Indictment in the manner proposed by the Government, which tracks the instruction used by the Court in the <u>Guzman Closing</u>. <u>See</u> Gov't Charge, Request No. 2.

       J.      <u>Defense Instruction No. 17 (Scienter)</u>

The Court should reject this proposed instruction in favor of the government's instruction on scienter, which is more consistent with instructions provided by this Court and other courts in this District. <u>See</u> Gov't Charge, Request No. 3. The defendants' instruction is confusing and omits important instructions. For example, with regard to defining "intentionally," the instruction fails to explain that "it is sufficient that a defendant intentionally engages in conduct which the law forbids" or that "the Government isn't required to prove that a defendant is aware of the law that actually forbids his conduct." <u>See</u>, <u>e.g.</u>, <u>Farekh Closing</u> at 1604.

Additionally, the purpose of this instruction is to explain to the jury the definition of terms that are expected to be used throughout the remainder of the instructions, so the Court does not have to repeatedly define those terms each time they appear. But the defendants' instruction includes definitions of "willfully" and "corruptly," even though those terms are only relevant to instructions related to the specific offenses of materially false statements (which

requires willful conduct) and obstruction of justice (which requires acting corruptly).  As discussed herein (and as this Court previously held), the charged Section 951 offenses do not require willful conduct.  Including these terms in a general scienter instruction will only serve to confuse the jury and may mislead jurors into thinking that the Section 951 offenses require proof of a higher scienter than required under the law.

### III.     The Defendants' Proposed Legal Element Instructions

The government respectfully requests that the Court adopt the government's proposed charges as to the legal elements of the substantive offenses and associated concepts like conspiracy and aiding and abetting liability.  See Gov't Charge, Request Nos. 3-12.  The government's charges are consistent with underlying statutes, legal precedent, and prior jury instructions in this District and elsewhere related to these offenses and concepts.  For example, the government's proposed charge regarding a violation of 18 U.S.C. § 951 tracks the statute, applies this Court's Order regarding the legal contours of the offense, and follows the precedent from this and other circuits.  By contrast, the defendants' proposal asks the Court to adopt an instruction that, among other things, (i) treats the "legal commercial transaction" exception as an element, contrary to every circuit court to consider this matter, and (ii) invites legal error by asking the Court to insert a "willfulness" requirement, based on a clear misreading of a Supreme Court decision related to a wholly different statute and contrary to the line of precedent that holds a criminal statute only requires "knowing" conduct absent express language authorized by Congress that the higher "willfulness" standard should be applied.  The government will be prepared to discuss additional issues at the charging conference but identifies for the Court the following specific objections to the defendants' proposals:

### A.     Willfulness

The defendants attempt to import a willfulness requirement into both Section 951 charges (Counts One and Two) across a myriad of instructions.  See Defense Instruction Nos. 7A, 16-18, 21-22, 24-28.  This is wrong, and contrary to the Court's past order on the motion to dismiss.  The Court has already ruled that Section 951 is a general intent crime requiring knowledge and intent, not willfulness.  See MTD Order at 14-15 (the government had "fulfilled its obligations to adequately plead a conspiracy offense in Count Two by alleging that defendants 'knowingly and intentionally conspire[d]' to violate Section 951); MTD Order at 17-20 ("the Government properly construed the statute to require that defendants have knowledge of their status, even though the statutory text did not necessitate this").  This is supported by similar rulings by other courts across the country.  As the Eleventh Circuit carefully explained:

> Section 951's plain language makes it clear that it is a general intent crime, as there is no mens rea element on the face of the statute. . . . The silence of § 951 as to a specific intent element is dispositive of the fact that Congress intended it to be one of general intent. . . . Although we found that § 951 does not require a showing of a heightened mens rea requirement, the Government must still prove the mens rea of general intent.

596 F.3d at 1292.[10]  Thus, the Court's order and the government's proposed instructions as to scienter (Gov't Charge, Request No. 3) are consistent with other courts to have addressed this question in the context of Section 951.  Indeed, even the court's instructions in Rafiekian, which the defendants cite, contain no such willfulness requirement as to its Section 951 conspiracy count.  See United States v. Rafiekian, No. 18 CR 457 (E.D. Va. July 23, 2019) (ECF No. 354-55).  The defendants also rely on Ruan v. United States, 142 S. Ct. 2370, 2376 (2022), but that reliance is misplaced for the reasons already articulated in the government's brief opposing the defendants' motions for reconsideration.  See Gov't Opp. to Mot. for Reconsideration (ECF No. 125).

Finally, the defendants' reliance on this Court's instructions in Nordlicht is equally erroneous.  In Nordlicht, the defendants were charged with conspiring to commit, inter alia, securities fraud and investment adviser fraud, substantive offenses that (unlike Section 951) have an explicit willfulness requirement in the statutes.  See 15 U.S.C. §§ 78ff, 80b-17.  That is not the case here.  See United States v. Arditti, 955 F.2d 331, 340 (5th Cir. 1992) ("'Willfulness' appears in neither the section 371 definition of conspiracy nor the section 1956 monetary-instrument laundering statute, and . . . it is not an element of the conspiracy offense, which requires the state of mind necessary for the substantive crime.").  Rather, the Court should look to its jury instructions in Guzman Loera and Al Farekh, cases in which the defendants were charged with conspiring to commit substantive offenses that contained no such willfulness requirement.  See Dkt. Nos. 147-2 at 6984:15-16 (instructing the jury that the conspiracy count requires proof beyond a reasonable doubt that "the defendant knowingly and intentionally became a member of that conspiracy"); 147-3 at 1605:23-24 (same).  Notably, the government's scienter instruction is adopted largely from those instructions.

B.     Venue

The defendants ask for repeated instructions about venue throughout their instructions.  See, e.g., Defense Instruction Nos. 18, 23, 29, 37, 45.  Addressing venue in this manner is inefficient, confusing to the jury and creates undue appellate risk.  First, venue is not an element of the crime and need only be proven by a preponderance of the evidence.  See United States v. Woolaston, No. 20-4233-cr, 2022 WL 905404, at *1 (2d Cir. 2022) ("Because venue is not an element of a crime, the government need establish it only by a preponderance of the evidence.") (quoting United States v. Ramirez, 420 F.3d 134, 139 (2d Cir. 2005)).  Instructing on venue within instructions about the elements of each offense (and incorrectly referring to venue as an element of a crime) is legally incorrect and needlessly runs the risk that jurors will apply a preponderance standard to elements requiring proof beyond a reasonable doubt and/or a reasonable doubt standard to venue, which requires only proof by a preponderance of the evidence.  The defendants' instructions are also redundant, as they repeatedly note that the Eastern District of

---

[10] See also, e.g., United States v. Dumeisi, 424 F.3d 566, 581 (7th Cir. 2005) ("Knowledge of the requirement to [notify] is not an element of § 951."); United States v. Turner, 13 CR 572, 2014 WL 4699708, at *2 (N.D. Ill. Sept. 22, 2014) (same); United States v. Campa, 529 F.3d 980 (11th Cir. 2008) ("[w]here no specific intent element is apparent on the face of the statute, the crime is one of general intent.")  (internal quotation marks omitted).

New York includes several different counties, and repeatedly defines the same preponderance standard when discussing venue.

The defendants' instructions on venue are also inadequate because they omit substantial information about what venue means and how it can be proven by the government.  For example, the defendants' instructions on venue fail to explain, among other things, that:

1. Venue in the E.D.N.Y. includes the waters within New York and Bronx Counties, including waters surrounding Manhattan.

2. Venue includes the air space above the E.D.N.Y.

3. Venue can be based on electronic impulses, including email communications passing through a district, and where telephonic communications in furtherance of a crime was made or received.

These omissions are particularly glaring in a case that involves, among other things, international flights into and over the E.D.N.Y., electronic communications into and out of the E.D.N.Y., and other travel and conduct within or between the E.D.N.Y. and elsewhere.  Although a defendant is permitted to waive venue, here the defendants have vigorously contested this issue. The defendants cannot have it both ways and seek cursory venue instructions that explain little on the law of venue, while simultaneously attacking the government's proof of venue at trial.

The defendants' instructions on venue also contain inaccuracies.  For example, Defense Instruction No. 18 and 23 instruct the jury that the government must prove that the defendant "acted as an agent of the UAE . . . within the Eastern District of New York." See Def. Charge, Instruction No. 18 and 23.  Thus, the defendants' proposal would instruct the jury that the crime must be wholly completed in the Eastern District of New York.  This is wrong.  It is blackletter law that venue only requires that "some act in furtherance of the crime" occurred in the relevant district.  See 18 U.S.C. § 3237(a) (offenses that span multiple districts "may be inquired of and prosecuted in any district in which such offense was begun, continued or completed"); United States v. Royer, 549 F.3d 886, 894 (2d Cir. 2008) ("venue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue [and it does].") (internal citations and quotation marks omitted); Sand, Comment to Instruction 3-11 ("The recommended charge correctly states that venue may exist if an act in furtherance of the crime occurs in the district, even if the crime itself occurred elsewhere.  Indeed, the Supreme Court has held that the defendant need not personally have been present in the district for venue to be proper.").  Notably, a defendant in a recent case involving a Section 951 offense similarly tried to argue that the government must prove that the defendant acted as an agent specifically in the district where he was charged; the Court expressly rejected such an instruction. See Court's Proposed Jury Instructions, United States v. Abouammo (Exhibit 4 to Gov't Charge) at 51-52.

The proper approach would be to address venue in a separate and discrete instruction.  This is the typical practice in this District when venue is contested.  The government

has proposed a comprehensive instruction on venue that is adapted from an instruction recently given by the Hon. Margo K. Brodie in United States v. Ng, No. 18-CR-538 (S-2) (MKB). See Gov't Charge, Request No. 12. This approach has several significant benefits. It eliminates the risk that the jury will apply a lower burden of proof to other elements by making clear that venue is a discrete issue that permits proof by a preponderance of the evidence. The government's instruction also eliminates redundancy; instructing on venue once rather than discussing it on six separate occasions (as is done by defendants) will be more efficient. Finally, an instruction that carefully and thoroughly explains the law of venue will ensure that the jury will be given the proper tools to apply the facts on this highly contested issue.

C.     Defense Instruction Nos. 18-23 (Count 1: Section 951 Offense)

The defendants' instructions related to Section 951 are replete with legal errors, and reflect an attempt to relitigate issues raised and decided on their motions to dismiss. The Court should reject these instructions and use those proposed by the government. See Gov't Charge, Requests No. 4 and 8.

First, the defendants' instructions include a willfulness requirement. See Def. Charge, Instruction Nos. 18, 21, and 22. As discussed above, the Court has already ruled, consistent with past precedent, that Section 951 is a general intent crime that requires knowledge and intent. See MTD Order at 14-15, 17-20. The defendants' instruction also attempts to improperly instruct the jury that venue requires the person to act as an agent in the Eastern District of New York. See Instruction Nos. 18, 23. As also discussed above, venue should be addressed separately, and should instruct the jury that any act in furtherance of the crime can establish venue.

The defendants also request an instruction stating that "to violate Section 951, a defendant must have some sense of obligation to act subject to the foreign principal's instructions." This is identical to an argument previously raised by defendants and rejected by the Court. See MTD Order at 7-11 ("Section 951 does not require a duty"). There is no statute nor any caselaw that stands for what is requested in this instruction. As the Court previously noted, the "some sense of obligation" language does not even arise out of Section 951 but instead is related to the Foreign Agent Registration Act ("FARA"); it is language from a guidance document on a different statute and not a statement of legal precedent. Id. The Court already ruled that Section 951 does not require a duty, and it need not take up the defendants' offer to create new law by importing FARA guidance into an instruction about Section 951.

Defense Instruction No. 18 also refers to "unregistered agents." But Section 951 does not require "registration." The statute is violated when a person "acts in the United States . . . without prior notification to the Attorney General." 18 U.S.C. § 951(a). The distinction between registration and notice is not mere semantics. As the statute and underlying regulations reflect, Section 951 requires a one-time notification (typically in the form of letter or fax) to the Attorney General. See 18 U.S.C. § 951; 28 C.F.R. 73.3(a). FARA, unlike Section 951, requires "registration" in the form of a comprehensive registration statement for anyone who acts as an agent of a foreign principal (a broader group than a foreign government under Section 951), and does so for particular types of conduct. See 22 U.S.C. § 612(a). Registration and notice are different actions that entail different obligations. And because of the different purpose and

12

requirements of FARA, the statute requires a "willful failure to file a registration statement or supplement thereto," a "willful false statement" or willful omission in the statement to constitute a criminal violation. Id. The defendants' insertion of "registration" throughout their instructions conflates two different statutes; the Court's instruction should not confuse the jury in this fashion.

The defendants also ask to include language about the "legal commercial transaction" affirmative defense in their "elements" instruction. See Defs' Charge, Instruction 18 (proposing to instruct the jury using language related to the statutory exceptions to the definition of an agent of a foreign government). As the Court previously indicated was "likely", and as the defendants concede later in their proposed instructions, this part of the statute only creates an affirmative defense to the elements of the offense. See MTD Order at 12; Def. Charge, Instruction No. 30. Including this definition in the section discussing the elements risks confusing the jury and would constitute legal error to the extent it suggests that the jury must treat the "legal commercial transaction" exception as an element of the offense.

The defendants' proposed Section 951 instructions contain other errors and omit important instructions about the offense. Defense Instruction No. 19 proposes to instruct that "the defendant and his foreign principal must have agreed that the defendant would act subject to the foreign principal's direction **and** control." (emphasis added). As they concede elsewhere, Section 951 requires direction **or** control. The defendant's proposed instructions also omit important, clarifying aspects of the applicable law, as found by this Court, that the jury should be instructed on with regard to Section 951. Among other things, the defendants' proposal would fail to instruct that:

1. The relationship may be directly between the foreign government and agent, or indirectly through intermediaries.[11]

2. There need not be any legal duty to comply with the foreign government's directives; a lesser degree of direction or control is sufficient.[12]

3. A person who agrees to act subject to a "hands-off" form of direction also would be acting as an "agent of a foreign government."[13]

---

[11] Rafiekian, 991 F.3d at 540 (explaining that the "agent-principal relationship" can be "established by direct contact or via an intermediary").

[12] See MTD Order at 7-11 ("Section 951 Does Not Require a Duty"); United States v. Rafiekian, 991 F.3d 529, 540-41 (4th Cir. 2021).

[13] Rafiekian, 991 F.3d at 540 (person who "agrees to operate subject to a more hands-off form of 'direction'" is still within Section 951's "reach"); see also MTD Order at 9.

4. The actions taken on behalf of a foreign government do not have to be done in secret.[14]

5. The agreement need not be contractual or formalized, nor must payment or other compensation be received.[15]

6. An agent does not need to be effective or successful, or act for any particular motive.[16]

Lastly, the defendants request an instruction that several types of acts "suggest a lack of an agreement."  See Defense Instruction No. 19.  These instructions are pure defense argument.  They do not assist the jurors to understand the law, and instead would only serve to give judicial imprimatur on defense claims about what certain evidence may or may not "suggest."

D.      Defense Instruction No. 30 (Affirmative Defense to Section 951)

The government opposes the inclusion of any affirmative defense instruction unless and until the Court finds that the defendants have established facts warranting such a defense.  As noted above, Courts have consistently held that a defendant is entitled to an affirmative defense instruction only if he or she marshals sufficient evidence to support the defense at trial.  See, e.g., Bailey, 444 U.S. at 414-15 (holding that defendants were not entitled to any instruction on duress or necessity where they failed to proffer evidence in support of the defenses, other than "[v]ague and necessarily self-serving statements"); Bifield, 702 F.2d at 346 ("Where the evidence, even if believed, fails to establish all of the elements of the duress defense, the trial court may rule upon the defense as a matter of law and need not submit it to the jury.").[17]

_____

[14] MTD Order at 27 ("Section 951 does not require that Barrack have acted in secret.")

[15] MTD Order at 9 ("as existing case law also clarifies, this agreement need not be contractual or formalized") (citing United States v. Butenko, 384 F.2d 554, 565 (3d Cir. 1967)); id. ("nor must renumeration be received") (citing United States v. Hung, 629 F.2d 908, 912 (4th Cir. 1980)).

[16] See Mem. and Order, United States v. Angwang, No. 20-CR-442 (EK) (E.D.N.Y. Aug. 3, 2022) (ECF No. 113) at 6 n.2 ("In any event, Section 951(a) does not require that an 'agent' be effective or successful, or that he act out of any particular motive — only that he be subject to a foreign government's 'direction or control.'").

[17] See also United States v. Sparks, 791 F.3d 1188, 1193 (10th Cir. 2015) ("[A] defendant is not entitled to an instruction that lacks a reasonable and factual basis. . . . To qualify for an affirmative defense instruction, a defendant must point to evidence supporting each element of the affirmative defense. . . . If the evidence is insufficient to prove any one element of an affirmative defense, instruction on the affirmative defense is unwarranted.") (internal quotation marks and citations omitted).

Indeed, in a recent case involving Section 951, the district court declined to give a proposed instruction on the legal commercial transaction defense, because the court found that the government's theory, if proven, would not permit a claim that the actions were "legal commercial transactions." See United States v. Abouammo, 19-CR-621, ECF No. 348 (explaining that, if the jury found that the defendant "accessed and provided nonpublic account information" to a foreign government outside the scope of his employment at Twitter, then "there would be no such defense to the specific charge").[18]  Similarly, here, the government's theory is that the defendants actions for a foreign government and foreign officials were far outside the scope of their employment. Such actions included, among other things: (1) influencing public opinion and the foreign policy positions of the Trump Campaign; (2) relaying non-public information about the foreign policy positions and decisions of the Trump Campaign; (3) developing a backchannel line of communication to the Trump Campaign on behalf of the UAE government; (4) designing plans to increase the UAE's political influence and promote its foreign policy preferences; (5) pushing UAE favored policy positions; (6) elevating UAE-favored individuals for positions in the administration; (7) disclosing non-public information about Trump Administration appointments, actions and internal deliberations; and (8) arranging meetings for UAE officials and Kingdom of Saudi Arabia ("KSA") officials who were closely aligned with the UAE.  If the jury convicts the defendants based on this theory, then, as in Abuoammo, there is "no such defense" as a "legal commercial transaction."[19]

Should the Court decide to give an instruction on the "legal commercial transaction" defense, the government respectfully requests that the Court adopt the government's supplement proposed instructions. See Exhibit 1.  The government proposes two instructions.  The first instruction advises the jury of the law on the affirmative defense.  The instruction is based upon the statute and implementing regulations, the Court's order on the motion to dismiss as it relates to this defense, and past precedent.  Id.  The government's second supplemental instruction requests that the Court advise the jury about the registration requirement under FARA for agents of foreign principals.  This instruction is necessary because, if the jury finds that a defendant was obligated to register under FARA in his actions on behalf of the UAE, and did not do so, then that defendant's conduct was "prohibited by a federal or state law or regulation" and his conduct cannot be protected by the "legal commercial transaction" defense.  See 28 C.F.R. § 73.1(f).

The defendants' instruction, by contrast is confusing, fails to adequately inform the jury of the law as to this defense, and is peppered with defense arguments.  For example, the defendants would have the Court advise the jury that "legal commercial transaction" is "defined broadly."  See Def. Charge at 68.  The language is confusing as "defined broadly" is both vague

---

[18] The defendant in Abouammo also advised the court that he would not raise a "legal commercial transaction" defense if the jury proceeded on this theory.  See id. at 2.

[19] As discussed further below, this is in addition to the fact that the defendants' conduct was prohibited by FARA, and thus not "legal" under the "legal commercial transaction" affirmative defense.  This is a separate and independent reason why the "legal commercial transaction" is not applicable under the government's theory of the case and an instruction on such a defense would not be appropriate.

and inconsistent with the fact that the implementing regulations for Section 951 specifically and precisely defines the parameters of a "legal commercial transaction." See 28 C.F.R. § 73.1(f) ("Definition of Terms").  The defendants' proposal also fails to advise the jury that the defense must be considered for each action taken on behalf of the defendant for the foreign government.  This is particularly important in the present case, where the defendants are alleged to have engaged in a wide variety of actions over the course of several years at the direction or control of the UAE.  As the government's instruction explains, the jury needs to evaluate whether all of the conduct done for the UAE was "legal" and "commercial" to consider whether this defense applies.  See Exhibit 1.

The defendants' proposal also omits any explanation that "legal," "commercial" and "transaction" are discrete legal concepts, and that each needs to be met for the defense to apply.  Even if some of the defendants' conduct were commercial, the defense would not apply if it were not legal.  This is why the governments' second supplemental instruction, regarding the law on FARA, is important and should be given in conjunction with any instruction on the "legal commercial transaction" defense.  In addition to being a criminal violation of Section 951, the defendants' conduct was "prohibited by federal . . . legislation," because the defendants were obligated to register under FARA and did not register as required by law.[20]  Thus, even if the defendants can prove by a preponderance that all of their actions for the UAE government were commercial (which they were not), the defense is still inapplicable if (as is the case here) they were required to register under FARA and failed to do so.

E.    Defense Instruction No. 24 (Aiding and Abetting)

The Court should reject the defendants' aiding and abetting instruction in favor of the instruction offered by the government.  See Gov't Charge, Request No. 5.  The government's aiding and abetting instruction is adapted from this Court's instruction from Guzman, and is consistent with the instruction given by other courts in this District, as well as with the instruction recommended by the Sand treatise.  See id.; see also Guzman Closing at 6981-83; Farekh Closing at 1626-29.  The defendants' instruction contains several errors.  The instruction includes a "willfullness," requirement that, as discussed above, is not an element of the Section 951 offenses.[21]  The defendant also identifies aiding and abetting as a second theory of liability, but

---

[20] Whether or not the defendants are guilty of a criminal violation of FARA—that is, they willfully failed to register—is not relevant for purposes of the "legal commercial transaction" affirmative defense.  The defense is inapplicable if there is any violation of a federal or state law or regulation, whether or not it constitutes a criminal violation of the law.  See United Sates v. Ying Lin, No. 15-CR-601 (S-2) (DLI), 2018 WL 3416524 (E.D.N.Y. July 11, 2018) (denying motion to dismiss Section 951 charges based on allegation that defendant smuggled items on behalf of the People's Republic of China, and did so in violation of Transportation Security Administration regulations).

[21] The defendants' reliance on Nordlicht in support of their instruction is misplaced, as previously discussed.  As the Court is aware, that case involved securities fraud and wire

16

does not at all mention that the government may prove guilt through the <u>Pinkerton</u> doctrine of co-conspirator liability for a substantive offense.  <u>See</u> Gov't Charge, Request No. 6.

      F.      <u>Defense Instruction Nos. 25-29 (Conspiracy to Violate Section 951)</u>

      The defendants' instructions on conspiracy contain several significant omissions and multiple legal errors.

      Instruction No. 26 omits language on the nature of conspiracies that is regularly used by this Court and other judges in this District to ensure the jury is properly apprised on how to evaluate the evidence.  For example, it fails to instruct the jury that "since a conspiracy is, by its very nature, characterized by secrecy, direct proof is often not available" and thus a jury "may infer the existence of a conspiracy from the circumstances of this case and the conduct of the parties involved." <u>Farekh Closing</u> at 1606.  This is so because, "[i]n the context of conspiracy cases, actions can speak louder than words," <u>id.</u>, and "[c]ommon sense would suggest that when people do, in fact, undertake to enter into a conspiracy, much is left to an unexpressed understanding.  A conspiracy, by its very nature, is almost invariable secret in both origin and execution," <u>United States v. Li</u>, No. 18 CR 302 (BMC) (E.D.N.Y. Nov. 25, 2019), Jury Charge at 21 (ECF No. 307).  The government respectfully submits that its proposed instructions more closely track the conspiracy instructions that have repeatedly been administered by this Court and other judges in this courthouse without any finding of error on appeal.  <u>See</u> Gov't Charge, Request No. 7.

      The defendants' proposed Instruction No. 28 incorrectly states that the object of the conspiracy was "to act as unregistered agents of a foreign government within the United States." That is incorrect, as Section 951 has a notice requirement, not a registration requirement, as discussed above.  Rather, the Court's instructions to the jury should track the language of the Superseding Indictment and the statute, namely that the object of the conspiracy was "to act in the United States as agents of a foreign government, to wit: the United Arab Emirates, without prior notification to the Attorney General of the United States."  Ind. (S-1) ¶ 116.

      In addition, defendants' Instruction No. 28 erroneously provides that, in the context of the charged conspiracy, the jury "must unanimously agree on which overt act was committed." This is contradicted by Second Circuit precedent.  In <u>United States v. Kozeny</u>, 667 F.3d 122 (2d Cir. 2011), the Second Circuit addressed this very question, holding that "although proof of at least one overt act is necessary to prove an element of [conspiracy], which overt act among multiple such acts supports proof of a conspiracy conviction is a brute act and not itself [an] element of the crime.  The jury need not reach unanimous agreement on which particular overt act was committed in furtherance of the conspiracy." <u>Id.</u> at 132.  The Second Circuit has reaffirmed <u>Kozeny</u> and concluded that it is "binding Second Circuit precedent [that] forecloses [a defense] argument that the jury be instructed to find unanimously a specific overt act in order to return a conviction on [a] Section 371 conspiracy offense."  <u>United States v. Cote</u>, 615 F. App'x 39, 40 (2d Cir. 2015).  To

---

fraud-related charges.  Unlike Section 951, those offenses require "willful" misconduct.  Thus, while such an instruction may have been appropriate in <u>Nordlicht</u>, it is not appropriate in this case.

the extent that the defense is relying on Rafiekian for the proposition that unanimity is required, it bears repeating that Rafiekian is not binding precedent, unlike Kozeny.

Similarly, proposed Instruction No. 28 states that the jury must conclude that the overt act committed in furtherance of the conspiracy was "alleged in the indictment or an overt act that is substantially the same as one explicitly charged." Kozeny once again instructs otherwise, holding that "the government may plead one set of overt acts in the indictment and prove a different set of overt acts at trial without prejudice to the defendant." 667 F.3d at 132 (citing United States v. Kaplan, 490 F.3d 110, 129 (2d Cir. 2007) ("We have routinely found that no prejudice results from a variance between overt acts charged in an indictment and those proved at trial." (citing cases))); see also United States v. Van Hise, No. 12 CR 847, 2017 WL 3425750, at *28 (S.D.N.Y. Aug. 8, 2017) ("The overt act may itself be lawful and need not be charged in the indictment.").

Instruction No. 28 in the defendants' instructions also states: "Bear in mind, however, that the overt act standing alone may be an innocent lawful act, and if that is all it is, then the third element is not satisfied." This instruction risks confusing the jury. As an initial matter, the law is clear that an overt act may itself be an innocent or lawful act and nonetheless satisfy the elements of conspiracy. See United States v. Abdullaev, 761 F. App'x 78, 84 (2d Cir. Feb. 7, 2019) ("It is well-established that an 'overt act' is 'any act, innocent or illegal, as long as it is done in furtherance of the object or purpose of the conspiracy." (citing United States v. Tzolov, 642 F.3d 314, 320 (2d Cir. 2011)); Van Hise, 2017 WL 3425750, at *28 (holding that "[t]he overt act may itself be lawful" (citing Iannelli v. United States, 420 U.S. 770, 786 n.17 (1975) ("The [overt] act can be innocent in nature, provided it furthers the purpose of the conspiracy."))). The defendants' proposal risks erroneously instructing the jury that the overt act must itself be criminal to satisfy this element, which is not the law. See United States v. Montour, 944 F.2d 1019, 1026 (2d Cir. 1991) ("[A]n overt act need not be inherently criminal to support a conspiracy conviction.").

Lastly, the defendants' instructions on venue related to Count Two, specifically Defense Instruction Nos. 25 and 29, also suffer from the same deficiencies referenced earlier. As previously discussed, lumping instructions on venue into instructions with other elements of the various offenses that must be proven beyond a reasonable doubt may confuse jurors into thinking that the standard of proof for venue is higher than required. In addition, the defendants' instructions on venue omit important information about the nature of venue and the methods by which the government can establish venue, as discussed above. The government respectfully submits that addressing venue in a separate and discrete instruction is the proper approach.

G.      Defense Instruction No. 31 (Unanimity of Theory as to Counts 1 and 2)

The defendants' "unanimity as to theory" instruction is contrary to well-established law. It would be legally incorrect to instruct that the jury "cannot convict [the defendants] on either Count 1 or Count 2 unless you are unanimous that the government has proven its case beyond a reasonable doubt as to the same theory." See Def. Charge at 71. The Second Circuit affirmed the rejection of just such an instruction, and explicitly held that juries may convict a defendant "even if some jurors convicted on a theory of principal liability and others on aiding and abetting" and even where the theories might require different mental states. See United States v.

Ferguson, 676 F.3d 260, 279-80 (2d Cir. 2011) (affirming district court's denial of "'specific unanimity' instruction, which would have ensured that, as to each defendant, the jurors unanimously agreed on the theory of conviction").  Unsurprisingly given this precedent, the defendants identify no decision in this Circuit that supports such an instruction; rather, they cite a Second Circuit case for the proposition that it "encourages more specific unanimity instructions" to avoid jury confusion.  See Def. Charge at 71 n.61 (citing United Sates v. Schiff, 801 F.2d 108, 115 (2d Cir. 1986)).  Notably, the defendants fail to mention that the case they cite affirmed the use of a general unanimity instruction in a complex tax fraud case.  See id. (distinguishing from case where more specific instruction was required because the case involved "separate acts of extortion carried out by various individuals, acts directed at different victims at different times and in widely separated locations").

As this Circuit has repeatedly explained, "[a] general instruction on unanimity is sufficient to insure that such a unanimous verdict is reached, except in cases where the complexity of the evidence or other factors create a genuine danger of jury confusion."  Ferguson, 676 F.3d at 279.  The defendants' conduct is serious, but it is hardly so complex as to necessitate the unusual step of a specific unanimity instruction.  See id.  (finding that "[t]he accounting and insurance concepts in the case may have been complicated, but they did not add significant complexity to the theories of liability").  The Court's usual instruction, as requested by the government, is more than appropriate for this case.  See Gov't Charge, Request No. 1; Farekh Closing at 1648.

H.  Defense Instruction Nos. 32-37 (Obstruction of Justice)

Instruction Nos. 32 to 37 in the defendants' instructions suffer from multiple defects.  For example, Instruction No. 32 fails to instruct that a defendant must act "corruptly" to violate 18 U.S.C. § 1512(c)(2).  Similarly, Instruction Nos. 33, 34 and 37 erroneously omit the "or attempts to do so" provision of 18 U.S.C. § 1512(c)(2), which is also quoted in the Superseding Indictment.[22]

Instruction No. 36 in the defendants' instructions also misleads the jury by implying that "merely uttering false statements" to federal law enforcement officers is not sufficiently obstructive conduct to violate 18 U.S.C. § 1512(c)(2).  In United States v. Mangano, the district court rejected a proposed instruction that used this very language.  See 16 CR 540, 2022 WL 2872670 at *8 (E.D.N.Y. July 20, 2022) (finding objection to instruction "does not present a substantial claim").  As explained in Mangano, an instruction that the government must prove that

---

[22] Specifically, Instruction No. 33 should state: "First, that the defendant obstructed, influenced, or impeded an official proceeding, or attempted to do so."  Similarly, Instruction No. 34 should state: "As just noted, the first element the government must prove beyond a reasonable doubt is that the defendant obstructed, influenced or impeded an official proceeding, or attempted to do so."  Instruction No. 37 should state: "With respect to Count 3, the obstruction of justice count, you have to consider whether the official proceeding alleged to have been obstructed or attempted to be obstructed . . . ."

"the defendant obstructed, influence or impeded a federal grand jury investigation" is sufficient, and an additional instruction like the one proposed by the defendants was unnecessary. Id.[23]

Such an instruction is not only unnecessary, it is also a misstatement of the law. It is true that, "uttering false statements to an investigating agent . . . who might or might not testify before a grand jury is [not] sufficient," absent "a relationship in time, causation, or logic" with an official proceeding. United States v. Aguilar, 515 U.S. 593, 599-600 (1995). But it is one thing to state that false statements to a law enforcement officer must have a relationship in time, causation, or logic with an official proceeding; it is quite another to state, as Instruction No. 36 does, that "[m]erely uttering false statements does not 'corruptly influence' within the meaning of the statute." Instruction No. 36 misstates the law and risks misleading the jury by implying that Mr. Barrack cannot have obstructed justice merely by lying to federal law enforcement officers, even if the government establishes the required nexus to an official proceeding.

Instruction No. 36 also omits language commonly administered in this courthouse on the meaning of the term "corruptly" in the context of 18 U.S.C. § 1512(c)(2). As set forth in the government's proposed jury instructions, an instruction on the term "corruptly" should include the following language:

> A defendant does not need to know with certainty that his conduct would affect judicial proceedings, nor does this conduct need to actually obstruct justice. Instead, the defendant's conduct must only have the natural and probable effect of interfering with the due administration of justice.

> The 'due administration of justice' refers to the fair, impartial, uncorrupted and unimpeded investigation, prosecution, disposition or trial of any matter, civil or criminal, in the courts of the United States. It includes every step in a matter or proceeding in the federal courts to assure the just consideration and determination of the rights of parties, whether Government or individual. Thus, the due administration of justice includes, but is not limited to, a federal grand jury investigation or a federal prosecution and criminal trial.

---

[23] The Court relied upon several other cases, which likewise held that identifying a "grand jury proceeding" or "grand jury investigation" was sufficient and no additional instruction was needed. See id. (quoting United States v. Smith, 831 F.3d 1207, 1215 (9th Cir. 2016) ("There was no need for the district court to give an additional instruction proposed by the [defendants] which stated that it was insufficient for the Government to show that they obstructed an FBI investigation, as opposed to a grand jury investigation.") and United States v. Monus, 128 F.3d 376, 390 (6th Cir. 1997) (rejecting argument that jury instruction was erroneous because it failed to state that "it is not enough for the government to prove that the defendant knew an investigation was being conducted by the FBI or IRS" and finding that instruction that only referenced "Grand Jury proceedings" was sufficient)).

Gov't Charge, Request No. 9 (adapted from the jury charges of the Hon. Dora L. Irizarry in United States v. Sampson, No. 13-CR-269 (E.D.N.Y.) (DLI) and the jury charges of the Hon. Joan M. Azrack in United States v. McPartland, No. 17-CR-587 (E.D.N.Y.)).

Lastly, as previously discussed, the defendants continue to weave instructions on venue throughout their instructions on each of the crimes charged, which risks confusing the jury as to whether venue is an element of the offenses charged (which it is not) and the standard to be applied.[24]

I.     Defense Instruction Nos. 38-46 (False Statements)

The government respectfully requests that the Court adopt the government's proposed instructions regarding materially false statements, because the charge is more consistent with charges ordinarily given in this Circuit.  See Gov't Charge, Request No. 10.

The defendants' instructions contain omissions and are legally inaccurate.  For example, the defendants' instructions omit the fact that, under the law, "[i]t is not necessary for the Government to prove that the defendant had actual knowledge that any false statement was to be utilized in a matter that was within the jurisdiction of the Government of the United States." See, e.g., Gov't Charge, Request No. 10.

Additionally, Defense Instruction No. 41 claims that a statement is material if it "is reasonably likely to influence the government in making a determination the entity must make." This is not the legal standard.  The standard, as reflected in the government's instruction and past instructions given in this Circuit, is that a statement is material if is "capable of influencing the Government's decision or activities."  See, e.g. Gov't Charge, Ex. 7 at 63-67 (charges in United States v. Sampson, No. 13-CR-269 (DLI)); Ex. 9 at 7-10 (charges in United States v. Khan, 18-CR-195 (JAM)); see also United States v. Reyes-Batista, 844 Fed. App'x 404, 410 (2d Cir. 2021) ("Under § 1001, a statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decision making body to which it [is] addressed.'") (quoting United States v. Gaudin, 515 U.S. 506, 509 (1995)).  The defendants' decision to replace "capable of" with "likely to" appears to be an attempt to improperly heighten the burden of proof.  The use of this inaccurate instruction is particularly concerning since the legal citation the defendants quote in support expressly indicates that the standard is "capable of influencing."  See Def. Charge at 82 n.71.

Defense Instruction No. 42 is problematic for several reasons.  First, the defendants ask the Court to instruct the jury that "a literally true statement, even if it is misleading or incomplete, is not false, fictitious, or fraudulent within the meaning of the statute."  This is not legally accurate and would mislead the jury.  See United States v. Sampson, 898 F.3d 287, 306 n.14 (2d Cir. 2018) (explaining that the Circuit has only indicated in dicta that literal truth may be a defense to a false statement offense under 18 U.S.C. § 1001).  As the court in Sampson explained,

---

[24] Indeed, Defense Instruction No. 37 refers to venue as the "fourth element" of the crime. But "venue is not an element of a crime."  Woolaston, 2022 WL 905404 at *1.

a statement that may be a "literally true" statement in isolation may actually be misleading or false in the context of the question and surrounding circumstances. Id. at 306-07 ("If, in the context in which the statements were made, they were materially untrue, then [a violation] is established. This is so even if the statements could be literally true in isolation.") (quoting United States v. Shafrick, 871 F.2d 300, 304 (2d Cir. 1989)). Notably, the Sand treatise does not propose any such "literal truth" instruction and notes the Second Circuit's view that statements that may technically be literally true can still be viewed as false in context and support a conviction. See Sand, Comment to Instruction No. 36-5 ("a literally truthful statement can still be a violation of the statute") (citing Sampson).

Defense Instruction No. 42 also contains a lengthy instruction about "fundamentally ambiguous" questions. This is improper. Whether or not a question is "fundamentally ambiguous" is a matter of law to be decided by the Court. See United States v. Lighte, 782 F.2d 367, 375 (2d Cir. 1986) ("When a line of questioning is so vague as to be 'fundamentally ambiguous,' the answers associated with the questions posed may be insufficient as a matter of law to support the perjury conviction.") (emphasis added); United States v. Markiewicz, 978 F.2d 786, 808 (2d Cir. 1992) ("Although it is the province of the jury to determine whether a witness believed that the testimony she gave in response to a particular question was false . . . we may reverse a jury's verdict of perjury if we determine that a line of questioning is so fundamentally ambiguous that the answers associated with the questions posed may be insufficient as a matter of law to support the perjury conviction.") (internal citations and quotation marks omitted).[25] The defendants' instruction is thus an improper attempt to have jurors decide a question of law. This portion of the instruction should be rejected in its entirety.[26]

Finally, Defense Instruction No. 42 also includes confusing language about the burden of proof. There is no need to include such language since, as discussed above, the Court's usual instruction on the burden of proof is sufficient and less confusing.

The defendant's instructions regarding material false statements also contain instructions about venue, and refer to it as an element. See Defense Instruction No. 45. As discussed above, venue should be instructed in a separate charge to avoid confusing or misleading the jury about the law.

---

[25] Notably, the defendants cite Lighte but fail to quote the portion that indicates this is a question of law, not of fact.

[26] The defendants have failed to identify any even partly ambiguous questions. To the extent they do so, the Court should, at most, include the optional instruction recommended by the Sand treatise about ambiguity. See Sand, Instruction 36-12 ("If [the government's question] was ambiguous, so that it reasonably could be interpreted in several ways, then the government must prove that defendant's answer was false under any reasonable interpretation of the question.").

J.      Defense Instruction No. 47 (First Amendment)

As discussed above, an instruction on the First Amendment is not appropriate.

K.      Defense Instruction No. 48 (Theory of the Defense)

The defendants request an instruction on their theory of the case, but have indicated that they will file such a proposed instruction at a later date.  The government reserves its right to object to any such filing.

L.      Missing Instructions

The defendants' proposed instructions also omit several important instructions. See, e.g., Gov't Charge, Request No. 6 (Co-Conspirator Liability), Request No. 35 (Co-Conspirator Acts and Statements); Request No. 15 (Expert Witnesses); Request No. 22 (Particular Investigative Techniques Not Required); Request No. 23 (Evidence Lawfully Obtained).  The government respectfully requests that the Court instruct the jury on these issues as described in the Government's Request to Charge.

IV.     The Defendant's Proposed Deliberation Instructions

The government respectfully submits that the Court's usual instructions regarding deliberations are appropriate.  See Guzman Closing at 7037-41; Farekh Closing at 1647-51.

V.    <u>Conclusion</u>

For the foregoing reasons, the Court should reject the defendants' proposed instructions because they would cause confusion and invite legal error, and instead adopt the governments' proposed instructions.

Respectfully submitted,

BREON PEACE
United States Attorney

By:      /s/  
     Ryan C. Harris
     Samuel P. Nitze
     Hiral D. Mehta
     Craig R. Heeren
     Assistant U.S. Attorneys
     (718) 254-7000

     MATTHEW G. OLSEN
     Assistant Attorney General
     Department of Justice
     National Security Division

By:      /s/  
     Matthew J. McKenzie
     Trial Attorney

Enclosures

cc:    Clerk of the Court (by email)
       Counsel of Record (by ECF)