

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH/SPN/HDM/CRH                         *271 Cadman Plaza East*
F. #2018R01309                               *Brooklyn, New York 11201*

August 26, 2022

<u>By ECF</u>

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Thomas Joseph Barrack, et al.
       <u>Criminal Docket No. 21-371 (S-1) (BMC)</u>

Dear Judge Cogan:

    The government writes to respectfully request that the Court call back for oral voir dire the prospective jurors listed in Exhibit B, which includes all persons whom one or both parties believe should return for in-person questioning. Exhibit B also lists questions from the questionnaire the answers to which, in the government's view, merit further inquiry. The government also respectfully requests that the Court ask at least some of its standard voir dire questions so that the parties have an opportunity to hear from and observe the prospective jurors as they engage with the Court.

    As reflected in their letter filed earlier today, the defendants oppose the government's proposal and instead request that the Court strike for cause an additional 41 jurors, based solely on written questionnaire responses, over the government's objection. This approach is not appropriate, as it would give one party the power to strike a juror for cause unilaterally, notwithstanding that the juror might be qualified to serve. See <u>United States v. Quinones</u>, 511 F.3d 289, 299 (2d Cir. 2007). Moreover, the defendants' proposal would eliminate more than one third of the remaining jury pool. The defendants appear to be using purported "cause" strikes to avoid seating many potentially qualified people with political views who have nonetheless affirmed they can be fair and impartial. For example, many of the potential jurors the defendants seek to strike for "cause" are people who expressed some measure of dislike for former President Trump, but who answered that they could put those views aside and be fair and impartial. While some of these jurors may ultimately be struck for cause after additional questioning, the fact that they have opinions – even strongly held opinions – about the former President is not, on its own, a basis to disqualify them for cause, especially in light of an affirmation by many such persons that they can simultaneously hold those views and be fair and impartial in this case. In addition, because the defendants are asking to strike for cause 292 of 409 potential jurors (more than 70% of the jury pool) before even beginning oral voir dire, their proposal creates a substantial and unnecessary risk that we will be unable to seat a jury from the remaining venire.

The Court should reject this attempt to exclude potentially qualified jurors based solely on written responses in circumstances where potential bias is not so evident "as to render superfluous further oral inquiry about the juror's ability to follow legal instructions and to serve impartially." See Quinones, 511 F.3d at 302.  Instead, the Court should have the persons in Exhibit B return for in-person voir dire, ask the jurors about their views, observe their demeanor, and make a determination of qualification based on a full set of facts.  See id.  If the defendants wish to strike qualified jurors who hold particular political views, they may use peremptory challenges to do so.

I.    Legal Standard

"The category of challenges for cause is limited." United States v. Torres, 128 F.3d 38, 43 (2d Cir. 1997).  The Second Circuit recognizes three grounds for challenges for cause: actual bias, presumed bias and inferable bias. Id.  The Supreme Court has directed that prospective jurors only be removed "for cause" based upon "narrowly specified, provable and legally cognizable bas[es] of partiality."  See Swain v. Alabama, 380 U.S. 202, 220 (1965); Torres, 128 F. 3d at 43.[1]  The Second Circuit has cautioned that strikes for actual bias "cannot be found unless a prospective juror is adequately questioned on voir dire with respect to his or her ability to apply the law impartially," that presumed (or implied) bias is reserved for "exceptional circumstances" and "strictly limited," id., and that inferable bias must be "grounded in facts developed at voir dire" that permit an "inference that the juror . . . would not be able to decide the matter objectively." Torres, 128 F.3d at 44-47.

Voir dire ordinarily contemplates some in-person proceeding where the Court and parties can see the jurors and hear them speak.  See Quinones, 511 F.3d at 299.  A written questionnaire is appropriate as a "preliminary screening tool." Id.  Jurors may be struck for cause based solely on a written questionnaire where bias is "so evident from these written responses as to render superfluous further oral inquiry about the juror's ability to follow legal instructions and to serve impartially." Id. at 302.  The Second Circuit has also cautioned that district courts should not strike jurors for cause if their responses to a written questionnaire are ambiguous.  "While blunt acknowledgment of bias may support removal without further inquiry, the more ambiguous a prospective juror's responses, the more useful demeanor, and thus oral inquiry, become in allowing a trial judge to identify partiality warranting removal for cause." Quinones, 511 F.3d at 301-02.[2]  Ultimately, a potential juror should only be struck if the voir dire (oral or written) is "sufficient to permit a trial judge to form 'a definite impression that a prospective juror would be unable to faithfully and impartially apply the law.'" Quinones, 511 F.3d at 301.

---

[1] This is because such challenges are distinct and far narrower than peremptory challenges. Id.  Unlike cause challenges, a party may use peremptory challenges to reject a juror for "real or imagined partiality," and to "ferret out more subtle biases," provided such challenges are not based on Constitutionally impermissible grounds. Torres, 128 F. 3d at 43 n.4.

[2] While Quinones involved a capital case, where the risk created by improper voir dire is far greater, the Second Circuit noted throughout the opinion that the same analysis generally applies to non-capital cases. See 511 F.3d at 301-02 (discussing both capital and non-capital context of voir dire).

II.   <u>Analysis</u>

Contrary to Supreme Court and Second Circuit precedent, the defendants request the dismissal of 41 jurors whose questionnaires do not support a "definite impression" that they should be struck for cause.[3]  Indeed, the defendants are moving to strike for cause several jurors who have affirmatively indicated that they can "faithfully and impartially apply the law." Following are examples of jurors the defendants claim should be struck without <u>any</u> further questioning:[4]



The above examples are representative of many of the 41 additional strikes for cause offered by the defendants.  Rather than identifying jurors with bias "so evident from these written responses as to render superfluous further oral inquiry," <u>see</u> <u>Quinones</u>, 511 F.3d at 302, the defendants appear to be trying to use this process as a means of exercising additional peremptory strikes.  This is not appropriate and contrary to the law.  The answers these jurors gave, while sometimes confused, politically charged or reflecting strongly held views, do not amount to "provable and legally cognizable bas[es] of partiality," particularly since nearly all of these jurors

---

[3] The government has identified 11 jurors that it believes, based on the written questionnaire, could be struck for cause, but does not object to additional in-person voir dire of these persons.

[4] The government has redacted the public-version of this letter to avoid public disclosure of personal information about potential jurors.

have indicated that they can be fair and impartial.[5]  While some of the jurors who return may well be struck for cause by the Court—because of language, scheduling, or partiality—the defendants are wrong to claim that we can exclude these 41 people solely on the basis of the defendants' view (not shared by the government) about the adequacy of their questionnaire responses.  The Court should follow the Second Circuit's guidance on "ambiguous" written responses and have these jurors return for further inquiry.  See Quinones, 511 F.3d at 301.  The Court and parties will then, after asking more questions and assessing the prospective jurors' demeanor, be better positioned to determine whether they can be qualified or struck for cause.

The defendants claim that striking jurors who have expressed some dislike of former President Trump or his administration is appropriate because the former President and other members of the Trump Administration "cannot be ruled out" as potential witnesses.  Although the defendants have already disclosed their witness lists, neither defendant identified the former President or any former member of the Trump Administration as a potential witness.  Ironically, it is the government who has indicated that it may call one or more former Trump Administration officials, and thus would theoretically risk some prejudice to their witnesses from jurors who expressed negative views of the Trump Administration.  In any event, a person's strong feelings about a political or public figure, even if that figure testifies, is not itself a basis to strike a juror for cause absent proof of some form of bias under the law.  See Torres, 128 F.3d at 43.  The government is, frankly, skeptical of the defendants' claim, and it appears to be a last-minute attempt to tilt the scales in favor of disqualifying for cause otherwise qualified jurors.  The Court should inquire at the next status conference about the seriousness of the defendants' claims, why they have not previously identified any such people as witnesses, and what steps they have taken to actually secure any such person's appearance.

Lastly, the government notes that a significant side-effect to the defendants' proposal is the risk of having an insufficient jury pool.  If the Court excludes everyone requested by the defendants, more than 70% of the jury pool will have been struck for cause and a little more than 100 jurors will return for further voir die.  The government respectfully submits that, in the event the Court denies the government's request that all prospective jurors on Exhibit B be called to return for oral voir dire, the Court arrange for the jury coordinators to call in an additional 50 to 75 potential jurors on September 19, so that they can be available for voir dire and selection if necessary.

III.   Supplemental Voir Dire

With respect to proposed supplemental voir dire, Exhibit B identifies particular questions from the questionnaire the answers to which the government respectfully submit merit further inquiry by the Court.  In addition to these juror-specific questions, the government respectfully requests that the Court ask each juror several standardized questions about the person's background, interests, ability to be fair and impartial, and ability to follow the Court's instructions.  With regard to the defendants' additional proposed questions, the government objects

---

[5] There are a handful of jurors who indicated that they could not be fair and impartial with respect to President Trump that the government is requesting be brought back for further inquiry because, the government submits, their answers are sufficiently ambiguous to warrant clarification at an in-person proceeding.

to questions 5, 6, 8 and 9 because they are poorly worded, fail to inquire about fairness and impartiality, and duplicative of already agreed-upon questions from the questionnaire that the Court can ask about.[6] The government anticipates that the remaining questions are already a part of the Court's usual practice, and requests that the Court ask the question in the fashion it believes is most accurate and appropriate.

IV.    Conclusion

For the foregoing reasons, the government respectfully requests that the Court call back for oral voir dire the prospective jurors listed in Exhibit B.

Respectfully submitted,

BREON PEACE
United States Attorney

By:        /s/
           Ryan C. Harris
           Samuel P. Nitze
           Hiral D. Mehta
           Craig R. Heeren
           Assistant U.S. Attorneys
           (718) 254-7000

           MATTHEW G. OLSEN
           Assistant Attorney General
           Department of Justice
           National Security Division

By:        /s/
           Matthew J. McKenzie
           Trial Attorney

cc:    Counsel for Thomas Joseph Barrack (by ECF)
       Counsel for Matthew Grimes (by ECF)
       Clerk of the Court (BMC) (by ECF)

---

[6] Specifically, Question 5 in the defendants' August 26, 2022 letter is duplicative of Question 97 in the Juror Questionnaire. Question 6 in the defendants' August 26, 2022 letter is duplicative of Question 105 in the Juror Questionnaire. Question 8 in the defendants' August 26, 2022 letter is duplicative of Question 76 in the Juror Questionnaire. Question 9 in the defendants' August 26, 2022 letter is duplicative of Question 116 in the Juror Questionnaire.