RCH/SPN/HDM/CRH/MJM
F. #2018R01309

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                          No. 21-CR-371 (S-1) (BMC)

RASHID SULTAN RASHID AL MALIK
ALSHAHHI,
        also known as "Rashid Al Malik"
        and "Rashid Al-Malik,"
THOMAS JOSEPH BARRACK and
MATTHEW GRIMES

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' MOTIONS *IN LIMINE*

BREON PEACE
United States Attorney
Eastern District of New York

Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant United States Attorneys

Matthew J. McKenzie
Trial Attorney
National Security Division
(Of Counsel)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT ............................................................................................................................. 2

    I.    The Government Does Not Intend to Argue That Rashid Al Malik is a Fugitive
        Who Fled the United States to Avoid Prosecution ........................................................... 2

    II.   The Defendants' Motion to Preclude Statements Contained in Specified Government
        Exhibits and All Co-Conspirator Statements is Meritless and Should be Denied.............. 4

        A.   Legal Standard .......................................................................................................... 4

        B.   Argument ................................................................................................................... 6

        C.   The Court Should Admit Co-Conspirator Statements on a Conditional Basis at
            Trial ......................................................................................................................... 19

    III.  The Court Should Deny Grimes's Motion to Preclude Co-Defendant Barrack's
        Statements to Law Enforcement on June 20, 2019 ........................................................ 20

    IV.  Government Exhibit 509-A Contains Co-Conspirator Statements That Are
        Relevant and Admissible at Trial .................................................................................. 23

        A.   Legal Standard ........................................................................................................ 24

        B.   Argument ................................................................................................................. 24

CONCLUSION......................................................................................................................... 28

TABLE OF AUTHORITIES

**Cases**

Bruton v. United States,
    391 U.S. 123 (1968) ..................................................................................... 20

Church of Scientology v. Comm'r,
    83 T.C. 381 (T.C. 1984) ............................................................................... 26

Crawford v. Washington,
    541 U.S. 36 (2004) ................................................................................. 20, 21

In re Terrorist Bombings of U.S. Embassies in East Africa,
    552 F.3d 93 (2d Cir. 2008) .......................................................................... 22

Ocasio v. United States,
    578 U.S. 282 (2016) ..................................................................................... 10

Richardson v. Marsh,
    481 U.S. 200 (1987) ..................................................................................... 22

United States v. Ahmed,
    94 F. Supp. 3d 394 (E.D.N.Y. 2015) ........................................................... 10

United States v. Al-Sadawi,
    432 F.3d 419 (2d Cir. 2005) ........................................................................... 3

United States v. Amato,
    15 F.3d 230 (2d Cir. 1994) ............................................................................. 5

United States v. Bin Laden,
    91 F. Supp. 2d 600 (S.D.N.Y. 2000) ............................................................. 9

United States v. Bollin,
    264 F.3d 391 (4th Cir. 2001) ...................................................................... 3, 4

United States v. Brown,
    374 F. App'x 208 (2d Cir. 2010) ................................................................. 22

United States v. Defreitas,
    701 F. Supp. 2d 309 (E.D.N.Y. 2010) ......................................................... 22

United States v. Desena,
    260 F.3d 150 (2d Cir. 2001) ........................................................................... 5

United States v. Donovan,
    55 F. App'x 16 (2d Cir. 2003) ..................................................................... 27

United States v. Fawwaz,
    694 F. App'x 847 (2d Cir. 2017) ...................................................... 5, 20, 26

United States v. Feng Ling Liu,
    No. 12 CR 934, 2015 WL 4460898 (S.D.N.Y. July 20, 2015) ................... 11

United States v. Geaney,
    417 F.2d 1116 (2d Cir. 1969) ...................................................................... 19

United States v. Ghannam,
   No. 04 CR 1177, 2005 WL 743066 (S.D.N.Y. Mar. 29, 2005)................................................ 10

United States v. Goodrich,
   12 F.4th 219 (2d Cir. 2021) .................................................................................................... 9

United States v. Gupta,
   747 F.3d 111 (2d Cir. 2014).......................................................................................... 4, 5, 6

United States v. Harris,
   167 F. Appx. 856 (2d Cir. 2006)............................................................................................ 22

United States v. Hashmi,
   No. 06 CR 442, 2009 WL 4042841 (S.D.N.Y. Nov. 18, 2009)............................................... 10

United States v. Helbrans,
   No. 19 CR 497, 2021 WL 4778525 (S.D.N.Y. Oct. 12, 2021).............................................. 5

United States v. Ibrahim,
   No. 07 CR 543, 2011 WL 1868563 (E.D.N.Y. May 13, 2011) ......................................... 14, 15

United States v. Ilori,
   No. 21 CR 746 (MKV), 2022 WL 2452258 (S.D.N.Y. July 5, 2022) ...................................... 5

United States v. Jass,
   569 F.3d 47 (2d Cir. 2009)..................................................................................................... 21

United States v. Kahale,
   789 F. Supp. 2d 359 (E.D.N.Y. 2009) ............................................................................ 22, 23

United States v. Kurland,
   No. 20 CR 306 (S-1) (NGG), 2022 WL 2669897 (E.D.N.Y. July 11, 2022) ............................ 4

United States v. Loera,
   No. 09 CR 466 (BMC), 2018 WL 2744701 (E.D.N.Y. June 7, 2018) .................................... 19

United States v. Maldonado-Rivera,
   922 F.2d 934 (2d Cir. 1990).................................................................................................. 10

United States v. Malka,
   No. 19 CR 497 (NSR), 2022 WL 1488568 (S.D.N.Y. May 11, 2022).................................. 5, 6

United States v. Mishkin,
   317 F.2d 634 (2d Cir. 1963).................................................................................................. 14

United States v. Mulder,
   273 F.3d 91 (2d Cir. 2001)...................................................................................................... 6

United States v. Murgio,
   209 F. Supp. 3d 698 (S.D.N.Y. 2016).................................................................................... 11

United States v. Pike,
   292 F. App'x 108 (2d Cir. 2008) ........................................................................................... 20

United States v. Pipola,
   83 F.3d 556 (2d Cir. 1996).................................................................................................... 14

United States v. Rahme,
  813 F.2d 31 (2d Cir. 1987) ................................................................ 5

United States v. Ray,
  20 CR 110, 2022 WL 558146 (S.D.N.Y. Feb. 24, 2022) ....................... 12

United States v. Rivera,
  22 F.3d 430 (2d Cir. 1994) ................................................................ 5

United States v. Russo,
  302 F.3d 37 (2d Cir. 2002) ............................................................... 11

United States v. Stewart,
  433 F.3d 273 (2d Cir. 2006) .............................................................. 20

United States v. Tarantino,
  846 F.2d 1384 (D.C. Cir. 1988) ......................................................... 5

United States v. Wedd,
  993 F.3d 104 (2d Cir. 2021) .............................................................. 11

United States v. Wydermyer,
  51 F.3d 319 (2d Cir. 1995) ............................................................... 9

Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,
  505 F. Supp. 1190 (E.D. Pa. 1990) .................................................... 26

**Statutes**

18 U.S.C. § 951 .............................................................................. 3, 8

22 U.S.C. § 618 .............................................................................. 8

**Rules**

Federal Rule of Evidence 801 ......................................................... 12, 24

Federal Rule of Evidence 801(c) ...................................................... 12

Federal Rule of Evidence 801(d)(2)(D) ............................................. 15

Federal Rule of Evidence 801(d)(2)(E) ............................................. passim

Federal Rules of Evidence 801(d)(2)(A) ............................................ 21

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in consolidated response and opposition to the first four of a series of five motions in limine filed by defendants Thomas Barrack and Matthew Grimes (the "Defendants") over the course of the past two weeks. The Defendants move to preclude (1) evidence or argument concerning co-defendant Rashid Sultan Rashid Al Malik Alshahhi's ("Al Malik") flight from justice, see Dkt. Nos. 157, 158 ("Defs. Flight Mot."); (2) statements contained in specified portions of government exhibits that the Defendants argue is inadmissible hearsay, see Dkt. No. 159 ("Defs. Hearsay Mot."); (3) certain statements made by Barrack to law enforcement that, if offered against Grimes, would purportedly violate Grimes's rights under the Confrontation Clause, and if introduced solely against Barrack, unduly prejudice Grimes, see Dkt. No. 160 ("Grimes's Preclusion Mot."); and (4) notes taken by Al Malik on his cellular phone that the Defendants claim is inadmissible hearsay, see Dkt. Nos. 162, 163 ("Defs. Notes Mot.").[1]

With respect to the motion on Al Malik's flight, the government does not intend to argue that Al Malik fled the United States to avoid prosecution in its case-in-chief, but reserves the right to revisit the question should circumstances change, including in connection with the nature and scope of defense arguments or evidence.   The remaining motions are entirely without merit.   With respect to their motions to preclude co-conspirator statements in certain exhibits and in notes made by Al Malik on his cellphone, the Defendants ignore or mischaracterize the law and fail to recognize the factual context supporting the admissibility of the statements.   Finally,

---

[1]  The Defendants also filed a motion to preclude testimony of three of the experts noticed by the government.   See Dkt. Nos. 164, 165 (joint motion to preclude).   The government will respond to this motion separately.

1

Grimes's motion to preclude statements made by Barrack is without any legal basis and grossly overstates the risk of spillover prejudice.

Accordingly, and for the reasons discussed further below, the Defendants' motion to preclude evidence of Al Malik's flight from justice is moot, and the Court should deny the remainder of the Defendants' motions in their entirety.

<u>BACKGROUND</u>

The government refers the Court to the Superseding Indictment returned on May 16, 2022 (the "Indictment"), and to the Relevant Background section of the government's motion <u>in limine</u> to admit and preclude evidence filed on August 25, 2022, for a recitation of relevant facts.  <u>See</u> Dkt. Nos. 105 (Indictment), 168, 169 (Motion).   Additional relevant factual context is provided below, as warranted, in connection with particular arguments.

<u>ARGUMENT</u>

I.   <u>The Government Does Not Intend to Argue That Rashid Al Malik is a Fugitive Who Fled the United States to Avoid Prosecution</u>

The Defendants move to preclude the government from offering evidence that co-defendant Rashid Al Malik is a "fugitive," having fled the United States on April 8, 2018, three days after he was interviewed by law enforcement on April 5, 2018, and not returned.[2]  <u>See</u> Defs. Flight Mot. at 1-2.   At this time, the government does <u>not</u> intend to argue that Al Malik is a fugitive, that he fled to "avoid facing prosecution," or "that this flight is evidence not only of Mr. Al Malik's guilt, but also the guilt of Mr. Barrack and Mr. Grimes."   <u>See</u> Defs. Flight Mot. at 1.

---

[2]  The Defendants mistakenly claim that Al Malik's decision to flee the United States occurred "more than a year after the allegedly conspiracy concluded."   <u>See</u> Dkt. No. 157 at 9. This is incorrect.   The conspiracy charged in Count Two extends to April 2018, the same month that Al Malik fled the United States, presumably never to return.

The government does intend to introduce U.S. Customs and Border Protection records reflecting Al Malik's travel into and out of the United States during the time period alleged in the Indictment, which will include his April 8, 2018, trip out of the United States. This evidence is relevant and admissible to establish that Al Malik acted "in the United States" during the relevant time period as an agent of the United Arab Emirates (the "UAE") without notifying the Attorney General. See 18 U.S.C. § 951(a). This predicate fact is a necessary element to establish that the Defendants are guilty of Count One as aiders and abettors of Al Malik, and a relevant fact to establish that the Defendants are guilty of Count Two as co-conspirators of Al Malik. The government also reserves its right to question defense witnesses about knowledge of Al Malik's travel on cross-examination, and present evidence, if applicable, of Al Malik's flight in rebuttal.[3]

In addition, the cases cited by the Defendants largely involved instances of a defendant attempting to introduce evidence of their co-defendant's flight to suggest that they were somehow less guilty due to their lack of flight and appearance in Court. See Defs. Flight Mot. at 3 (citing, among others, United States v. Bollin, 264 F.3d 391, 413 (4th Cir. 2001), which held that "[a]lthough a co-defendant's flight may be relevant to show the guilt of that defendant . . . it does not tend to show that another defendant is innocent, at least not where, as here, there can be more than one guilty party."). Accordingly, the government respectfully requests that the Court likewise exclude any evidence or argument by either defendant comparing Al Malik's flight to their own actions after the conspiracy, such as arguments that their appearance at trial, at law enforcement interviews or at grand jury proceedings is probative of lack of criminal intent.

---

[3] A person's flight is admissible and relevant evidence in appropriate circumstances. See, e.g., United States v. Al-Sadawi, 432 F.3d 419, 424 (2d Cir. 2005) (explaining that "flight is an admission by conduct" and probative of consciousness of guilt).

II.  The Defendants' Motion to Preclude Statements Contained in Specified Government
    Exhibits and All Co-Conspirator Statements is Meritless and Should be Denied

       The Defendants move to preclude certain statements contained in specified

government exhibits as inadmissible hearsay and, further, to bar the government from introducing

any co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E).  See Defs.

Hearsay Mot.  Specifically, the Defendants move to preclude Government Exhibits 3-t, 4, 6, 7,

13, 38, 39, 40, 42, 47, 111, 504-t and 513-t, and also to "preclude the government from relying on

the co-conspirator exception to admit any hearsay evidence in this case."  Id. at 1 (emphasis in

original).  The Defendants' arguments are without merit and should be wholly rejected by the

Court.

       A.  Legal Standard

       Rule 801(d)(2)(E) provides in relevant part that "[a] statement is not hearsay

if . . . the statement is offered against an opposing party and was made by the party's co-

conspirator during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).  To admit

such statements, a court must find by a preponderance of the evidence that (i) "there was a

conspiracy"; (ii) "its members included the declarant and the party against whom the statement is

offered"; and (iii) "the statement was made during the course of and in furtherance of the

conspiracy."  United States v. Gupta, 747 F.3d 111, 123 (2d Cir. 2014).  This requires

consideration of "the circumstances surrounding the statement, as well as the contents of the

alleged co-conspirator's statement itself."  Id. at 123-24.

       Contrary to the Defendants' claims about the "strict" nature of Rule 801(d)(2)(E),

(see Defs. Hearsay Mot. at 6), courts in this Circuit have repeatedly held that "the standard for

what qualifies as a statement 'in furtherance' of a conspiracy is not very restrictive."  See United

States v. Kurland, No. 20 CR 306 (S-1) (NGG), 2022 WL 2669897, at *3 (E.D.N.Y. July 11, 2022)

(emphasis added) (citing United States v. Malka, No. 19 CR 497 (NSR), 2022 WL 1488568, at *13 (S.D.N.Y. May 11, 2022)); see also United States v. Ilori, No. 21 CR 746 (MKV), 2022 WL 2452258, at *2 (S.D.N.Y. July 5, 2022) ("[T]he standard for what qualifies as a statement 'in furtherance' of a conspiracy is not very restrictive."); United States v. Helbrans, No. 19 CR 497, 2021 WL 4778525, at *21 (S.D.N.Y. Oct. 12, 2021) (same).   "The requirement that the challenged statement be 'in furtherance of' the conspiracy is satisfied if the statement's objective is 'designed to promote or facilitate achievement of the goals of the conspiracy.'"   Malka, 2022 WL 1488568, at *12 (citing United States v. Rivera, 22 F.3d 430, 436 (2d Cir. 1994)).   "It permits, for example, introduction of any co-conspirator statement that 'reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy.'"   Id. at *13 (citing United States v. Tarantino, 846 F.2d 1384, 1412 (D.C. Cir. 1988)).

The Second Circuit has further held that co-conspirator statements that "provide reassurance, or seek to induce a co-conspirator's assistance, or serve to foster trust and cohesiveness or inform each other as to the progress or status of the conspiracy" further the ends of a conspiracy, United States v. Desena, 260 F.3d 150, 159 (2d Cir. 2001), as do statements "that apprise a co-conspirator of the progress of the conspiracy," United States v. Rahme, 813 F.2d 31, 36 (2d Cir. 1987); see also United States v. Amato, 15 F.3d 230, 234 (2d Cir. 1994), or that "prompt the listener to respond in a way that facilitates the carrying out of criminal activity," Gupta, 747 F.3d at 123-25.   For example, courts have found that a list containing "information regarding the current status of the conspiracy and its membership, is sufficiently in furtherance of a conspiracy." United States v. Fawwaz, 694 F. App'x 847, 851 (2d Cir. 2017) (summary order).   In United States v. Mulder, as another example, the Second Circuit upheld the admission of a co-

conspirator's statements even though they appeared to merely narrate conversations between members of the conspiracy because it kept fellow co-conspirators apprised of the arrangements for their extortion scheme.   273 F.3d 91, 103 (2d Cir. 2001).   In addition, "[a] statement need not be made by one co-conspirator to another co-conspirator in order to be in furtherance of a conspiracy." Malka, 2022 WL 1488568, at *12 (internal citations omitted); see also Gupta, 747 F.3d at 125 (a statement need not be made to a member of the conspiracy to be admissible because "[s]tatements designed to induce the listener's assistance with respect to the conspiracy's goals satisfy the Rule's in-furtherance requirement").

B.   Argument

The Defendants move to preclude the government from admitting any evidence in this case pursuant to Federal Rule of Evidence 801(d)(2)(E), before a single witness has testified or a single item of evidence has been introduced, on the basis of three arguments: (1) the government has not alleged or shown a Section 951 conspiracy; (2) certain UAE officials are not identified as co-conspirators in the Indictment; and (3) certain statements in Government Exhibits 3-t, 4, 6, 7, 13, 38, 39, 40, 42, 47, 111, 504-t and 513-t were not made in furtherance of the charged conspiracy. These arguments are all without merit.

1.   The Government Has Alleged a Section 951 Conspiracy

The Defendants first argue that the Court should preclude the admission of any co-conspirator statements in this case because the government has not sufficiently alleged a Section 951 conspiracy in the Indictment.[4]   As an initial matter, the Court has already rejected this claim in denying the Defendants' motion to dismiss:

---

[4] The Defendants further claim that the government has not "shown" a Section 951 conspiracy, but such a showing is plainly reserved for trial, when the government will present witnesses, documents and other evidence of the charged conspiracy.   The Defendants are once

6

> Count Two alleges that defendants, 'together with others, did
> knowingly and intentionally conspire to' commit the underlying
> offense and identifies numerous overt acts in furtherance.   Under
> Second Circuit law, that is all that is required to withstand dismissal
> for failure to state an offense. . . . Grimes also argues that Count One
> and Two must be dismissed because both fail to allege that he had
> the required specific intent to aid and abet or conspire with anyone
> to violate Section 951. . .   The Government also fulfilled its
> obligations to adequately plead a conspiracy offense in Count Two
> by alleging that defendants 'knowingly and intentionally
> conspire[d]' to violate Section 951.

Mem. and Order at 7, 14 (Dkt. No. 120) (the "MTD Order").   Nonetheless, the Defendants renew

this argument, claiming this time that the government cannot establish a Section 951 conspiracy

because it has "not alleged or shown that any of the defendants knew of their alleged

co-conspirators' status as unregistered agents."   Defs. Hearsay Mot. at 3.

The Defendants' argument is founded upon multiple false premises about Section

951 and the law of conspiracy.   As an initial matter, the Defendants' argument is based upon a

conflation of two different laws, the Foreign Agent Registration Act ("FARA") and Section 951,

as reflected in their insistence that a person must be "unregistered" to commit a crime.   See, e.g.,

Defs. Hearsay Mot. at 3 ("a violation of law occurs only when someone acts as an agent without

registering as one").   As the government has previously explained, Section 951 and FARA are

different.   See Gov't Letter, dated August 15, 2022 at 12 (Dkt. No. 161) (discussing distinction

between Section 951 notice requirement and FARA registration requirement); Opp to Mot. to

---

again attempting to circumvent that process by obtaining the equivalent of a summary judgment
decision from this Court, which is improper.   See United States v. Sampson, 898 F.3d 270, 279-80
(2d Cir. 2018) (there is no "analogue for summary judgment" in federal criminal procedure, and
therefore "although a judge may dismiss a civil complaint pretrial for insufficient evidence, a judge
generally cannot do the same for a federal criminal indictment.").   This Court already rejected
such an effort and should do so again.   See MTD Order at 9 n.5 (holding that the government is
"entitled to presents its evidence at trial" about the existence of an agreement to violate Section
951) (quoting Sampson).

Dismiss at 14-17 (Dkt No. 80) (discussing distinct purposes of the statutes).   The difference matters.   Under FARA, the wrongful conduct is itself the failure to register, not the particular actions taken on behalf of the foreign principal.   See 22 U.S.C. § 618(a) (violation to "willfully violate" registration requirements and related provisions).   Under Section 951, however, the wrongful conduct is not a failure to register, but rather the conduct of acting as an agent of a foreign government without prior notification.   18 U.S.C. § 951(a) ("whoever…acts in the United States…").   A conspiracy to violate Section 951 is therefore not an agreement to willfully evade a registration requirement; it is an agreement to knowingly act as an agent without prior notice. The Defendants may not like the fact that Congress created two discrete statutes, with different *actus rei* and *mentes reae*, to curb the multiple pernicious effects caused by people who operate on behalf of foreign governments on U.S. soil, but they must take the law as it stands and address the crimes with which they are charged.[5]

In conflating the two statutes, the Defendants flip Section 951 on its head.   They argue that acting in the United States as an agent of a foreign government and conspiring to do so is lawful unless one affirmatively decides or agrees not to notify the Attorney General.   But the law is precisely the opposite.   If a person acts or agrees to act in the United States as an agent of a foreign government and does nothing else (i.e., fails to provide notice), then he has violated Section 951.   Affirmative conduct (notifying the Attorney General or agreeing to do so) is

---

[5] The Defendants' conduct does happen to constitute violations of both Section 951 and FARA, which is why they cannot claim that their conduct fits the "legal commercial transaction exception."   And their conduct is a textbook example of the purposes behind both the two different statutes—Section 951 to provide federal law enforcement and counterintelligence agents an opportunity to investigate activity by foreign government agents, and FARA to compel public transparency when a person engages in lobbying or propaganda activities for a foreign principal. That the Defendants appear to have violated multiple laws does not change the fact that the government must only prove them guilty of the crimes with which they are charged.

required by the defendant to make their otherwise unlawful conduct lawful.   Here, the fact that the Defendants, acting in concert, never notified the Attorney General of their conduct, never attempted to do so, and never agreed to do so evidences a Section 951 conspiracy.   The Defendants' argument is yet another attempt to import FARA's requirement that a defendant know the existence of the "registration requirement" into Section 951, which does not require such knowledge.   These arguments have been considered and rejected by this Court and others.   See MTD Order at 17-20; see also Mem. and Order at 5-6 (Dkt. No. 166).

Additionally, the Defendants claim erroneously that, to establish a Section 951 conspiracy, the government must demonstrate that some member of the conspiracy was an "unregistered agent" and thus committed the substantive offense that is the object of the conspiracy.   That is not the law.   As the Court is well aware, "the crime of conspiracy is complete whether or not the substantive offense which was its object was committed."   United States v. Bin Laden, 91 F. Supp. 2d 600, 609 (S.D.N.Y. 2000) (citing United States v. Wydermyer, 51 F.3d 319, 325 (2d Cir. 1995)); see also United States v. Goodrich, 12 F.4th 219, 229 (2d Cir. 2021) ("[T]he essence of conspiracy is the agreement and not the commission of the substantive offense.").   That is, even if no member of the conspiracy charged in Count Two ever acted in the United States as a foreign agent without notifying the Attorney General, a jury could nonetheless convict the Defendants of Count Two of the Superseding Indictment if they agreed to commit the substantive offense.   The government cannot be required to prove that the Defendants knew the substantive offense was in fact being committed by another member of the conspiracy when there is no requirement to establish that the substantive offense ever was committed by anybody.

Lastly, the Defendants claim erroneously that, to establish a Section 951 conspiracy, the government must show that the object of the conspiracy was for members of the

conspiracy other than the Defendants to act in the United States as agents of a foreign government without notifying the Attorney General.   But there is no requirement that, as part of the charged conspiracy, the conspirators agree that any of the other members of the conspiracy will themselves commit the substantive offense.   And, of course, the Defendants themselves knew they had not provided any prior notification to the Attorney General.   For conspiratorial liability to attach, "[a] defendant must merely reach an agreement with the specific intent that the underlying crime be committed by some member of the conspiracy," not all or several members of the conspiracy. Ocasio v. United States, 578 U.S. 282, 288 (2016).   Indeed, to establish conspiratorial liability, the government is not required to demonstrate that the Defendants even knew "the identities of all the other conspirators," let alone whether any of those other conspirators had agreed themselves to commit the substantive offense.   United States v. Maldonado-Rivera, 922 F.2d 934, 963 (2d Cir. 1990).   Even if the Defendants knew that no other members of the conspiracy intended to act in the United States as agents of the UAE without notifying the Attorney General, they could still be convicted of the conspiracy charged in Count Two.

> 2.     The Defendants' Argument That Federal Rule 801(d)(2)(E) Does Not Apply to Unindicted Co-Conspirators is Meritless

Next, the Defendants argue that the government should not be permitted to introduce statements by UAE government officials into evidence at trial because those officials are not explicitly named as co-conspirators in the Indictment.   See Defs. Hearsay Mot. at 5-6.

Such a claim is directly contrary to clear precedent.   "There is no requirement that the Indictment name co-conspirators."   United States v. Ahmed, 94 F. Supp. 3d 394, 431 (E.D.N.Y. 2015) (quoting United States v. Hashmi, No. 06 CR 442, 2009 WL 4042841, at *4 (S.D.N.Y. Nov. 18, 2009)); see also United States v. Ghannam, No. 04 CR 1177, 2005 WL 743066, at *1 (S.D.N.Y. Mar. 29, 2005).   Rather, Federal Rule of Evidence 801(d)(2)(E) applies to

statements of co-conspirators, named or unnamed.   "There is no requirement that a co-conspirator

be identified," let alone identified in the indictment, "for the hearsay exclusion to apply."   United

States v. Feng Ling Liu, No. 12 CR 934, 2015 WL 4460898, at *10 (S.D.N.Y. July 20, 2015).

Indeed, the Defendants' argument, which attempts to restrict the application of

Federal Rule of Evidence 801(d)(2)(E) to only the Defendants actually charged in Count Two of

the Indictment, wholly "misunderstands the hearsay exception for the statements of

co-conspirators – an exception that is rooted in agency law and is not constrained by the text of an

indictment." United States v. Murgio, 209 F. Supp. 3d 698, 722 (S.D.N.Y. 2016) (citing United

States v. Russo, 302 F.3d 37, 45 (2d Cir. 2002)); United States v. Wedd, 993 F.3d 104, 117 n.6

(2d Cir. 2021) ("Of course, a co-conspirator statement is admissible if it was made pursuant to any

conspiracy, whether charged or uncharged."). "In fact, the declarations of a co-conspirator are

admissible even if the object of the conspiracy between the defendant and the co-conspirator is not

'the crime charged in the indictment (or the objective of the conspiracy charged in the

indictment).'" Murgio, 209 F. Supp. 3d at 722 (citing Russo, 302 F.3d at 45).   If "the

[g]overnment is not even required to mention a conspiracy in the Indictment in order to introduce

co-conspirator [statements] against [the defendants]," then the Defendants can hardly argue that

the government is precluded from introducing statements of unindicted co-conspirators of the

conspiracy charged in the Indictment.   Murgio, 209 F. Supp. 3d at 722-23.[6]

---

[6] Although not required for Rule 801(d)(2)(E) to apply, the Indictment does in fact make clear, in numerous ways, that the Section 951 conspiracy charged in Count Two extended beyond the three defendants to UAE officials such as ████████████, a member of the ████████ ████████████████. Count Two of the Indictment states that the Defendants, "together with others, did knowingly and intentionally conspire to act in the United States as agents of a foreign government, to wit: the UAE, without prior notification to the Attorney General of the United States." Dkt. No. 105 ¶ 116. Count Two also charges the Defendants with conspiring to violate Section 951, a substantive offense that, by the Defendants' own admission, requires an

3.      Statements Not Offered for the Truth of Any Matter Asserted Are Not Hearsay

The Defendants also object to the admission of many of the government's exhibits at trial, specifically Government Exhibits 3-t, 4, 6, 7, 13, 38, 39, 40, 42, 47, 111, 504-t and 513-t, on the grounds that these exhibits contain inadmissible hearsay not subject to Federal Rule of Evidence 801(d)(2)(E).   However, an out-of-court statement constitutes hearsay only if it is offered "to prove the truth of the matter asserted in the statement."   Fed. R. Evid. 801(c).   "A statement that is not offered to prove the truth of the matter asserted in the statement is not hearsay at all."   United States v. Ray, 20 CR 110, 2022 WL 558146, at *4 (S.D.N.Y. Feb. 24, 2022) (citing Fed. R. Evid. 801).   As detailed below, the government will be (a) offering most of these exhibits for non-hearsay purposes; (b) offering some of these exhibits under clearly applicable hearsay exceptions; and (c) not offering two of these exhibits into evidence at all.

4.      The Exhibits Specified by the Defendants are Admissible

a.      Government Exhibits 111, 6 and 7

Government Exhibit 111 is an email from Al Malik to ██████████████ that contains no content and simply attaches a presentation on ███████████, where Barrack and

---

agreement with UAE government officials.   See Defs.' Proposed Jury Instructions, Dkt. No. 148 at 50 ("To find an agreement within the meaning of Section 951, you must find that the foreign government and the defendant mutually assented to the arrangement.   It is not enough for the defendant to want to be an agent of the foreign government, nor is it enough for the foreign government to want an individual to be its agent.   Rather, they must both agree to their arrangement.").   The Indictment also explicitly identifies six UAE government officials involved in the charged conduct, including ██████████████ who is identified as Emirati Official 4.   See Dkt. No. 105 ¶¶ 5-10.   Fourth, the Indictment provides significant detail about the involvement of these UAE government officials in the charged conspiracy.   For example, the Defendants contend that ██████████████ is not a named co-conspirator in the Indictment but ignore the fact that his participation in the charged conspiracy is alleged in numerous paragraphs of the Superseding Indictment.   See Dkt. No. 105 ¶¶ 14, 17, 18, 19, 20, 24, 26, 27(b), 27(f), 27(h), 29, 36, 37, 40, 41, 42, 43, 45, 47, 48, 49, 50, 51, 53, 56, 59, 60, 63, 65, 67.

Grimes worked at the time.[7]   Government Exhibit 6 is a subsequent email from ███████████ to the Apple email account of ████████████, a member of the U████████████ ████████████, attaching the same presentation.   Government Exhibit 7 is, in turn, an email from ██████████████ Apple email account to his UAE official email account attaching the same presentation.   Government Exhibits 111, 6 and 7 are not being offered for the truth of any matter asserted therein; indeed, the emails themselves contain no assertions or content of any kind, other than the attached presentations.   The government will not be offering the attached presentation on ████████████ for the truth of any matter asserted in that presentation.[8]   Rather, the government will be offering these exhibits and others for the non-hearsay purpose of demonstrating that, in advance of a meeting between Barrack and a senior UAE national security official, a presentation on ████████████ was provided by the Defendants to Al Malik, who in turn sent that presentation via an intermediary to ████████████, who reported to that senior UAE national security official.   The evidence of the transmission of this document between Barrack and UAE government officials is relevant because it tends to prove the existence of the conspiracy and the substantive offense and identifies the individuals involved in that conspiracy.

        b.    <u>Government Exhibits 3-t and 4</u>

        Government Exhibit 3-t is an email thread that begins with an email from a U.S. Department of State employee to ████████████, which is then forwarded by ████████ to ████ ████████████, the ████████████████████████

---

[7] The government anticipates that other evidence at trial will establish that ████████████ was provided to Al Malik by Grimes at Barrack's instruction, in anticipation of an upcoming meeting between Barrack and a senior UAE national security official.

[8] For example, the government will not be introducing the ████████████ to establish that ████████████████████████████████████████████.”   Gov. Ex. 111.

███████████████, at his UAE official email account and subsequent correspondence between ████████ and ██████████. Government Exhibit 4 is an email from ████████████ to an employee at the UAE Ministry of Foreign Affairs, in which ██████ attaches a resume for ███ ████████ The government does not intend to offer Government Exhibits 3 and 4 for the truth of any matter asserted therein.[9]   Rather, these exhibits will be offered for the non-hearsay purpose of demonstrating ████████ relationship with ████████, as reflected by their direct email correspondence on official matters of state (regardless of the truth of the content of those communications) and by ████████ provision of documents related to ████████ to other UAE government officials (regardless of the accuracy of the information contained in those documents). See United States v. Ibrahim, No. 07 CR 543, 2011 WL 1868563, at *1 (E.D.N.Y. May 13, 2011) ("The documents are admissible against Ibrahim for a non-hearsay purpose – to establish a relationship between Kadir and Ibrahim.") (citing United States v. Mishkin, 317 F.2d 634, 637 (2d Cir. 1963)).   "The fact that the documents may have been created outside the time-frame of the charged conspiracy does not affect that determination," as "[e]vidence outside the scope of an alleged conspiracy is routinely offered for legitimate purposes." Id. (citing United States v. Pipola, 83 F.3d 556 (2d Cir. 1996)).

    c.  Government Exhibits 38 and 39

    Government Exhibits 38 and 39, which are emails recovered from the Google email account of ████████, the ██████████████████████████, will be offered

---

[9]   For example, the government will not be introducing Government Exhibit 3-t to establish that the ████████████████████████████████████████████████████████ ████████████████████████████████████████ See Gov. Ex. 3-t.   Nor will it be introducing Government Exhibit 4 to establish, for example, that ███████████████ ████████████████████████████ as referenced in his resume.   See Gov. Ex. 4.

14

for similar non-hearsay purposes.   Government Exhibit 38 is an email from a U.S. Department of State employee to, among others, ████████████ Apple email account about a meeting in Washington, D.C., which is then sent by ████████ to ████████ Google email account and ████████████ official email account.   Government Exhibit 39 is an email from ████████ to ████████ Google email account and ████████ official email account attaching a ████████. ████████████████ .   Government Exhibits 38 and 39 will not be offered for the truth of any matter asserted therein.[10]   Rather, these exhibits will be offered for the non-hearsay purpose of demonstrating ████████ relationship with ████████ and ████████ as reflected by their direct email correspondence on official matters (regardless of the truth of the content of those communications).   See Ibrahim, 2011 WL 1868563, at *1.

d.   Government Exhibits 13



Government Exhibit 13 is an email from ████████████████████████████ ████████████████ , to Al Malik regarding a ████████████████████ ████████ ████████████ .[11]   This email is then forwarded by Al Malik to ████████ .   As an initial matter, ████████ email to Al Malik is admissible for the truth of the matter asserted pursuant to Rule 801(d)(2)(D) (permitting admission of statements by a "party's agent or employee") because ████ ████ , as ████████████████ , was his employee and was transmitting the flight itinerary in the scope of her employment (as evidenced in part by the content of the email itself).   See Gov.

---

[10]   For example, the government will not be introducing Government Exhibit 38 to establish that the ████████████████████████████████████ .   See Gov. Ex. 38.   Nor will it be introducing Government Exhibit 39 to establish that ████████████████████ .   See Gov. Ex. 39.

[11]   The government anticipates that the evidence at trial will demonstrate that Barrack, Grimes and Al Malik traveled to Tangier, Morocco for the purpose of meeting with a senior UAE national security official as part of the charged conduct in this case.

Ex. 13 ███████████████████████████████████████████████

██████████████████████████████████ Al Malik's subsequent email to ████████

contains no content and thus is not being offered for the truth of any matter asserted therein, as no

matter is being asserted by Al Malik.   Instead, it will be offered for the non-hearsay purpose of

demonstrating that Al Malik ███████████████████████████████, a UAE

official.   The government anticipates that the evidence will also show that Al Malik's email, to

the extent it could be construed to contain content, is clearly an act in furtherance of the charged

conspiracy, as Al Malik, a charged co-conspirator, was transmitting ████████████ for the

Defendants to a UAE government official for the purpose of arranging a meeting between the

Defendants and a senior UAE national security official.   Thus, to the extent Al Malik's email is

adopting the assertions in ████████ email, it is nonetheless clearly admissible for the truth of

any matter asserted pursuant to Rule 801(d)(2)(E).

> e.    Government Exhibits 40

Government Exhibit 40 is an email sent by ████████ on his UAE official email

account to ████████ on his UAE official email account, which ████████ then forwards to ████

████ Google email account.   The email contains no content but attaches a ████████

████████████████████████████████████████████████.   <u>See</u>

Gov. Ex. 40.   Government Exhibit 40 will not be offered for the truth of any matter asserted

therein. [12]   Rather, Government Exhibit 40 will be offered for the non-hearsay purpose of

---

[12] For example, the government will not be introducing Government Exhibit 40 to establish

that the ███████████████████████████████████████████████████

████████████████.   Gov. Ex. 40.

demonstrating, in connection with other evidence in this case,[13] that ███████████████ ████████████████████████████████████████████████ amongst UAE government officials and were then provided, via Al Malik, to the Defendants in this case, an act clearly in furtherance of the charged conspiracy as well as the substantive offense.

        f.     Government Exhibits 42

Government Exhibit 42 is an email from Al Malik to █████ and █████ with the subject line "███████████████," which states: "█████████████████████ █████████" Attached to the email is an █████████████ ███████████████ ███. As an initial matter, the government will not be offering Government Exhibit 42 for the truth of any matter asserted in the █████████. Government Exhibit 42 will be offered for several non-hearsay purposes: (a) demonstrating that Al Malik conveyed this presentation to Al Ghafli and Al Neyadi; and (b) demonstrating that Al Malik's intent in doing so was to transmit the presentation from Barrack to "HH," which the government will assert refers to a senior UAE national security official, see Fed. R. Evid. 803(3). The government will not be offering Government Exhibit 42 to establish that a discussion between Barrack and the senior UAE national security official occurred regarding this investment presentation, although the defense can hardly dispute that fact, given that the government will introduce at trial direct communications by Barrack about meeting with this senior UAE national security official on this particular day, direct communications by Barrack in which Barrack directed a Colony Capital employee to send Barrack this investment presentation so that Barrack could provide it to the senior UAE national security

---

[13] The government expects that additional evidence introduced at trial will demonstrate that these talking points were subsequently emailed by Al Ghafli to Al Malik who then provided those same talking points to the Defendants.

official, and direct communications in which Barrack received the investment presentation from the Colony Capital employee and then sent it to Al Malik.

g.    Government Exhibits 47

Government Exhibit 47 is an email from Yousef Al Otaiba, UAE Ambassador to the United States, to various UAE government officials, including Al Neyadi, that sets forth a planned schedule for meetings between United States government officials and UAE Crown Prince Mohammed bin Zayed Al Nahyan ("MBZ") over the following two days.   Government Exhibit 47 will be offered for several non-hearsay purposes: (a) demonstrating that senior UAE government officials communicated about MBZ's planned meetings with these United States government officials; and (b) demonstrating that Al Neyadi, the user of the Google email account that was searched, was involved in those official discussions.   The government will not be offering Government Exhibit 47 for the truth of any matter asserted therein.[14]

h.    Government Exhibits 504-t and 513-t

The Defendants also object to the admission of Government Exhibits 504-t and 513-t on the grounds that they contain inadmissible hearsay concerning personal matters. Government Exhibit 504-t consists of 201 pages of text message communications between Al Malik and Al Ghafli from September 26, 2016 to November 3, 2017 that were extracted from Al Malik's Apple iCloud pursuant to a search warrant.   Government Exhibit 513-t consists of 165 pages of text message communications between Al Malik and Mohamed Al Ghafli, a relative of Khalifa Al Ghafli, from September 30, 2016 to November 7, 2017.   The government does not

---

[14] As the defense is aware, the government plans to introduce independent evidence establishing that MBZ in fact attended meetings with United States government officials at this time, including, for example, a publicly disseminated video recording of MBZ's meeting with President Trump.

intend to introduce Government Exhibit 504-t or Government Exhibit 513-t into evidence at trial. Rather, the government intends to mark these exhibits for identification and then introduce into evidence excerpts of these communications that are relevant and admissible here.   The government has already marked these excerpts as separate exhibits and provided them to defense counsel, identified as Government Exhibits 504-A-t through Government Exhibit 504-VV-t and Government Exhibit 513-A-t.   The particular passages that the defense raises objections to in their motion are not contained in these excerpts and, to date, the Defendants have not raised objections to these other exhibits.

  C. <u>The Court Should Admit Co-Conspirator Statements on a Conditional Basis at Trial</u>

   In <u>United States v. Loera</u>, No. 09 CR 466 (BMC), 2018 WL 2744701 (E.D.N.Y. June 7, 2018), the Defendants, as here, moved <u>in</u> <u>limine</u> to determine the admissibility of co-conspirator statements under Rule 801(d)(2)(E).   <u>Id.</u> at *6.   Your Honor denied the motion, subject to the procedure in <u>United States v. Geaney</u>, 417 F.2d 1116 (2d Cir. 1969), for co-conspirators' statements, which Your Honor described as follows:

> When the existence of the underlying illicit conspiracy is disputed, as it is here, courts in the Second Circuit follow the <u>Geaney</u> protocol. <u>See</u> <u>United States v. Saneaux</u>, 365 F. Supp. 2d 488, 491-93 (S.D.N.Y. 2005) (collecting cases).   Under that protocol, 'statements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence' establishing 'that a conspiracy existed, that the defendant and the declarant were members, and that the statements were made during the course of and in furtherance of the conspiracy.'   <u>United States v. Tracy</u>, 12 F.3d 1186, 1199 (2d Cir. 1993).

<u>Loera</u>, 2018 WL 2744701, at *6.   The government respectfully submits that there is "no reason to deviate from that procedure here" and requests that the Court apply that procedure at trial.   <u>Id.</u>

III.    The Court Should Deny Grimes's Motion to Preclude Co-Defendant Barrack's
        Statements to Law Enforcement on June 20, 2019

Essentially parroting his motion for severance, Grimes moves to preclude the admission of his co-defendant Thomas Barrack's statements to law enforcement on June 20, 2019 (the "June 2019 Statements").   The crux of Grimes's argument is that admission of Barrack's alleged false statements, the bases for Counts Three to Nine, as co-conspirator statements will violate his rights under the Confrontation Clause.   See Grimes's Preclusion Mot. at 3.   The argument is wrong, and this motion should be denied.

As an initial matter, Grimes's entire argument rests on an incorrect premise—that the Confrontation Clause precludes co-conspirator statements.   See Grimes's Preclusion Mot. at 3.   To the contrary, the Supreme Court and the Second Circuit have both held that the Confrontation Clause does not preclude the admission of statements pursuant to the co-conspirator hearsay exception, because such statements are not testimonial.   See, e.g., Fawwaz, 694 F. App'x. at 851 (explaining that "the Supreme Court has recognized that a piece of hearsay admitted under the co-conspirator exception as a 'statement[ ] in furtherance of a conspiracy' is 'by [its] nature . . . not testimonial.'" (quoting Crawford v. Washington, 541 U.S. 36, 56 (2004)); United States v. Pike, 292 F. App'x 108, 112 (2d Cir. 2008) ("because the statement was not testimonial, its admission does not violate either Crawford . . . or Bruton v. United States, 391 U.S. 123 (1968)"); United States v. Stewart, 433 F.3d 273, 291 (2d Cir. 2006) (finding that "there is no question that the contents of all such statements of one member of the conspiracy would be admissible against other members" after Crawford).   This is why the many statements between and among Barrack, Grimes and their other conspirators in furtherance of the conspiracy are admissible against both defendants and need not be redacted pursuant to Bruton.

Grimes argues "that the only hearsay exceptions that can trump the Confrontation Clause are those that existed at the Founding, and the coconspirator hearsay exception is not among them," and cites the Supreme Court's decision in <u>Crawford</u>.   <u>See</u> Grimes's Preclusion Mot. at 3-4. Yet the defendant conspicuously omits the portion of the <u>Crawford</u> decision that expressly states that this claim is false.   <u>See</u> 541 U.S. at 56 (explaining that "several [hearsay exceptions] had become well established by 1791," including "for example, business records or <u>statements in furtherance of a conspiracy</u>") (emphasis added).   Grimes reaches back 400 years and cites Sir Walter Raleigh's 1603 conviction in England, examines law treatises from the 1700's and recounts the trial of Aaron Burr, <u>see</u> Grimes's Preclusion Mot. at 4-5, but does not address, or even cite, Supreme Court or Second Circuit precedent rejecting his argument.

Setting aside the fact that Grimes was unable to find support for his claim in this century, let alone this Circuit or District, Grimes's argument also assumes erroneously that the government is admitting the June 2019 Statements based on the hearsay exception for co-conspirator statements.   That is incorrect.   The government will admit the June 2019 Statements as non-hearsay statements of a party opponent.   It is black-letter law that the government may introduce a defendant's statements because a statement is not hearsay if it is "offered against an opposing party and . . . was made by the party in an individual or representative capacity."   Fed. R. Evid. 801(d)(2)(A).

Moreover, the June 2019 Statements may be admitted in a joint trial with a limiting instruction.   It is well-settled in the Second Circuit that if a party seeks to admit a defendant's testimonial statement for its truth in a joint trial, the court should give the jury a limiting instruction, and if necessary, redact the names of co-defendants and use neutral pronouns, to avoid Confrontation Clause concerns.   <u>See</u> <u>United States v. Jass</u>, 569 F.3d 47, 56 (2d Cir. 2009); <u>United</u>

States v. Defreitas, 701 F. Supp. 2d 309, 315 (E.D.N.Y. 2010) (citing In re Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d 93, 135–37 (2d Cir. 2008) (holding that "even where multiple defendants are charged with the same crimes, the use of an out-of-court admission does not violate the Confrontation Clause when accompanied by an instruction limiting its admissibility as against the declarant defendant"); United States v. Harris, 167 F. App'x 856, 859 (2d Cir. 2006) (no Confrontation Clause issue where statements were offered only against declarant and accompanied by proper jury instruction)); see also Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("juries are presumed to follow their instructions").   "[T]he Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."   United States v. Brown, 374 F. App'x 208, 210 (2d Cir. 2010) (quoting Richardson, 481 U.S. at 211).

Judge Matsumoto's decision in United States v. Kahale, 789 F. Supp. 2d 359, 390 (E.D.N.Y. 2009) is instructive.   In that case, the court admitted a co-defendant's statements, memorialized in FBI FD-302 reports, over the defendant's objections.   In so holding, the court noted that "none of the excerpts from the depositions and 302 Statements that the government intends to offer include references by a defendant to any co-defendant." Id.   Because "such statements belong to the first class of redacted statements which altogether eliminate any reference to the co-defendants, [t]he use of such statements at a joint trial is constitutionally permissible and successfully avoids Confrontation Clause issues."   Id. (citing Richardson, 481 U.S. at 211).

Similarly, here, the government does not intend to admit any of Barrack's June 2019 Statements that reference Grimes, which are memorialized in an FD-302 report.   Thus, redactions, which are permitted under Second Circuit law to cure Confrontation Clause concerns,

22

will not even be needed for the June 2019 Statements.   Rather, like in <u>Kahale</u>, the government will admit selected excerpts of the June 2019 Statements to "avoid Confrontation Clause concerns while enabling the admission of the statements."   789 F. Supp. 2d at 390.

In sum, the June 2019 Statements (1) are admissible in evidence as statements of a party opponent as to Barrack; and (2) do not violate the Confrontation Clause because they do not reference Grimes and will be admitted with a limiting instruction.   Accordingly, the Court should deny Grimes's motion to preclude the June 2019 Statements.

IV.   <u>Government Exhibit 509-A Contains Co-Conspirator Statements That Are Relevant and Admissible at Trial</u>

The Defendants move to preclude the introduction of certain notes taken by Al Malik on his cellular phone, designated Government Exhibit 509-A on the government's preliminary exhibit list, on the ground that the notes contain inadmissible hearsay.   <u>See</u> Dkt. Nos. 162, 163.   The Defendants argue that the notes do not qualify as co-conspirator statements pursuant to Rule 801(d)(2)(E) because the government has failed to establish the requisite conspiracy and because the notes do not constitute statements made in furtherance of the alleged conspiracy.   <u>See</u> Defs. Notes Mot. at 1-2.   The arguments rest on a misapplication of the relevant law and a crabbed reading of the relevant facts, including the content of the notes in question and the context in which they were created.   The Court should reject the motion for the reasons stated herein and in the government's affirmative motion <u>in</u> <u>limine</u> to admit the notes, filed on August 25, 2022.   <u>See</u> Dkt. No. 168 (the "Motion to Admit").[15]

---

[15] The government's arguments here briefly address particular aspects of the Defendants' motion not otherwise addressed in the more detailed arguments advanced in the government's motion <u>in</u> <u>limine</u> to admit the statements at issue.

A.     Legal Standard

The government refers the Court to the legal standard set forth supra in Part II.A and articulated in the Motion to Admit, which addresses the law as it relates to the particular evidence at issue here.   See Mot. to Admit at 14-16.

B.     Argument

The Defendants' motion to exclude the statements contained in Government Exhibit 509-A rests principally on three premises, each of which is flawed:   that the statements are not assertions, that the government has failed to demonstrate that the Defendants and Al Malik conspired to act as foreign agents "by attempting to 'influence' U.S. foreign policy with respect to the state of Qatar during the blockade of Qatar," and, finally, that the government has not established that the statements were made in furtherance of any such conspiracy.   Defs. Notes Mot. at 1-2.

As an initial matter, it is incoherent to argue, as the Defendants do, both that the notes do not contain statements or assertions and that the notes must be precluded on the ground that they constitute hearsay, which the Federal Rules of Evidence define as statements or assertions.   Compare Defs. Notes Mot. at 9 (arguing that "a 'statement' requires an 'assertion' and no assertions are made in Mr. Al Malik's notes"), with Fed. R. Evid. 801 (defining hearsay as, among other things, a "statement" and a statement as an "assertion").   To the extent the notes, or portions thereof, do not constitute assertions, they are admissible if they are relevant, without regard to rules against hearsay, and their relevance is clear, as discussed herein and in the government's Motion to Admit.

The Defendants' further arguments that the government has not established a conspiracy, and that the notes cannot have been statements in furtherance of a conspiracy because they were not communicated to anyone, fare no better.   In support of the former argument, the

Defendants state that there is no evidence that the Defendants and Al Malik "were ever engaged in a conspiracy to influence U.S. foreign policy regarding Qatar" or "were ever in any common venture concerning Qatar."   Defs. Notes Mot. at 7.   The Defendants are charged with a far broader conspiracy than the one articulated by the Defendants here; they are charged with conspiring to act as agents of the UAE without prior notice to the Attorney General over a two-year period on a variety of UAE foreign policy issues and objectives.   The Defendants' argument that the Court should only consider evidence about this one particular foreign policy in isolation and ignore the evidence of the larger charged conspiracy in making its admissibility determination as to Government Exhibit 509-A is entirely without merit. [16]   The statements at issue are admissible as statements in furtherance of the conspiracy charged in the Indictment, which alleges that the Defendants, Al Malik, and others conspired to act in the United States as agents of the UAE.   See, e.g., In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d at 137–38 ("A fact-finder may properly find the existence of a criminal conspiracy where the evidence is sufficient to establish, by a preponderance of the evidence, that the alleged co-conspirators entered into a joint enterprise with consciousness of its general nature and extent." (internal quotation marks and alterations omitted)).

The Defendants urge preclusion of Government Exhibit 509-A on the independent ground that the notes were not communicated to anyone and therefore cannot have been statements in furtherance of a conspiracy.   In support of this argument, the Defendants contend that there is no evidence – "other than the ipse dixit of the prosecutors" – that the notes contain draft messages for UAE officials.   Defs. Notes Mot. at 1.   They argue further that there is "*no* evidence" that Al

---

[16] The government also disagrees that there is no evidence that the Defendants conspired to influence U.S. foreign policy regarding Qatar.   The evidence at trial will show otherwise, but that is not the question for the Court at this time.

Malik relayed "such information to UAE officials or anything to anyone."   Id. at 3 (emphasis in original).   These statements are obviously wrong – even when written in bold, italic text.   The communications quoted in the Indictment alone, all of which the Defendants presumably have reviewed, reflect regular, systematic communication between Al Malik and Grimes and Barrack on the one hand, and between Al Malik and senior UAE government officials on the other, including communications during which Al Malik conveyed to UAE government officials information provided by Barrack.   See, e.g., Ind. ¶¶ 18, 27, 41, 43, 45, 53, 59, 60, 63.   This pattern thus represents powerful circumstantial evidence that the notes that begin, "Sir . . . I had dinner last night with Tom and it was long conversation," or "Sir, I spoke with Tom and he told me the following" – notes written by Al Malik that address subjects of interest to the UAE government officials with whom Al Malik regularly communicated – followed the same pattern.

In any event, the statements are admissible as co-conspirator statements even if they were not communicated to UAE officials – indeed, the government does not rely on their communications for purposes of admissibility.   In arguing to the contrary, the Defendants rely in part on Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505 F. Supp. 1190, 1274 (E.D. Pa. 1990), and Church of Scientology v. Comm'r, 83 T.C. 381, 515 (T.C. 1984), decades-old civil cases – one from Pennsylvania, another from a tax court, neither standing for the proposition that a statement must be communicated from one co-conspirator to another to be admissible under Rule 801(d)(2)(E).   The Defendants need not have traveled so far in time and space on their hunt for relevant authority.   The Second Circuit has repeatedly (and recently) upheld the admission of drug ledgers, lists, and other such statements made by individual co-conspirators and not communicated to their confederates.   See, e.g., Fawwaz, 694 F. App'x at 851 (holding that list containing "information regarding the current status of the conspiracy and its membership [was] sufficiently

in furtherance of a conspiracy"); <u>United States v. Donovan</u>, 55 F. App'x 16, 21–22 (2d Cir. 2003) (affirming admission of a ledger and a list, each kept by individual conspirators, during the course of securities fraud conspiracy to track certain commission payments, thereby "further[ing] the operations and efficiency of the conspiracy").   These cases represent relevant authority absent from the Defendants' brief.

The Defendants advance the related argument that because, in their view, the contents of the notes were never communicated, the notes cannot be statements made in furtherance of the conspiracy.   They ask, again with bolded text, "How would 'statements' that **no one but Mr. Al Malik had ever seen or heard before**" be designed to promote the goals of the conspiracy?   Defs. Notes Mot. at 12.   They may as well ask why anyone ever takes notes for oneself – or why the cellphone notes function exists at all.   In the main, it is so that the notetaker can record drafts, thoughts, reminders, or other bits of information designed to help the notetaker remember something at some future date, or as an initial step towards a more developed or complete thought – that is, they are taken <u>in furtherance</u> of some goal or project.   Here, that project was a criminal conspiracy.   Notably, the Defendants have offered no alternate theory – no plausible competing inference – as to the purpose of the notes contained in Government Exhibit 509-A.

Accordingly, the Defendants' motion to preclude introduction of Government Exhibit 509-A should be denied.

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court find the Defendant's motion regarding Al Malik's flight to be moot, and deny the remainder of the Defendants' motions in their entirety.

Dated:  Brooklyn, New York
        August 26, 2022

BREON PEACE
United States Attorney
Eastern District of New York

By:    /s/
        Ryan C. Harris
        Samuel P. Nitze
        Hiral D. Mehta
        Craig R. Heeren
        Assistant U.S. Attorneys
        (718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By:    /s/
        Matthew J. McKenzie
        Trial Attorney

28