UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
   UNITED STATES OF AMERICA,

                                      **ORDER**

          - against -                   21-cr-371 (BMC)

   AL MALIK ALSHAHHI, *et al.*,

                      Defendants.
----------------------------------------------------------- X

**COGAN**, District Judge.

      Before the Court are two related motions from defendants. Familiarity with the case is assumed.

      First, Grimes has moved for severance, arguing that his right to a fair trial would be undermined by (1) the risk of "Bruton confrontation issues"; (2) spillover bias; (3) the possibility of "competing trial strategies and defenses"; and (4) complications arising from the testimony of certain Colony Capital witnesses.[1] In a related motion *in limine*, Grimes argues that the Government's admission at trial of Barrack's own statements to law enforcement – even as against only Barrack – would be unduly prejudicial to Grimes and warrant severance.

**I.**      **Legal Standard**

      Federal courts continually have expressed an explicit preference for conducting joint trials of defendants who were indicted together. See Zafiro v. United States, 506 U.S. 534, 537-38 (1993). This preference "is particularly strong where . . . the defendants are alleged to have

---

[1] Although the motion for severance was authored by, and largely pertains to, Grimes, Barrack has joined in the motion.

participated in a common plan or scheme." United States v. Fazio, 770 F.3d 160, 166 (2d Cir. 2014) (quoting United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998)).

This preference makes sense – joint trials promote judicial economy by preventing multiple, time-consuming, and expensive proceedings. See United States v. Borelli, 435 F.2d 500, 502 (2d Cir. 1970). Nevertheless, Fed. R. Crim. P. Rule 14(a) allows a district court to grant severance as a matter of discretion. See, e.g., United States v. Werner, 620 F.2d 922, 926 (2d Cir. 1980). In deciding whether severance is warranted pursuant to Rule 14(a), courts consider the following factors, aimed at determining whether a defendant is substantially prejudiced:

> (1) the number of defendants; (2) the number of counts; (3) the complexity of the indictment; (4) the estimated length of trial; (5) disparities in the amount or type of proof offered against each defendant; (6) disparities in the degrees of involvement by each defendant in the overall scheme; (7) possible conflict between various defense theories or trial strategies; and (8) prejudice from evidence admitted against co-defendants which is inadmissible or excluded as to a particular defendant.

United States v. Upton, 856 F. Supp. 727, 736 (E.D.N.Y. 1994). Although "none of these factors is dispositive, each is intended to provide guidance as to whether a jury will be capable of considering the evidence as to each defendant separately, independent of evidence against co-defendants." United States v. Ramos, 346 F. Supp. 2d 567, 570 (S.D.N.Y. 2004).

Even if there is a risk of prejudice, "less drastic measures – such as limiting instructions – often suffice as an alternative to granting a Rule 14 severance motion." United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003). Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro, 506 U.S. at 539.

II.     Analysis

Upon consideration of the Upton factors, Grimes has not adequately identified sufficient prejudice to warrant severance. Even if he had, the prejudice to either defendant is not "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." United States v. Lanza, 790 F.2d 1015, 1019 (2d Cir. 1986) (quoting United States v. Panza, 750 F.2d 1141, 1149 (2d Cir. 1984)). Were Grimes to be tried separately, it would be "[un]likely to result in a significant time savings . . . because much of the evidence regarding the conspiracy would be admissible against [both] defendants," and would place an unwarranted additional burden on the Court and prosecutors. United States v. Stein, 428 F. Supp. 2d 138, 145 (S.D.N.Y. 2006) (listing as efficiencies "the risk of inconsistent verdicts, the burden on the court and the prosecution of trying the defendants or several groups of defendants *seriatim*, and the need for defense counsel to cover repeatedly on cross-examination in successive trials material that could be covered but once in a joint trial"). This will be a lengthy trial, with a complex indictment and a significant overlap in the evidence as to the defendants. See Upton, 856 F. Supp. at 736. And with only two defendants, and a limited number of counts, a jury is more than "capable of considering the evidence as to each defendant separately, independent of evidence against co-defendants." Ramos, 346 F. Supp. 2d at 570 (quoting United States v. Santiago, 174 F. Supp. 2d 16, 22 (S.D.N.Y. 2001).

A.      **The Confrontation Clause and Bruton Issues**

Grimes asserts that, since both he and Barrack made statements to the grand jury or law enforcement that the Government seeks to admit at trial, the "constitutional concerns" this creates would "necessarily justify a severance in this case."

The Confrontation Clause "prohibits the introduction of the confession of a non-testifying codefendant that implicates the defendant in a crime." United States v. Lung Fong Chen, 393

3

F.3d 139, 148 (2d Cir. 2004) (citing United States v. Bruton, 391 U.S. 123, 126 (1968)). However, the scope of Bruton is limited to a co-defendant's confession that is "incriminating on its face," Richardson v. Marsh, 481 U.S. 200, 208 (1987), and then only when admitted for a non-hearsay purpose. See United States v. DeVillio, 983 F.2d 1185, 1193-94 (2d Cir. 1993) (no Bruton violation where "the statements at issue fall within the purview of Rule 801(d)(2)(E) and were admissible as statements made in furtherance of' the conspiracy").

The Government has clarified that it does not intend to introduce any of Barrack's statements to law enforcement at trial that reference Grimes, nor will it seek to admit any of these statements against him by use of a limiting instruction. This eliminates any issues under Bruton.

Nevertheless, Grimes remains concerned about the prejudicial impact of admitting Barrack's statements to law enforcement in June 2019 against Barrack. Defendants argue that, even with a limiting instruction, this will not be enough to cure prejudice stemming from the introduction of any of these statements as only against Barrack. But "even where multiple defendants are charged with the same crimes, the use of an out-of-court admission does not violate the Confrontation Clause when accompanied by an instruction limiting its admissibility as against the declarant defendant." United States v. Defreitas, 701 F. Supp. 2d 309, 315 (E.D.N.Y. 2010) (citing In re Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d 93, 135-37 (2d Cir. 2008)); see also United States v. Harris, 167 F. App'x 856, 859 (2d Cir. 2006) (no Confrontation Clause issue where statements were offered only against declarant and accompanied by proper jury instruction).

Here, a limiting instruction will be sufficient to cure any prejudice. Although limiting instructions may not always be entirely curative in certain instances, courts ordinarily "presume

4

that juries understand and abide by a district court's limiting instructions." United States v. Downing, 297 F.3d 52, 59 (2d Cir. 2002). In this case, "the prejudicial spillover [is not] so overwhelming [that] they cannot be presumed to be effective.'" See United States v. Riggi, 541 F.3d 94, 104 (2d Cir. 2008) (quoting United States v. McDermott, 245 F.3d 133, 140 (2d Cir. 2001)). Severance under Bruton is not warranted.

For the same reason, Grimes' motion to exclude Barrack's statements to law enforcement must also be denied. Because the Government does not intend to introduce any of Barrack's statements to law enforcement against Grimes, his argument that these statements are inadmissible as co-conspirator statements under Federal Rule of Evidence Rule 801(d)(2)(E) is moot. And because the Government does not intend to introduce any of Barrack's statements to law enforcement that reference Grimes, there is no Confrontation Clause issue, nor is there any requirement that these statements be "Brutonized". See Richardson, 481 U.S. at 208 (a statement implicates Bruton only if "incriminating on its face"). Therefore, as above, a limiting instruction is therefore sufficient to cure any prejudice.

Defendants shall propose the particular limiting instruction at trial and the Court will consider it..

### B. Spillover Bias

Grimes relatedly contends that he should not be tried with Barrack, his alleged co-conspirator, because (1) as his own role is allegedly smaller than Barrack's, there is a disparity in evidence, and (2) because Barrack was charged on additional counts. His argument is unpersuasive. It is well settled that a "disparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant a severance." United States v. Cardascia, 951 F.2d 474, 483 (2d Cir. 1991); see also United States v. Corsey, 512 F. App'x 6, 7 (2d Cir. 2013) ("differing levels of culpability and proof are

inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials") (quoting United States v. Chang An–Lo, 851 F.2d 547, 557 (2d Cir. 1988)). "Even joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible." United States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003) (citations and quotation marks omitted). The mere fact "that one defendant's 'role in a conspiracy may have been smaller or less central than that of certain other coconspirators does not mandate a separate trial' on the grounds of prejudicial spillover." United States v. Moody, 660 F. Supp. 2d 340, 345 (D. Conn. 2009) (quoting United States v. Neresian, 824 F.2d 1294, 1304 (2d Cir. 1987)). Further, "[t]he fact that one of several codefendants is tried for a crime not committed by another codefendant does not, without more, create the sort of miscarriage of justice that would require a new trial." United States v. Hernandez, 85 F.3d 1023, 1029 (2d Cir. 1996).[2]

    Given that defendants are alleged to have taken part in a common scheme, it is by no means clear that the evidence at separate trials would be significantly different, even if the roles each played in the conspiracy were not identical. See United States v. Rosa, 11 F.3d 315, 342

---

[2] Grimes cites several district court decisions granting severance because of the risk of potential spillover. All are inapposite. Most of them involved either (1) prejudicially violent charges inapplicable to some defendants, or (2) defendants who played a much more tangential role in the larger conspiracy than Grimes is accused of here. See United States v. Burke, 789 F. Supp. 2d 395, 399 (E.D.N.Y. 2011) (granting severance upon finding that the "risk of prejudicial spillover is significant" where defendant was "charged in a complex indictment with two counts that are both limited in scope and in time" whereas his co-defendants were charged with violent criminal acts, spanning three decades); United States v. Locascio, 357 F. Supp. 2d 536 (E.D.N.Y. 2004) (granting severance because the evidence as to the nonmoving defendants in a large racketeering conspiracy had little to do with the proof against the moving defendants); Upton, 856 F. Supp. at 737 (granting severance for defendants where the "allegations would not involve much evidence relating to [them] and would not involve the same witnesses," but denying severance as to two defendants, who were "integrally related and intertwined," even though they were "not charged with the same substantive acts as the others"); United States v. Gilbert, 504 F. Supp. 565, 571 (S.D.N.Y. 1980) (granting severance where defendant made sufficient showing that there was a "substantial risk that he would be prejudiced by the gradually accumulating effect of evidence of [co-defendant's] wrongdoing" where the conspiracy began "long before" his involvement, and primarily involved a transaction where he played "no part").

6

(2d Cir. 1993) ("Evidence of the workings of the conspiracy would therefore have been admissible at the individual trials of [the defendants], had they been tried separately."). Any evidence going only to the additional counts as to Barrack – all of which necessarily rely upon evidence of the conspiracy – is easily segregable, as these counts concern conduct that took place long after the conspiracy terminated. Nor is this a case where the evidence is so inflammatory that there is reason to be concerned that a jury may have difficulty in considering the evidence against each defendant separately. And there is no a significant risk of jury confusion.

Finally, any potential prejudice here may be properly remedied by a careful instruction. See, e.g., United States v. O'Connor, 650 F.3d 839, 860 (2d Cir. 2011) (limiting instruction to consider the evidence separately as to each defendant was adequate in a sex trafficking/incest case where evidence was introduced of the non-moving defendant's past pedophilic conduct and proclivities); see also United States v. Ramos, No. 12-cr-556, 2013 WL 1932110, at *4 (S.D.N.Y. May 8, 2013) (denying severance of defendants on grounds that even if the defendant might be subject to some spillover prejudice at a joint trial, any such prejudice could be remedied through an appropriate limiting instruction to the jury).

### C.     Inconsistent Defense Theories

Next, Grimes argues that the trial should be severed because certain defense theories that he intends to present are inconsistent, and potentially in conflict with, those of Barrack. At trial, Grimes plans to emphasize the differences between him and Barrack, suggesting that Barrack "was the ultimate decisionmaker, and when it mattered, [he] left [Grimes] out of the communications and meetings entirely." Grimes also suggests that he may point out that he "reasonably believed that he would have been" informed of any compliance necessary "by lawyers and compliance people, including [] Barrack himself, while working at Colony."

7

These defenses do not present the type of conflict that would require severance. They are not "mutually antagonistic," nor would they make Grimes act as a prosecutor against Barrack. Grimes admits that the defenses he intends to present are not "mutually antagonistic *per se* to [] Barrack's," but instead are merely "conflicting." However, to show prejudice, "the defenses must conflict to the point of being so irreconcilable as to be mutually exclusive." United States v. Cardascia, 951 F.2d 474, 484 (2d Cir. 1991) (citation omitted). That kind of prejudice only obtains "when accepting one defense . . . 'the jury must of necessity convict a second defendant.'" United States v. Yousef, 327 F.3d 56, 151 (2d Cir. 2003) (quoting Cardascia, 951 F.2d at 484).

Criminal liability here will turn on whether each defendant agreed to act, and did act, as an agent of a foreign government. Although defendants may present different theories to the jury and may disagree about some of the underlying facts, each defendant could be acquitted (or convicted) under either side's presentation of the facts. Grimes' defenses do not require a jury to find Barrack guilty if that jury accepts his defense. Indeed, Grimes states that he "believed that [] Barrack was acting on behalf of his company, Colony, and not as an agent of the UAE."

This also explains why Grimes will not be acting as a second prosecutor of Barrack. Where courts have granted severance on this basis, the circumstances were "not solely one of 'co-defendants seek[ing] to place the blame on each other.'" United States v. Shkreli, 260 F. Supp. 3d 247, 257 (E.D.N.Y. 2017) (granting severance on this basis where one defendant intended "to present a defense that no crime was committed", while his co-defendant intended to "present evidence and argue that [his co-defendant] is guilty as charged" and that he was "but another victim of [his co-defendant's] lies and deceitfulness"); see also United States v. Nordlicht, No. 16-cr-00640, 2018 WL 1796542, at *3 (E.D.N.Y. April. 16, 2018) (severing trial

8

where one defendant intended "to argue that . . . his co-defendants are guilty as charged, and that he was, at worst, merely an unknowing pawn in their alleged frauds").

Such circumstances are not at issue here. Grimes is not intending to portray himself as a "victim" whose co-defendant "is guilty as charged," even if, at times, he intends to emphasize their different roles.

### D. Cross-Examination of Colony

Grimes' final basis for severance arises out of potential limitations the Court noted it might place on Barrack's cross-examination of certain witnesses due to conflict issues. Grimes argues that this may lead his counsel to "question these individuals differently," thereby potentially prejudicing Barrack.

First, any limitations are still purely speculative. Regardless, the Court agrees with the Government that Barrack, after knowingly and intelligently waiving any objection to limitations placed on his counsel arising out of their client relationship with Colony, cannot, as the Government puts it, "now use this waived conflict as a sword to sever the case." Grimes cannot claim any potential prejudice arising from any limitation as to Barrack's counsel.

Accordingly, defendants' motion for severance [112] and the related motion *in limine* [160] are denied.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
       September 10, 2022

9