```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
   UNITED STATES OF AMERICA,                                :
                                                            :   MEMORANDUM DECISION AND
             - against -                                    :   ORDER
                                                            :
   AL MALIK ALSHAHHI, et al.,                               :   21-cr-371 (BMC)
                                                            :
                                        Defendants.         :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Before the Court is the Government's [197] motion in limine to preclude defendants from inquiring about classified information at trial, and defendant Matthew Grimes's Classified Information Procedures Act ("CIPA") § 5 notice. Grimes filed his CIPA § 5 notice because he plans to ask certain questions at trial that he expects will elicit classified information. See 18 U.S.C. App. III § 5. Both the Government's motion and Grimes's notice arise from Grimes's desire to show, in essence, that the Government has no evidence that any United Arab Emirates ("UAE") officials considered him an agent.

The Government's motion is granted and a CIPA hearing on defendant's proffered line of questioning is denied. Whether the Government has the type of classified information Grimes seeks is irrelevant. In addition, Grimes's CIPA § 5 notice is untimely.

## BACKGROUND

Thomas Joseph Barrack previously served as the Executive Chairman of a global investment management firm. During that time, he was an informal advisor to the presidential campaign of Donald J. Trump, and later, the Trump Administration. Grimes reported directly to Barrack at the firm, first as an Analyst, and then as a Vice President. During the pendency of the

Trump Campaign, Barrack and Grimes, working through Rashid Sultan Rashid Al Malik Alshahhi ("Al Malik"), allegedly made contact with senior UAE national security officials and, at their direction, agreed to influence public opinion and the foreign policy positions of the Trump Campaign; relay non-public information about the foreign policy positions and decisions of the Trump Campaign; develop a backchannel line of communication with the Trump Campaign on behalf of the UAE government; and design plans to increase the UAE's political influence and promote its foreign policy preferences.

The Government contends that defendants' work for the UAE continued after the inauguration of President Trump in January 2017. As part of these continued efforts, the Government alleges that, among other actions, Grimes agreed to seek to list the Muslim Brotherhood as a foreign terrorist organization at Al Malik's direction; defendants arranged for President Trump to speak on the telephone with a senior UAE official; Barrack and Grimes agreed to advocate for a UAE-favored individual to be appointed to a senior position in the Trump Administration; and Barrack divulged non-public information to Al Malik and UAE officials about his potential appointment to a senior position in the Trump Administration and about internal discussions in the Trump Administration concerning the blockade of Qatar by the UAE and other Middle Eastern governments.

In a superseding indictment, the Government subsequently charged Barrack and Grimes with acting and conspiring to act as agents of the UAE without providing prior notification to the Attorney General. The Government has also charged Barrack with obstruction of justice and making material false statements to FBI special agents in connection with a 2019 voluntary interview.

Subsequently, as part of its discovery to defendants, the Government disclosed pursuant to CIPA § 4 (concerning discovery of classified information by defendants) that it conducted a search of all potentially relevant records to make sure that exculpatory evidence did not exist in any classified documents. For reasons of national security, the Government will not confirm or deny that it found any classified information concerning Barrack and Grimes. However, the Court performed its review of the classified material under CIPA § 4, and was satisfied that the Government had met its obligations to produce what is required by Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), Fed. R. Crim. P. 16, and 18 U.S.C. § 3500.

Grimes has sought additional information from the Government regarding its classified records. He believes that a dearth of such records would be evidence of his innocence because it shows that neither the UAE nor the U.S. Government considered him an agent of the UAE. After Grimes failed to obtain a stipulation from the Government that no records exist – the Government would not, for national security reasons, confirm or deny the existence of such material – the Government moved in limine to preclude any questioning about classified information at trial. Soon after, and only eleven days before trial, pursuant to CIPA § 5, Grimes provided notice of his intention to ask questions at trial that risked publicly disclosing classified information. Grimes's CIPA § 5 notice states that his counsel plans to ask certain witnesses to testify about whether they have reviewed classified documents that discuss Grimes or any of his contacts with UAE officials.

## DISCUSSION

CIPA's fundamental purpose is to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the government's right to protect classified material in the

national interest." United States v. Pappas, 94 F.3d 795, 799 (2d Cir. 1996) (citation and internal quotations omitted). Under CIPA, when exculpatory classified information exists, the Government has three choices: it can provide the information, produce an accurate summary to give the defendant substantially the same ability to make his defense as would disclosure of the specific classified information, or dismiss the case. See Am. C.L. Union v. Dep't of Just., 681 F.3d 61, 72 (2d Cir. 2012); United States v. Dumeisi, 424 F.3d 566, 578 (7th Cir. 2005) (in a Section 951 case, affirming the district court's approval of a substitution for classified information where the substitution provided defendant with "substantially the same ability to make his defense as would disclosure of the specific classified information"); United States v. Moussaoui, 365 F.3d 292, 313-14 (4th Cir. 2004) ("We believe that the standard set forth in CIPA adequately conveys the fundamental purpose of a substitution: to place the defendant, as nearly as possible, in the position he would be in if the classified information (here, the depositions of the witnesses) were available to him.").

However, CIPA neither creates new discovery rights nor expands the rules governing the admissibility of evidence. See Dumeisi, 424 F.3d at 578 ("CIPA does not create any discovery rights for the defendant"); United States v. Johnson, 139 F.3d 1359, 1365-66 (11th Cir. 1998); United States v. Smith, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc). Rather, CIPA applies existing procedures governing the scope of discovery in criminal cases to classified information, and it restricts discovery of classified information to protect the Government's national security interests. See United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008); United States v. Baptista-Rodriguez, 17 F.3d 1354, 1363-64 (11th Cir. 1994); United States v. Yunis, 867 F.2d 617, 621 (D.C. Cir. 1989).

Outside of the Government's obligation to disclose exculpatory classified material or provide an adequate substitution for that material (e.g., a summary), the Government has no duty to confirm or deny the existence of any other type of classified material that it is not going to use at trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and Brady did not create one."); cf. Fed. R. Crim. P. 16, 1975 Enactment Note B ("[A] defendant has no constitutional right to discover any of the prosecution's evidence . . . unless it is exculpatory within the meaning of Brady . . . ."). Indeed, "[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [Government's] files." Pennsylvania v. Ritchie, 480 U.S. 39, 59-60 (1987).

Federal Rule of Criminal Procedure 16 is structured around this same set of principles. Rule 16(a)(1)(E) requires the Government to produce documents to a defendant if:

> (i) the item is within the government's possession, custody, or control; (ii) the attorney for the government knows – or through due diligence could know – that the item exists; and (iii) the item is material to preparing the defense or the government intends to use [it] in its case-in-chief at trial.

As shown above, these discovery principles do not change simply because the discovery concerns possible classified documents, the existence of which the Government will not confirm or deny. See Dumeisi, 424 F.3d at 578; Johnson, 139 F.3d at 1365-66; Smith, 780 F.2d at 1106. Thus, if (hypothetically) classified inculpatory information exists regarding Grimes and Barrack which the Government has decided not to use it in its case-in-chief, then it certainly is not material to the defense. Additionally, because the Government reviewed its records for exculpatory material and the Court, having reviewed the material, has found that the Government met its discovery obligations, the only question that remains – and the Government declines to answer – is whether any classified material exists at all.

5

Grimes believes that this lack of an answer prevents him from obtaining critical exculpatory evidence – testimony or a stipulation that no classified documents concerning him exist.  Grimes wants this evidence to argue that UAE officials, as well as U.S. law enforcement and intelligence officers, never discussed his work, considered him a UAE agent, or gave him a second's thought.  But Grimes does not need this evidence to make his point.

The issue is not whether any inculpatory classified material concerning Grimes exists.  Rather, the question is whether the Government will introduce any inculpatory classified evidence to prove its case.  The burden to overcome Grimes's presumption of innocence and prove his guilt beyond a reasonable doubt never shifts away from the Government.  If the Government does not introduce a certain type of evidence at trial, which may or may not even exist, Grimes is free to argue that this failure means the Government has not proved its case beyond a reasonable doubt.  Nothing prevents him from saying to the jury in closing argument that, "you have not seen a single document from the Government mentioning Grimes," if the evidence allows that, or "one would expect that if Grimes was as deeply involved in this as the Government contends, there would be abundant documentation showing you that.  But the Government hasn't shown you any such thing."

Grimes can also emphasize this deficiency via carefully worded direct and cross examination questions.  For example, Grimes may be able to ask the appropriate witnesses whether they "know of any evidence produced to the defense that shows UAE or US officials knew Grimes was a UAE agent."  This allows Grimes to emphasize that he believes this critical evidence is absent from the Government's case.  It also removes the risk that the existence or non-existence of classified material is accidently disclosed.

Additionally, the Government's motion is granted because Grimes's CIPA notice, provided less than two weeks before the start of trial, is not timely. CIPA § 5(a) requires defendants to provide a timely pretrial notice when they believe that the disclosure of classified information is reasonably likely based on their planned cross examination or case. See United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984) (citing United States v. Collins, 720 F.2d 1195, 1199 (11th Cir. 1983)). When no filing date is specified by the Court, the default definition for "timely pretrial notice" is thirty days before trial. See 18 U.S.C. App. III § 5(a). The Court did not specify another deadline in this case.

There are two reasons why CIPA requires early notice by default. First, whenever the defense intends to introduce classified information and provide notice pursuant to CIPA § 5, the Government can move for a CIPA § 6 hearing. During CIPA § 6 hearings, courts make determinations concerning the classified material's use, relevance, or admissibility that would otherwise be made during the trial or a pretrial proceeding. This should not be conducted on the fly. The constitutional, evidentiary, and national security concerns raised by a desire to admit classified evidence should be resolved before trial if possible, not in the middle of it. See Collins, 720 F.2d at 1196-97.

Second, the default thirty-day period allows the Government time to weigh the costs of, or consider alternatives to, disclosure. See United States v. Badia, 827 F.2d 1458, 1465 (2d Cir. 1987). Unlike evidentiary motion practice for unclassified material, many different federal agencies may have equities at stake when it comes to the disclosure of classified information. The prosecution team needs time to consider those equities. CIPA § 5(a)'s thirty-day lead time ensures that a defendant does not use these unique dynamics to "graymail" his prosecutors – a concern that Congress expressly considered when it enacted CIPA. See Collins, 720 F.2d at

1199, 1200 (citing S. Rep. No. 823, 96th Cong., 2d Sess. 4 (1980), reprinted in 1980 U.S. Code Cong. & Ad. News 4294, 4296-98).

Grimes's counsel has been openly considering this trial strategy since July 28, 2022, at the latest, and has been seeking classified information for far longer. By failing to timely file his notice, Grimes's counsel left the Court no time to conduct the subsequent CIPA § 6 hearing in advance of trial and, inadvertently, caused the very predicament that Congress created CIPA to avoid.

The Government's motion in limine to preclude defendants from inquiring about classified information at trial is therefore GRANTED.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
September 14, 2022